JAMES L. LOPES (No. 63678)
JEFFREY L. SCHAFFER (No. 91404)
GARY M. KAPLAN (No. 155530)
HOWARD, RICE, NEMEROVSKI, CANADY,
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4065
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY



ORIGINAL

FILED

APR 6 - 2001

KEENAN G. CASADY, CLERK
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

PACIFIC GAS AND ELECTRIC
COMPANY, a California corporation,

Debtor.

Federal I.D. No. 94-0742640

No. 01 30923 DM

Chapter 11 Case

Date: April 9, 2001
Time: 9:30 a.m.
Place: 235 Pine St., 22nd Floor
San Francisco, California

DECLARATION OF KENT HARVEY IN SUPPORT OF DEBTOR'S
EMERGENCY MOTION FOR ORDERS: (1) AUTHORIZING INTERIM USE
OF CASH COLLATERAL IN WHICH GAS SUPPLIERS HAVE A
BENEFICIAL INTEREST; (2) AUTHORIZING INCURRENCE OF POST-
PETITION SECURED DEBT ON AN INTERIM BASIS; (3) SCHEDULING
AND ESTABLISHING DEADLINES RELATING TO A FINAL HEARING
ON CONTINUED USE OF CASH COLLATERAL AND INCURRENCE OF
POST-PETITION SECURED DEBT; AND (4) AFTER CONCLUSION OF A
FINAL HEARING, AUTHORIZING CONTINUED USE OF CASH
COLLATERAL AND INCURRENCE OF POST-PETITION SECURED DEBT

Case: 01-30923   Doc# 19   Filed: 04/06/01   Entered: 04/06/01 16:50:00   Page 1 of 21

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    I, Kent Harvey, declare as follows:

2        1.    I am the chief financial officer of Pacific Gas and Electric Company, the

3    debtor and debtor in possession in the above-captioned Chapter 11 case (the "Debtor" or

4    "PG&E"). This Declaration is based on my personal knowledge of the Debtor's operations

5    and financial position. If called as a witness, I could and would testify competently to the

6    facts stated herein.

7        2.    I make this declaration in support of the Debtor's Emergency Motion For

8    Orders: (1) Authorizing Interim Use Of Cash Collateral In Which Gas Suppliers Have A

9    Beneficial Interest; (2) Authorizing Incurrence Of Post-Petition Secured Debt On An Interim

10   Basis; (3) Scheduling And Establishing Deadlines Relating To A Final Hearing On

11   Continued Use Of Cash Collateral And Incurrence Of Post-Petition Secured Debt; and

12   (4) After Conclusion Of A Final Hearing, Authorizing Continued Use Of Cash Collateral

13   And Incurrence Of Post-Petition Secured Debt (the "Motion") submitted concurrently

14   herewith.

15       3.    On or about February 7, 2001, the Debtor entered into a certain Gas

16   Supplier Security Agreement (a true and correct copy of which is attached hereto as

17   Exhibit A) with certain suppliers of natural gas (the "Suppliers"), granting a security interest

18   in certain of the Debtor's gas-related assets in order to induce the Suppliers to supply gas to

19   the Debtor for its residential, commercial and other customers designated as "core" on

20   PG&E's billing systems (the "Core Customers") after it faced loss of existing gas and was

21   unable to obtain a sufficient supply of gas for its customers on an unsecured basis. Pursuant

22   to the Gas Supplier Security Agreement, the Debtor granted a security interest to U.S. Trust

23   Company, as collateral agent (the "Suppliers' Agent"), for the benefit of the Suppliers, in all

24   of the Debtor's existing and after-acquired rights to payment from its Core Customers for

25   natural gas or gas services (including sales and transport charges), and the proceeds thereof

26   (collectively, the "Suppliers' Collateral"), but excluding certain rights to payment (including

27   payment rights for the provision of electricity or electricity services, amounts collected by

28   PG&E as a servicer under various transactions and programs, and certain taxes and fees).

HARVEY DECL. ISO EMERGENCY MOTION FOR USE OF GAS SUPPLIERS' CASH COLLATERAL

-1-

1     Under the Gas Supplier Security Agreement, the Suppliers' Agent's security interest in the

2     Suppliers' Collateral is expressly subject to the security interest of the indenture trustee for

3     the benefit of the holders of certain mortgage bonds issued by PG&E (as discussed in my

4     declaration in support of the Debtor's concurrent motion to use cash collateral in which such

5     bondholders have a beneficial interest).

6            4.     Pursuant to the Gas Supplier Security Agreement, the Suppliers' Collateral

7     secures PG&E's respective payment obligations (collectively, the "Secured Obligations")

8     under its Master Gas Purchase and Sale Agreements with such Suppliers (collectively, the

9     "Supply Agreements") for natural gas deliveries made on behalf of PG&E's Core

10    Customers.

11           5.     The Gas Supplier Security Agreement requires that the aggregate value of

12    the Suppliers' Collateral exceed the aggregate amount of the Secured Obligations at all

13    times.

