FILED

01 MAY 18 PM 2:57

RICHARD C. CASADY, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
SAN FRANCISCO, CA.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Bankruptcy Case
) No. 01-30923DM
PACIFIC GAS & ELECTRIC COMPANY, )
) Chapter 11
Debtor. )
)

MEMORANDUM DECISION REGARDING MOTION FOR ORDER
VACATING APPOINTMENT OF COMMITTEE OF RATEPAYERS

I.  Introduction

The court has considered the Motion for Order Vacating Appointment by United States Trustee of Official Committee of Ratepayers ("Motion") filed by Pacific Gas and Electric Company ("PG&E"), the above-named debtor, the opposition to the Motion filed by the United States Trustee ("UST"), the submissions of various parties in interest in support of and in opposition to the Motion, all declarations, requests for judicial notice, and other papers presented, and the oral arguments presented at the hearing earlier today.  Appearances have been noted on the record.

For the reasons set forth below, the court determines that

-1-

there is no authority in the Bankruptcy Code[1] for the appointment of the Official Committee of Ratepayers ("Ratepayers Committee"). In addition, the court notes that ratepayers have other means and other fora to protect their interests. Accordingly, the court will grant the Motion and vacate the UST's appointment of the Ratepayers Committee.

II. Discussion

    A.    <u>The court has the authority and duty to review the UST's appointment of the Ratepayers Committee.</u>

The UST relies on <u>Smith v. Wheeler Technology, Inc. (In re Wheeler Technology, Inc.)</u>, 139 B.R. 235 (9th Cir. BAP 1992), for the proposition that the court has no or limited jurisdiction to review the UST's discretionary appointment of the Ratepayers Committee under 11 U.S.C. § 1102(a)(2). PG&E counters with a citation to <u>In re Pierce</u>, 237 B.R. 748, 755 (Bankr. E.D. Cal. 1999), which notes that review of action taken by the UST was not the issue in <u>Wheeler</u> and that "the BAP commentary" regarding section 1102 (and, in particular, section 1102(c)) was dicta.

This court believes that neither <u>Wheeler</u> nor <u>Pierce</u> applies directly here, because neither case addressed a request to disband a committee in its entirety where it is not authorized by law. Nonetheless, this court agrees with the analysis of <u>Pierce</u> -- which is consistent with that of the majority of cases that have addressed the issue -- supporting the proposition that a bankruptcy court may use section 105(a) to review the UST's actions. <u>Pierce</u>, 237 B.R. at 753-54 (section 105 may be utilized

---

[1] Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

-2-

to review decisions of UST; "[a]ppointments by the UST must, logically, be reviewable in some manner, by some forum"). See also Bodenstein v. Lentz (In re Mercury Finance Co.), 240 B.R. 270, 276-77 (N.D. Ill. 1999) ("The majority view is that [section 105] both preserved and expanded the courts' equitable power to review the [UST's] decisions about committee membership. These courts hold that the bankruptcy court has the inherent power to review acts of the [UST], as well as authority under [section] 105(a), and use an 'arbitrary and capricious' or 'abuse of discretion' standard of review.") (citing numerous other cases). Otherwise, there would be no means for judicial review of the UST's actions, even if the UST exceeded her authority and acted contrary to law. "The court finds that the [UST] has failed to establish that Congress meant to completely insulate the [UST's] decisions in this way. Specifically, there is a strong presumption in favor of judicial review of administrative action." Mercury Finance, 240 B.R. at 277.[2]

B. The standard of review is "abuse of discretion."

The majority of courts have held that the bankruptcy court has the power under section 105 to review the acts of the UST

---

[2] The UST cites one case in which a bankruptcy court was asked to review the creation of a committee. That case, In re New Life Fellowship, Inc., 202 B.R. 994 (Bankr. W.D. Okla. 1996), involved the appointment of an official bondholders committee. The case trustee, the unsecured creditors' committee and the bondholders' indenture trustee requested that the court vacate appointment of the bondholders committee, and the court held that it lacked authority to review decisions of the UST regarding appointment of committees. This court will not follow New Life, because the reasoning of Pierce and the other majority decisions is more persuasive, because New Life is not binding, and because New Life involved the appointment of a committee specifically authorized by law.

