1  WALTER J. LACK, State Bar No. 57550
2  GARY A. PRAGLIN, State Bar No. 101256
   JOY L. ROBERTSON, State Bar No. 165150
3  ELIZABETH A. HERNANDEZ, State Bar No. 204322
   **ENGSTROM, LIPSCOMB & LACK**
4  A Professional Corporation
   Sixteenth Floor
5  10100 Santa Monica Boulevard
   Los Angeles, California 90067-4107
6  (310) 552-3800

7  THOMAS V. GIRARDI, State Bar No. 36603
   **GIRARDI & KEESE**
8  1126 Wilshire Boulevard
   Los Angeles, California 90017
9  (213) 977-0211

10 EDWARD L. MASRY, State Bar No. 31016
   **MASRY & VITITOE**
11 5707 Corsa Avenue, Second Floor
   Westlake Village, California 91362
12 (818) 991-8900

13 Attorneys for Claimants/Plaintiffs

14          **UNITED STATES BANKRUPTCY COURT**

15          **NORTHERN DISTRICT OF CALIFORNIA**

16             **SAN FRANCISCO DIVISION**

17 In re                                    )  Bankruptcy Case No.
                                            )  01-30923 SFM11 - Chapter 11
18 PACIFIC GAS AND ELECTRIC                 )  [Assigned to: Judge Dennis Montali]
   COMPANY, a California corporation,       )
19                                          )  **CLAIMANTS' NOTICE OF**
                Debtor.                     )  **MOTION AND MOTION FOR**
20                                          )  **ABSTENTION;**
                                            )  **MEMORANDUM OF POINTS**
21                                          )  **AND AUTHORITIES IN**
                                            )  **SUPPORT THEREOF**
22 Federal I.D. No. 94-0742640             )
                                            )  [Filed Concurrently With The Decl.
23                                          )  Of Joy L. Robertson, Appendix of
                                            )  Non-Federal Authorities]
24                                          )
                                            )  DATE:   January 3, 2002
25                                          )  TIME:   1:30 p.m.
                                            )  PLACE: 235 Pine Street
26                                          )         22nd Floor
                                            )         San Francisco, CA
27                                          )
28

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1

1

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

Case: 01-30923   Doc# 3772   Filed: 12/06/01   Entered: 12/12/01 10:15:00   Page 1 of 21

# TABLE OF CONTENTS

1.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.   THE PRESENT MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3.   SUMMARY OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4.   IN THE INTERESTS OF JUSTICE, THE BANKRUPTCY COURT
     SHOULD RECOMMEND THAT THE DISTRICT COURT ABSTAIN
     FROM HEARING THE CASES AT ISSUE AND TRANSFER THIS
     MATTER BACK TO THE LOS ANGELES SUPERIOR COURT. . . . . . . . . . . 6

5.   THE BANKRUPTCY JUDGE IS IN THE BEST POSITION TO
     EVALUATE ABSTENTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6.   LOS ANGELES SUPERIOR COURT IS THE PROPER VENUE
     FOR THESE CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     1.   A Special Master Was Appointed in February 1996. . . . . . . . . . . . . 9

     2.   Selection of the 20 Trial Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . 10

     3.   The Parties Agreed Upon a Pre-Trial Schedule Before the Case
          Was Transferred To the Central Civil West. . . . . . . . . . . . . . . . . . .11

     4.   Voluminous Discovery Has Already Been Conducted. . . . . . . . . . . . .11

          1.   Depositions of witnesses . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.   Case Management Orders . . . . . . . . . . . . . . . . . . . . . . . . . 12

     E.   Work Remaining Before Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . .12

VII.  IF THE PARTIES ARE FORCED TO CONTINUE IN FEDERAL
      COURT, EXPERT DISCOVERY WILL HAVE TO REOPEN BASED
      UPON THE DIFFERENT STANDARDS FOR THE ADMISSIBILITY
      OF EXPERT TESTIMONY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII. THERE IS NO RISK OF INCONSISTENT JUDGMENTS SINCE
      ALL OF THE CLAIMANTS' PENDING CASES WOULD BE
      LITIGATED IN LOS ANGELES SUPERIOR COURT, CENTRAL
      CIVIL WEST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 2 of
21

# TABLE OF AUTHORITIES

## STATUTES

28 U.S.C. § 157(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

28 U.S.C. § 1334(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1334(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 7

28 U.S.C. § 1334(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 7

U.S.C.S. Bankruptcy Rule 5011(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