14           6.     The Gas Supplier Security Agreement also requires that PG&E grant a

15    security interest in additional property (*i.e.*, its inventory of natural gas designated for its

16    Core Customers held in storage fields) to the Suppliers if the amount of the Secured

17    Obligations owed to the Suppliers exceeds the value of the Suppliers' Collateral, or make

18    payments to reduce the Secured Obligations.

19           7.     In March 2001, PG&E purchased approximately $167 million of gas from

20    the 16 Suppliers, which constituted approximately 90% of its baseload gas purchases needed

21    for its Core Customers.

22           8.     In view of its deteriorated credit situation, I am informed and believe that

23    the Debtor remains unable to purchase a sufficient supply of gas for its Core Customers

24    going forward on an unsecured credit basis, even if such credit is allowable as an

25    "administrative expense" under bankruptcy law.

26           9.     Beginning in mid-March 2001, the Debtor began pre-paying its suppliers

27    for certain quantities of gas in an effort to ensure a sufficient supply of gas for its Core

28    Customers.

Case: 01-30923   Doc# 19   Filed: 04/06/01   Entered: 04/06/01 16:50:00   Page 3 of 21

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

10.    In my opinion, the Debtor cannot preserve the value of its business without authority to use cash, negotiable instruments, deposit accounts, and other cash equivalents in which the Debtor's estate and the Suppliers' Agent have an interest, including without limitation the proceeds, products, offspring, rents, and profits of such property (collectively, "Cash Collateral"). If not authorized to use such Cash Collateral, I believe that the Debtor will have insufficient financial resources to purchase gas and electricity, meet its payroll obligations, and pay the myriad other expenses required to operate its business, and thereby provide essential gas and electricity service to millions of customers.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed this 5th day of April, 2001 at San Francisco, California.

_____
KENT HARVEY

WD 040401/3-1419901/Y2/897755/v4

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

HARVEY DECL. ISO EMERGENCY MOTION FOR USE OF GAS SUPPLIERS' CASH COLLATERAL
-3-

## GAS SUPPLIER SECURITY AGREEMENT

THIS GAS SUPPLIER SECURITY AGREEMENT, dated as of February ___, 2001 (the "Security Agreement"), is executed by Pacific Gas and Electric Company, a California corporation ("PG&E"), the suppliers of natural gas to PG&E specified on Schedule I hereto, as amended from time to time (individually, a "Supplier" and collectively, the "Suppliers"), and U.S. Trust Company, National Association, a national banking association, acting as collateral agent (in such capacity, and each successor thereto acting in such capacity, "Agent") for each of the Suppliers.

## RECITALS

A.    Pursuant to those certain Master Gas Purchase and Sales Agreements specified on Schedule I hereto (the "Supply Agreements") between PG&E on behalf of its residential, commercial business and other procurement customers designated as "core" on PG&E's billing systems (the "Core Customers") and each of the Suppliers, the Suppliers have agreed to sell and deliver to PG&E natural gas upon terms that require PG&E to pay the Suppliers for deliveries on the 25th day of the month following delivery (or, if the 25th day falls on a weekend and/or holiday, by the dates that are set forth in each Supply Agreement).

B.    The respective Supply Agreements provide, *inter alia*, that the Suppliers' obligations thereunder are subject, under certain conditions, to PG&E's obligation to provide adequate assurance of payment for the natural gas and assurance of performance of its obligations under the Supply Agreements, and that the Supply Agreements or Transactions (as defined below) may be terminated or suspended by the Suppliers in the event of PG&E's failure to provide such adequate assurances, a PG&E bankruptcy, insolvency, reorganization appointment of a trustee or the like for PG&E, PG&E's failure to pay debts when due, or PG&E's failure to pay to a Supplier when due any material obligations under the Supply Agreement.

C.    To induce each Supplier to (i) continue to make natural gas deliveries under individual natural gas purchases, trades and other transactions entered into under its respective Supply Agreement (each, a "Transaction") upon the terms specified in such Supply Agreement and (ii) negotiate in good faith to provide additional quantities of natural gas to PG&E in future Transactions under such Supply Agreement, based on market terms, PG&E is entering into this Security Agreement.

D.    Concurrently herewith the Agent and the Suppliers have entered into an Intercreditor and Collateral Agency Agreement dated the date hereof (the "Intercreditor Agreement") pursuant to which the Suppliers have appointed the Agent to act as the collateral

DOCSSF1:507004.8

1

## EXHIBIT A

agent hereunder.