-3-

under an "arbitrary and capricious" or "abuse of discretion" standard of review. Mercury Finance, 240 B.R. at 276 (citing numerous authorities); Pierce, 237 B.R. at 753-54 (section 105 gives the court power to review UST's actions under abuse of discretion standard of review).

Courts have drawn from appellate practice in applying these standards of review to UST decisions. See, e.g., Pierce, 237 B.R. at 754. Applying these appellate standards, this court cannot simply substitute its judgment for that of the UST, but it can overturn a UST's decision that is based on an erroneous interpretation of the law. Koon v. United States, 518 U.S. 81, 100 (1996) ("district court by definition abuses its discretion when it makes an error of law"); United States v. Iverson, 162 F.3d 1015, 1026 (9th Cir. 1999) ("district court abuses its discretion when it makes an error of law or rests its decision on clearly erroneous findings of fact"); Natural Resources Defense Council v. Houston, 146 F.3d 1118, 1125 (9th Cir. 1998), cert. denied, 526 U.S. 1111 (1999) (agency action is reversible when it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law).

While this court does not sit as an appellate court reviewing a judicial decision by the UST, the standard of review is the same. In other words, the court must decide whether the UST, in exercising her discretion, disregarded controlling law.

C. There is no authority for creation of the Ratepayers Committee.

Section 1102(a)(1) authorizes the UST to appoint a committee of <u>creditors</u> <u>holding</u> unsecured <u>claims</u>. It also authorizes the UST

-4-

to appoint additional committees of <u>creditors</u> as the UST deems appropriate. Bankruptcy Code section 1102(a)(2) authorizes a party in interest to request the court to order the appointment of additional committees of creditors "... if necessary to assure <u>adequate representation of creditors</u> ...." (emphasis added). As noted by the court in <u>In re Eastern Maine Electric Cooperative, Inc.</u>, 121 B.R. 917, 927 (Bankr. D. Me. 1990): "Unless the interests of the cooperative's membership [i.e., the ratepayers] can be <u>characterized as those of creditors</u> or of equity security holders, [section] 1102(a) grants no authority to establish a committee." (Emphasis added).

Section 1102(b) then directs that a committee of creditors appointed under section 1102(a) "... shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee."

Section 101(10) defines "creditor" to mean an entity that has a "... claim against the debtor <u>that arose at the time of or before the order for relief</u> ...." (Emphasis added). Thus, even though rights to payment that arose after the order for relief may be encompassed within the definition of "claim" (<u>see</u> 11 U.S.C. § 101(5)), Congress had in mind that the creditors committees appointed in Chapter 11 could consist only of holders of pre-petition claims, not post-petition claims.[3]

---

[3] For an instructive discussion on the interpretation of "hold" and "holding" claims for the purposes of section 1102, <u>see</u> <u>Mercury Finance</u>, 240 B.R. at 279.

-5-

D. The Ratepayers Committee is not representative of any pre-petition creditors.

The UST and a pro se ratepayer argue that various situations may arise giving rise to future claims, but no one is able to articulate a particular claim of any ratepayer qua ratepayer that existed on the petition date. Specifically:

1. The point is made that past blackouts may have caused damage to a ratepayer. That may be, and just as a non-rate payer with a damage claim arising from a blackout, the interests of those claimants are protected by the Official Committee of Unsecured Creditors as pre-petition holders of unsecured claims and some could also be protected by the Attorney General.[4] At oral argument PG&E's general counsel provided the court with authority that PG&E, as a regulated utility, would be insulated from liability because of problems encountered by ratepayers as a result of rolling blackouts. That authority was not questioned by counsel for the UST or others appearing in opposition to the Motion. See also, Niehaus Bros. Co. v. Contra Costa Water Co. 159 Cal. 305, 318-319 (1911); Lowenschuss v. Southern California Gas Co., 11 Cal.App.4th 496, 14 Cal.Rptr.2d 59 (1992).