## CASES

### Federal

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579, 113 S. Ct. 2786 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    43 F. 3d 1311 (9th Cir. 1995), *cert denied*, 516 U.S. 869 (1995) . . . . . . . . . . . . . . . . 14

### State

People v. Kelly,
    (1976) 17 Cal. 3d 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

People v. Leahy,
    (1994) 8 Cal. 4th 587 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 3 of 21

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE DEBTOR AND DEBTOR-IN-POSSESSION, AND OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the Claimants in the above-captioned Chapter 11 case hereby move the Court for abstention of the personal injury, wrongful death, and loss of consortium claims filed against the Debtor, Pacific Gas & Electric Company. Claimants are requesting that these actions remain in the Los Angeles Superior Court.

Claimants hereby submit this Motion pursuant to Title 28 U.S.C. § 1334(c)(1) and (c)(2), in addition to U.S.C.S. Bankruptcy Rule 5011(b) (2001) and 28 U.S.C. §157(c)(1).

This Motion is also based upon the following grounds:

1.    The District Court should abstain from exercising jurisdiction over the Claimants' personal injury, wrongful death, and loss of consortium claims since these cases can be timely adjudicated in the Los Angeles Superior Court;

2.    The ends of justice will not be served if the case is transferred to the Northern District of California;

3.    Judicial economy will be better served by litigating the personal injury, wrongful death, and loss of consortium claims in the Los Angeles Superior Court; and

4.    The Claimants and witnesses will suffer great hardship if the action is transferred to the District Court in Northern California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

USTROM,
IPSCOMB
LACK

This Motion is further based upon the attached Memorandum of Points and Authorities, the accompanying Declaration of Joy L. Robertson and the exhibits attached thereto, the Appendix of Non-Federal Cases, the papers and pleadings on file herein, and upon any further oral and documentary evidence that may be presented at the hearing of this Motion.

DATED: December 6, 2001

Respectfully submitted,

ENGSTROM, LIPSCOMB & LACK
GIRARDI & KEESE
MASRY & VITITOE

By: _____
WALTER J. LACK
GARY A. PRAGLIN
JOY L. ROBERTSON
ELIZABETH A. HERNANDEZ
Attorneys for Claimants

## I.    BACKGROUND

The law offices of Engstrom, Lipscomb & Lack, Girardi & Keese and Masry and Vititoe represent a total of 1,035 plaintiffs in eight (8) separate lawsuits filed against PG&E for injuries sustained as a result of exposure to chromium 6.[1] Each of these 1,035 plaintiffs is a creditor to PG&E. Each plaintiff has filed a Proof of Claim form. There are approximately 811 personal injury claims, 210 wrongful death claims and 168 claims for loss of consortium. A breakdown of the types of clams is attached as Exhibit 1 to the Declaration of Joy L. Robertson ("Robertson Decl."). Every case seeks punitive damages. Therefore, these cases present PG&E with potential liability of hundreds of millions of dollars.

The vast majority of plaintiffs are in the Acosta, Aguayo and Aguilar cases. These three (3) cases have been deemed related cases. A total of 911 plaintiffs are in these 3 related cases. The remaining 124 plaintiffs are in the Baldonado, Bowers, Boyd, Puckett and Miller cases. The related cases have been pending in Los Angeles for more than 6 years. The Aguayo case was filed against PG&E in March of 1995. The Acosta and Aguilar cases were filed in November of 1996 and May of 1997. After numerous demurrers in all 3 cases, the legal issues surrounding the sufficiency of the pleadings have now been resolved.[2] Hundreds of depositions have been taken. A total of approximately

---

1    The seven cases are: Acosta v. Pacific Gas & Electric Company, et. al., Case Number BC 16111669; Aguayo v. Pacific Gas & Electric Company, et.al., Case Number BC 123749; Aguilar v. Pacific Gas & Electric Company, et. al., Case Number BC 158588; Baldonado v. Pacific Gas & Electric Company, et. al., Case Number BC 239104; Bowers v. Pacific Gas & Electric Company, et. al., Case Number MC 012543; Boyd v. Pacific Gas & Electric Company, et. al., Case Number 249693; Puckett v. Pacific Gas & Electric Company, et. al., Case Number BC 247763; and Miller v. Pacific Gas & Electric Company, et. al., Case Number BC262238.