E.    The California Public Utilities Commission (the "CPUC"), in Decision Number 01-01-062, has authorized PG&E to pledge its gas customer accounts receivable and, if necessary, core gas inventory for the sole purpose of procuring core gas supplies.

## AGREEMENT

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, PG&E, the Suppliers and the Agent hereby agree as follows:

1.    Grant of Security Interest.  As security for all obligations owed by PG&E to any Supplier under the Supply Agreements for natural gas deliveries made after the date hereof on behalf of its Core Customers, net of amounts owed by each Supplier for natural gas and pipeline transportation sales by PG&E to such Supplier (such net obligations, the "Secured Obligations"), PG&E hereby pledges and assigns to Agent (for the ratable benefit of the Suppliers ), and grants to Agent (for the ratable benefit of the Suppliers), a security interest in all right, title and interest of PG&E, whether now existing or hereafter created, acquired or arising, in and to the following, in each case whether now existing or hereafter created, acquired or arising (collectively, the "Collateral"):

(a)    all rights of PG&E to payment (whether billed or unbilled, however evidenced, and whether or not constituting "accounts" under the Uniform Commercial Code as in effect in the State of California from time to time (the "UCC")) from and against gas tariffed service customers of PG&E now existing or arising after the date hereof from the provision to such customers by PG&E of Natural Gas or Natural Gas services (including, without limitation, sales and transmission charges), excluding rights to payment for (i) the provision of electricity or electric services, (ii) the Trust Transfer Amount collected by PG&E as servicer of outstanding rate reduction bonds issued on behalf of PG&E Funding LLC and any other amounts that PG&E is authorized to collect in the future in connection with a securitization transaction as to which PG&E acts as servicer, (iii) utility user fees that are collected and remitted to cities and counties, (iv) nuclear decommissioning amounts, (v) fees collected for public service programs, (vi) franchise fees and franchise fee surcharges, (vii) Energy Commission tax, (viii) amounts billed on behalf of energy service providers, (ix) amounts billed on behalf of gas core aggregators, (x) CPUC fees that are collected and remitted quarterly to the CPUC and (xi) amounts allocated from the electric bill for California state agencies responsible for purchasing electricity for PG&E retail electric customers (all such non-excluded rights to payment, the "Receivables");

(b)    all documents, instruments and chattel paper evidencing the

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 6 of 21

Receivables; and

(c)     all proceeds of the foregoing.

For purposes hereof, "Natural Gas" means any mixture of hydrocarbons and non-combustible gases in a gaseous state consisting primarily of methane.

2.     Representations and Warranties.  PG&E represents and warrants to the Suppliers and Agent as follows:

(a)     PG&E has the power and authority to execute and deliver this Security Agreement and to grant the security interest hereunder.  This Security Agreement has been duly executed and delivered by PG&E and is a legal, valid and binding obligation of PG&E, enforceable against PG&E in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(b)     The execution, delivery and performance in accordance with its terms by PG&E of this Security Agreement, the grant of the security interest hereunder and the exercise by the Agent and the Suppliers of their rights hereunder (including, without limitation, their rights upon a default), do not and will not (i) require any regulatory approval or any other consent or approval other than the approval of the CPUC or (ii) violate, conflict with, result in a breach of, constitute a default under, any applicable law, regulation, order or contract (including the First and Refunding Mortgage, dated December 1, 1920, as amended and supplemented (the "Mortgage Indenture"), between the Company and BNY Western Trust Company).  The approval of the CPUC required for PG&E to enter into this Security Agreement has been obtained and is in full force and effect.

(c)     PG&E is (or, in the case of after-acquired, created or arising Collateral, will be, at the time PG&E acquires rights therein) the legal and beneficial owner of the Collateral, free and clear of any right, title, claim or interest of any other person (by way of lien, purchase option or otherwise), other than the lien of the trustee under the Mortgage Indenture.

(d)     The Agent has (or, in the case of after-acquired, created or arising Collateral, will have, at the time PG&E acquires rights therein) a perfected security interest in the Collateral, subject only to, the lien of the trustee under the Mortgage Indenture.

(e)     Agent has (or in the case of after-acquired Receivables, at the time PG&E acquires rights therein, will have) a perfected security interest in the Receivables, subject only to the lien of the Mortgage Indenture.

(f)     PG&E's chief executive office is located at 77 Beale Street, San

Case: 01-30923   Doc# 19   Filed: 04/06/01   Entered: 04/06/01 16:50:00   Page 7 of 21

Francisco, California 94105.

(g)     The aggregate value of the Collateral is, as of the date hereof, and will at all times continue to be, not less than the aggregate amount of the Secured Obligations.  For the purpose of this Security Agreement, the value of a Receivable at any time shall be deemed to be the unpaid amount thereof at such time and (ii) the value of Natural Gas at any time shall be deemed to be the fair market value thereof at such time.