2. Whatever recoveries may eventually come from activities involving PG&E's affiliates via the avoiding powers of the Bankruptcy Code will redound to the benefit of the estate generally, and not to a separate class of ratepayers. Whatever benefits may be ordered by regulatory agencies such as the California Public Utilities Commission ("CPUC") will no doubt follow proceedings before such a body, and the right of ratepayers

---

[4] See discussion at section E, infra.

-6-

or others to be heard there will be established under applicable non-bankruptcy law.

3. No one opposing the Motion could rebut PG&E's general counsel's explanation that refunds ordered by the CPUC will take the form of rate adjustments in the future.

4. No authority has been presented which indicates that any events occurring prior to the petition date give any particular ratepayer a "right to payment" (section 101(5)) or establish that PG&E owes a "debt" (section 101(12)) to such ratepayer.

E. <u>Ratepayers have options available to them to protect their interests</u>.

As the parties well recognize, the Attorney General of the State of California has been given access to the bankruptcy court in Fed. R. Bankr. P. 2018(b). That rule permits the Attorney General to appear and be heard on behalf of consumer creditors as long as the court determines that the appearance is in the public interest.[5] For whatever reason, the Attorney General has decided not to accept the invitation to this court, apparently fearing that sovereign immunity protection will be lost if the State of California takes advantage of this right. The court expresses no opinion on whether that will occur or whether it makes sense for the Attorney General[6] to explore the possibility of a stipulation that would preserve the sovereign immunity defense for other

---

[5]That would probably be the case here, but the court will address that issue only if and when it is presented.

[6]If the ratepayers of PG&E believe they are entitled to the assistance of the Attorney General they should resort to the political arena to seek relief. The court cannot help them because Congress has not provided a means for it to do so.

-7-

matters.[7]

Next, section 1109(b) gives a "party in interest," including various enumerated entities, the right to appear and be heard on any issue in a case. The list of those entities is not exclusive. 11 U.S.C. § 102(3).

"Party in interest" is not defined in the Bankruptcy Code but it appears in numerous instances. <u>In re Public Service Co. of New Hampshire</u>, 88 B.R. 546, 551 (Bankr. D. N.H. 1988) ("There are some 46 references to 'party in interest' within the Bankruptcy Code and the Bankruptcy Rules."). Congress certainly knew the difference between "parties in interest" and "creditors" when it empowered the latter to organize as a committee and participate in bankruptcy cases at the expense of the estate. It did not extend that right to "parties in interest."

Finally, the UST argues that the ratepayers are greatly interested in the outcome of this case and the financial affairs of PG&E. That goes without saying. But having an interest in a result (as all ratepayers do), does not rise to the level of having a claim as defined in the Bankruptcy Code.

> While regulatory agencies and ratepayers certainly are "interested" in a utility, they do not have the same direct financial investment in a utility as its creditors and shareholders. Furthermore, it can be argued that ratepayers are already protected, or at least represented, by the PUC with respect to rate-related issues. . . . Although clearly interested in the outcome of the Utility's organization [sic] proceedings,

---

[7]Both PG&E and the Official Committee of Unsecured Creditors have already agreed to this possibility on the record at the hearing. In addition, both PG&E and the committee have agreed that they are willing to stipulate that the Attorney General can represent all ratepayers, notwithstanding the possible limitation of Rule 2018 that the Attorney General can represent only "consumer creditors."

-8-

ratepayers arguably lack a strong enough investment in a
utility to warrant an independent and unfettered voice
in the reorganization.

Public Service, 88 B.R. at 553, quoting Flaschen & Reilly, Bankruptcy Analysis of a Financially-Troubled Utility, 22 Hous. L. Rev. 965, 971-73 (1985).