2    The Baldanado, Bowers, Boyd, Puckett and Miller cases were filed more recently and include plaintiffs who were unaware of the contamination until they saw the Erin

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1

1   400 depositions had been completed at the time PG&E declared Bankruptcy. After almost
2   5 years of discovery in these cases, 20 trial plaintiffs were selected for the first trial. A
3   pre-trial schedule was in place and expert witnesses were being deposed. Had PG&E not
4   filed for bankruptcy, this case would have gone to trial on July 2, 2001 in the Complex
5   Litigation Division, Department 323 of the Central Civil West Branch of the Los Angeles
6   Superior Court. This is a specially designed court dedicated exclusively to the trial of
7   complex or lengthy cases, modeled after the Federal system where one judge handles the
8   case from cradle to grave.

9

10  **II.    THE PRESENT MOTION**

11          With this motion, the Claimants[3] are asking this court to exercise its discretionary
12  powers to recommend that the district court abstain from hearing these cases. Claimants
13  seek to prevent Pacific Gas & Electric Company ("PG&E") from transferring eight (8)
14  cases filed against PG&E from the Los Angeles Superior Court to the District Court of
15  Northern California. Pursuant to 28 U.S.C. §1334(c)(1) and 28 U.S.C. §1334(c)(2) and in
16  the interest of justice and comity with State court, the bankruptcy court has the power to
17  submit proposed findings of fact and conclusions of law to the district court. Claimants
18  ask that this court exercise this right and recommend that the district court abstain from
19  hearing this matter and transfer it back to the Los Angeles Superior Court where it has
20  been pending for almost 7 years. This is where all these claims should be liquidated.
21  ///
22  ///
23  ///

24  ───────────────────────────────────────
25  Brockovich movie. The <u>Baldanado</u> case was filed on October 25, 2000 in the Los Angeles
    Superior Court and was deemed related to the <u>Aguayo</u>, <u>Aguilar</u> and <u>Acosta</u> cases. <u>Bowers</u>,
26  <u>Boyd</u>, <u>Puckett</u> and <u>Miller</u> were filed after PG&E declared bankruptcy and thus  Notice of
    Related Cases could not be filed in order to officially deem these cases related.
27
28  3       For the purposes of this Motion, the terms "Claimants" and "Plaintiffs" will be
    interchanged throughout the Memorandum of Points and Authorities.

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 7 of
                                         21

## III.    SUMMARY OF CASE

Beginning in 1952, PG&E began polluting certain remote locations with tons of the deadly **carcinogen, hexavalent chromium**. At three gas compressor stations along PG&E's California Line 300 - - located in **Topock** near California's southeastern border with Arizona, in **Hinkley** near Barstow, and in **Kettleman** near Fresno - - PG&E added massive amounts of chromium to the water circulating in various open cooling towers to prevent corrosion of certain pipes. Everyday for decades, at each of the three stations, chromium was released through multiple emission stacks on top of the cooling towers (in the form of chromium-containing mists), and through daily purging of cooling tower water into **unlined** ponds adjacent to the towers. The chromium-containing mists polluted the surrounding population as deadly airborne contaminants and the purged water polluted the groundwater which was used by the surrounding population as its source of drinking water. Hundreds of millions of gallons of water were disposed of in this fashion. In one handwritten note to PG&E's Pipeline Operations Manager dated January 14, 1966, PG&E admitted that (at Hinkley) "[f]or the past 15 years we have been contaminating the ... **subterranean water with 15 tons of chromate.**" (See Exhibit 2 attached to the Robertson Decl.). PG&E's own expert, Ron Cavagrotti, estimates that PG&E disposed of at least 26 tons of chromium at Hinkley, and at least 39 tons of chromium at Kettleman. (See Exhibit 3 attached to the Robertson Decl.)

PG&E knew about the contamination, but concealed it from the local residents. PG&E concealed the contamination from the governmental authorities such as the local Water Quality Control Boards and from the state of California. As a result, the chromium litigation plaintiffs were unknowingly exposed to chromium *for decades*.

///

///

///

///

///

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

# IV. IN THE INTERESTS OF JUSTICE, THE BANKRUPTCY COURT SHOULD RECOMMEND THAT THE DISTRICT COURT ABSTAIN FROM HEARING THE CASES AT ISSUE AND TRANSFER THIS MATTER BACK TO THE LOS ANGELES SUPERIOR COURT.