3.     <u>Covenants of PG&E</u>.  PG&E hereby agrees as follows:

(a)      PG&E shall promptly procure, execute and deliver to Agent all documents, instruments and agreements and perform all acts which are necessary, or which Agent may reasonably request, to establish, maintain, preserve, protect and perfect the Collateral, the security interest granted to Agent therein or to enable Agent to exercise and enforce its rights and remedies hereunder with respect to any Collateral.  Without limiting the generality of the preceding sentence, PG&E shall procure, execute and deliver to Agent all financing statements and other instruments of transfer or perfection reasonably requested by Agent.

(b)     Without thirty (30) days' prior written notice to Agent, PG&E shall not change PG&E's name or chief executive office.

(c)     PG&E shall keep accurate and complete records of the Collateral and shall provide Agent with access to such records at such times as Agent may reasonably request from time to time.  No later than Wednesday of each week (or, if such day is not a business day, the following business day), PG&E shall provide to Agent and the Suppliers a weekly report summarizing the value of outstanding Receivables as of the end of the prior calendar week substantially in the form of Exhibit A hereto.

(d)     PG&E shall collect, enforce and receive delivery of the Receivables in accordance with PG&E's established practice, subject to applicable rules and regulations.

(e)     PG&E shall pay when due all amounts payable under the Supply Agreements in accordance with the terms thereof providing for payment once a month for Natural Gas delivered in the prior month.

(f)     PG&E shall not amend the Mortgage Indenture in a manner adverse to the Suppliers or grant any lien or encumbrance on the Collateral superior or pari passu to the security interest created hereby.

(g)     PG&E shall pay the reasonable fees and expenses of Agent in accordance with a fee schedule provided to PG&E prior to the execution of this Security Agreement.  PG&E shall also pay the reasonable fees and expenses of Agent

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 8 of 21

in connection with the enforcement of any of its rights under this Security Agreement

(h)     PG&E shall not sell any interest in, or grant or permit to exist any security interest, lien, charge or encumbrance on, the Collateral other than (i) the security interest granted hereby or pursuant to Section 3(i), (ii) the lien of the trustee under the Mortgage Indenture and (iii) any pre-existing conditions on the use of the Natural Gas Collateral referred to in Section 3(i) approved by the CPUC.

(i)     If, at the time of any particular purchase of Natural Gas by PG&E, the value of the Collateral is less than the amount of the Secured Obligations, PG&E may either pay the Secured Obligations, reducing the obligations to each Supplier on a pro rata basis, to reduce the amount thereof to an amount that is equal to or less than the value of the Collateral or shall promptly grant to the Agent, for the ratable benefit of the Suppliers, a security interest in the inventory of Natural Gas owned by PG&E and designated for Core Customers that is held in storage fields. PG&E shall procure, execute and deliver to the Agent all documents, instruments, agreements and amendments necessary to perfect such security interest in such inventory of Natural Gas.

(j)     If, after giving effect to Section 3(i) above, the amount of the Secured Obligations is still greater than the value of the Collateral, PG&E shall pay the Secured Obligations, reducing the obligations to each Supplier on a pro rata basis, until the amount of the Secured Obligations outstanding is at least equal to the value of the Collateral.

(k)     In the event the trustee under the Mortgage Indenture asserts a security interest in the Collateral, PG&E will support a marshalling.

(l)     PG&E shall make payments to the Suppliers pro rata in accordance with the aggregate amount of Secured Obligations then due and payable to each such Supplier as of any date of payment by PG&E.

4.     Covenants of Suppliers. Each Supplier agrees that, so long as no Event of Default (as defined in Section 6) has occurred and is continuing, and subject to Section 4(f) below:

(a)     This Security Agreement, the security interest granted herein and PG&E's compliance herewith constitute adequate assurance by PG&E of its ability to perform its obligations under each respective Supply Agreement, including adequate assurance of its ability to make payments required thereunder; provided, however, that no Supplier will be deemed to have made such representation for purposes of any question of adequate assurances under Section 365 of the United States Bankruptcy Code. No default, suspension of deliveries or contract termination under the respective Supply Agreements shall occur on account of PG&E's failure to provide adequate assurance of its creditworthiness, nor shall Supplier demand from PG&E a

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 9 of 21

payment guarantee or parent company guarantee, so long as this Security Agreement shall remain in effect. Each Supplier agrees to continue to supply and deliver natural gas under its respective Supply Agreement in accordance with its existing commitments and the Transactions.

(b)    While this Security Agreement is in effect, each Supplier waives the provisions in its respective Supply Agreement that provide that the Supplier may declare a default under, and terminate or suspend performance under its respective Supply Agreement or any Transaction thereunder in the event of a bankruptcy, insolvency, appointment of a liquidator, administrator, receiver, conservator or trustee, or similar event or action, including a failure to pay debts when due, involving PG&E so long as the security provided herein, with such court or governmental approval as may be required, continues to be provided after such event or action.