When any particular ratepayer comes before the court to be heard on any matter, the court will then decide whether, and to what extent, that ratepayer may be considered a party in interest and be heard. Further, in the event the court is ever called upon to exercise power and authority traditionally vested in any regulatory agency, the status of a ratepayer as a party in interest or the appropriateness of a committee consisting of ratepayers may have to be revisited.[8]

  F. Section 105(a) is not available to save the Ratepayers Committee.

One might reasonably argue that the court, having used section 105(a) to review the UST's decision, should be consistent and use the same section to serve the public interest and create a ratepayers committee notwithstanding the limitations found in Bankruptcy Code section 1102(a) discussed above. There is, however, no inconsistency. The Code is silent on whether or not the decision of the UST can be reviewed. That silence suggests to this court that utilizing section 105 is proper because such use does not conflict with any other provision of the Bankruptcy Code. On the other hand, section 1102(a) preempts the issue of committee

---

[8]It should be obvious, but nothing in this order is intended to or should affect the right of any ratepayer, or any member of the Ratepayers Committee, to be heard anywhere other than in the bankruptcy court.

-9-

creation, describing only two categories of entities who may be organized as official committees, creditors and equity security holders. The court will not use section 105 to override the clear limitations of the statute, for to do so would itself be an abuse of discretion. <u>Missoula Federal Credit Union v. Reinertson (In re Reinertson)</u>, 241 B.R. 451, 455 (9th Cir. BAP 1999) ("Despite the broad grant of equitable powers [under section 105], bankruptcy courts cannot use them 'to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code.'").

III. <u>Conclusion</u>

In summary, the court reminds the parties that the Bankruptcy Code, and the bankruptcy court, were designed to resolve debtor-creditor problems; state agencies are where issues such as rates for electricity are handled. In its wisdom, Congress was correct: the estate should pay for dealing with those debtor-creditor issues in bankruptcy. It should not be burdened with matters likely to be resolved elsewhere.

///

For the foregoing reasons, the court concludes that, while the UST no doubt acted with good intentions and with the interests of ratepayers in mind, she abused her discretion by going beyond the authority given her in the Bankruptcy Code, erring as a matter of law. The Motion will be granted. The court is concurrently issuing an order vacating the UST's appointment of the Ratepayers Committee.[9]

Dated: May 18, 2001

_____
Dennis Montali
United States Bankruptcy Judge

---

[9] Because the court concludes that the Ratepayers Committee cannot serve as an official committee, the court need not address whether those entities selected by the UST could be representatives of ratepayers nor whether the political activities of any such member is at all relevant to issues presented in the Motion.

-11-

|   |   |
|---|---|
| 1 | I, the undersigned, a regularly appointed and qualified clerk in the office of the Bankruptcy Judge of the United States |
| 2 | Bankruptcy Court for the Northern District of California, at San Francisco, hereby certify: |
| 3 |   |
| 4 | That I, in the performance of my duties as such clerk, served a copy of the foregoing document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter |
| 5 | listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle |
| 6 | located in the Clerk's Office, or by facsimile to the facsimile numbers listed below, at San Francisco, California, on the date |
| 7 | shown below. |

Dated: May /9, 2001

James L. Lopes, Esq.
Jeffrey L. Schaffer, Esq.
Janet Nexon, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, 7th Fl.
San Francisco, CA 94111-4065

Robert Jay Moore, Esq.
Milbank, Tweed, Hadley & McCloy
601 S. Figueroa St., 30th Fl.
Los Angeles, CA 90017-5735

Penn Ayers Butler, Esq.
721 Colorado Ave., Ste. 101
Palo Alto, CA 94303-3913

Richard A. Lapping, Esq.
Louis J. Ciz, III, Esq.
Thelen Reid & Preist LLP
101 Second St., Ste. 1800
San Francisco, CA 94105-3601

William Bates, III, Esq.
Randy Michelson, Essq.
McCutchen, Doyle, Brown & Enersen, LLP
Three Embarcadero Ctr.
San Francisco, CA 94111-4067

Patricia A. Cutler, Asst. U.S. Trustee
Stephen L. Johnson, Trial Atty.
Office of the United States Trustee
250 Montgomery St., Ste. 1000
San Francisco, CA 94104