Pursuant to 28 U.S.C. 1334(c)(1) and (c)(2) the bankruptcy court may enter a finding of fact and conclusion of law recommending that the district court exercise its equitable powers to abstain from hearing this case which rightfully belongs in the Los Angeles Superior Court.

Title 28 U.S.C. § 1334 (c)(1) provides:

> "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Title 28 U.S.C. § 1334(c)(2) provides:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court **shall abstain** from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." (emphasis added.)

Clearly, it is in the interests of justice to return this case to state court. As explained in greater detail below, this case has been pending in state court since *March of 1995*. For more than 6 years the parties prepared this case for trial in state court. More

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 9 of 21

DIGSTROM,
.IPSCOMB
; LACK

than 400 depositions were taken. Experts on both sides testified about causation. The Los Angeles Superior Court has intimate knowledge of this extremely complex toxic tort case. To disregard 6 years of preparation by both parties simply does not make sense. This case belongs back in the Complex Litigation Department 323 of the Central Civil West Branch of the Los Angeles Superior Court. This action would not be before the District Court but for the fact that PG&E filed for bankruptcy. It is a state court case.

## V.   THE BANKRUPTCY JUDGE IS IN THE BEST POSITION TO EVALUATE ABSTENTION.

On April 6, 2001 PG&E filed for reorganization under Chapter 11. Thereafter, each of the chromium claimants filed a Proof of Claim form with the Bankruptcy Court. The claim form set forth the amount of each claim and also provided a brief summary of the chromium litigation cases. The District Court has absolutely no information regarding the plaintiffs and the values of their claims. Therefore, it is the Bankruptcy Judge who should evaluate abstention.

This position is consistent with U.S.C.S. Bankruptcy Rule 5011(b)(2001) which permits Claimants to file a Motion For Abstention pursuant to 28 U.S.C. §1334(c). The historical notes for Rule 5011 provide that "[t]he bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention. This subdivision (b) provides that the initial hearing on the motion is before the bankruptcy judge."

Moreover, 28 U.S.C. §157(c)(1) provides that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions...."

Thus, it is the bankruptcy judge who should hear claimants' Motion For Abstention.

INGSTROM,
.IPSCOMB
i LACK

## VI. LOS ANGELES SUPERIOR COURT IS THE PROPER VENUE FOR THESE CASES.

During the year 2000, the cases were transferred to the Los Angeles Superior Court, Central Civil West Division, to take advantage of that Court's Complex Litigation Program. The Aguayo case was assigned to the Honorable Carolyn B. Kuhl who has already ruled on a variety of complex pre-trial motions and actually scheduled the trial of the cases to commence July 2, 2001. This case belongs in the Complex Litigation Department 323 of the Central Civil West Branch of the Los Angeles Superior Court.

Litigation against PG&E for chromium 6 contamination has been pending in state court for the past 8 years. The original case entitled Anderson, et al., v. Pacific Gas & Electric Company was filed on January 26, 1994. This case spawned the movie *Erin Brockovich*. The Anderson case involved 650 plaintiffs who sued PG&E for injuries after being exposed to chromium 6 at PG&E's Hinkley Compressor Station. This case was ultimately settled by PG&E for $333,000,000.00 after a seven month trial (binding arbitration) before three distinguished retired judges.

From the time of the initial filing of the Aguayo case in March of 1995, this case has been extremely active. The goal of the parties was to eventually get to trial on a small number of test cases. Had PG&E not filed for bankruptcy the trial of 20 test plaintiffs would have commenced on July 2, 2001.

### A. A Special Master Was Appointed in February 1996.

On February 16, 1996, Judge Wisot was appointed Special Master in the Aguayo and related cases and acted in that capacity until early 1998. (Attached as Exhibit 4 to the Robertson Decl. is a true and correct copy of the order appointing Judge Wisot as Special Master). Judge Wisot held Status Conferences on a monthly basis to decide all parties' motions and to attempt to steer the case toward a trial involving Test Plaintiffs. Justice Howard Wiener replaced Judge Wisot as the Special Master on the cases. Justice Wiener's first status conference was held on May 28, 1998 and he held monthly status

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

Case: 01-30923   Doc# 3772   Filed: 12/06/01   Entered: 12/12/01 10:15:00   Page 11 of 21

NGSTRON,
JPSCUMB
LACK

conferences thereafter. The status conferences largely included discovery disputes and matters related to getting these cases to trial in a timely fashion.