(c)    Each Supplier agrees to negotiate in good faith to provide natural gas to PG&E in future Transactions, pursuant to its Supply Agreement, based on market terms, including but not limited to swing spot, base load and long term supply.

(d)    Each Supplier agrees to make the following amendment to its respective Supply Agreement to reflect this Security Agreement, as follows: "The Agreement shall be subject to the provisions set forth in Section 4 of that certain Gas Supplier Security Agreement (the "Security Agreement"), executed by PG&E, U.S. Trust Company and certain suppliers of natural gas to PG&E, for so long as such Security Agreement is in effect for [name of supplier]."

(e)    No waiver or agreement in this Section 4 shall constitute a waiver of any rights of any Supplier with respect to deliveries of Natural Gas made prior to the date hereof.

(f)    The covenants of each Supplier specified in this Section 4 shall terminate on the earlier of (i) the date this Security Agreement terminates in accordance with Section 5 hereof and (ii) March 31, 2001, unless extended in accordance with Section 7 hereof.

5.    <u>Termination</u>.  This Security Agreement and the security interest granted hereby in the Collateral will terminate upon the earliest of (i) April 30, 2001, provided, however, that the security interest granted hereby shall not terminate until all Secured Obligations that are due and owing to the Suppliers as of such date are paid in full, and (ii) the date of the occurrence of any one of the following events:

(a)    PG&E shall have provided to each Supplier a nonrevocable stand-by letter of credit issued by a nationally recognized bank with a total stockholders equity of at least $20 billion whose short-term debt is rated at least A by Standard & Poor's or the equivalent by another nationally-recognized rating agency, in a form and with a term reasonably satisfactory to such Supplier, fully securing the Secured Obligations of

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 10 of 21

such Supplier.

(b)     Fifteen (15) days after the credit rating of PG&E's senior unsecured long-term debt shall have been upgraded to at least BBB- by Standard & Poor's; provided, however, that (i) immediately upon the announcement of such upgrade each Supplier shall have no obligations under Section 4 to the extent that fulfillment of such obligations may give rise to amounts that become payable under its related Supply Agreement after such fifteenth (15th) day and (ii) the security interest granted hereby as to Receivables arising prior to such fifteenth (15th) day shall not terminate until all Secured Obligations that are then owing and unpaid to the Suppliers have been paid in full.

(c)     Fifteen (15) days after the credit rating of PG&E's senior unsecured long-term debt shall have been upgraded to at least Baa3 by Moody's Investors Services, Inc.; provided, however, that (i) immediately upon the announcement of such upgrade each Supplier shall have no obligations under Section 4 to the extent that fulfillment of such obligations may give rise to amounts that become payable under its related Supply Agreement after such fifteenth (15th) day and (ii) the security interest granted hereby as to Receivables arising prior to such fifteenth (15th) day shall not terminate until all Secured Obligations that are then owing and unpaid to the Suppliers have been paid in full.

(d)     Sixty (60) days after PG&E provides notification to the Agent of its termination of this Security Agreement, provided that (i) all Secured Obligations that are owing and unpaid to the Suppliers as of such sixtieth (60th) day are paid in full and (ii) effective immediately upon such notice of termination, the Suppliers shall have no obligations under Section 4 to the extent that fulfillment of such obligations might give rise to amounts that become payable under the Supply Agreements after such 60th day.

(e)     Thirty (30) days after the Requisite Suppliers (as defined in the Intercreditor Agreement) shall have provided to the Agent and PG&E notification of their election to terminate this Agreement; provided, however, that the security interest granted hereby as to Receivables arising prior to such thirtieth (30th) day shall not terminate until all Secured Obligations that are then owing and unpaid to the Suppliers have been paid in full.

If any of the foregoing events shall have occurred, PG&E shall send notices of such occurrence to each of the Suppliers and the Agent (other than any occurrence described in clause (e) above), and the Agent shall execute and deliver to PG&E such UCC financing statement releases as PG&E shall reasonably request within two (2) business days of the Agent's receipt of such notice from PG&E and execution copies of such releases.

**6.     Default and Remedies.**

Case: 01-30923     Doc# 19     Filed: 04/06/01     Entered: 04/06/01 16:50:00     Page 11 of 21

(a)     PG&E shall be deemed in default under this Security Agreement if any of the following events (each, an "Event of Default") shall occur:

(i)     Any representation and warranty made by PG&E in this Security Agreement shall at any time prove to have been incorrect or misleading in any material respect when made;

(ii)     PG&E shall default in the performance or observance of any term, covenant, condition or agreement contained herein and such default shall continue for two (2) business days after any notice of such default from the Agent or any Supplier;

(iii)     pursuant to any of the avoiding powers found in title 11 of the United States Code or under any similar provision of applicable state law, a complaint is filed against any Supplier or the Agent challenging, or seeking to recover, any of the payments made by PG&E to any of the Suppliers under the Supply Agreements, or challenging or seeking to avoid the security interest granted hereby or the perfected status thereof, and such complaint has not been dismissed or withdrawn within five (5) days of its filing; or

(iv) for any reason, the Suppliers' rights in the Collateral are subordinated to that of any other secured creditor other than the trustee under the Mortgage Indenture.