Through participation in the monthly status conferences, the parties agreed and the court ordered the selection of a test plaintiff population. In November of 1996, 150 plaintiffs were selected to serve as representatives of the entire plaintiff population. Discovery as to the remaining plaintiffs was stayed and defendants immediately began conducting discovery for the 150 Test Plaintiffs. Beginning in March of 1997, defendants began deposing the 150 Test Plaintiffs. By March of 1998, more than 150 depositions of Test Plaintiffs had been completed by the parties.

**B.     Selection of the 20 Trial Plaintiffs.**

On September 16, 1998, Justice Wiener held a status conference. This hearing addressed the matter of selecting trial plaintiffs. Justice Wiener ordered that the trial plaintiffs would consist of twenty (20) plaintiffs. Two (2) alternate plaintiffs were also selected. (Attached as Exhibit 5 to the Robertson Decl. is a true and correct copy of the Order from the September 16, 1998 hearing). In order to select the trial plaintiffs the following procedure was utilized:

- Four (4) plaintiffs were randomly selected from the Aguayo action;[4]
- Seven (7) plaintiffs were selected by plaintiffs from the Aguayo action;
- Three (3) plaintiffs were selected by plaintiffs from the Aguilar and Acosta actions; and
- Six (6) plaintiffs were selected by defendants from all three (3) actions.[5]

---

4     The randomly selected plaintiffs were chosen by lottery. Plaintiffs objected to this practice because there was a strong likelihood that the plaintiffs chosen would have "smaller claims," and thus their verdicts would not be representative of the case.

5     Plaintiffs objected to defendants being allowed to select plaintiffs for trial on the grounds that defendants would naturally select cases of "small value." Defendant selected cases of lesser value. Defendant selected cases that are not representative of the claims of

::ODMA\GRFWISE\ELLDOM.ELLPO.Documents:158880.1

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

DIGSTROM,
LIPSCOMB
& LACK

1    Plaintiffs selected one alternate from any of the three actions and defendant

2    selected one alternate from any of the three actions. Thus, a total of twenty-two (22)

3    plaintiffs were selected by the parties.

4         A significant amount of pre-trial discovery was conducted for these plaintiffs.

5    Each plaintiff was deposed. The treating physicians were deposed. The family members

6    and other witnesses were deposed. PG&E obtained all medical, employment and school

7    records for each of the trial plaintiffs.

8

9    **C.    The Parties Agreed Upon a Pre-Trial Schedule Before the**

10          **Case Was Transferred To the Central Civil West.**

11        On February 19, 1999, the parties held a meet and confer to discuss pre-trial

12   scheduling. At the time of the meet and confer, plaintiffs' Motion For Trial Preference

13   was scheduled to be heard on February 24, 1999. However, in exchange for plaintiffs

14   taking their motion off calendar, the parties agreed to a pre-trial schedule which included a

15   November 16, 1999 trial date. This schedule met with the recommendation of the Special

16   Master (Attached hereto as Exhibit 6 is a true and correct copy of the Recommendation of

17   the Special Master Regarding Pre-Trial Schedule).

18        During 2000, the case was transferred to the Central Civil West, Department 323,

19   of the Los Angeles Superior Court, by order of the Presiding Judge.

20

21   **D.    Voluminous Discovery Has Already Been Conducted.**

22        The volume of discovery conducted over the years is extremely large. The Los

23   Angeles Superior Court has intimate knowledge of the discovery process and the extensive

24   law and motion conducted regarding discovery issues.

25   / / /

26   / / /

27   _____

28   the plaintiffs chosen by plaintiffs' counsel.

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1                11

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 13 of 21

### 1.    Depositions of witnesses

Over the past six (6) years in the Aguayo case, numerous depositions have been taken by the parties.  As noted above, numerous experts have now been deposed.  In addition to these experts, nearly five hundred (500) witnesses have been deposed in this case.  (See Exhibit 7 attached to the Robertson Decl.)

In the event the case is transferred to the District Court, the parties run the risk that much of the discovery will need to be duplicated in the federal court action which will cause great expense and further delay of a trial.

### 2.    Case Management Orders

Prior to the Bankruptcy filing, the parties already entered into three different stipulations regarding Case Management Orders which governed various phases of written discovery in the state court actions.  The first Case Management Order was issued on April 2, 1996.  (See Exhibit 8 attached to the Robertson Decl.)  The second Case Management Order was issued on November 25, 1996.   (See Exhibit 9 attached to the Robertson Decl.)  The third Case Management Order was issued on February 21, 1997. (See Exhibit 10 attached to the Robertson Decl.)