(b)     In addition to all other rights and remedies granted to Agent by this Security Agreement, the Intercreditor Agreement, the Supply Agreements, the UCC or other applicable law, upon the occurrence and during the continuance of any Event of Default, (i) Agent may exercise any one or more of the following rights and remedies: (A) collect, receive, appropriate or realize upon the Collateral or otherwise foreclose or enforce Agent's security interests in any or all Collateral in any manner permitted by applicable law or in this Security Agreement or (B) sell or otherwise dispose of any or all Collateral at one or more public or private sales, for cash or credit or future delivery, on such terms and in such manner as Agent may determine and (ii) the obligations of each Supplier set forth in Section 4 of this Security Agreement shall terminate.

(c)     Upon the occurrence of an Event of Default, the covenants of the Suppliers specified in Section 4 shall terminate.

(d)     Upon the earliest of (i) March 31, 2001, (ii) the occurrence of an Event of Default under this Section 6 and (iii) the termination of this Security Agreement pursuant to Section 5, and except with respect to any Secured Obligations that remain subject to the security interest granted hereby, each

Supplier shall have all rights and remedies otherwise available to it under its respective Supply Agreement or under Section 556 of the United States Bankruptcy Code.

7. __Extension.__

If the CPUC extends PG&E's authority to pledge its gas customer accounts receivable and core gas inventory for the purpose of procuring core gas supplies, this Security Agreement, including the covenants specified in Section 4, may be extended as to each Supplier to such later date as such Supplier and PG&E shall agree in writing.

8. __Miscellaneous.__

(a) __Effective Date.__ This Security Agreement shall become effective when PG&E, the Agent and at least one Supplier have executed this agreement.

(b) __Notices.__ All notices under this Security Agreement shall be in writing and shall be (i) delivered in person, (ii) sent by telecopy or (iii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or by overnight express courier, addressed to the respective addresses specified beneath the signature hereto or on Schedule I hereto, or to any other address or telecopy number, as to any of the parties hereto, as such party shall designate in a notice to the other parties hereto. All notices sent pursuant to the terms of this Section 8 shall be deemed received (A) if personally delivered, then on the business day of delivery, (B) if sent by telecopy, on the day sent and confirmed if a business day or if such day is not a business day, then on the next business day, (C) if sent by registered or certified mail, on the earlier of the third business day following the day sent or when actually received or (D) if sent by overnight, express courier, on the next business day immediately following the day sent. Any notice by telecopy shall be followed by delivery of a copy of such notice on the next business day by overnight, express courier or by personal delivery.

(c) __Waivers; Amendments.__ Any term, covenant, agreement or condition of this Security Agreement may be amended or waived only in writing executed by PG&E, the Agent and the Requisite Suppliers; provided, however, that no amendment or waiver may impose any additional obligation on a specific Supplier or waive or delay a Supplier's right to payment without such Supplier's specific consent in writing; and provided further, however, that no consent or approval of any party other than PG&E shall be required in connection with the addition of additional Suppliers as parties to this Security Agreement and the Intercreditor Agreement as described in clause (j) below or to any amendment to this Security Agreement requested by any such additional Supplier that applies uniformly to all Suppliers and does not adversely affect their rights and interests or increase their obligations hereunder. No failure or delay by Agent or any Supplier in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right. Unless

DOCSSF1:507004.8

9

otherwise specified in any such waiver or consent, a waiver or consent given hereunder shall be effective only in the specific instance and for the specific purpose for which given.

(d)     Successors and Assigns.  This Security Agreement shall be binding upon and inure to the benefit of Agent, the Suppliers and PG&E and their respective successors and assigns; provided, however, that no Supplier shall assign its rights or obligations under its respective Supply Agreement unless the assignee of such rights or obligations agrees to be bound by the terms of this Security Agreement.

(e)     Partial Invalidity.  If at any time any provision of this Security Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Security Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(f)     Cumulative Rights, etc.  Subject to the provisions of Section 4(a) and Section 4(b) hereof, the rights, powers and remedies of Agent and the Suppliers under this Security Agreement shall be in addition to all rights, powers and remedies given to Agent and the Suppliers by virtue of any applicable law, the Supply Agreements, or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Agent's rights hereunder.  PG&E waives any right to require Agent or any Supplier to proceed against any Person or to exhaust any Collateral or to pursue any remedy in Agent's or such Supplier's power.