### E.    <u>Work Remaining Before Trial.</u>

At the time of the Bankruptcy filing, the Honorable Carolyn Kuhl of the Los Angeles Superior Court, Central Civil West, Department 323, had already issued an Order regarding the briefing schedule of the parties, including the schedule for defense motions. (See Exhibit 11 attached to the Robertson Decl.)

At the time of the Bankruptcy filing, the following matters were pending:

- PG&E's fourteen (14) Motions for Summary Judgment or Summary Adjudication (See Exhibit 11 attached to the Robertson Decl.)
- Plaintiffs' Motion to Shift the Burden of Proof
- Motions in Limine

NGSTROM,
IPSCOMB
LACK

1   • Pre-Trial Conference Issues

2   • Depositions of defendant's medical experts (approximately twenty (20) days

3   of depositions)

4   Prior to April 6, 2001 when PG&E filed for bankruptcy, Claimants were in the

5   process of opposing PG&E's fourteen (14) Motions for Summary Judgment or Summary

6   Adjudication. Most of these Oppositions were already completed by the plaintiffs.

7   <u>Claimants were also prepared to begin the trial scheduled for July 2, 2001 at the time</u>

8   <u>PG&E filed for bankruptcy.</u>

9   The Chromium 6 Litigation Creditors estimate that 3-5 months time will be

10  required to accomplish the work outlined above before the trial can begin.

11

12  VII.  **IF THE PARTIES ARE FORCED TO CONTINUE IN FEDERAL**

13       **COURT  EXPERT DISCOVERY WILL HAVE TO REOPEN BASED**

14       **UPON THE  DIFFERENT STANDARDS FOR THE**

15       **ADMISSIBILITY OF EXPERT  TESTIMONY.**

16  Since the initial case entitled <u>Anderson, et al. v. Pacific Gas & Electric Company,</u>

17  case number BCV 00822, was filed on January 26, 1994, counsel for both parties have

18  taken and defended expert depositions based upon the standard set forth in <u>People v.</u>

19  <u>Kelly,</u> (1976) 17 Cal. 3d 24. Approximately forty-eight (48) days of experts' depositions

20  have been completed by the parties. (See Exhibit 12 attached to the Robertson Decl.). If

21  these actions are transferred to the District Court in Northern California, then the

22  Claimants will be forced to abandon the <u>Kelly</u> standard and disregard the expert

23  depositions taken thus far.

24  Based upon <u>Kelly,</u> to determine the admissibility of expert witness testimony, the

25  Court must find:

26       1.  The witness is qualified as an expert to give an opinion;

27       2.  The scientific method upon which the expert testimony is based must be

28          reliable; and

ONGSTROM,
.IPSCOMB
. LACK

:ODMA\GRFWISE\ELLDOM.ELLPO.Documents:158880.1

13

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

3.    Correct scientific procedures must have been followed.  <u>People v. Leahy</u>, (1994) 8 Cal.4th 587, which affirms the test set forth in <u>People v. Kelly</u> (1976) 17 Cal.3d 24.

In <u>People v. Kelly</u>, the California Supreme Court adopted the test set forth in <u>Frye v. United States</u> (D.C. Cir. 1923) 293 F. 1013, and found that when faced with a "novel method of proof" California courts require a "preliminary showing of general acceptance of this new technique in the relevant scientific community." <u>Id.</u> at 30.  In <u>People v. Leahy</u>, the California Supreme Court affirmed that applicability of the <u>Kelly/Frye</u> standard, and found that the Supreme Court decision <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 113 S. Ct. 2786 (1993) had not altered that standard in California.

In the event the Bankruptcy Court decides to transfer the current actions to the District Court in the Northern District of California, the interests of justice will be severely impaired and the parties will suffer great hardship since they will be required to essentially start from the beginning and depose every single expert all over again based upon the federal standard for the admissibility of expert testimony.