(g)     Governing Law.  This Security Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to conflicts of law rules (except to the extent otherwise provided in the UCC).

(h)     Counterparts and Facsimiles.  This Security Agreement may be executed in any number of counterparts with the same effect as if all signatures were upon the same instrument.

(i)     Consent to Jurisdiction.  Any legal action or proceeding with respect to this Security Agreement or any Supply Agreement amended by this Security Agreement shall be brought in the courts of the State of California or of the United States of America for the Northern District of California.  Each party hereto hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.  Each party irrevocably consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at its address for notices specified beneath the signatures hereto or in Schedule I hereto.  Each party hereby irrevocably waives any objection that it may now or

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 14 of 21

hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Security Agreement or any Supply Agreement amended hereby brought in the courts referred to above and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding has been brought in an inconvenient forum. Nothing contained herein shall affect the right of any party to serve process in any other manner permitted by law. PG&E, the Agent and each Supplier each hereby waives any right it may have to a jury trial in any legal proceeding related to, or arising out of, this Security Agreement.

      (j)     <u>Additional Suppliers.</u>  PG&E may from time to time agree to permit additional suppliers of natural gas to PG&E to become parties hereto and to the Intercreditor Agreement as additional "Suppliers," upon the execution of the Form of Supplier Joinder Agreement attached as Exhibit B hereto. Any supplier that executes and delivers to PG&E and the Agent such Joinder Agreement shall be deemed a "Supplier" for all purposes hereunder after the effective date of PG&E's acceptance of such delivery.

     IN WITNESS WHEREOF, PG&E, Agent and the Suppliers have caused this Security Agreement to be executed as of the day and year first above written.

Pacific Gas and Electric Company

By: _____
     Name: _____
     Title: _____
     Address for Notices::
       77 Beale Street
       San Francisco, CA  94105
       Attention:  Trista Berkovitz
       Telecopy number:  (415)  973-9213

U.S. Trust Company, National Association

By: _____
     Name: _____
     Title: _____
     Address for Notices::
       One Embarcadero Center, Suite 2050
       San Francisco, CA  94111

DOCSSF1:507004.8

11

## EXHIBIT A

## FORM OF WEEKLY REPORT

Pacific Gas and Electric Company
Gas Supply Agreement

Pro Forma Exhibit A

(Sample Report)

| | | October--00 | November--00 | December--00 | January--01 | [date] | [date] |
|---|---|---|---|---|---|---|---|
| Security | | | | | | | |
| | Pledged Customer Accounts Receivable | $186,345,548 | $379,069,514 | $491,046,667 | | | |
| | Receivables Statistics: Days Sales Outstanding | N/A | N/A | 23 | | | |
| Gas Purchase Commit-ment | | | | | | | |
| | Gas Payables | $120,896,188 | $263,264,707 | $329,047,584 | | | |

Note:  January--01 will be available by 2/10/01

Rev. 2/1/01 – 12:30pm

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 16 of 21

## EXHIBIT B

## FORM OF SUPPLIER JOINDER AGREEMENT

This Supplier Joinder Agreement is made as of _____, 20__, by
_____, a _____ (the "New Supplier").

### RECITALS

A.      Pacific Gas & Electric Company (PG&E") has entered into that certain Gas
Supplier Security Agreement dated February ___, 2001 (the "Security Agreement") with U.S.
Trust Company, National Association, as collateral agent (the "Agent"), and certain suppliers
of natural gas to PG&E (the "Existing Suppliers").

B.      The Agent and the Existing Suppliers have entered into that certain
Intercreditor and Collateral Agency Agreement dated [_____] (the "Intercreditor
Agreement").

C.      The New Supplier desires to become a party to the Security Agreement and the
Intercreditor Agreement, upon the same terms as the existing Suppliers.

D.      The Security Agreement and the Intercreditor Agreement provide that parties
who execute and deliver this Joinder Agreement, with the consent of PG&E, shall become
"Suppliers" under such agreements.

### AGREEMENT

1.      Capitalized terms used in the Security Agreement are used herein as defined
therein.

2.      In consideration of PG&E's agreement to grant to the New Supplier the rights
and remedies provided for the Suppliers in the Security Agreement, the New Supplier hereby
agrees that it hereby is, and shall be deemed to be, a Supplier under the Security Agreement
and Intercreditor Agreement, and agrees that New Supplier has assumed the obligations of a
Supplier under, and New Supplier shall perform, comply with and be subject to and bound
by, jointly and severally, each of the terms, provisions and waivers of the Security Agreement
and the Intercreditor Agreement. *New Supplier hereby represents and warrants that New
Supplier has heretofore received a true and correct copy of the Security Agreement and the
Intercreditor Agreement as in effect on the date hereof.*

3.      New Supplier hereby makes, affirms, and ratifies in favor of PG&E, the
Existing Suppliers and the Agent, the Security Agreement and the Intercreditor Agreement.