Unlike the California state law standard regarding the admissibility of expert testimony, the federal <u>Daubert</u> standard requires a different showing by the parties. Under the federal system, trial courts will not admit expert opinion testimony based upon "scientific evidence" (including tests, theories, and procedures) unless the court has determined that the findings are derived by "scientific methods," concerns work product that is "good science," and would "assist the trier of fact." <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  The five <u>Daubert</u> factors that are applied to "scientific evidence" are whether the theory or method has been: (1) tested, (2) peer reviewed and published, (3) generally accepted in the scientific community, (4) deemed to have an acceptable rate of error, and (5) subjected to standards controlling technique operation. <u>Id.</u> at 593-594.  In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 43 F. 3d 1311 (9th Cir. 1995), <i>cert. denied</i>, 516 U.S. 869 (1995) (<u>Daubert</u> II), the United States

NOSTROM,
JPSCOMB
LACK

Case: 01-30923    Doc# 3772    Filed: 12/06/01    Entered: 12/12/01 10:15:00    Page 16 of 21

Supreme Court set forth another factor for examining the reliability of expert testimony which is showing that an expert's testimony is based on "pre-litigation research."

For nearly a decade, the Claimants have been litigating the cases against PG&E under the California state court standard regarding the admissibility of expert witness testimony. Thus far, the parties have deposed forty-eight (48) experts. (See Exhibit 12 attached to the Robertson Decl.) This testimony will be useless if the current state court actions are transferred to the District Court. Therefore, the interests of justice and judicial economy will be greatly served if the current actions remain in the Los Angeles Superior Court.

## VIII.   THERE IS NO RISK OF INCONSISTENT JUDGMENTS SINCE ALL OF THE CLAIMANTS' PENDING CASES WOULD BE LITIGATED IN LOS ANGELES SUPERIOR COURT, CENTRAL CIVIL WEST.

It has always been plaintiffs' counsel's intention to file a Notice of Related Cases in addition to a motion to consolidate the Baldonado, Boyd, Puckett, Bowers, and Miller cases so that these cases would be tried in the Central Civil West Division, Department 323 of the Los Angeles Superior Court along with the Aguayo, Aguilar, and Acosta cases once the bankruptcy stay is lifted by the Court.

Contrary to PG&E's allegations, there would be no risk or very little risk of inconsistent judgments or multiple state court trials since these cases would be tried in the same court before the same judge.

## IX.   CONCLUSION

The PG&E cases have been pending for seven (7) years now. The Anderson case was arbitrated and mediated by distinguished retired judges in Los Angeles. The Aguayo and related cases have been pending in the Los Angeles Superior Court since 1995.

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1

15

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

The <u>Aguayo</u> case was set for trial on July 2, 2001. The facts of the case were voluminous and sometimes complex. Indeed, the <u>Aguayo</u> case qualified for the Los Angeles Superior Court's Complex Litigation Program. The <u>Aguayo</u> case was managed through a series of comprehensive Case Management Orders as stated above. The Orders cover issues of discovery, depositions, production of records, issuance of subpoenas and information authorizations, Motions, experts and pre-trial preparation. (See Exhibits 8 through 10 attached to the Robertson Decl.)

When the <u>Aguayo</u> case was assigned to Judge Kuhl, she set a trial date, pre-trial deadlines and issued a Trial Readiness Conference Order. Forty-eight (48) days of experts' depositions have now been completed. The parties were set to meet to comply with the Order in May 2001. Plaintiffs have completed a substantial amount of the ambitious Pre-Trial Conference work, including a witness list of over 200 witnesses, exhibit list (listing hundreds of Exhibits, totaling thousands of pages), motions in limine, and a motion to shift the burden of proof. Plaintiffs expect that defendant PG&E was equally prepared as of the time of the Bankruptcy filing on April 6, 2001.

The <u>Aguayo</u> test plaintiff trial was scheduled to begin July 2, 2001 in Judge Kuhl's courtroom. There are now eighteen (18) Test Plaintiffs.

The trial estimate was six (6) months for the <u>Aguayo</u> case. In the <u>Anderson</u> case, it took seven (7) months of time to try the first 39 Test cases to a panel of three Judges. Realistically, with <u>Aguayo</u> being a jury trial, the trial could conceivably last longer than six (6) months even with the best intentions of both sides.

One purpose of the test trial was (1) to establish the value of the 18 cases; and (2) to use its results to globally evaluate the case for settlement. With 1,035 cases pending, the test trial is important to any potential global resolution of the case. If a global settlement cannot be reached, subsequent trials would go forward.

It also needs to be mentioned that <u>Aguayo</u> named both PG&E and Betz Chemical Company as defendants. Betz has settled and paid $70.0 million in full settlement of its liabilities. PG&E is claiming a credit of $70.0 million against any amounts it might owe

ENGSTROM,
LIPSCOMB
& LACK

16

the existing plaintiff population. The State court has jurisdiction over the allocation of individuals awards from the money paid by Betz and this adjudication would impact whatever PG&E expects as a credit in any individual case.