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 17 of 21

IN WITNESS WHEREOF, the New Supplier has duly executed this Supplier Joinder Agreement as of the date and year first above written.

[name of New Supplier]

By: _____
Name: _____
Title: _____
Address for Notices::

Attention:
Telecopy number:

ACKNOWLEDGED AND ACCEPTED:

PACIFIC GAS AND ELECTRIC COMPANY

By: _____
Name:
Title:

Date:_____

Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 18 of 21

## SUPPLIER JOINDER AGREEMENT
## AND AMENDMENT

### (SOUTHERN CALIFORNIA GAS COMPANY)

This Supplier Joinder Agreement is made as of February _____, 2001, by Southern California Gas Company, a California corporation (the "New Supplier").

### RECITALS

A.    Pacific Gas & Electric Company ("PG&E") has entered into that certain Gas Supplier Security Agreement dated February ___, 2001 (as amended hereby, the "Security Agreement") with U.S. Trust Company, National Association, as collateral agent (the "Agent"), and certain suppliers of natural gas to PG&E (the "Existing Suppliers").

B.    The Agent and the Existing Suppliers have entered into that certain Intercreditor and Collateral Agency Agreement dated February _____, 2001 (the "Intercreditor Agreement").

C.    The New Supplier desires to become a party to the Security Agreement and the Intercreditor Agreement, upon the same terms as the existing Suppliers as amended hereby.

D.    The Security Agreement and the Intercreditor Agreement provide that parties who execute and deliver this Joinder Agreement, with the consent of PG&E, shall become "Suppliers" under such agreements.

E.    Section 8(c) of the Security Agreement provides that no consent or approval of any party other than PG&E shall be required in connection with the addition of additional Suppliers as parties to the Security Agreement and the Intercreditor Agreement as described in Section 8(j) of the Security Agreement or to any amendment to the Security Agreement requested by any such additional Supplier that applies uniformly to all Suppliers and does not adversely affect their rights and interests or increase their obligations hereunder.

### AGREEMENT

1.    Capitalized terms used in the Security Agreement are used herein as defined therein.

2.    In consideration of PG&E's agreement to grant to the New Supplier the rights and remedies provided for the Suppliers in the Security Agreement, the New Supplier hereby agrees that it hereby is, and shall be deemed to be, a Supplier under the Security Agreement and Intercreditor Agreement, and agrees that New Supplier has assumed the obligations of a Supplier under, and New Supplier shall perform, comply with and be subject to and bound by each of the terms, provisions and waivers of the Security Agreement and the Intercreditor Agreement. New Supplier hereby represents and warrants that New Supplier has heretofore received a true and correct copy of the Security Agreement and the Intercreditor Agreement as in effect on the date hereof.

3. Section 6(a) of the Security Agreement shall be amended by adding the following additional "Events of Default" as additional clauses (v), (vi), (vii), and (viii), with all such provisions to apply uniformly to all Suppliers:

"(v) In the event an order for relief is entered in a bankruptcy case in which PG&E is the debtor, PG&E shall have failed to obtain an order, within 24 hours of the entry of such order for relief, under Section 364 of the United States Bankruptcy Code approving the security interested granted hereby as it relates to future deliveries of Natural Gas.

(vi) PG&E fails to provide the Suppliers with at least 24 hours advance notice prior to any hearing on any cash collateral motion.

(vii) PG&E shall have failed to pay all amounts due to the Suppliers for deliveries made during the month of January, 2001, on or before February 26, 2001, provided that no order for relief in any bankruptcy case in which PG&E is the debtor shall have been entered prior to such date.

(viii) The trustee under the Mortgage Indenture, in its capacity as a senior lienholder, shall have exercised its right to foreclose on the Collateral."

Case: 01-30923   Doc# 19   Filed: 04/06/01   Entered: 04/06/01 16:50:00   Page 20 of 21

IN WITNESS WHEREOF, the New Supplier has duly executed this Supplier Joinder Agreement as of the date and year first above written.

SOUTHERN CALIFORNIA GAS COMPANY

By: _____

    Name: _____

    Title: _____

Address for Notices:
Southern California Gas Company
Supply Agreement No. 5847
Address for Notices:

Facsimile:

ACKNOWLEDGED AND ACCEPTED:

PACIFIC GAS AND ELECTRIC COMPANY

By: _____
Name:
Title:

Date:_____

SO CAL GAS JOINDER 21



Case: 01-30923    Doc# 19    Filed: 04/06/01    Entered: 04/06/01 16:50:00    Page 21 of 21