Based upon the above, the interests of justice would be better served if the pending cases remain in the Los Angeles Superior Court. The Los Angeles Superior Court is the appropriate forum to maintain jurisdiction over these cases since this court is already extremely familiar with this litigation since it has been pending in that court since 1995. Furthermore, the <u>Aguayo</u> and the related cases can be timely adjudicated in the Los Angeles Superior Court since the parties were apparently prepared to begin trial on July 2, 2001 until PG&E filed for bankruptcy. Therefore, Claimants respectfully request that the Court grant their Motion For Abstention and direct the District Court to Transfer these cases back to the Los Angeles Superior Court.

DATED: December 6, 2001

Respectfully submitted,

ENGSTROM, LIPSCOMB & LACK
GIRARDI & KEESE
MASRY & VITITOE

By: _____
WALTER J. LACK
GARY A. PRAGLIN
JOY L. ROBERTSON
ELIZABETH A. HERNANDEZ
Attorneys for Claimants

:ODMA\GRPWISE\ELLDOM.ELLPO.Documents:158880.1

17

Claimants' Motion For Abstention-Bankruptcy Case No. 01-30923 SFM11

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Boulevard, 16th Floor, Los Angeles, California 90067.

On December 6 , 2001, I served the foregoing documents described as **CLAIMANTS' NOTICE OF MOTION AND MOTION FOR ABSTENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JOY L. ROBERTSON FILED IN SUPPORT OF CLAIMANTS' MOTION FOR ABSTENTION; AND CLAIMANTS' APPENDIX OF NON-FEDERAL AUTHORITIES FILED COCURRENTLY WITH CLAIMANTS' MOTION FOR ABSTENTION** on the interested parties in this action by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

## SEE ATTACHED SERVICE LIST

**X** (BY MAIL) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid to the offices of the addressee(s) noted on the attached Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**X** (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

**X** (BY FEDERAL EXPRESS) I caused such envelope(s) to be delivered by FEDERAL EXPRESS to the offices of the addressee(s) noted on the attached Service List.

___ (BY ELECTRONIC TRANSFER) I caused all of the pages of the above-entitled documents to be sent to the recipients noted via electronic transfer (FAX) at the respective telephone numbers indicated.

**X** (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 6 , 2001 at Los Angeles, California.


__JOY ROBERTSON__                    _____
                                                    Signature

Case: 01-30923   Doc# 3772   Filed: 12/06/01   Entered: 12/12/01 10:15:00   Page 20 of 21

| | |
|---|---|
| | |

# SERVICE LIST

Our File No.: 38000/1850

| | |
|---|---|
| Ernest J. Getto, Esquire<br>**LATHAM & WATKINS**<br>633 West Fifth, Suite 4000<br>Los Angeles, California 90071-2007<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763 | Attorneys for Defendant<br>PACIFIC GAS AND ELECTRIC<br>COMPANY<br>(Via Hand Delivery) |
| Thomas V. Girardi, Esquire<br>**GIRARDI & KEESE**<br>1126 Wilshire Boulevard<br>Los Angeles, California 90017<br>Telephone: (213) 977-0211<br>Facsimile: (213) 481-1554 | Attorneys for Plaintiffs<br>(Via U.S. Mail) |
| Edward L. Masry, Esquire<br>**MASRY & VITITOE**<br>5707 Corsa Avenue, 2nd Floor<br>Westlake Village, California 91362<br>Telephone: (818) 991-8900<br>Facsimile: (818) 991-6200 | Attorneys for Plaintiffs<br>(Via U.S. Mail) |
| Rene Tatro, Esquire<br>Craig S. Bloomgarden, Esquire<br>**TATRO COFFINO ZEAVIN<br>BLOOMGARDEN**<br>1875 Century Park East, Suite 1220<br>Los Angeles, California 90067<br>Telephone: (310) 229-2493<br>Facsimile: (310) 229-2491 | Attorneys for Defendant,<br>PG&E<br>(Via Hand Delivery) |
| Office of the U.S. Trustee<br>Attention Stephen Johnston<br>250 Montgomery Street, Suite 1000<br>San Francisco, CA 94104-3401 | Via Federal Express |

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:159097.1

SOSTROM,
IPSCOMB
LACK