T. SCOTT BELDEN, State Bar No. 184387
KLEIN, DeNATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
P.O. Box 11172
Bakersfield, California 93389-1172
Telephone: (661) 395-1000
Facsimile: (661) 326-0418

Bankruptcy Counsel
for Chromium Claimants

**FILED**

DEC 2 0 2001

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation,<br><br>Debtor,<br><br>Federal I.D. No. 94-0742640 | Bankruptcy Case No.<br>01-30923 SFM11-Chapter 11<br>[Assigned to: Judge Dennis Montali]<br><br>KDG-1<br><br>**DECLARATION OF MICHAEL P. DOLAN IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>PRELIMINARY HEARING:<br>DATE: January 3, 2002<br>TIME: 1:30 a.m..<br>PLACE: 235 Pine Street, 22nd Floor<br>San Francisco, CA |

I, Michael P. Dolan, hereby state the following:

1.     I am an attorney licensed to practice law in all courts of the State of California.     I am one of the attorneys of record for about 232 individuals who have pending lawsuits and claims against Pacific Gas & Electric Company, the Debtor in the above-entitled Chapter 11 proceeding ("Debtor"), arising out of their exposure to Chromium 6 (the Chromium Claimants").   I have personal knowledge of the claims being asserted by the Chromium Claimants in that I have been actively involved in prosecuting the actions brought on their behalf in the Los

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
POST OFFICE BOX 11172
BAKERSFIELD, CALIFORNIA 93389-1172

1  Angeles Superior Court.  Therefore, I have personal knowledge of the information set forth below

2  and could and would testify thereto if called as a witness.  I am submitting this Declaration in

3  Support of the Motion for Relief From Automatic Stay filed by the Chromium Claimants.

4          2.     The Law Offices of Thomas Anton & Associates and I have filed three

5  lawsuits against Debtor on behalf of the Chromium Claimants.  222 of these individuals seek

6  damages for personal injuries and fraud and ten of these claims are for wrongful death caused by

7  exposure to Chromium 6.  Each of these claimants has timely filed a proof of claim in Debtor's

8  Chapter 11 case.

9          3.     The lead case that I have brought is <u>Adams v. Pacific Gas & Electric

10  Company, et. al.</u>, BC 233962; the two other cases are <u>Alderson v. PG&E</u>, BC 248532 and <u>Kearney

11  v. PG&E</u>, BC 262031.   The defendants in the <u>Alderson</u>, <u>Adams</u>, and <u>Kearney</u> cases are Pacific Gas

12  & Electric Company ("Debtor") and BetzDearborn, Inc. ("Betz").  A true and correct copy of the

13  Second Amended Complaint in the <u>Adams</u> matter is attached hereto as Exhibit "A".[1]   This

14  Complaint is illustrataive of the claims brought in all three cases by the Chromium Claimants.

15          4.     Both the <u>Adams</u> case and the <u>Alderson</u> case have been assigned to Judge

16  Mohr of the Los Angeles-Central District Civil West complex litigation division.  The <u>Adams</u> case

17  was filed in July of 2000 and the <u>Alderson</u> case shortly thereafter.  <u>Kearney</u> was just recently filed

18  and, while the claims are substantially the same as the claims asserted by the Plaintiffs in <u>Adams</u>

19  and <u>Alderson</u>, the majority of Plaintiffs in the <u>Kearney</u> case are minors.  Judge Mohr has placed a

20  hold on the <u>Alderson</u> case, while <u>Adams</u> has gone forward.  Currently in the <u>Adams</u> case, the

21  Plaintiffs have until January 17, 2002, to file their Third Amended Complaint.  Plaintiffs in this

22  action have received approximately 3,500,000 pages of documents that have been produced by

23  Debtor's co-defendant, Betz.

24  / / /

25  / / /

26

27     [1]The complaint is voluminous.  Pursuant to the Court's Case Management Order, a copy

28  of the Complaint is not provided, but is available upon request and will be available on the
Court's website.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
POST OFFICE BOX 11172
BAKERSFIELD, CALIFORNIA 93389-1172

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
POST OFFICE BOX 11172
BAKERSFIELD, CALIFORNIA 93389-1172

5.    Since the commencement of Debtor's Chapter 11 case, Plaintiffs have continued with discovery against defendant Betz and have copied over 60,000 pages of documents. Most of the documents were produced in other litigation alleging exposure to Chromium 6. Plaintiffs estimate that their review of documents produced by defendant Betz will be completed by the end of January 2002. Plaintiffs have been served with requests for production, requests for admissions, and interrogatories by Betz. Plaintiffs in the <u>Adams</u> case have filled out questionnaires for Betz that are approximately 50 pages and go into great detail regarding the claims of Plaintiffs. These questionnaires were used in previous litigation involving claims of exposure to Chromium 6 in which Debtor was a defendant.

6.    Plaintiffs' attorneys have spent thousands of hours working on the <u>Adams</u> case in preparation of proceeding to trial in the near future. Plaintiffs have retained experts located in Los Angeles who have agreed to aid in the case. The majority of all witnesses for Plaintiffs are from Southern California. Defendant Betz has its California offices in Los Angeles. Moreover, the injuries suffered by the Plaintiffs occurred in Southern California. Several of the Plaintiffs have died during the pendency of their cases. Finally, at least ten cases similar to the present case have been filed and/or litigated in the Los Angeles courts, including the cases that are referenced in the Motion for Abstention.

7.    There have been several status conferences held by Judge Mohr, who has indicated at these status conferences that he would like the stay lifted against Debtor so that Debtor could be joined in the litigation, which involve substantially the same issues as the litigation being pursued against Betz. In addition, notwithstanding its bankruptcy petition, Debtor has had counsel present to observe the proceedings at all of the hearings that have taken place since the commencement of its Chapter 11 case.

8.    At the present time, Plaintiffs will be ready for trial of test cases in <u>Adams</u> no later than the Summer of 2002. It is unlikely this would be the case should the matter be transferred to federal court. PG&E has been litigating these type of claims since 1993, and is well aware of the evidence and issues involved. Defendant Betz has been litigating these types of claims since 1994 and is also well aware of the issues and the evidence involved in these matters.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
POST OFFICE BOX 11172
BAKERSFIELD, CALIFORNIA 93389-1172

9.     I have reviewed <u>all of the public records</u> regarding cases filed against PG&E for injuries sustained as a result of exposure to chromium 6 and have reviewed millions of pages of documents produced by Betz in the <u>Adams</u> case BC 233964.  Additionally, I have spoken with several experts who have agreed to act on Plaintiffs' behalf for the purposes of testifying as experts. All of Plaintiffs' experts are from Southern California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

00165472.DOC

4

1        I declare under penalty of perjury that the foregoing is true and correct under the laws

2    of the United States of America and of California.

3        Executed this _19th_ day of December, 2001, at Bakersfield, California

4

5                                    _Michael P. Dolan_ (signature)

6                                    Michael P. Dolan

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
POST OFFICE BOX 11172
BAKERSFIELD, CALIFORNIA 93389-1172

00165472.DOC                                      5



1 | Thomas J. Anton, Esq., SBN 060450
Jeffrey L. Wise, Esq., SBN 198725
2 | **ANTON & ASSOCIATES**
1605 "G" Street
3 | P. O. Box 2127
Bakersfield, California 93301-2127
4 | Telephone: (661) 327-7051

5 | Michael P. Dolan, Esq., SBN 142576
**LAW OFFICES OF MICHAEL P. DOLAN**
6 | 1315 "L" Street
Bakersfield, California 93301
7 | Telephone: (661) 631-2181

8 | Attorneys for Plaintiffs

**ORIGINAL FILED**

REC'D MAR 2 1 2001
MAR 1 5 2001
LOS ANGELES
SUPERIOR COURT

9

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

### COUNTY OF LOS ANGELES

11

| | |
|---|---|
| DOROTHY ADAMS, an individual; MICHAEL LEE ADAMS, an individual; ROSEMARIE AVERILL, an individual; CORYNNE BROWN, an individual; BAUDELIA CASTILLO BARAJAS, an individual; MARIA I. CASTILLO, an individual; JERIMIAH VERNON CLEARLY, a minor, by and through his Guardian Teri Cleary; SUSAN CORDOVA, an individual; NORA CRAVENS an individual; GLORIA WILHOIT DARLING, an individual; VIRGINIA A. DAVIS, an individual; ANNISSIA CLARICE DILBECK an individual; DONDALENA RUTH FLOYD, an individual; DAUNA (HENSLEY) COLE, an individual; BARBARA ANNETTE HILL, an individual; DELLA ELIZABETH KILFIAN, an individual; LEWIS A. KAY, an individual; LEWIS DAVID KAY, an individual; NORMA JEAN KAY, an individual; PAULA SUE HUNTER COPP, an individual; CONNIE LEE PAUL MELTON, an individual; RANDOLPH P. MELTON, an individual; AMBER MORRIS, an individual; LYNN L. MORRIS, an individual; JOHN MORRIS, an individual; PATSY DORENE MORRIS, an individual; ENEDELIA M. MAHONEY, an individual; KAREN KAY STICKLEY, an individual; JEFFREY ALLEN TURNER, an individual; JACQUELINE A. NELSON-TURNER, an individual; JULIA TURNER, an individual; 33 | Case No.: BC 233964<br><br>SECOND AMENDED COMPLAINT FOR<br><br>1.  Fraud and Deceit;<br>2.  Negligence;<br>3.  Negligence Per Se;<br>4.  Strict Liability;<br>5.  Battery;<br>6.  Intentional Misrepresentation;<br>7.  Negligent Misrepresentation;<br>8.  Fraudulent Concealment;<br>9.  Constructive Fraud;<br>10. Intentional Infliction of Emotional Distress;<br>11. Strict Products Liability;<br>12. Wrongful Death |

25

26

27

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-1-

EXHIBIT A
PAGE 1 OF 101



1  JOE P. TURNER, SR., an individual; JOE P.
   TURNER, JR., an individual; TOM D.
2  TURNER, an individual; JOHN D. TURNER,
   an individual; PAUL DAVID WATERS, an
3  individual; ROSALIE WATERS; an
   individual; CAROL ANN HUNTER WALKER,
4  an individual; DIANE MARIE ZUNIGA, an
   individual; VANESSA M. WOODYARD, a
5  minor, by and through her Guardian
   Jacqueline A. Nelson-Turner; VICTORIA J.
6  WOODYARD, a minor, by and through her
   Guardian Jacqueline A. Nelson-Turner; KIM
7  LANE LIVINGSTON, an individual; HELEN
   EILEEN WILDRICK, an individual; WALTER
8  E. YOUNG, an individual; JEAN
   THOMPSON, an individual; SANDRA
9  EASTON, an individual; SANDRA LANELL
   WILDRICK, an individual; JAMES LYNN
10 TURNER, an individual; ROBIN CHRISTINE
   REDDICK, an individual; THOMAS W.
11 OWENS, an individual; VERNON E.
   HUSON, an individual; AUGUSTA MARIE
12 HUSON, an individual; WILLIAM H.
   WILLIAMS, an individual; IDA ERCELL
13 (TRAIL) HUTSON, an individual; ANNA LOU
   WILLIAMS, an individual; ALISON W.
14 WILLIAMS, an individual; EVALYN
   WILLIAMS CULLSON, an individual; APRIL
15 BAYS, an individual; SALLY RAE
   BECERRA, an individual; MICHAEL A.
16 BURT, an individual; GABRIEL ROBERTS,
   an individual; LORNA E. ROBERTS, an
17 individual; DON SCHULTZ, an individual;
   BETTY MARIE SHIPLEY, an individual;
18 ROBERT G. DURBIN, an individual;
   JESSICA MAE TRENTECOSTE, an
19 individual; CARL V. STOGSDILL, an
   individual; TERESA STERBA, an individual;
20 MARY STARKEY, an individual; DONNA
   LAMBERT, an individual; VIRGINIA KAY
21 HAMMERSTEIN, an individual; LEVI
   HIMMELRICK, an individual; AVALYN L.
22 HIMMELRICK, an individual; MALISSA
   HIMMELRICK, an individual; JUDY A.
23 HOWELL, an individual; TIFFANIE KAY
   KLAUER, an individual; ERIC
24 HAMMERSTEIN, an individual; ROBERT L.
   MORRIS, an individual; LADORA BROWN,
25 an individual; LORRAINE P. BRIGGS, an
   individual; JUDY ANN BURNS, an
26 individual; TRINITY ANN ROOS, an
   individual; GARY ALLEN ROOS, an
27 individual; SYLVIA RAMIREZ, an individual;

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-2-

EXHIBIT A
PAGE 12 OF 14



1 | JESSIE NAOMI ORR, an individual; MARK ALAN ORR, an individual; RONALD R. ORR, an individual; DEBORAH L. ULIBARRI, an individual; DAWN THOMPSON, an individual; NANCY JANE HUSON, an individual; THELMA HUNTER, an individual; LEON BATANIAN, an individual; TIMOTHY M. MERRITT, an individual; RAELEEN KING, an individual; RICHARD FINDLEY, an individual; GLADYS M. DEAN, an individual; CAROLYN M. CRUMP, an individual; LESLIE DEE CRAFTS, an individual; MICHAEL LEE COOPER, an individual; SILVESTRE CASTILLO, SR., an individual; MONIE CASTILLO, an individual; ROBERTA A. BUTTERFIELD, an individual; VINCENT KOPITSKY, an individual; JERIMIAH VERNON CLEARLY, a minor by and through his Guardian, Teri Cleary

20

Plaintiffs,

v.

PACIFIC GAS & ELECTRIC COMPANY (PG&E), a California corporation; DOES 1 through 150, inclusive as Directors of Defendant PG&E; DOES 151 through 300, inclusive, as Officers of Defendant PG&E; BETZ CHEMICAL , a.k.a. Betz Laboratories Corporation doing business within the STATE OF CALIFORNIA; and DOES 301 through 500, inclusive,

Defendants.

Plaintiffs allege as follows:

## PREDICATE

1.    This Complaint alleges causes of action for: (1) Fraud and Deceit; (2) Negligence; (3) Negligence Per Se; (4) Strict Liability; (5) Battery; (6) Intentional Misrepresentation; (7) Negligent Misrepresentation; (8) Fraudulent Concealment; (9) Constructive Fraud; (10) Intentional Infliction of Emotional Distress; (11) Strict Products

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-3-



1  Liability; and (12) Wrongful Death.

2      2.      The relief sought includes actual and punitive damages arising from all of the

3  Defendants fraudulent scheme to conceal crucial information imperative for Plaintiffs to

4  safeguard their health, lives, personal property, and financial interests.

5

6                              **JURISDICTION AND VENUE**

7

8      3.      Jurisdiction over the Plaintiffs' claims are proper, as the amount in controversy

9  exceeds twenty-five thousand dollars ($25,000.00) for each Plaintiff herein mentioned. The

10 controversy relates to the release throughout Hinkley, California, by various means

11 described hereafter of at least three hundred seventy million (370,000,000) gallons of

12 Chromium-VI Hexavelent (hereafter referred to as "Chromium-VI"), a substance which is

13 both highly toxic and carcinogenic to humans and animals. Venue is placed in the County

14 of Los Angeles in that Defendant Betz Chemical is headquartered in Los Angeles County.

15     4.      Plaintiffs are informed and believe and thereon allege that Defendant PG&E

16 is a corporation duly organized and existing under and by virtue of the laws of the State of

17 California.

18     5.      Plaintiffs are informed and believe and thereon allege that Defendant Betz

19 Chemical, hereafter referred to as "BETZ," is a corporation doing business in California and

20 headquartered in the City of Los Angeles.

21

22                          **PRELIMINARY ALLEGATIONS**

23

24     6.      The true names or capacities, whether individuals, corporate, associate or

25 otherwise, of Defendants sued herein as Does 1 through 500, inclusive, are unknown to

26 Plaintiffs who therefore sue such Defendants by such fictitious names and will amend their

27 complaint to show their true names and capacities when ascertained. Plaintiffs are

28

                        SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.


EXHIBIT _A_
PAGE __ OF __



1  informed and believe and thereon allege that each of the Defendants designated as Does
2  1 through 500, inclusive, is responsible in some manner of the occurrences herein alleged
3  and that Plaintiffs' damages herein alleged were proximately caused by such Defendants.

4      7.    Each Defendant was the agent, joint venturer, or employee of each of the
5  remaining Defendants, and in doing the things hereinafter alleged, each was acting within
6  the course and scope of said agency, employment, or joint venture with the advanced
7  knowledge, acquiescence, or subsequent ratification of each and every remaining
8  Defendant.

9      8.    For the purposes of this complaint, Plaintiffs refer to the area of contaminated
10 ground water as "THE PLUME."

11     9.    For the purposes of this complaint, Plaintiffs refer to the swimming pool, picnic
12 and camping areas located within the PG&E Pumping Station at Hinkley, California.
13 (Hereafter referred to as "THE PARK" or "PG&E PARK.")

14     10.    Plaintiffs allege that all named Plaintiffs in this complaint at one time were
15 individuals residing in Hinkley, California (hereafter referred to "HINKLEY") and/or were at
16 one time or another visitors to HINKLEY and were exposed to Chromium-VI.  In addition,
17 the Plaintiffs allege that a number of the named Plaintiffs were exposed to Chromium-VI
18 through their parents prior to birth, as well as being directly exposed to Chromium-VI
19 themselves from time to time.

20     11.    Plaintiffs are informed and believe and thereon allege that in 1952, Defendant
21 PG&E began operating a gas compress station in HINKLEY.  The station was used to
22 compress natural gas so that it could be sent through a pipe line system to Northern
23 California to service PG&E's customers.  PG&E sold the gas for a profit.  As part of the
24 process of compressing the gas, PG&E used a chemical product which contained
25 Chromium-VI.  At the very least, PG&E used the Chromium-VI based chemical from 1952
26 to 1966 to cool the water used in its gas Compressor Station (hereafter referred to as the
27 "STATION").

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-5-

EXHIBIT A

 

1       12.     Plaintiffs are informed and believe and thereon allege that at all relevant times,

2  Defendant BETZ designed, manufactured, produced, licensed, sold and marketed

3  Chromium-VI, Chromium-VI based chemicals and other toxic substances ("the products")

4  to PG&E for use at the STATION and at other locations operated by PG&E.

5       13.     Plaintiffs are informed and believe and thereon allege that BETZ, in one form

6  or another has been in business since 1925.  On or about 1943, it received its first patent

7  for water treatment processes relating to the use of magnesium oxide in treating water

8  containing silicone.  Over the years, BETZ sales increased, culminating in the company

9  "going public" in 1965.  Thereafter, the company expanded its water treatment processes

10  and began to sell its products worldwide.  In 1971, BETZ created the "Betz Engineering

11  Division."  Plaintiffs are informed and believe and thereon allege that Division was created

12  as a result of the reputation the company had garnered over the years by instructing its

13  customers in the manner and use of its water treatment products.  Plaintiffs are informed

14  and believe and thereon allege that by 1993, Betz's annual sales had reached $700 million.

15  It was the second largest water treatment company in the country.  Chemical Week

16  magazine in an article by Rick Mullin proclaimed the Betz Laboratories Corporation had

17  positioned itself positioned itself as an "environmental guidance counselor."  Betz sold

18  Chromium-VI to various companies, including PG&E.

19       14.     Chromium-VI is both highly toxic and carcinogenic to human beings and

20  animals.  In addition to the foregoing, it is also a devastating reproductive toxicant which

21  causes birth defects, as well as other generative and genetic harm.  The highly toxic and

22  carcinogenic properties of Chromium-VI have been widely known and reported since the

23  early 1920s. Human exposure to this chemical is known to cause lesions on exposed skin

24  and mucous membranes of the nasal septum in the form of deep penetrating ulcers which

25  are slow to heal.  It is also known to cause irritation to the gastrointestinal track, adversely

26  affect the kidneys, liver and urinary tract. Exposure to Chromium-VI can also lead to lung

27  cancer, tumors of the lungs, nasal cavity, and paranasal sinus, impair the immune system,

28




1 and cause various other physical and mental ailments. Moreover, because Chromium-VI

2 is a known reproductive toxicant, individuals exposed to it are reasonably certain to transmit

3 these adverse health effects to their children not yet conceived or born. As well as causing

4 the foregoing ailments, the chemical may in some cases also ultimately result in death.

5       15.    In providing the Chromium-VI based products to PG&E, BETZ supplied PG&E

6 with product labels outlining the chemical makeup and characteristics of its products. At all

7 times mentioned herein, BETZ had full and complete control of the products it sold to

8 PG&E, as well as significant input as to the process by which these products were to be and

9 were in fact used by many of its customers and, particularly PG&E.

10       16.    The Defendants and each of them were fully aware at all relevant times of the

11 dangerous properties of the chemicals produced and/or used by them at the STATION and

12 which were discharged into the ground water supply, surface and subsurface soil,

13 atmosphere, and general environment of HINKLEY. The Defendants, and each of them,

14 knew that the products were dangerous and harmful, as well as capable of causing harm,

15 severe injuries, and death to human beings. Chromium-VI has been long known to science

16 to be a carcinogen since the late 1800's, and, as a sophisticated, worldwide manufacturer,

17 Defendants BETZ and Does 301 to 500 also knew or should have known of its toxicity and

18 carcinogenicity. The Defendants, and each of them, are and at all times relevant herein

19 were fully aware since on or about 1952, that exposure by either ingestion, inhalation,

20 and/or skin contact to Chromium-VI, which they knowingly discharged, was extremely

21 hazardous to all with whom came in contact with the chemical.

22       17.    In supplying the Chromium based products to PG&E, BETZ knew that its use

23 would produce waste all of which was required to be discarded. Such disposal was he

24 foreseeable result of the use of the product BETZ sold to PG&E. Plaintiffs are informed and

25 believe and thereon allege that BETZ also knew that the inevitable waste produced by

26 PG&E's use of its products would contain dangerous levels of carcinogenic Chromium-VI,

27 and would travel, migrate and contaminate any underground waters, surface or subsurface

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-7-



EXHIBIT A



1   soil, or atmosphere into or onto which it was discharged by PG&E. Despite the foregoing,
2   BETZ knew of, assisted with, and advised PG&E as to the specific manner, methods and
3   procedures it should use in disposing of the waste substances generated by PG&E's use
4   of the products sold by BETZ. BETZ also informed PG&E of the dangers associated with
5   the use and disposal of those products utilized by PG&E at the STATION. It suggested
6   and/or instructed PG&E, of but not limited to the following:

7           [a]  Large unlined leaching pits at the STATION were used to dispose of the
8           hazardous waste contaminated with Chromium-VI;

9           [b]  Hazardous waste containing Chromium-VI was expelled onto acres of
10          fields at the STATION;

11          [c]  Sprinklers were attached to the evaporation ponds at the STATION to
12          spray the toxic waste into the air for quicker evaporation into the atmosphere;
13          and

14          [d]  The cooling towers emitted mists containing Chromium-VI.

15      18.    PG&E used numerous compressor stations on its southern pipeline route.
16  Those stations are located at Topock, Hinkley and Kettleman, California. Each of the
17  foregoing stations were similarly designed and constructed. Each also used Chromium-VI
18  supplied by BETZ. All three were similarly situated above underground aquifer systems.
19  BETZ knew or should have known that since 1953, Chromium-VI contaminated
20  groundwater wells, that the stations had and used such wells for a variety purposes and that
21  the wells located thereon were also used for drinking by humans and animals.

22      19.    During all relevant times mentioned herein, BETZ had knowledge of the
23  hazards associated with the disposal of its products as evidenced by its own product labels,
24  which contained various inadequate and legally insufficient warnings. BETZ knew that the
25  wastewater containing its products was disposed of at the STATION. Plaintiffs are informed
26  and believe and thereon allege that BETZ, as part of the services provided to PG&E
27  advised it as to each step of the proper use of the cooling tower operation, including how

28



EXHIBIT ____A____
PAGE ___8___ of ___109___

Case: 01-30923   Doc# 3955   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 13
of 109



1  the emitted products drifted in the atmosphere and how to dispose of the "blow-down"

2  emitted from the towers. BETZ's active involvement in the disposal process is evidenced

3  by its own depiction of the "Current System" which portrays the BETZ representative as an

4  integral part of the system from initial water makeup to blow-down and disposal in the

5  ponds, all of which is evidenced in Exhibit "1" to the Seventh Amended Complaint on file in

6  the Superior Court of the State of California, in and for the County of Los Angeles, in Case

7  Number BC 11300, entitled, "Katherine Adams, et al. v. PG&E, et al." (Hereafter referred

8  to as the "Seventh Amended Complaint.") BETZ is sophisticated and well informed in

9  chromium disposal practices, as evidenced in title pages from twenty four highly technical

10  articles regarding Chromium disposal practices from BETZ's library, all of which are referred

11  to in Exhibit "2" of the Seventh Amended Complaint.

12      20.  As a company selling and monitoring the use and disposal of chromium based

13  products, BETZ knew or should have known that its customers would be faced, at one point

14  or another with disposing its used products. Such disposal required dealing with toxic

15  wastes. BETZ knew or should have known that the use and disposal process constituted

16  dangerous conduct by which all Plaintiffs were harmed as a direct result thereof.

17      21.  Plaintiffs are informed and believe and thereon allege that at all times herein

18  mentioned, BETZ actively assisted in developing and monitoring the chemical makeup and

19  composition of the water circulated in the cooling system at the STATION. Further, BETZ

20  advised PG&E as to the proper use of the carcinogenic chromium products in its open

21  cooling tower system. As such, BETZ actively participated in the process of causing the

22  emission of Chromium-VI contaminated water and air to be released through the tops of the

23  towers into the air of HINKLEY.

24      22.  As part of the services regularly provided to PG&E by BETZ for the operation

25  of the cooling towers at it's various sites, BETZ's representatives supplied written "System

26  Review" sheets to PG&E which critiqued how well it was handling the chemicals in the

27  cooling towers,. It also advised PG&E on the amount of blow-down waste water to dispose

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-9-



EXHIBIT A

Case: 01-30923  Doc# 1955  Filed 12/20/01  Entered: 12/21/01 14:44:00  Page 14 of 109

 

1  of from the towers, and told PG&E the amount of chromium to maintain within the towers
2  so as to properly operate the system, all of which is evidenced in Exhibits "3" and "4" to the
3  Seventh Amended Complaint. In addition to the foregoing, BETZ, as an additional service
4  provided to its client, PG&E, tested the groundwater near the cooling towers at the sites.
5  Such is evidenced in Exhibit "5" to the Seventh Amended Complaint. As a further service
6  provided to PG&E, from at least 1953, BETZ advised its client as to how to handle the
7  contamination of drinking water discovered at the Topock Station. Such is evidenced in
8  Exhibit "6" to the Seventh Amended Complaint. BETZ also advised PG&E as to the
9  capabilities of its own cooling towers, such as the maximum flow capacity, all of which is
10 evidenced in Exhibit "7" of the Seventh Amended Complaint.

11        23.    By the early 1960's PG&E and BETZ, unequivocally knew that they had
12 contaminated the ground water of HINKLEY. They also knew that the Plaintiffs relied upon
13 that ground water for all of their collective domestic water needs, including drinking, bathing,
14 cooking, cleaning, swimming, cooling their homes with "swamp" coolers, and all domestic
15 farm uses.

16        24.    From 1952 forward, PG&E intentionally discharged, with BETZ's knowledge
17 and assistance as described above and with total disregard to the safety of others, at least
18 three hundred seventy million (370,000,000) gallons of waste water contaminated with
19 Chromium-VI from the cooling towers into open, unlined scarified spreading ponds designed
20 for the deliberate and intentional rapid percolation of the water into the ground water in and
21 around the Plaintiffs' homes and farms, thus forming the toxic PLUME previously described.
22 To further accelerate the evaporative process, PG&E, with BETZ's full knowledge and
23 assistance intentionally sprayed the contaminated waste water into the air, causing the
24 water to come to rest onto the adjacent land and homes of the Plaintiffs, thus contaminating
25 the surface and subsurface soil, personal property, atmosphere, and surrounding
26 environment in and around the PLUME. When this water dried, the soil containing the
27 Chromium-VI and other toxic substances within the PLUME was blown though the air and

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-10-



Case: 01-30923   Doc# 1855   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 15
of 109




1  inhaled by all living things. The Defendants, and each of them knew or should have known
2  of the inherent dangers that their conduct created, as well as the inevitable contamination
3  it caused to the ground water, the general environment and all living things within the
4  PLUME. Accordingly, all of the Defendants were also well aware of the resultant exposure
5  to all of the Plaintiffs who came into contact with the Chromium-VI within the PLUME simply
6  because they lived in HINKLEY while unwittingly using or breathing the contaminated water.

7        25.    Defendants BETZ and Does 301 to 500, in conjunction with PG&E, conducted
8  frequent tests to determine the Chromium content of the groundwater at, and/or below the
9  PLUME, and/or were made aware of the testing procedures and test results in conjunction
10 with the on-going periodic testing of the groundwater conducted by one or the other.
11 Plaintiffs are informed and believe and thereon allege that this testing commenced in or
12 about 1952 and continued through at least 1972, and possibly longer. BETZ also provided
13 regular inspection of the towers and systems used to control corrosion within PG&E's
14 pipeline operation. In addition to the foregoing, BETZ also provided routine surveys of the
15 cooling tower waters to determine the effectiveness of the corrosion inhibitors and the need
16 for any adjustments thereto. Further, Plaintiffs are informed and believe and thereon allege
17 that BETZ conducted various evaluations to determine if the proper amount of its product
18 was being used so as to protect PG&E's towers, pipeline and other associated activities,
19 as well as the processes carried on therein. In performing the aforementioned evaluations,
20 BETZ ,recommended ways in which PG&E could improve the overall effectiveness of its
21 cooling tower operation, including the disposal of the hazardous products thereby produced.

22        26.    The discharge of these toxic substances into what was then a pristine ground
23 water supply caused the elevation of Chromium-VI and other toxic substances to
24 unhealthful and decidedly dangerous levels in the underlying ground water, surface and
25 subsurface soil, atmosphere and environment of HINKLEY commencing in 1952 and
26 continuing to the present and into the future.

27        27.    Defendant BETZ, and Does 301 to 500, had full and complete knowledge that

28

EXHIBIT A
PAGE 11 of 101

Case: 01-30923   Doc# 3955   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 16
of 109




1  the use and disposal of its products by PG&E under BETZ's guidance and supervision had
2  resulted in the contamination of the HINKLEY under ground aquifer, and that the
3  contamination had begun migrating into the wells of the residents of the Plaintiffs herein.

4      28.    Testing conducted by PG&E and BETZ revealed that the water used by the
5  Plaintiffs contained dangerous and unsafe levels of Chromium VI. BETZ knew, or should
6  have known, that by continuing to supply its products to PG&E, the Plaintiffs water supply
7  would continue to be contaminated. Despite this knowledge, BETZ failed to provide any
8  type of warning as to the existence or degree of contamination to any of the Plaintiffs.
9  Additionally, BETZ continued to sell and supply its chromium based products to PG&E
10 without providing any warnings to Plaintiffs of the hazards that they then faced and would
11 face in the future.

12     29.    Plaintiffs are informed and believe and thereon allege that the cost of purifying
13 the contaminated water or simply removing at least three hundred seventy million
14 (370,000,000) gallons of such water would have greatly exceeded the cost of discharging
15 the contaminated water into the unlined spreading ponds. The Defendants were aware of
16 this expense, as they removed the water contaminated with Chromium-VI and other toxic
17 substances from the STATION to an as yet unknown location for disposal. The additional
18 cost of adequately lining the ponds or otherwise preventing the discharge of environmental
19 contaminants would have been de minims when balanced against the reasonable certainty
20 of serious injury to each of the Plaintiffs' herein.

21     30.    Because of the toxicity of the Chromium-VI which was released into the
22 unlined ponds and thereby into the ground water and eventually into the surface and
23 subsurface soil, the atmosphere and general environment, there existed a reasonable
24 certainty of significant serious injury and the distinct probability of death to any individuals
25 coming into contact by breathing, touching, or using the ground water, surface and
26 subsurface soils, and atmosphere for any purpose.

27     31.    The Plaintiffs were exposed to Chromium-VI and other toxic substances
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-12-

EXHIBIT A



1  through their use of the contaminated ground water by drinking, cooking, bathing,
2  swimming, cooling their homes through swamp coolers, and by all other domestic uses.
3  Neither PG&E nor BETZ ever advised the Plaintiffs that the levels of Chromium-VI to which
4  they were exposed were as high as four thousand (4,000) times above the then current EPA
5  standards.  In fact, the true levels of such exposure were deliberately concealed by each
6  of the Defendants.

7      32.   The Defendants and each of them misled and deceived the Plaintiffs into not
8  securing the proper medical aid by failing to advise them of the high contamination levels
9  contained in their water from 1952 to the present.  Had the Plaintiffs' medical providers
10  been informed earlier of such toxic contaminants, many of the Plaintiffs' ailments could have
11  been properly diagnosed and treated at the earliest possible stage, and possibly entirely
12  avoided.  In addition, the Plaintiffs would not have suffered the loss of loved ones who died
13  from exposure to the Chromium-VI.

14      33.   The Defendants and each of them never informed the Plaintiffs that they were
15  breathing Chromium-VI or other toxic substances in extremely high doses over the long-
16  term, nor did the Defendants ever inform the Plaintiffs that breathing Chromium-VI was
17  dangerous because of the high carcinogenic content of the water and air.  The Plaintiffs
18  neither knew nor had reason to even suspect that they were inhaling high levels of known
19  carcinogens as a result of the Defendant's intentionally fraudulent conduct.

20      34.   Many of the Plaintiffs were exposed to Chromium-VI through swamp coolers,
21  devices that work to cool homes by creating a fine mist of water within their homes.  The
22  use of swamp coolers was and is a standard practice in HINKLEY.  The Plaintiffs neither
23  knew nor had reason to suspect that they were inhaling high levels of a known carcinogen
24  as a direct result of PG&E and BETZ's conduct.

25      35.   During the 1950's to the present, HINKLEY has been serviced by the Hinkley
26  Volunteer Fire Department (hereafter referred to as "HFD.")

27      36.   The Plaintiffs allege PG&E aided in creating the HFD, as it required a fire
28

EXHIBIT  A



1  response plan to operate its STATION as a condition of the permits necessary for the
2  operation of the STATION.

3      37.    The Plaintiffs are informed and believe and therefore allege that PG&E
4  supplied the HFD with water from the STATION, an area within the PLUME which contained
5  the highest level of toxic contamination.  PG&E continued this practice knowing that the
6  water was contaminated with Chromium-VI and other toxic substances.  This "Poison
7  Delivery Service" supplied water on behalf of the Hinkley Valley Water Company
8  (hereinafter referred to as "HVWC") on a regular basis by the HFD.  The HFD serviced the
9  water needs of HVWC by filling its tanks with water from the PLUME, as defined by
10  Defendant PG&E, without the Plaintiffs knowledge.

11      38.    At no time did PG&E inform the HFD, nor any of the recipients of the poisoned
12  water it supplied to the HFD or, that the water was contaminated with Chromium-VI. The
13  Plaintiffs are informed and believe and thereon allege that PG&E allowed the HFD to draw
14  water from its STATION anytime the HFD needed water. The Plaintiffs further allege that
15  at all times when the HFD did not receive water directly from the STATION, the HFD
16  retrieved water from a fire hydrant located on Community Boulevard in front of the
17  STATION, also an area within the PLUME which was also heavily contaminated with
18  Chromium-VI.  The hydrant was located only yards from the unlined waste ponds, into
19  which the PG&E drained the Chromium-VI contaminated water. On occasion, the HFD also
20  retrieved water from the Mojave Dairy. The dairy was within the PLUME. The Plaintiffs are
21  informed and believe and thereon allege that the Dairy was so contaminated with
22  Chromium-VI that PG&E purchased it, had it torn down to keep secret what it had
23  intentionally done by contaminating the ground water with Chromium-VI. The Plaintiffs are
24  informed and believe and thereon allege that the Dairy was formally located on Community
25  Boulevard in HINKLEY and was directly across from the STATION and the unlined waste
26  ponds.  The Plaintiffs are also informed and believe and thereon allege that Defendant
27  PG&E knew the HFD was using contaminated water laced with Chromium-VI. PG&E knew
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-14-

EXHIBIT A
PAGE 14 OF 101



1   that the health of the Plaintiffs who worked for the HFD and who came into contact with the

2   water were also in danger. Indeed, PG&E knew or should have known that any person who

3   came into contact with the HFD water could become sick and suffer serious personal injury.

4   Defendant PG&E knew or should have known that humans who came into contact with the

5   HFD water could die as a result of illnesses caused by the exposure to the Chromium-VI

6   contaminated water.

7        39.    PG&E knew that humans who were exposed to the contaminated water were

8   in danger of losing their health and possibly their lives. PG&E's failure to warn the HFD and

9   those serviced by it of the inherent danger in being exposed to the contaminated water can

10  only be described as depraved indifference to human life. PG&E's conduct was malicious,

11  in that its distribution of the water from its STATION was carried on with conscious

12  disregard of the rights and safety of the intermediate and end users of the contaminated

13  water.  Defendant PG&E's actions were oppressive, in that it subjected the Plaintiffs who

14  came in contact with the toxic water to cruel and unjust hardships in conscious disregard

15  of that person's inalienable right to be safe from unreasonable risk of injury without a

16  conscious assumption of those risks.   PG&E's conduct constitutes fraud, in that it

17  intentionally concealed a material fact known to it alone with the intention of causing serious

18  personal injuries to Plaintiffs and death to them and their loved ones.

19        40.    Defendant PG&E knowing that the ground water was contaminated with toxic

20  substances and unsafe for any possible human use or exposure built a picnic area and

21  swimming pool within the STATION. It was, ironically called the "PG&E PARK." The PARK

22  was located in the midst of the PLUME on the grounds of the STATION, the very epicenter

23  of the poison.

24        41.    BETZ and Does 301 to 500, knew that the Plaintiffs, and each of them, visited,

25  attended and socialized at the PARK. BETZ and Does 301 to 500 knew that the PARK was

26  a focal point of the PLAINTIFF'S social and physical activities, and knew or should have

27  known that contaminated water was supplied to the pool and drinking fountains at the Park

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-15-

EXHIBIT   A
PAGE 12 of 18



1  by PG&E all of which contained contaminated by products produced from the carcinogenic

2  mist caused by the emissions which emanated from the cooling towers next to the PARK.

3      42.    The Defendants, and each of them, owed a duty to each of the Plaintiffs in

4  that they possessed knowledge of a dangerous condition.  The Defendants, and each of

5  them, could and should have warned the Plaintiffs by simply preparing an appropriate

6  warning, and posting such a warning at the PARK.  The Defendants each breached their

7  duty by failing to warn the Plaintiffs of the hazardous conditions which they had created.

8      43.    With a total disregard for the safety of the Plaintiffs, PG&E invited the Plaintiffs

9  to use the PARK knowing that the waters of the pool were contaminated with Chromium-VI.

10  HINKLEY is a desert community in which summertime heat is frequently over 100 degrees

11  Fahrenheit.  PG&E promoted the use of the PARK and all of its facilities as a community

12  benefit for having PG&E and its STATION in HINKLEY.  The Defendants, and each of

13  them, were fully aware and possessed with complete knowledge at all times that all of the

14  water in the PARK came from the contaminated toxic PLUME.  The Plaintiffs used the

15  PARK for camping, swimming, and picnicking with the encouragement and permission of

16  PG&E.  PG&E's, as well as BETZ's, failure to warn the Plaintiffs of the danger they each

17  knew to be present was malicious, in that their conduct was carried on with conscious

18  disregard of the Plaintiffs' safety.  Defendants, and each of them, acted with oppression

19  toward the Plaintiffs, in that they subjected the Plaintiffs to toxic contaminated water which

20  was cruel, unjust and done with conscious disregard of each of the Plaintiffs'.  The

21  deliberate acts of the Defendants, and each of them, constitute fraud.  PG&E and BETZ

22  knowingly concealed a material fact when they exposed the Plaintiffs to unreasonable risks

23  to their health which included some of them losing their lives by simply having used the

24  PARK.

25      44.    The Plaintiffs are informed and believe and thereon allege that PG&E and

26  BETZ determined that Chromium-VI contamination was detected in the ground water in the

27  area of the STATION as  early as the 1950s.  Thereafter, PG&E and BETZ undertook

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-16-

EXHIBIT A
PAGE 16 OF 109



1  various efforts to extract and treat the contaminated toxic ground water. Eventually they

2  abandoned the use of Chromium-VI as a corrosion inhibitor. In 1965, PG&E calculated how

3  much Chromium-VI had leached into the aquifer, i.e. the PLUME, during the period from on

4  or about 1955 to 1965. Records at the time reveal that sixty-five (65) tons of *Chromate*

5  *Inhibitor*, the name of the product that contained the Chromium-VI, had been purchased

6  from Defendant BETZ (Betz Laboratories, Inc.) during the time in question. By weight,

7  approximately twenty-two and one half percent (22.5%) of the bulk corrosion inhibitor

8  product consists of chromate. Calculations made by PG&E's own engineers in 1965

9  demonstrated that thirty (30) tons of chromate had migrated into the aquifer. Later,

10  calculations by PG&E's consultants placed the figure at thirty-eight (38) tons. Plaintiffs are

11  informed and believe and thereon allege that PG&E and BETZ had in their possession

12  water test data from the 1950s, 1960s, 1970s and early in the 1980s which have never

13  been made public. PG&E calculated that the Chromium-VI in the PLUME ranged from

14  concentrations of 7,820 parts per billion (hereafter referred to as "ppb") in 1952 to as high

15  as 69,070 ppb in 1966. Plaintiffs are informed and believe and thereon allege that based

16  upon its own test data, Defendant PG&E knew in 1965 that it had contaminated the

17  PLUME, and that its senior management knew of the contamination.

18      45.    Plaintiffs are informed and believe and thereon allege that in the late 1980s,

19  PG&E reported to the Regional Water Quality Control Board that "the historic agricultural

20  treatment process had already removed and converted approximately 90% of the

21  Chromium-VI that originally reached the aquifer." The levels of chromium measured in that

22  aquifer during November 1988, ranged in excess of 5,000 ppb, in Monitoring Well Number

23  15, the well at the STATION site. This, by PG&E's own statements, represented only ten

24  percent (10%) of the chromium actually discharged into the PLUME. PG&E emitted that

25  over thirty (30) tons of Chromium-VI was placed into the PLUME by its employees or at its

26  direction.

27      46.    On August 10, 1972, the Regional Water Quality Control Board issued Order

28

EXHIBIT A
PAGE 11 of 101



1   No. 6-72-44, requiring that Hexavelent Chromium, Chromium-VI **not be in excess of fifty**
2   **parts per billion (50 ppb).** Defendant PG&E violated the Board Order and the 1946
3   USPHS Drinking Water Standards as evidenced by its test levels measured in the 1960s
4   and 1970s.

5       47.    PG&E is a public utility. As such, it is required to file applications with the
6   California Public Utilities Commission (hereafter referred to as the "PUC") concerning the
7   reasonableness of it's operations. In all of its filings with PUC throughout the 1950s, 1960s,
8   and 1970s, PG&E did not acknowledge nor explain the contamination of the ground water
9   in HINKLEY, the STATION or anywhere off of the site. Plaintiffs are informed and believe
10  and thereon allege that PG&E's practices and conduct at the STATION are precisely the
11  type of operational details of which the PUC requires disclosure in its annual assessment
12  of PG&E's operations.

13      48.    In 1987, Defendant PG&E's long standing concealment of its conduct became
14  public. Shortly thereafter, PG&E commenced a concerted effort to produce propaganda
15  and other efforts aimed at controlling the damage to its corporate pocketbook so as to limit
16  its potential civil and criminal liability. However, at no time was BETZ involvement ever
17  identified or acknowledged or admitted.

18      49.    PG&E had several of its agents make statements throughout the community
19  of HINKLEY that the ground water was *completely safe for all purposes* and that there were
20  *no toxic problems* within the PLUME. Said agents stated that they would *gladly allow their*
21  *own children to drink the ground water emanating from within the PLUME.*

22      50     Some of the Plaintiffs were told by PG&E after calling the STATION that
23  *unless they lived within the PLUME*, as defined by Defendant PG&E, they had *nothing to*
24  *worry about regarding the Chromium-VI exposure.*

25      51     The Defendants, and each of them, never informed the community that since
26  1965 they had known of and confirmed the existence of Chromium-VI in the PLUME nor did
27  they inform the community that levels during the three previous decades had greatly
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-18-

EXHIBIT _A_
PAGE ___ Of ___



1    exceeded applicable EPA standards. Indeed, the Defendants and particularly PG&E,
2    despite knowing that thousands of people in the community had been exposed to
3    Chromium-VI for extended periods by inhaling the air, the dust, and ingesting and/or simply
4    touching the water, failed to even attempt to locate the Plaintiffs who had been exposed
5    during the period from the 1950s to and including the early 1980s. PG&E and BETZ knew
6    that these people could, and likely would be sick or dying and knew that its conduct was the
7    proximate cause of those illnesses and deaths. The Defendants, and each of them, should
8    have notified the Plaintiffs to seek medical advice and possible treatment. Rather than
9    notifying these Plaintiffs, PG&E and BETZ continued a campaign of deceit and
10   misrepresentation so as to perpetrate a fraud upon the residents of HINKLEY to save
11   themselves from having to face the consequences of their deliberate actions to hide the
12   damages and injuries they committed against these unsuspecting persons and their families
13   both present and future.

14         52    Indeed, PG&E went so far as providing the community of HINKLEY with
15   newspaper articles "illustrating the benefits of chromium" in order to eliminate any possible
16   suspicions the Plaintiffs' must have developed. Representations were made by PG&E that
17   chromium was *good for you*. *Chromium is found naturally in the human body* and
18   *Chromium is an essential nutrient.* PG&E knew that these statements were misleading as
19   they were only applicable to Chromium-III, not to the highly toxic and carcinogenic
20   Chromium-VI which it and BETZ recklessly and freely discharged in dangerously high
21   concentrations within the PLUME.

22         53    PG&E distributed throughout the community a pamphlet entitled "AUGUST
23   FACT SHEET - HINKLEY COMPRESSOR STATION GROUND WATER REMEDIATION
24   PROJECT." This pamphlet was designed to mislead the reader into unjustifiably believing
25   that there was *no risk to any human being exposed to Chromium-VI* and that PG&E had *just
26   learned of the problem.* Despite the fact that PG&E knew Chromium-VI was injurious to
27   humans if inhaled, ingested, or touched (dermal contact), it acted with total disregard for
28


EXHIBIT A
PAGE 55 OF 104



1 human life when it stated in its pamphlet, *You should avoid drinking your well water,*
2 *but it is safe for other domestic purposes . . . .* (Emphasis Supplied.) Defendant
3 PG&E's pamphlet was designed to further conceal and prevent the Plaintiffs from learning
4 the truth. PG&E knew that the false and misleading information in the pamphlet would work
5 to quiet and or entirely dispel the suspicions of potential Plaintiffs and, thereby limiting
6 Defendant PG&E's civil and criminal liability.

7      54.    Defendant PG&E also stated in its pamphlet that the area contaminated
8 extended one and one half (1 ½) miles to the north of the STATION and covered an area
9 of 290 acres. This statement was fraudulent, or, at the very least, misleading. The true
10 facts were that in the 1960s, PG&E's own experts opined that the area of contamination
11 could extend north as far as ten (10) miles from its STATION.

12      55.    The Plaintiffs are informed and believe and thereon allege that PG&E knew
13 that the 1987 well test data did not accurately show what the size of the area of
14 contamination and levels of Chromium-VI were during the period commencing in the 1950s
15 to and including the early 1980s. PG&E, by publishing the pamphlet deliberately withheld
16 information concerning the excessive amounts of Chromium-VI that it had deliberately
17 dumped into the PLUME. These statements were made by PG&E simply in an effort to
18 quell suspicion of potential Plaintiffs so as to have them rely upon such misleading
19 statements to their detriment.

20      56.    PG&E's statement in its pamphlet that *small amounts of chromium were*
21 *commonly added by industries to cooling tower water to prevent corrosion and scaling*
22 (Emphasis Supplied) was one of the most flagrantly fraudulent statements, in that it knew,
23 that its own engineers had calculated the amounts which had been placed into the
24 environment and that those calculations amounted to more than thirty (30) tons. This
25 statement was, again designed to conceal the fact that human beings were then and are
26 still being killed by PG&E and that if not killed, others were then and now having their lives
27 devastated because of the serious personal injuries caused by PG&E.

28

EXHIBIT *A*



57.   PG&E's pamphlet never mentioned or indicated that the chromium contained in the ground water was in fact Chromium-VI, nor was there any indication that chemical was a known carcinogen.  No one reading the pamphlet could have reasonably been placed on notice that the chromium mentioned in the text posed any danger whatsoever.

58.   The Plaintiffs are informed and believe and thereon allege that Defendant PG&E's sole purpose in publishing the pamphlet was to suppress the truth that it had intentionally, deliberately, and willfully contaminated the ground water, air and soil of HINKLEY with a toxic carcinogenic chemical thereby exposing thousands of people to Chromium-VI poisoning causing death and devastating personal injuries.  The Plaintiffs herein are but a small number of those persons who were deceived by the Defendants.

59.   PG&E intended to and did induce Plaintiffs to rely upon the representations made in the pamphlet.  PG&E intended to defraud and deceive the Plaintiffs and induce all potential Plaintiffs when making those representations in the pamphlet so that they would not sue PG&E.  As a result, PG&E profited as a result of those fraudulent and deliberate misrepresentations.

60.   During the period in which PG&E was actively attempting to mislead the public, and the Plaintiffs herein, Defendants BETZ, and Does 301 to 500, while actively aware of the truth, and aware of the falsity as to PG&E's claims and statements, did not disclose the truth and the information in its possession, or that it was in fact involved at all. This conduct to help conceal the truth from the public, and the Plaintiffs, constitutes active participation by BETZ and Does 301 to 500 in the fraud perpetrated by PG&E.

61.   The Defendants, and each of them, never disclosed that through their conduct they had exposed the Plaintiffs to a known carcinogen.  Such disclosure is required under Proposition 65.  In fact, neither Defendant ever mentioned that developing cancer or any other severe illness was a known hazard resulting from exposure to Chromium-VI.  The Defendants never gave the Plaintiffs any reason to even suspect or investigate the possible consequences from their exposure to Chromium-VI, because PG&E and BETZ actively





1  concealed the fact that Chromium-VI was a chemical to which Plaintiffs were being and had
2  been exposed.

3      62.    The Plaintiffs are informed and believe and thereon allege that the Defendants
4  and each of them have violated Proposition 65, as well as California Health and Safety
5  Code § 25249.5 and Water Code §13350 (d)(2) by discharging and releasing Chromium-VI
6  into the drinking water, air or onto the land where it passed into Plaintiffs' drinking water and
7  into Plaintiffs' bodies.

8      63.    The Plaintiffs are informed and believe and thereon allege that Chromium-VI
9  was listed as a chemical known to the State of California to cause cancer and/or
10  reproductive toxicity not later than February 27, 1987.

11     64.    California Health and Safety Code, § 25249.5 provides:

12

13         "No person in the course of doing business shall knowingly
14         discharge or release a chemical known to the state to cause
15         cancer or reproductive toxicity into water or onto or into land
16         where such chemical passes or probably will pass into any
17         source of drinking water . . . ."

18

19     65.    Plaintiffs are informed and believe and thereon allege that PG&E failed to
20  provide a warning as required under Proposition 65, as well as California Health and Safety
21  Code, § 25249.6, et seq. which would have clearly and reasonably advised the Plaintiffs
22  that they had been exposed to one or more chemicals known to the State of California to
23  cause cancer and reproductive toxicity.  Further, Plaintiffs are informed and believe and
24  thereon allege that Defendants have failed to provide any warning whatsoever that any of
25  the Plaintiffs have been exposed to such chemicals.

26     66.    The Plaintiffs are informed and believe and thereon allege that Defendant
27  PG&E violated the foregoing statutes and Proposition 65 by knowingly discharging with

28
            SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

                                    -22-



Case: 01-30923  Doc# 2385-0  Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 27
of 109




1  Chromium-VI water and other toxic substances into the ground water and air from open,
2  unlined ponds. In doing the foregoing acts, PG&E intentionally failed to warn Plaintiffs of
3  its actions.

4      67.     Plaintiffs allege that PG&E violated the foregoing statute and Proposition 65
5  by knowingly spraying the waste water into the air which contaminated the surface and
6  subsurface soil, atmosphere, and environment of HINKLEY. In so doing, the foregoing acts,
7  PG&E failed to warn the Plaintiffs of their destructive actions.

8      68.     The Plaintiffs are informed and believe and thereon allege that due to the
9  Defendant's, and each of them's, conduct, and PG&E's violation of the foregoing statute
10  and Proposition 65, that they have been exposed to Chromium-VI contamination and other
11  toxic substances and have, as a result suffered aliments ranging from rare forms of cancer,
12  birth defects, tumors, devastating reproductive injuries, chronic headaches, joint pains, bone
13  disorders, miscarriages, heart problems, gastro-intestinal problems, and other medical
14  difficulties for which medical attention has been required and will continue to be required
15  into the indefinite future.

16      69.     The Plaintiffs are informed and believe and thereon allege that in order to
17  destroy evidence of contamination and their deliberate poisoning of the ground water, air,
18  and soil that PG&E began a program of purchasing properties within the PLUME so as to
19  hide the fact that the contamination occurred, to conceal its conduct, to prevent the truth
20  about the size of the PLUME from being revealed and to prevent the disclosure of the
21  extent of the contamination it and BETZ had perpetrated upon the citizens of HINKLEY.

22      70.     The Plaintiffs are informed and believe and thereon allege that PG&E, after
23  purchasing many properties within the PLUME began to destroy the structures located
24  thereon. The Plaintiffs are further informed and believe and thereon allege that PG&E
25  purchased those properties so as to limit its criminal and civil liability. In fact, a PG&E
26  internal memo characterized the procedure as *A preemptive measure to avoid potential*
27  *claims.* PG&E's internal documents revealed that its own Claims Department was aware

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-23-





of the contamination within the PLUME in the 1960s. Many of the Plaintiffs named in this complaint were exposed to Chromium-VI on said properties during the periods in question. The Plaintiffs are informed and believe and thereon allege that PG&E even attempted to conceal the contamination by purchasing properties of HINKLEY residents with "hush money," in that it insisted that the terms of the purchase of many of the properties be kept secret from other HINKLEY residents, so as to limit the possibility of panic amongst the residents.

71. PG&E destroyed documents that contained data that could have been used against it by Plaintiffs. On May 8, 1996, a former PG&E employee stated on a national television show, *PRIME TIME LIVE*, that she had been ordered by PG&E management to review and destroy documents, which would have revealed the concentration of Chromium-VI within the PLUME prior to 1988. When asked what the records would show, she responded "The records would show how much chromium was in the water."

72. During the same broadcast, the spokesman for PG&E referred to as "a high level attorney for PG&E" made the following statement regarding the Chromium-VI contamination:

> "Nobody knew about this I think from 1972 to 1987. Well, let
> me backup. It was certainly ... if somebody obviously knew
> about it because people were aware in the '60's of what had
> taken place for whatever reason at whatever level in Hinkley
> somewhere in the company people made the decision not to tell
> the neighbors. That was wrong."

In fact, PG&E's internal memos clearly indicate that its own Claims Department was aware of the Chromium-VI contamination in HINKLEY and knew that it had poisoned the water in 1960s.



73.    Plaintiffs are informed and believe and thereon allege that PG&E started a secret effort to treat the contaminated water in 1965 and after seven years of failure stopped trying to remove the Chromium-VI from the ground water.  The Defendant's own internal memo regarding its clean-up efforts stated in part, **"Extremely difficult to keep our intended treatment confidential."**  The Plaintiffs are informed and believe and thereon allege that PG&E's management knew in 1965 that it had poisoned the ground water of HINKLEY and could possibly face criminal and civil liability if it was determined that PG&E had poisoned the ground water of HINKLEY, as well as all of those who lived and recreated therein.

74.    Again, during the *PRIME TIME LIVE* program, the PG&E spokesman said that the company "came clean in 1987" and stated, "Here we are, we did this we're sorry now, how can we make it right."  The Plaintiffs are informed and believe and thereon allege that even this apparent "confession" is misleading, in that PG&E failed to and continues to fail to tell the whole truth as it has never made any of its well test data prior to 1987 available.  Plaintiffs are informed and believe and thereon allege that well test data from the 1950s to the early 1980s reveals the existence of Chromium IV, the true size of the resultant PLUME and the levels of contamination therein.

75.    The Defendants and each of them made no effort to contact any of the Plaintiffs who were exposed to the Chromium-IV during the 1950s through 1987.  PG&E did contact those persons who were within the PLUME, which it unilaterally defined in 1988.  Additionally, during December of 1987, and January and February of 1988, PG&E had doctors examine several HINKLEY residents and advised them that they had "no chromium injuries."  The Plaintiffs are informed and believe and thereon allege that no effort was made by PG&E to ascertain the size of the PLUME or the levels of contamination which existed in the three decades prior to 1988, or if such a report or reports were prepared, they were never made public.  The level of contamination was greater in the 1950s, 1960s, 1970s, and in the early 1980s, as opposed to 1987 when PG&E first disclosed to the public that it had

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-25-



EXHIBIT _A_




1  poisoned the ground water of HINKLEY.

2      76.    The Plaintiffs are informed and believe and thereon allege that PG&E tried to

3  "whitewash" the contamination.  Plaintiffs are informed and believe and thereon allege that

4  Defendant PG&E hired the consulting firm, "Ecology and Environment," an alleged

5  *independent firm*, to prepare a risk assessment and feasibility study in preparation for a

6  mediation for remediation of the poisoning.  The Plaintiffs are informed and believe and

7  thereon allege that upon receipt of those findings, PG&E's Pipeline Operations Department

8  sent a memorandum to its Technical and Ecological Services Department stating that it was

9  unhappy with "Ecology and Environmental's" findings, requesting that those findings be

10 changed!  The memo stated in part:

11

12          "We recommend that this section present data to support the

13          ***relatively  nontoxic*** nature of *low levels* of Chromium."

14          (Emphasis Supplied.)

15

16 The report was rewritten to conform to PG&E's wishes.  Plaintiffs are informed and believe

17 and thereon allege that PG&E was again simply, but blatantly attempting to tamper with the

18 results as it was concerned that its own consultant would present evidence damaging to

19 PG&E.  PG&E knew the levels of Chromium-VI were "not low."  PG&E knew that Chromium-

20 VI was not "relatively nontoxic."  The Plaintiffs are informed and believe and thereon allege

21 that PG&E knew Chromium-VI was and is a highly toxic and carcinogenic substance that

22 causes serious personal injuries and death.  The Plaintiffs are further informed and believe

23 and thereon allege that PG&E knew that it had exposed the Plaintiffs to Chromium-VI

24 causing the injuries complained of herein.  PG&E also knew that it caused the deaths of

25 many of the Plaintiffs' loved ones.  The Plaintiffs are informed and believe and thereon

26 allege that PG&E, by having the "independent" report rewritten perpetrated yet another act

27 to withhold the truth, by engaging in further intentional prevarications.

28
              SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

                                     -26-

EXHIBIT ___A___
PAGE ___ OF ___



77.     In 1993, a lawsuit was instituted against PG&E denominated as, "Anderson
v. PG&E in San Bernardino County, Case No. BCV00300," alleging that it contaminated the
ground water of HINKLEY. Plaintiffs are informed and believe and thereon allege that
during the discovery process, the attorneys for the Plaintiffs in that case attempted to
discover the extent of the contamination, as they requested of PG&E all documents
regarding all well tests ever performed by the Defendant or on its behalf. The Plaintiffs in
this case are informed and believe and thereon allege that Defendant PG&E, rather than
complying with lawful discovery requests of the prior Plaintiffs, entered into a settlement with
the Plaintiffs in Anderson so as to continue its prior efforts to resist the disclosure of the
truth to the public regarding its well test data prior to 1987.

78.     The Plaintiffs are informed and believe and thereon allege that Defendant
PG&E's decision to settle the Anderson case was the product of its decision to prevent the
truth about how it poisoned thousands of people and killed a number of them from
becoming known to the other HINKLEY residents, all of which were and are potential
Plaintiffs, as well as the general public. In July 1994, PG&E and the Anderson Plaintiffs
reached a secret agreement whereby PG&E agreed to pay a minimum of $50,000,000.00
and a maximum of $400,000,000.00 to the Plaintiffs. However, Plaintiffs are informed and
believe and thereon allege that PG&E placed conditions upon the settlement agreement
which continue to prevent the truth about its conduct from reaching other potential Plaintiffs,
as well as limiting its tort and possibly its criminal liability. The Anderson settlement was
made prior to the hearing of the then Plaintiffs' attorney's Motion to Compel Discovery. The
Motion sought the discovery of all well test data which PG&E had and continues to refuse
to disclose. Plaintiffs are informed and believe and thereon allege that under the terms of
the agreement, PG&E admitted liability and fault for all of the injuries and deaths it caused
to the HINKLEY residents in the Anderson case on account of Chromium-VI poisoning. The
Plaintiffs are further informed and believe and thereon allege that PG&E agreed to resolve
the case on the condition that it was settled through binding arbitration so that it was

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-27-






1   removed from the San Bernardino County Superior Court, thereby eliminating the prospect
2   of a public trial. Plaintiffs are also informed and believe and thereon allege that the only
3   issues which remained were causation and damages. The Plaintiffs are further informed
4   and believe and thereon allege that PG&E insisted that the terms of the settlement
5   agreement be kept confidential. Further, the Plaintiffs are informed and believe and thereon
6   allege that the lawyers for the Anderson Plaintiffs agreed not to accept any new clients on
7   or after the effective date of the agreement. Finally, the Plaintiffs are informed and believe
8   and thereon allege that PG&E insisted that the arbitration proceedings, evidence and
9   transcripts be sealed.

10          79.     The Plaintiffs are informed and believe and thereon allege that by engaging
11  in the foregoing actions, PG&E was continuing the cover up of the truth about its conduct
12  in HINKLEY. The Plaintiffs are further informed and believe and thereon allege that in
13  addition to the actions set forth herein above, PG&E knew what it had done in HINKLEY,
14  in that it had actually poisoned and/or exposed thousands of people to its toxic
15  contamination, so that when it demanded as a "deal point" of the settlement that the then
16  attorneys agree not to accept any further clients, PG&E was again consciously attempting
17  to reduce its tort liability.

18          80.     The Anderson case proceeded to arbitration. In June, 1996, a final settlement
19  agreement was reached. The Plaintiffs are informed and believe and thereon allege that
20  PG&E agreed to pay a total of $333,000,000.00 to settle the case. In July, 1996, the
21  Anderson attorneys informed their clients of the settlement by stating:

22
23              ". . . you are not to discuss your individual awards with anyone.
24              As part of the settlement, PG&E has the right to sue you and
25              claim damages from you if you violate the confidentiality of the
26              settlement."

27  Clearly, this was yet another effort by PG&E to keep the truth about the poisoning from

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-28-






1 becoming public.

2       81.   The Plaintiffs are informed and believe, and thereon allege that Defendant

3 PG&E, on or about August of 1991, distributed a "fact sheet" to various HINKLEY residents

4 regarding the results of the well readings. This fact sheet advised residents that they were

5 in *absolutely no danger as a result of the findings*.

6       82.   The Plaintiffs are informed and believe and thereon allege that PG&E further

7 mislead the public in January 1999 when it hired an alleged independent toxicology expert

8 from Oakland to perform a an analysis later entitled, *Health Risk Analysis of HINKLEY*

9 regarding the contamination throughout much of the community. The residents were

10 informed that "a representative of the State of California" was coming to HINKLEY to

11 address community concerns regarding the contamination within the PLUME. In truth and

12 in fact, this person was not a representative of the State of California but a private individual

13 which PG&E hired. The survey was to be "complete." It was to include well test data,

14 however, the data which PG&E supplied was again information which it had theretofore

15 made public. In other words, well test data accumulated after 1987. At the meeting, the

16 Plaintiffs and potential Plaintiffs were informed that the levels of Chromium-VI detected

17 were *low and that one would have to live within the PLUME for decades before they*

18 *would suffer any adverse health effects.* Those in attendance were given the PG&E

19 pamphlet previously mentioned herein above commencing at paragraph 53. The Plaintiffs

20 are informed and believe and thereon allege that PG&E's conduct herein was nothing more

21 than another fraudulent act which was , malicious, and oppressive, in that as late as

22 January 1999, PG&E's sole purpose was to continue to attempt to convince those attending

23 its meeting that the State of California had found no danger to the people of HINKLEY as

24 a result of PG&E having poisoned the ground water.

25       83.   In early 2000, the movie <u>Erin Brockovich</u> was released focusing upon the

26 conduct of Defendant PG&E regarding its poisoning of the ground water of HINKLEY. Many

27 of the Plaintiffs in this lawsuit learned, for the first time that they had been poisoned when

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-29-






1  they saw the movie. All of them were shocked to learn that the reason why certain
2  members of their family had been ill with various ailments or died was because they had
3  been poisoned by PG&E while they lived in and around HINKLEY.

4       84.    The combined effect of the misleading information and the misinformation
5  presented by PG&E to the public and BETZ conduct in saying nothing in contravention of
6  PG&E's actions and conduct all of which was conducted by PG&E, in an attempt to mislead
7  the Plaintiffs herein into believing that they had not caused any harm, was successful. A
8  reasonably diligent person who encountered PG&E's propaganda setting forth its
9  unilaterally defined boundaries of the PLUME limiting the exposure area to only
10 approximately 260 acres, its publicity campaigns indicating that chromium was not harmful,
11 its misleading pamphlets that *Chromium is good for you* and that the *water was safe for all*
12 *uses except drinking*, its publications under the guise of neutrally prepared analysis
13 indicating that *only those directly residing for long periods within the PLUME may have any*
14 *concerns*, its failure to disclose that the Chromium VI contaminated water was delivered to
15 outlying residences by the HFD, that the Chromium was harmful if inhaled, and that it could
16 be inhaled via use of swamp coolers, playing in the fields, breathing the dirt, dust, and mist,
17 and recreating in the area, as well as the numerous other activities undertaken to downplay
18 the extent of the contamination and to mislead people into believing that they were not at
19 fault for the injuries caused them, would not have been able to uncover the truth that their
20 injuries were caused by Defendants herein. As a result, many people, including Plaintiffs
21 herein, justifiably did not have sufficient knowledge to be on notice of any action against
22 PG&E, or any of the Defendants herein.

23      85.    As a result of the above referenced acts, omissions, and falsities perpetrated
24 by the Defendants and particularly PG&E in an attempt to convince the residents of
25 HINKLEY that they were not in danger, and that neither PG&E nor BETZ were responsible
26 for any injuries to these people, many persons, including some of the Plaintiffs herein, acted
27 justifiably and reasonably in believing that they had no cause of action against PG&E or
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-30-





1 BETZ. Recent events, including but not limited to the release of the film Erin Brockovich,
2 the discovery of the connection to the delivery of the contaminated water by the HFD, recent
3 studies about Chromium VI and its methods of ingestion and exposure, and the
4 dissemination of the truth which PG&E actively concealed, have only recently, but within the
5 past year, put the Plaintiffs on notice of the nexus between the contamination by the
6 Defendants and their injuries.

7      86.     Plaintiffs herein did not have the means to obtain the necessary information
8 to reasonably put them on notice of the correlation between their injuries and the
9 Defendants' acts. At every turn, a reasonably diligent person would have been confronted
10 with the propaganda presented by PG&E and the corresponding silence of BETZ, as
11 detailed above, claiming that there was no correlation between their actions and the injuries
12 sustained. They would have even encountered supposedly "neutral parties," which in fact
13 worked for PG&E, proffering information that there was no relation between their injuries
14 and the actions of PG&E. In visiting their own doctors, many of whom practiced nearby, the
15 Plaintiffs were never informed of any possible connection between their injuries and
16 Chromium VI.

17      87.     As a further direct and proximate result of PG&E's fraudulent conduct as
18 outlined above, as well as BETZ's conduct also discussed above, both PG&E and BETZ
19 are estopped from raising the defense of Statute of Limitations to defeat Plaintiff's claims.

20      88.     As a result of the above referenced acts by each of the Defendants, the
21 Plaintiffs were justifiably unaware of the injuries caused to them by PG&E and BETZ and,
22 as such, the Plaintiffs were likewise reasonably unaware that any cause of action existed
23 as to Defendants PG&E, BETZ and does 301 through 500. Simply put, as Plaintiffs had not
24 discovered that Defendant PG&E had been responsible for the contamination with the
25 chromium, they could not have known that Defendants BETZ was also responsible.

26

27                    **FIRST CAUSE OF ACTION**

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-31-






Actual Fraud And Deceit

(By All Plaintiffs Against All Defendants)

89.     Plaintiffs incorporate by this reference each and every allegation contained in Paragraphs 1 through 88, inclusive, as though fully set forth herein.

90.     Plaintiffs **Dorothy Adams and her husband, Michael Lee Adams**, moved to HINKLEY in 1971 and resided at 37346 Mulberry Road from 1971 to 1978.  They moved to Thompson Road in 1978 and remained there until 1981.  During the time these Plaintiffs resided on Mulberry Road, their water needs were serviced by the HVWC.

91.     Plaintiffs Dorothy Adams and Michael Adams hereby allege that the HVWC would break down causing a need for water.  Plaintiffs have learned through investigation that during the 1960s until the early 1990s the water tanks of the HVWC, when the HVWC was inoperable, would be filled by the HFD.  Plaintiffs have also learned that the HFD would retrieve the water to fill the HVWC tanks from the STATION.  Plaintiffs have also learned that the HFD's alternate source for water during this time was a fire hydrant located directly in front of the STATION on Community Boulevard.  In addition, the Plaintiffs have learned that the dairy, purchased and destroyed by Defendant PG&E, was also utilized to retrieve water that was delivered to HVWC tanks which serviced the residences of Plaintiffs Dorothy Adams and Michael Lee Adams.

94.     Plaintiffs are informed and believe and thereon allege that it was common practice in the summer months for the HFD to fill the HVWC's water tanks three times per week.  Plaintiffs are further informed and believe and thereon allege that all three of the locations utilized by the HFD were within the PLUME as defined by Defendant PG&E.  In addition, these locations were areas in the PLUME at a time when Defendants PG&E and BETZ knew the levels of Chromium-VI in the PLUME were in excess of thousands of times above the safe level of .05 ppb.

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-32-

EXHIBIT _A_

PAGE 32 OF 104

95.     PG&E knew the water used by the HFD was contaminated with Chromium-VI and that Chromium-VI was a reproductive toxicant, a carcinogenic and a toxicant substance which caused serious injuries and even death when exposed to human beings.  PG&E knew that the HFD was getting water from the location described above, in that PG&E agreed to supply and did in fact supply contaminated water to the HFD. Defendant BETZ knew or should have known that people would use the contaminated water for domestic purposes, and that it would be reasonably foreseeable that persons when in need of water, would retrieve water from other sites.

96.     At **no** time was anyone within the HFD nor any other person informed by PG&E or BETZ that the water the HFD was delivering to the HVWC water tanks was toxic and injurious to humans.

97.     The Defendants, and each of their omissions of material facts to the HFD and Plaintiffs Dorothy Adams and Michael Adams constitutes fraud, in that PG&E as alleged in the preceding paragraphs carried on a conscious campaign of deceit regarding the true nature of its poisoning the ground water of the community, and BETZ continued to conceal the information of the contamination.

98.     Plaintiffs Dorothy Adams and Michael Adams allege that their exposure to Defendant's poisons continued while they lived on Thompson Road, in that all Plaintiffs contend and allege that the size of the PLUME during this time covered all of the HINKLEY Valley, and not just the 260 acres as unilaterally defined by PG&E.

99.     In addition to having the poison delivered to their residence by the Defendants, via the HFD, the Plaintiffs were invited by Defendant PG&E to poison themselves by inviting the Plaintiffs to ad use the PG&E Park. Plaintiffs Dorothy Adams and Michael Adams used the PG&E park to swim in the pool.  In addition, Plaintiffs Dorothy Adams and Michael Adams would swim in the reservoirs within the PLUME and visit friends who lived in the PLUME.

100.    Had the Defendants, or any of them warned the HFD that the water it was

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-33-




dispensing throughout the community was poisonous, the HFD would not have delivered it to Plaintiffs. Certainly, had the Plaintiffs been made aware of the foregoing information, they would not have subjected themselves to the known risks of severe harm to which they have suffered. Plaintiffs are informed and believe and thereon allege that Defendant PG&E knew that by failing to inform the HFD and by inviting Plaintiffs to use the Park, it purposely and intentionally subjected Plaintiffs to a toxic substance that would cause them serious injury and even death.

101. Had Plaintiffs Dorothy Adams and Michael Lee Adams been informed by Defendant PG&E, BETZ, or any party as to the poisoned water, they would not have used the toxic water for any purpose.

102. Because of the Defendants' material omissions, Plaintiffs Dorothy Adams and Michael Adams have suffered severe personal injuries. Plaintiffs' Adams relied upon the Defendants intentional material omission and misrepresentation in believing that they had not been exposed to Chromium VI. Given the false information provided to Plaintiffs by the Defendants, they were not placed on notice that they had been injured by the Defendants or that they were injured or that those injuries were caused by the Defendants.

103. Because of exposure to Chromium-VI, Plaintiff Dorothy Adams developed cysts on her ovaries, which caused a need for a hysterectomy in 1975. Plaintiff Dorothy Adams was 27 years old at the time. She moved to HINKLEY at age 23 with no health problems.

104. Because of exposure to Chromium-VI, Plaintiff Michael Lee Adams has suffered tumors in his lungs, liver disease, and an impaired immune system. Plaintiff Michael Lee Adams was 31 years of age when he moved to HINKLEY with no health problems.

105. Plaintiff **Rosemarie Averill and her daughter, Plaintiff Coryanne Brown,** lived in HINKLEY from 1968 to present and from 1968 to present. From 1968 to 1971 they lived on Peters Road from. From 1971 to 1986 Plaintiff Coryanne Brown lived at 21256 Ash

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-34-





1  Street. Plaintiff Rosemarie Averill still resides at that address.

2       106.   Plaintiffs, during their time on Ash Street received their water through the

3  HVWC which, as alleged in the preceding paragraphs would routinely receive water via the

4  HFD from the STATION as alleged herein above.

5       107.   Plaintiff Rosemarie Averill used PG&E's contaminated toxic water for all

6  domestic uses from 1968 to the early 1990's. Plaintiff Coryanne Brown used the toxic water

7  from 1968 to 1986 when she left her mother's home.

8       108.   Both Plaintiffs Rosemarie Averill and Coryanne Brown were unaware that they

9  were exposed to PG&E's and BETZ's Chromium-VI. Both have suffered personal injuries

10  as a direct result of PG&E's and BETZ's unlawful assault and battery upon these two

11  unsuspecting victims. Both Plaintiffs knew of the lawsuit previously filed against PG&E but

12  both Plaintiffs were told they lived outside of the contaminated area by PG&E. Neither

13  Plaintiff knew nor suspected until May of 2000 that the HVWC was routinely obtaining water

14  which was delivered to their homes by the HFD from one or more contaminated wells

15  located on the grounds of the STATION.

16       109.   Both Plaintiffs Rosemarie Averill and Coryanne Brown used the PARK on

17  numerous occasions thereby increasing their exposure to the Defendant's deadly

18  Chromium-VI. Neither Plaintiff was ever told that the water at the PARK was contaminated

19  with Chromium-VI.

20       110.   As a direct result of the Defendants' material omission as alleged above,

21  Plaintiff Rosemarie Averill has suffered hypothyroidism, ovarian tumors, cysts on ovaries,

22  nose bleeds, rashes, excessive menstrual bleeding, and endometriosis. In 1991, Plaintiff

23  had a total hysterectomy.

24       111.   As a direct result of the Defendants' material omissions, Plaintiff Coryanne

25  Brown has suffered cysts on her ovaries, lupus, endometriosis, headaches, and

26  hypothyroidism. Plaintiff had to undergo a surgery when cysts on her ovaries ruptured.

27       112.   Plaintiffs Rosemarie Averill had no health problems prior to moving to

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-35-





1  HINKLEY at age 29. Plaintiff Coryanne Brown had no health problems prior to moving to
2  HINKLEY at age 4.

3       113.  Plaintiff **Baudelia Castillo Barajas** was 3 years old when she moved to
4  HINKLEY. She lived there from 1964 to 1999. From approximately 1964 to 1978, she
5  resided at 37878 Serra Road. From 1983 to 1999, she resided at 37344 Flower Street.

6       114.  Plaintiff received her water while living on Flower Street from the HVWC from
7  1983 to the early 1990's. As alleged herein above, the HVWC routinely delivered water
8  retrieved through the HFD from the STATION. Plaintiff Baudelia Castillo Barajas had no
9  knowledge that the water was contaminated with Chromium-VI.

10      115.  Baudelia Castillo Barajas was exposed to the Defendants' Chromium-VI
11  throughout her life in HINKLEY. In the summer, she spent virtually every weekend at the
12  PARK. She visited friends who lived within the PLUME. Plaintiff's exposure to Chromium-
13  VI was long term and, as a direct result, she has suffered serious personal injuries.
14  Plaintiff's family has also suffered similar exposure to Chromium-VI and has also suffered
15  similar serious personal injuries, as will be alleged hereafter. Plaintiff did not learn of the
16  Chromium-VI contamination until April of 2000.

17      116.  As a direct result of the Defendants' material omission, Plaintiff Baudelia
18  Castillo Barajas has suffered from severe asthma, ovarian cysts, cysts in her breasts and
19  cervical cancer. As a result, Plaintiff underwent a hysterectomy at age 39.

20      117.  Plaintiff **Maria I. Castillo** moved to HINKLEY in 1964 at age 22. She was
21  exposed to Chromium-VI for decades. She lived at 37878 Pera Road from 1964 to 1978,
22  in an area which the Plaintiff alleges was within the PLUME. In addition, she is the mother
23  of Plaintiff Enedelia Mahoney and Plaintiff Baudelia Castillo Barajas. While she lived in
24  HINKLEY, she brought milk and other food from and raised at the dairy which was located
25  across from the STATION. She used that food to feed her family. The dairy was located
26  within the PLUME, as was the PARK which she and her family used on countless
27  occasions.

28

EXHIBIT A



118. At no time was Plaintiff Maria I. Castillo ever told by the Defendants of the Chromium-VI contamination to which she and others were exposed.

119. Because of her exposure to the Chromium-VI, intentionally dumped into the environment by the Defendants, Plaintiff has suffered lupus, bladder infection, bone and joint problems. In 1970 at the age of 28, she underwent surgery for a hysterectomy as a result of cysts and/or tumors. Plaintiff has suffered said injuries as a direct result of Defendants material omission regarding the poison they released into the environment. Plaintiff, Maria I. Castillo did not learn she had been poisoned while visiting her daughters, Baudelia Barajas and Enedelia Mahoney, with Chromium VI delivered to her daughters homes by the HFD: in the manner described above until within one year of the filing of this complaint.

120. Plaintiff **Jerimiah Vernon Cleary**, a minor, institutes this action through his Guardian ad Litem, Teri Cleary, his mother. Plaintiff has been a resident of HINKLEY his entire life. He has lived at various times at 37176 Serra Road, 37110 HINKLEY Road, 37353 Flower Street, 21926 Alcudia, and since 1987 to the present, 37113 Locust. He was born on April 4, 1984.

121. Plaintiff was supplied with water from the HVWC under the conditions described above. In addition, Plaintiff used the PARK on a regular basis.

122. As a direct result of his exposure to the Defendants' Chromium-VI, Plaintiff has suffered tumors in his testicles, respiratory problems, nose bleeds, and gastro-intestinal problems, all of which were caused as direct result of Defendants' material omissions.

123. Plaintiff **Susan Cordova** lived in HINKLEY since 1968 to the present. From 1968 to 1985, she lived at Mace Road and from 1985 to the present at another location within the PLUME. Growing up in HINKLEY, Plaintiff was directly exposed to Chromium-VI within the PLUME, even as defined by the Defendant PG&E. She swam in reservoirs within the PLUME, as well as the pool at the PARK on a regular basis during the summer months. She was told in 1997 by PG&E that "she did not have to worry," that she "did not live in a

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-37-





1  contaminated area." Plaintiff relied upon defendants material omissions and
2  misrepresentations.

3     124.  As a direct result of her exposure to the Defendants' Chromium-VI, Plaintiff
4  has suffered serious personal injuries, including but not limited to nose bleeds, ovarian cysts
5  removed by surgery, and uterine tumors. Because of her exposure to Chromium-VI, a
6  reproductive toxin, Plaintiff had a hysterectomy at age 28. Plaintiff would not have suffered
7  these injuries if it were not for the Defendants' material omissions. Plaintiff did not learn
8  until within one year of the filing of this complaint that poisonous Chromium VI had been
9  delivered to her home by the Defendants.

10    125.  Plaintiffs **Nora Cravens, Sandra Easton and Jean Thompson** lived on the
11  corner of Fairview and Community Blvd. within the PLUME, even as defined by PG&E.
12  Plaintiffs' former home was purchased by PG&E and destroyed as part of PG&E's plan to
13  conceal its conduct and to destroy the very evidence of its actions. Plaintiffs moved to
14  HINKLEY in May of 1981 and lived there until November of 1983. Plaintiff Nora Cravens
15  was the wife of John Earl Cravens who was the father of Plaintiffs Sandra Easton and Jean
16  Thompson. Plaintiff John Earl Cravens was a dairy worker who worked at the dairy across
17  the street from the STATION and which was destroyed by PG&E. The entire family was
18  exposed to high levels of Chromium-VI for two and one-half years.

19    126.  As a direct result of the Defendants' material omissions, Plaintiffs have each
20  suffered serious personal injuries. Plaintiff Norma Jean Cravens has sustained severe
21  headaches. In 1984, as a result of reproductive problems caused by exposure to
22  Defendants' Chromium-VI, Plaintiff underwent surgery for a hysterectomy. Plaintiff Sandra
23  Easton, had to have her left ovary removed because of cysts. She has also had a cyst
24  surgically removed from her left breast. She suffers from uterine cancer, as well as
25  suffering from severe bone and joint pain. She had a hysterectomy in 1984. Plaintiff Jean
26  Thompson has suffered migraine headaches, renal failure, removal of her gall bladder, as
27  well as respiratory and heart problems. Plaintiff had a hysterectomy at age 30. John Earl

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.



EXHIBIT A
PAGE 38

Case: 01-30923   Doc# 5959   Filed 12/20/01   Entered: 12/21/01 14:44:00   Page 43 of 109



1 Cravens died of lung cancer. He had not smoked for 20 years prior to his death. Defendant

2 PG&E has previously conceded that exposure to Chromium-VI can cause lung cancer.

3 John Earl Cravens was the father of Plaintiffs Sandra Easton and Jean Thompson, and the

4 husband of Nora Jean Thompson. He would not have died from lung cancer had

5 Defendants not exposed him to Chromium-VI.

6      127.   Plaintiffs Nora Cravens, Jean Thompson and Sandra Easton would not have

7 used the water had they known Defendants had poisoned their community's ground water

8 supply. Instead, these Plaintiffs, like all of the other Plaintiffs named in this complaint, used

9 the water for all types of everyday domestic uses and as a result have suffered various

10 severe personal injuries.

11      128.   Plaintiffs Nora Cravens, Jean Thompson, and Sandra Easton did not learn

12 they were poisoned by Defendant PG&E until February of 2000.

13      129.   Plaintiff **Gloria Wilhoit Darling** lived in HINKLEY from 1970 to 1984. During

14 the time she resided in HINKLEY she lived at 37764 Petra Road, an area within the

15 PLUME. In addition Plaintiffs former husband worked at the STATION. During her time in

16 HINKLEY, Plaintiff worked at the dairies which were within the PLUME, as defined by

17 Defendant PG&E. She also used the PARK on an average of three to four times per week

18 during the summers between 1969 and 1973. During much of the time Plaintiff lived in

19 HINKLEY, she was a P.T.A., Girl and Boy Scout leader. As such, she spent many weeks

20 at the Park camping and engaging in various other recreational activities for which the

21 PARK was designed by PG&E. In addition, Plaintiff visited friends who lived within the

22 PLUME, even as defined by PG&E.

23      130.   Gloria Darling was exposed to Chromium-VI at a time when the Defendants

24 knew the contamination of Chromium-VI in the water was injurious to humans. Despite this,

25 Defendants never told anybody about the contamination.

26      131.   Because of the Defendants' material omissions, Plaintiff Gloria Wilhoit Darling

27 has suffered devastating life threatening personal injuries including but not limited to lupus,

28



EXHIBIT A




1  bronchitis, numerous bladder, throat, and kidney infections, as well as cysts in her breasts,
2  gastro-intestinal problems, prolapse mitro valve, under active thyroid, and miscarriages.
3  Plaintiff had to undergo surgery to remove her gall bladder and had a hysterectomy at age
4  37. Plaintiff Gloria Wilhoit Darling first learned of the problem in HINKLEY during the
5  Anderson case, however, based upon the false statements by Defendant PG&E, believed
6  that she was not exposed to Chromium-VI and had no reason to believe her injuries were
7  the result of Defendants' poisoning of the groundwater, surface, subsurface and
8  atmosphere in HINKLEY. Plaintiff did not learn that he had been poisoned by defendant
9  through the HVWC until within one year of the filing of this complaint. Plaintiff, has within
10 one year of the filing of this complaint been diagnosed with cancer caused by her exposure
11 to Chromium VI.

12      132.    Had it not been for the Defendants' material omissions, Plaintiff Gloria Wilhoit
13 Darling would not have suffered the personal injuries set forth herein above. Plaintiff had
14 no health problems before moving to HINKLEY.

15      133.    Plaintiff **Virginia A. Davis** has lived in HINKLEY since 1981. From 1981 to
16 1983 she lived in a trailer on Tamarack. Her water came from a well located within the
17 PLUME, even as defined by PG&E. In 1983, Plaintiff moved to the corner of Alcudia and
18 Pera, an area which Plaintiffs allege was within the PLUME. From 1984 to 1997 Plaintiff
19 resided at 38034 Petra Road. Plaintiff alleges that all said addresses were within the
20 PLUME and that at all times she was exposed to the Chromium-VI poison the Defendants
21 deliberately dumped or was aware was being dumped into the underground water in the
22 HINKLEY Valley. In addition, Plaintiff visited the PARK to swim on a regular basis.
23 Furthermore, on a regular basis Plaintiff visited friends who lived within the PLUME, as
24 defined by Defendant PG&E.

25      134.    Because of exposure to the Chromium-VI which the Defendants willfully and
26 deliberately dumped into the PLUME and because of their material omissions of failing to
27 inform people that they were being exposed to a toxic chemical, Plaintiff Virginia Davis has

28



1 │ suffered severe personal injuries.

2 │     135.   Plaintiff has suffered headaches, gastro intestinal problems, fibrous cancer

3 │ in her uterus leading to a total hysterectomy at 42. She has also had her gull bladder

4 │ removed because of many infections. Plaintiff Virginia A. Davis would not have suffered

5 │ such devastating injuries had it not been for Defendants' material misrepresentations and

6 │ their total disregard for the health and safety of all of the named Plaintiffs. Plaintiff did not

7 │ learn of the HINKLEY contamination until May, 2000.

8 │     136.   Plaintiff **Annisia Clarice Dilbeck** lived in HINKLEY from her birth in 1976 to

9 │ 1994 and from 1997 to the present. From 1976 to 1977 she lived at 37702 Alcudia and

10 │ from 1977 to 1994 she lived at 37346 Mulberry. Plaintiff Annisia Clarice Dilbeck is a victim

11 │ of Defendant PG&E's "Poison Delivery Service." As set forth herein above, Plaintiffs who

12 │ lived on Mulberry Street had their water supplied by the HVWC on a regular basis by the

13 │ HFD. The HFD serviced the water needs of HVWC by filling the HVWC tank with water

14 │ from the PLUME, as defined by Defendant PG&E, without her knowledge. Plaintiff Annisia

15 │ Clarice Dilbeck was exposed to Defendants' Chromium-VI for over 17 years. From the age

16 │ of one year until she was eighteen years old, contaminated water laced with Chromium-VI

17 │ was regularly delivered to her family's water source. During this entire period, she had no

18 │ idea that the water she used and drank was contaminated. As alleged herein above, the

19 │ Defendants knew that she and others were using contaminated water from wells, in that

20 │ PG&E knew that it had arranged for the HFD to retrieve the toxic water as needed directly

21 │ from the STATION within the very heart of the PLUME. PG&E knew or should have known

22 │ that the HFD supplied water for domestic service throughout the community. In addition to

23 │ being poisoned directly by PG&E via the HFD, Plaintiff was exposed to Chromium-VI as a

24 │ result of her use of the PARK while growing up in HINKLEY. Plaintiff also visited friends

25 │ and swam in reservoirs within the PLUME, even as defined by Defendant PG&E.

26 │     137.   Because of Defendants' material omissions and willful and deliberate

27 │ poisoning of Plaintiff Annisia Clarice Dilbeck, as well as her family they have suffered

28 │



1   devastating serious personal injuries. Plaintiff is the daughter of Plaintiff Enedelia Mahoney.
2   She and her mother, aunts, grandfather, grandmother, and all other family members have
3   suffered serious personal injuries. Plaintiffs mother, aunt, grandmother have all had
4   hysterectomies as a direct result of being exposed to Defendants' toxic Chromium-VI.

5       138.   Plaintiff Annisia Clarice Dilbeck has suffered ovarian tumors and cysts
6   resulting in a hysterectomy at age 19. Plaintiff also suffers from respiratory problems,
7   rashes and, when growing up, nose bleeds. Had it not been for Defendants' material
8   omissions, this Plaintiff would not have suffered these injuries at such a young age. Plaintiff
9   did not learn of the Defendants' contamination of the groundwater until May 2000. Plaintiff
10  has not lived in the Hinkley area for over 20 years and had no way of knowing he had been
11  poisoned by PG&E until within one year of the filing of this complaint. Plaintiff is a resident
12  of Orange County.

13      139.   Plaintiff Dondalene Ruth Floyd moved to HINKLEY at the age of seven in
14  1960. From 1960 to 1973 and 1975 to 1976 she resided at 37474 Mulberry, thereafter she
15  resided at 23122 Santa Fe and 23118 Santa Fe from 1981 to 1987. From 1987 to 1995
16  she resided at 21234 Rainbow Road, Hidden River, Blanca, HINKLEY Road and again at
17  37414 Mulberry. During her life in HINKLEY, Plaintiff had poisonous Chromium-VI delivered
18  to her home from PG&E via the HFD. At no time did Plaintiff know or have reason to
19  suspect that she was being poisoned by Defendants with toxic Chromium-VI. Plaintiff and
20  her family have suffered serious personal injuries as a result of Defendants' material
21  omissions in failing to notify Plaintiff that they had poisoned the water. Plaintiff alleges that
22  all times she resided at the addresses listed above, she lived within the PLUME.
23  Furthermore, Plaintiff alleges that Defendants had in their possession test data prior to 1987
24  regarding the well at 23122 and 23118 Santa Fe and that such data revealed that said wells
25  were contaminated with Chromium-VI in excess of the EPA standard of .05 ppb.

26      140.   Plaintiff was also exposed to Chromium-VI while growing up and swimming
27  at the PARK every summer. In addition, Plaintiff swam in reservoirs and visited friends
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-42-





1  within the PLUME, even as defined by Defendant PG&E.

2      141.   Plaintiff Dondalene Ruth Floyd has suffered nose bleeds, headaches, gastro-
3  intestinal problems, skin cancer, heart problems, multiple miscarriages, cysts in her breast,
4  and seizures. Had it not been for Defendants' conduct, Plaintiff would not have suffered
5  said injuries. Defendants' material omissions have devastated her health, as well as that
6  of her family. Plaintiff's sister Tammy Bernice Morris born on May 12, 1967 and died on
7  December 29, 1968 of toxic shock caused by exposure to Chromium-VI. When Plaintiff first
8  discovered the contamination, she was told by Defendant PG&E that she did not live within
9  the PLUME and, therefore, was safe from any health problems associated with Chromium-
10 VI exposure. Plaintiff recently learned in June of 2000 that while growing up on Mulberry
11 that Defendants had poisoned her and her family.

12     142.   Plaintiff **Dauna Hensley Cole** lived in HINKLEY from October 1953 to 1969.
13 At that time, she resided at 21284 Santa Fe. Plaintiff contents that she resided within the
14 PLUME. Further, she asserts that she was exposed directly to Defendants' poisonous
15 Chromium-VI because she used the PARK on a weekly basis for over 16 years. In addition,
16 Plaintiff spent time within the PLUME, as defined by Defendant PG&E, visiting friends and
17 the dairy across the street from the STATION.

18     143.   As a direct result of the Defendants' omission, Plaintiff has suffered serious
19 personal injuries, specifically brain tumors. Plaintiff has had to undergo seven surgeries to
20 remove tumors caused by her exposure to Defendants' Chromium-VI. At no time prior to
21 March 2000, did Plaintiff know or have reason to know that she had been poisoned by
22 Defendants.

23     144.   Plaintiff **Barbara Annette Hill** moved to HINKLEY in 1980. From 1980 to
24 1993 she resided at 36536 Flower Street and from 1993 to the present, at 21250 Frontier.
25 In addition, Plaintiff visited friends who lived within the PLUME, as defined by PG&E.
26 Plaintiff also used the PARK on a regular basis during the summer months. During all of
27 the times mentioned above, Plaintiff was exposed to Defendants' poisonous Chromium-VI.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-43-



EXHIBIT 4
PAGE 4 of 4



1 At no time did Defendants inform Plaintiff that they had poisoned the water she was using
2 for domestic purposes.

3      145.    Because of Defendants' material omissions, Plaintiff Barbara Annette Hill has
4 suffered numerous and severe personal injuries, including ovarian cysts, mitro valve
5 prolapse, irregular heart beat, bronchitis, gastro-intestinal problems bone and joint pains.
6 Plaintiff did not learn of the fact that Defendants poisoned her until May 2000. Plaintiff had
7 no major health problems prior to moving to HINKLEY.

8      146.    Plaintiff **Della Elizabeth Kilfian** lived in HINKLEY from 1971 to 1981. During
9 that time Plaintiff lived on the corner of Flower and Acacia and Somerset and Thompson.
10 Plaintiff alleges that during the times named above, she lived within the PLUME. During the
11 time Plaintiff lived on Flower Street, she was a victim of Defendant PG&E's "Poison Delivery
12 Services," in that the HFD delivered Chromium-VI contaminated water directly to her home.
13 At no time was she informed that the water she was using during her years on Flower and
14 Acacia was contaminated with Chromium-VI.

15      147.    As a direct result of Defendants' material omissions, Plaintiff has suffered
16 devastating personal injuries along with her family. Plaintiff is the sister of Plaintiff Michael
17 Adams and the sister-in-law of Plaintiff Dorothy Adams. Plaintiff has a hyperactive thyroid,
18 arthritis, has had breast cancer and had to undergo a mastectomy. Plaintiff's child Malichi
19 Loehr was born on April 5, 1981 with birth defects and lived one day. Plaintiff had been
20 exposed to high levels of Defendants' poisonous Chromium-VI, a known reproductive
21 toxicant. Plaintiff did not know or have reason to know that Defendants, and each of them,
22 had poisoned her and her family.

23      148.    Plaintiffs **Lewis A. Kay, Lewis David Kay, and Norma Jean Kay** lived in
24 HINKLEY as a family at 36506 Mt. View. Norma Jean Kay and Lewis A. Kay were husband
25 and wife and Lewis David Kay is their son. Plaintiffs Norma Jean Kay and Lewis A. Kay
26 have lived at the above address on Mt. View since 1973. Plaintiff, Lewis David Kay lived
27 at the Mt. View address from 1973 to 1982. During that time they lived within the PLUME.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.



EXHIBIT A



1 In addition to their direct exposure at their residence, all of the above named Plaintiffs would
2 use the PARK for swimming and picnics. Prior to moving to HINKLEY, the Kay family
3 regularly visited friends and family members who lived within the PLUME. At no time were
4 any of the Plaintiffs informed that Defendants had poisoned the groundwater which they
5 used for domestic purposes. Plaintiff did not learn of this fact until within one year of the
6 filing of this lawsuit.

7      149. As a direct result of Defendants' omissions, Plaintiffs have been devastated
8 by personal injuries caused by Defendants' deliberate poisoning of the environment.
9 Plaintiff **Norma Jean Kay** has had non-cancerous tumors removed from her lungs. She
10 also underwent a gall bladder operation. She has also experienced breast tumors, cysts
11 and tumor of the ovary and uterus resulting in a hysterectomy, skin cancer, fibromalagia,
12 respiratory problems, heart problems, irritable bowel syndrome, headaches and memory
13 loss.

14      150. Plaintiff Lewis A. Kay has suffered from kidney problems, respiratory
15 problems, strokes, nose bleeds, headaches and memory loss.

16      151. Plaintiff Lewis David Kay has suffered blisters on his lungs, liver problems,
17 asthma, rashes, skin cysts, nose bleeds, headaches.

18      152 Prior to moving to HINKLEY Plaintiffs Norma Jean Kay, Lewis A. Kay and
19 Lewis David Kay enjoyed good health. Plaintiffs first learned that Defendants had poisoned
20 the groundwater and environment in HINKLEY in February 2000.

21      153. Plaintiff **Vincent Kopitsky** lived in HINKLEY from 1972 to 1997 at 21286 Ash
22 Street. Plaintiff has been a victim of Defendant PG&E's Poison Delivery Service in that
23 throughout the time Plaintiff lived on Ash he had Defendants' contaminated toxic
24 carcinogenic water delivered directly to his residence for over 25 years. Plaintiff worked
25 within the PLUME, specifically at the Dairy. Plaintiff worked in the alfalfa fields across from
26 the STATION and would use the PARK for recreational purposes.

27      154. Because of Defendants' material omissions, Plaintiff is suffering from life

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT A      -45-
PAGE 45 of 104



1  threatening personal injuries. Defendants' poisoning has caused devastation to Plaintiffs

2  family. Plaintiff has bladder and prostate cancer and is currently set to have surgery. In

3  addition Plaintiff has suffered heart problems, gastrointestinal problems, nose bleeds,

4  headaches and other medical problems all as a result of being poisoned by Defendants.

5  Plaintiff did not become aware that Defendant PG&E delivered poisonous Chromium-VI to

6  his residence until June of 2000.

7      155.   Plaintiff **Paula Sue Hunter Copp** is the niece of Plaintiff Norma Jean and

8  Lewis A. Kay. Plaintiff has lived in HINKLEY her entire life and has been exposed to

9  Defendants' poisonous Chromium-VI since the 1950's. Plaintiff has lived on Mt. View,

10 Community Boulevard, and Dixie Road south of Highway 58 for extended periods of time.

11 Plaintiff, throughout the course of her life growing up in HINKLEY, used the PARK, visited

12 friends and relatives who lived within the PLUME.

13      156.   Plaintiff has suffered personal and psychological injuries because of

14 Defendants' despicable conduct. Plaintiff has had thirteen (13) miscarriages, a child who

15 died at the age of 4½ months, endometriosis, cysts on her ovaries, fibromalagia, nerve

16 damage, nose bleeds, headaches, and in 1974, at the age of 23 Plaintiff underwent a

17 hysterectomy. Plaintiff would not have suffered these injuries of she had not been poisoned

18 by Defendants. Plaintiff did not become aware of these facts until within one year of the

19 filing of this complaint.

20      157.   Plaintiff **Connie Sue Paul Melton** lived in HINKLEY from 1959 to 1965 at

21 36682 Mt. View Road. In addition to her residence being in the PLUME, Plaintiff swam in

22 reservoirs within the PLUME.

23      158.   Plaintiff and her family have been devastated as a result of being poisoned

24 by Defendants. Plaintiff's sister have suffered similar personal injuries. Plaintiff is the sister

25 of Plaintiff Randolph Phillip Melton who has suffered personal injury. Their father died from

26 cancer as a result of being exposed to Defendants' poison. Plaintiff lived in HINKLEY at a

27 time when the levels of Chromium-VI were thousands of times above the allowable levels

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-46-

EXHIBIT __4__





1 of .05 ppb, all of which Defendants, and each of them, knew and knew that Plaintiffs' lives

2 were in danger as a result of being exposed to Chromium-VI. Plaintiff Connie Sue Melton

3 has not lived in the Hinkley area for over twenty years and in fact has lived in Minnesota.

4 Plaintiff had no knowledge that she had been poisoned by defendant until within one year

5 of the filing of this complaint. Plaintiff did not become aware of this fact until within one year

6 of the filing of this complaint.

7    159.   Plaintiff Connie Sue Paul Melton has suffered nose bleeds, headaches,

8 rashes, gastrointestinal problems, respiratory problems, urinary tract infections, ovarian

9 cysts resulting in a hysterectomy at the age of 42. Plaintiff's father Phillip Melton died of

10 kidney, lung and bone cancer as a result of being exposed to Defendants' poisonous

11 Chromium-VI.

12    160.   Plaintiff **Randolph Phillip Melton** lived in HINKLEY from 1959 to 1965 at

13 36682 Mt. View and is the brother to Plaintiff Connie Sue Paul Melton. Plaintiff swam in

14 reservoirs within the PLUME. As a result of Defendants' material omissions, Plaintiff has

15 suffered personal injuries as well as the loss of his father Phillip Melton who died of cancer

16 after being exposed to Defendants' poison. Plaintiff did not become aware of this fact until

17 within one year of the filing of this complaint. Within one year of the filing of this complaint

18 Plaintiff had to undergo surgery as a result of reproductive problems caused by exposure

19 to Chromium VI.

20    161.   Plaintiff Randolph Phillip Melton has suffered gastrointestinal problems

21 resulting in the removal of 3/4 of his stomach in 1968, acid reflex, nose bleeds, headaches,

22 testicular tumors, irritable bowel syndrome and other health problems related to Chromium-

23 VI exposure. Had it not been for Defendants' material omissions Plaintiff would not have

24 suffered such horrific injuries.

25    162.   Plaintiff **Amber Morris** has lived in HINKLEY her entire line and is the

26 daughter of Plaintiffs Lynn and Robert Morris and the Granddaughter of Plaintiffs John and

27 Patsy Morris and the niece of Plaintiff Dondalene Ruth Floyd. Plaintiff did not learn she had

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-47-



1  been poisoned while living on Mulberry through the HVWC until within one year of the filing
2  of this complaint.

3         163.    During her life Plaintiff Amber Morris lived at 36696 Valley Wells, Petra Road,
4  37922 Blanca Road, and at her grandparents on Mulberry.  Plaintiff used the PARK on a
5  regular basis during the summer months.  Plaintiff visited numerous friends who lived within
6  the PLUME.

7         164.    Plaintiff Amber Morris is only 19 years old, yet because of her exposure to the
8  toxic Chromium-VI Defendants dumped into the groundwater, Plaintiff has had kidney and
9  respiratory problems, nose bleeds, headaches and cysts on her ovaries.  Plaintiff did not
10 become aware of this fact until within one year of the filing of this complaint.

11        165.    Plaintiff Amber Morris would not have suffered such injuries had it not been
12 for the material omissions and despicable conduct of Defendants.

13        166.    Plaintiff Amber Morris was a victim of Defendant PG&E's "Poison Delivery
14 Service" in that during the time she lived on Mulberry, Defendants' contaminated toxic
15 poison was delivered to her residence via the HFD.  Plaintiff was unaware and did not learn,
16 until within one year of the filing of this complaint that while living on Mulberry she had been
17 poisoned by the Defendants through the HVWC via the HFD.

18        167.    Plaintiff **Lynn Morris** is the mother of Plaintiff Amber Morris, wife of Plaintiff
19 Robert Morris and the daughter-in-law of Plaintiffs John and Patsy Morris.  She has lived
20 her entire life in HINKLEY.  Born in 1954, the Plaintiff has lived on Petra Road, Valley Wells,
21 Mulberry, Blanca Road, and Irwin Road.  At all times Plaintiff resided in the PLUME and was
22 exposed to toxic life threatening Chromium-VI that Defendants dumped into the
23 groundwater.  During her time in HINKLEY, Plaintiff swam in reservoirs within the PLUME,
24 camped at the PARK, visited the Dairy across the street from the STATION and visited
25 friends who lived within the PLUME.

26        168.    Plaintiff and her family have suffered greatly because of Defendants'
27 despicable conduct and material omissions.  Plaintiff has had cysts in her breasts, nose

28
                  SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

                  EXHIBIT   A        -48-



1  bleeds, and poor and deteriorating teeth. Plaintiff's mother, Clara Burns, died of intestinal
2  cancer in 1980 while living within the PLUME at Perra and Blanca. Plaintiff's mother had
3  lived in HINKLEY from 1952 to 1980, the time of her death.

4      169. Plaintiff Lynn Morris' mother Clara Burns died because of Defendants '
5  depraved indifference to human life. Had it not been for Defendants' material omissions,
6  Plaintiff and her family would not have suffered the injuries alleged above. Plaintiff did not
7  learn Defendants had poisoned her and her family until May of 2000.

8      170. Plaintiff **John Morris** is the Grandfather of Plaintiff Amber Morris, the husband
9  of Plaintiff Patsy Morris, the father of Plaintiff Dondalene Ruth Floyd and the father-in-law
10 of Plaintiff Lynn Morris.

11     171. Plaintiff John Morris has lived in HINKLEY since 1960 at 37414 Mulberry.
12 Plaintiff has been a victim of Defendant PG&E's *Poison Delivery Service.* Plaintiff has been
13 directly exposed to Defendants' Chromium-VI by having the HFD deliver the toxic water to
14 his home. Plaintiff throughout his life in HINKLEY would use the PARK, visit friends who
15 lived in the PLUME, swim in reservoirs within the PLUME and visited relatives who also
16 lived within the PLUME. Plaintiff did not become aware of this fact until within one year of
17 the filing of this complaint.

18     172. As a direct result of Defendants' omissions and exposure to their poisonous
19 Chromium-VI, Plaintiff John Morris has contracted eye and prostrate cancer along with
20 other health problems. Plaintiff did not learn until June of 2000 that Defendants had
21 poisoned he and his family.

22     173. Plaintiff John Morris and **Patsy Morris** had a child who died as a direct result
23 of being exposed to Defendants' poison. Tammy Morris was born on May 12, 1967 at a
24 time when Defendants knew they had contaminated the groundwater. Tammy lived her
25 whole life in HINKLEY at a time when the PLUME contained the highest level of Chromium-
26 VI according to Defendants' own records. Tammy Morris was exposed to Defendants
27 poison at her home on 37414 Mulberry. During the summer of 1967, the HFD delivered

28





1   water to the water tanks which serviced her home. Tammy Morris was exposed to poison
2   that her body was unable to survive. On December 12, 1968 after only nineteen months
3   of life, Tammy Morris died from toxic poisoning. Tammy died as a direct result of
4   Defendants' actions. Defendants, and each of them, are responsible for the death of
5   Tammy Morris.

6         174.   Plaintiff Patsy Morris is the wife of Plaintiff John Morris, the mother of Plaintiff
7   Dondalene Floyd. She was the mother of Tammy Morris. From 1960 until the present
8   Plaintiff has resided at 37414 Mulberry and has been exposed to Defendants poisonous
9   Chromium-VI directly via the HFD. Plaintiff has been poisoned by Defendant during the
10   countless times she used the PARK.

11         175.   Defendants killed Plaintiff Patsy Morris' child and caused her to suffer physical
12   injuries. Because Defendants poisoned Plaintiff Patsy Morris, she has breast cysts, had her
13   gall bladder removed, has colon tumors, skin cancer, and gastrointestinal bleeding. As a
14   result of the tumors and cysts in her uterus, Plaintiff had to have a hysterectomy. Plaintiff
15   moved from the Hinkley area prior to any publicity regarding the contamination of the water
16   in Hinkley.

17         176.   Plaintiff **Enedelia M. Mahoney** has lived in HINKLEY since the age of seven.
18   From 1965 to 1975, she lived at 37878 Pera. From 1975, she lived at 37702 Alcudia, and
19   from 1977, to the present, she has resided at 37346 Mulberry. During all of the time she
20   resided within Defendants' toxic PLUME. As alleged above, during the time she lived on
21   Mulberry, Defendants' poisonous Chromium-VI was delivered to her via the HFD. Plaintiff
22   also used the PG&E PARK on countless occasions in addition to visiting friends who lived
23   within the PLUME.

24         177.   As a direct result of her long term exposure to Chromium-VI, Plaintiff has
25   suffered nosebleeds, respiratory problems, uterine tumors, and headaches. As a result of
26   her exposure to the reproductive toxicant. Defendants deliberately dumped contaminated
27   water into the HINKLEY ground water system without informing Plaintiff of their actions and
28





1 knowledge of the contamination. As a result, the Plaintiff has undergone a hysterectomy.

2 Plaintiff relied on the misrepresentation and material omission of defendant in believing her

3 health problems were not caused by defendants poisoning of the water in Hinkley. Plaintiff

4 did not learn of the foregoing until at least May 2000.

5        178.   Plaintiff **Karen Kay Stickley** lived in HINKLEY from her birth in 1953 to 1971.

6 During that period, she lived at the corner of HINKLEY Road and Irwin Court from 1953 to

7 1955. From 1955 to 1971, she lived at 37922 and 38005 Blanca Road. Plaintiff used the

8 PARK on a regular basis during the time she was time growing up in HINKLEY. She swam

9 in reservoirs within the PLUME. Plaintiff's father was a Fire Chief for the HFD. Plaintiff

10 spent countless hours playing at the Fire Department. Plaintiff's father used the Fire

11 Department's truck to fill the family pool with water retrieved from Defendant PG&E's facility

12 at the STATION. Every summer, Plaintiff and her family swam in the PG&E pool which was

13 laced with Defendants' poisonous Chromium-VI.

14        179.   As a direct result of her exposure to Defendants' poison, Plaintiff has suffered

15 nose bleeds, poor teeth, respiratory problems, and has been diagnosed with lupus. Plaintiff

16 did not learn she had been poisoned by Defendants until May, 2000.

17        180.   Plaintiff **Jeffrey Allen Turner** lived in HINKLEY from 1965 to 1995. From

18 1965 to 1985, he resided on Santa Fe between Somerset and Mt. View. From 1970 to

19 1975, he lived at 36550 HINKLEY Rd. From 1975 to 1985, he lived at 37330 Mulberry.

20 Growing up in HINKLEY, he swam in the reservoirs within the PLUME, visited friends within

21 the PLUME, and used the PARK countless times. During the ten year period he resided

22 on Mulberry, Plaintiff was a victim of Defendants' *Poison Delivery Service* via the HFD.

23        181.   As a direct result of Plaintiff's exposure to the toxic Chromium-VI that

24 Defendants intentionally dumped in the pristine groundwater of the HINKLEY Valley and its

25 material omissions, Plaintiff has suffered personal injury. Turner has suffered nose bleeds,

26 respiratory problems, rashes, tumors, Bells palsy, and bone and joint pain. Plaintiff did not

27 learn she had been poisoned by the defendant until within one year of the filing of this

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT A

-51-

1  complaint.

2      182.    Plaintiff **Jacqueline A. Nelson-Turner** was born in HINKLEY and still resides
3  there.  After her birth, Plaintiff resided on Santa Fe between Somerset and Fairview from
4  1965 to 1970.  From 1970 to 1975, she resided at 36550 HINKLEY Rd.  In 1975, she lived
5  at 37330 Mulberry and lived there until 1989.  In 1989, she moved to Indian Wells.  Plaintiff
6  used the PARK on countless occasions while growing up in HINKLEY.  In addition, she
7  swam in reservoirs and visited friends who lived within the PLUME.  During the time Plaintiff
8  lived on Mulberry, Defendants' toxic Chromium-VI was delivered directly to her home via the
9  HFD as alleged above.

10      183.    As a direct result of being poisoned by Defendants, Plaintiff and virtually every
11  member of her family has suffered serious life changing personal injures.  Plaintiff has
12  endured uterine tumors, Epstein-Barr syndrome, hypertension, dermatitis, kidney and
13  severe respiratory problems to the point of having to take six to eight medications per day,
14  headaches, and gastrointestinal difficulties.  Plaintiff has undergone numerous surgeries,
15  including having a hysterectomy.  Two of Plaintiff's children suffered injuries as a direct
16  result of Plaintiff being exposed to Defendants' Chromium-VI.  Plaintiff did not learn she had
17  been poisoned by Defendants until May, 2000.

18      184.    Plaintiff **Julia Turner** is the mother of Plaintiff Jacqueline A. Nelson-Turner
19  and has resided in HINKLEY since 1965.  From 1965 to 1970, Plaintiff resided on Santa Fe
20  between Mt. View and Somerset.  From 1970 to 1975, Plaintiff lived at 36550 HINKLEY Rd.
21  In 1975, Plaintiff moved to 37330 Mulberry and resided there until 1990.  In 1990, Plaintiff
22  moved to 36570 Indian Wells.  During her time on Mulberry, Plaintiff and her family were
23  poisoned directly by Defendants in a manners as alleged above.  During her years in
24  HINKLEY, Plaintiff used the PARK on countless occasions.  She fed her family with various
25  foods produced within the PLUME.  She visited friends who lived next to PG&E's STATION.
26  Plaintiff's exposure to the deadly Chromium-VI has been long term with devastating results
27  to her and to her family.

28

Case: 01-30923   Doc# 2955   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 57 of 109



185.  Plaintiff Julia Turner has suffered sinus, gastro intestinal, kidney, respiratory, and heart problems, as well as urinary tract infections, uterine tumors/cysts resulting in a hysterectomy.  Plaintiff Turner learned that Defendants poisoned her in May of 2000.  Had it not been for Defendants' contamination and material omissions, Plaintiff would not have suffered the above listed injuries.  Plaintiff did not learn until within one year of the filing of this complaint that while living on Mulberry her water was poisoned by defendant PG&E in the manner described above regarding the HVWC.

186.  Plaintiff **Joe P. Turner, Jr.** has lived in HINKLEY since 1965.  Plaintiff lived on Santa Fe and Somerset.  In 1970 to 1975 he resided at 36550 HINKLEY Road, from 1975 to 1983 he resided at 37330 Mulberry and from 1985 to the present Plaintiff has resided on Indian Wells Road.  During his time in HINKLEY, Plaintiff used the PARK, swam in reservoirs and worked in various fields within the PLUME.  In addition, Plaintiff was poisoned by Defendants directly in the manner described above by PG&E's *Poison Delivery Service*.  Plaintiff is the son of Plaintiff Julia Turner and the brother of Plaintiff Jacqueline A. Nelson-Turner.

187.  Plaintiff Joe P. Turner, Jr. has suffered personal injuries as a direct result of Defendants' omissions.  Plaintiff has suffered severe respiratory problems, nose bleeds, gastrointestinal problems, urinary infections, heart problems, prolapsed mitrovalve contractions, rashes, bone and joint pain, and bad teeth.  Plaintiff did not learn Defendants had poisoned him until May of 2000.

188.  Plaintiff **John D. Turner** is the brother of Plaintiffs Jacqueline A. Nelson-Turner and Joe P. Turner, Jr. and the son of Plaintiff Julia Turner.  Plaintiff has lived at all the following addresses in HINKLEY Santa Fe between Somerset and Fairview, Mulberry Road, HINKLEY Road.  Plaintiff, while growing up in HINKLEY used the PARK on countless occasions.  He also swam in reservoirs and visited friends who lived within the PLUME.

189.  A direct result of Defendants' material omissions, Plaintiff has suffered from personal injuries which include, but not limited to nose bleeds, respiratory problems, bone





1    and joint pains, and non-cancerous tumors on his left testicle.

2        190.    Plaintiff **Joe P. Turner, Sr.** is the father of Plaintiff Joe P. Turner, Jr., John D.

3    Turner, Jeffrey Allen Turner and Jacqueline A. Nelson-Turner and the husband of Plaintiff

4    Julia Turner.   Plaintiff has lived at the same address in HINKLEY at the same times as

5    Plaintiff Julia Turner.

6        191.    Plaintiff Joe P. Turner, Sr. has suffered serious injuries as a direct result of

7    exposure to Defendants' poisonous Chromium-VI.  Plaintiff and his family have suffered as

8    alleged above because of Defendants' material omissions regarding their poisoning of the

9    water in the HINKLEY Valley.  Plaintiff has suffered severe dermatitis, heart valve problems,

10   growth of tumors in his nose, respiratory problems, rashes, nose bleeds, headaches, and

11   bone and joint disease.

12       192.    Plaintiff **Paul David Waters** has lived in HINKLEY from 1962 to 1970 at 36626

13   Mt. View Road and from 1980 to the present.  While growing up in HINKLEY he too swam

14   in the reservoirs and visited friends within the PLUME.

15       193.    Plaintiff Paul David Waters has suffered from nose bleeds, headaches,

16   gastrointestinal problems, cysts in his throat requiring removal by surgery, and heart

17   problems all as a result of Defendants'  material omissions and deliberately dumping of

18   Chromium-VI into Plaintiffs water.  Plaintiff did not learn of Defendants' poisoning of his

19   water until May of 2000.

20       194.    Plaintiff **Rosalie Waters** is the wife of Plaintiff Paul David Waters and has

21   lived in HINKLEY from 1965 to 1971 and from 1982 to the present.  Plaintiff, on countless

22   occasions, swam in the reservoirs within the PLUME, visited friends who lived within the

23   PLUME, all in addition to using the PARK.

24       195.    Plaintiff Rosalie Waters, as a direct result of Defendants' material omissions

25   has suffered personal injuries, including but not limited to, headaches, memory problems,

26   nose bleeds, cysts in her breast, ovarian cysts, rashes, gastrointestinal problems, Plaintiff

27   had to have a hysterectomy performed because of the ovarian cysts.  Plaintiff has suffered

28




1  these injuries because Defendants poisoned her water and then made material omissions
2  and other fraudulent representations. Plaintiff first learned Defendants had poisoned her
3  in May of 2000. Plaintiff had no knowledge that the water supplied to the HFD by defendant
4  PG&E was poisoned.

5      196.  Plaintiff **Carol Ann (Hunter) Walker** started visiting HINKLEY in 1955 at the
6  age of 6 years old and vacationed in HINKLEY throughout her life. Her sister is Plaintiff
7  Paula Sue Hunter Copp. Her aunt and uncle are Plaintiffs Norma Jean Kay and Lewis A.
8  Kay. Plaintiff spent long periods of time in HINKLEY over forty years. Plaintiff's parents
9  moved to HINKLEY on Community Boulevard in 1977. Plaintiff stayed with friends who
10 lived on Dixie Road in HINKLEY. Plaintiff for over three decades from the 1950's through
11 the 1980's swam in the reservoirs, in and around the area and used the PARK, all of which
12 were within the PLUME.

13     197.  Plaintiff has suffered extreme personal injuries as a result of being exposed
14 to Chromium-VI which Defendants purposely dumped into the groundwater and general
15 environment throughout HINKLEY. As a direct result of defendant's' material omissions,
16 Plaintiff has suffered cysts/tumors on her ovaries, fibromalagia, headaches, nose bleeds,
17 cysts in her breast, non cancerous lumps in her neck, chronic knee and joint pain, chronic
18 pain and fatigue. Plaintiff had to undergo a hysterectomy at age 25, because of damage
19 done by Defendants' poisonous acts. Plaintiff did not learn she had been poisoned until
20 May 2000. Plaintiff moved from Hinkley area and did not learn he had been poisoned by
21 defendant PG&E until within one year of the filing of this complaint.

22     198.  Plaintiff **Diane Marie Zuniga** lived in HINKLEY at 23124 Santa Fe Road from
23 1979 until 1984 and from 1989 to 1990. During her time in HINKLEY, Plaintiff used the
24 PARK on several occasions. Her former residence on Santa Fe was within the PLUME and
25 for over five years she was exposed to the poisonous Chromium-VI that Defendants
26 dumped into the environment with a total disregard for the health, safety, and rights of
27 human beings.

28

Case: 01-30923    Doc# 3985    Filed: 12/20/01    Entered: 12/21/01 14:44:00    Page 60 of 109



199.   Plaintiff Diane Marie Zuniga has suffered noses bleeds, rashes, bladder infections, kidney infections, uterine tumors, respiratory problems, and recently heart problems. Plaintiff has been told she is in need of a hysterectomy. All of Plaintiffs injuries were caused by her exposure to Defendants' Chromium-VI. Plaintiff did not know she had been poisoned by defendant PG&E until within one year of the filing of this complaint.

200.   **Vanessa M. Woodyard and Victoria J. Woodyard** are minors and hereby bring this action by and through their Guardian Ad Litem, their mother, Plaintiff Jacqueline A. Nelson-Turner. Both children have been exposed to Chromium-VI through their mother who conceived them while in HINKLEY and passed on the Chromium-VI to them during gestation. Plaintiff did not learn that PG&E had poisoned her family and herself through the HVWC until within one year of the filing of this complaint.

201.   Victoria J. Woodyard suffers severe allergies, dermatitis, headaches, gastro-intestinal problems, and decaying teeth. Vanessa M. Woodyard suffers from pigment changes in her skin, rashes, kidney and bladder infections. These injuries would not have occurred but for Defendants' material omissions as set forth above. Victoria J. Woodyard was born on November 17, 1991 and Vanessa M. Woodyard was born on December 9, 1992.

202.   Plaintiff **Kim Lane Livingston** lived in HINKLEY on Mt. View from 1965 to 1971 and on HINKLEY Road from 1987 to 1993. During her time in HINKLEY, Plaintiff used the PARK on numerous occasions. She swam in the reservoirs within the PLUME and was thereby exposed to the poisonous toxic Chromium-VI the Defendants deliberately dumped into the water supply the whole time she resided in HINKLEY. Plaintiff had no knowledge that water supplied to the HFD by PG&E was poisoned with CRVI. Plaintiff learned of this fact within one year of the filing of this complaint.

203.   As a result of Defendants' material omissions, Plaintiff has suffered headaches, nose bleeds, respiratory problems and cervical cancer, blood clots, miscarriages, gall bladder removal and other serious medical conditions. Defendants'

EXHIBIT A
PAGE 36 of 109




1  material omissions is the direct cause of the injuries suffered by Plaintiff. Plaintiff did not
2  learn she had been poisoned by the defendant until May of 2000.

3      204.   Plaintiff **Roberta A. Butterfield** lived in HINKLEY from 1952 to 1961. Her
4  parents continued to live in HINKLEY on Mulberry throughout the 1960's and 1970's, during
5  which time Plaintiff was a regular visitor. During her time in HINKLEY Plaintiff resided on
6  Community Boulevard, swam in the reservoirs and used the PARK on countless occasions.
7  Plaintiff visited her friends who lived across the street from the STATION. Plaintiff was
8  exposed to the toxic water at the time when the levels of Chromium-VI were certain to
9  cause injury and death. Defendants poisoned Plaintiff directly when she visited her parents
10  home on Mulberry in the manner described above in this complaint.

11      205.   Because of Defendants' disregard for human life, Plaintiff has suffered ovarian
12  cysts, uterine tumors, fibrocysts breast disease, endometriosis, and a hysterectomy. All of
13  Plaintiffs injuries were the result of her exposure to Defendants' toxic Chromium-VI
14  deliberately dumped into the water supply of the HINKLEY Valley. Plaintiff's mother Vevia
15  C. Ricks resided on Mulberry and was not as fortunate as Plaintiff in that she contracted
16  colon cancer as a direct result of being poisoned by Defendants. Plaintiff's mother was
17  killed by Defendants. Plaintiff did not learn she had been poisoned by Defendants and that
18  her mother had been killed by them until June of 2000. Plaintiff has learned within on year
19  of the filing of this complaint that water delivered by HFD to the water tanks of HVWC was
20  poisoned by PG&E.

21      206.   Plaintiff **Helen Eileen Wildrick** is the sister of Plaintiff Roberta A. Butterfield
22  and the daughter of the late Vevia C. Ricks. Plaintiff lived in HINKLEY from 1952 to 1965
23  and was a frequent visitor thereafter to her parents who resided on Mulberry. During her
24  time in HINKLEY she resided between Community Boulevard and Highway 58, on Mulberry
25  and on HINKLEY Road. Plaintiff swam at the PARK and in the reservoirs and visited friends
26  who lived next to the STATION. Plaintiff was exposed to contaminated toxic water when
27  the levels of Chromium-VI were deadly for humans.

28


EXHIBIT A



207. As a result of Defendants' material omissions Plaintiff Helen Eileen Wildrick has suffered nose bleeds, ovarian cysts/uterine tumors resulting in a hysterectomy. Plaintiff has suffered additional health problems as a direct result of Chromium-Vi exposure. Plaintiff was poisoned by Defendants directly in a manner described above while living on Mulberry. Plaintiff's mother was killed by Defendants when she contracted colon cancer as a direct result of being poisoned by Defendants with Chromium-VI. Plaintiff first learned that her mother had been killed by Defendants and that she had been poisoned in May of 2000. Plaintiff did not learn that while residing on Mulberry she was the victim of defendants PG&E poisoning through the HVWC until within one year of the filing of this complaint.

208. Plaintiff **Walter E. Young** lived in HINKLEY with is wife Mary Young from 1977 to 1986. From 1977 to 1981 they resided on Hervey Road, less than one mile from the STATION and well within the PLUME. From 1981 to 1986 they resided at 37542 Flower Street. During their time in HINKLEY, Plaintiff Walter E. Young and his wife Mary used PG&E's PARK to swim and recreate.

209. Plaintiff and his wife were exposed to toxic levels of Chromium-VI as a direct result of the Defendants' total disregard for human life. Defendants' material omissions have resulted in Plaintiff suffering nose bleeds, urinary tract and bladder infections, and headaches. Plaintiff's wife, Mary Lou Young developed pancreatic cancer and died. Plaintiff's wife was poisoned by Defendants. Plaintiff and his wife were poisoned in the manner described above while they resided on Flower Street. Walter E. Young did not learn that Defendants had killed his wife and poisoned him until May of 2000.

210. Plaintiff **Sandra Lanell Wildbrick** has lived in HINKLEY at 22698 Alcudia Road since 1976. During that time, she used the PARK countless times in the last twenty four years. Plaintiff has been exposed to Defendants' toxic Chromium-VI since moving to HINKLEY.

211. As a direct result of Defendants' material omissions regarding the contamination in HINKLEY, Plaintiff Sandra Lanell Wildrick has suffered from headaches,

EXHIBIT 4
PAGE 58 OF 109

Case: 01-30923   Doc 3955   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 63 of 109



1  nose bleeds, liver damage, and uterine tumors causing her to undergo a hysterectomy.

2  Plaintiff first learned she had been poisoned by Defendants in May of 2000.

3       212.   Plaintiff **James Lynn Turner** is the son of Plaintiff Joe P. Turner, Sr. and Julia

4  Turner and the brother of Plaintiffs Joe P. Turner Jr., Jeffery Allen Turner, John D. Turner

5  and Jacqueline A. Nelson-Turner.  Plaintiff has been directly exposed to Defendants'

6  Chromium-VI.  Plaintiff lived in HINKLEY from 1965 to 1999.  During that time he lived on

7  Santa Fe between Mt. View and Somerset, 36550 Hinkley Road, 37330 Mulberry Street

8  from 1975 to 1987, and from 1990 to 1992.  During the time Plaintiff resided on Mulberry

9  he was poisoned directly by Defendants in the manner as alleged above in this complaint.

10       213.   Plaintiff has suffered injuries as a direct result of Defendants' material

11  omissions.  Plaintiff has suffered nose bleeds, respiratory problems, gastro-intestinal

12  problems, acid reflux, headaches, bone pain and deformity, severe allergies and deformity

13  in the development of his tongue.  Every member of Plaintiff's immediate family has

14  suffered personal injuries as a direct result of being poisoned by Defendants.  Plaintiff did

15  not learn he had been poisoned by Defendants until May of 2000.

16       214.   Plaintiff **Robin Christine Reddick** lived in HINKLEY from 1954, the date of

17  her birth, until 1965.  During that time she resided at Somerset and Santa Fe, Highway 58

18  and HINKLEY Road, Mulberry and Flower Street.  Plaintiff, while growing up in HINKLEY

19  used the PARK, swam in the reservoirs and played within the PLUME.

20       215.   As a direct result of exposure to Defendants' toxic Chromium-VI, Plaintiff

21  Robin Christine Reddick has suffered respiratory infection, tumors in right forearm, urinary

22  infection, gastro intestinal problems, rashes, cervical cancer, miscarriages, kidney infection,

23  ruptured lymph nodes, and headaches.  Defendants' material omissions about the

24  contamination of the groundwater resulted in Plaintiff being poisoned and suffering the

25  above listed injuries.  Plaintiff did not know she had been poisoned by Defendants until May

26  of 2000.

27       216.   Plaintiff **Thomas W. Owens** has lived in HINKLEY since 1972 to the present.

28




1  Plaintiff resided at 37440 Mulberry Street from 1972 to 1996 and at 23058 Highway 58 from
2  1997 to the present.  During the time he lived on Mulberry, Plaintiff was poisoned by
3  Defendants in the manner described above.  Plaintiff visited the PARK on countless
4  occasions over a twenty-five year period. Plaintiff worked on the dairies within the PLUME.

5      217.  As a direct result of being poisoned by Defendants, and the material
6  omissions made by them concerning the contamination of the groundwater in HINKLEY,
7  Plaintiff has suffered personal injuries which include nose bleeds, throat tumors, rashes,
8  respiratory infections, decaying teeth, joint and bone pain. Plaintiff did not learn that he had
9  been directly poisoned by Defendants until June of 2000.

10     218.  Plaintiff **Vernon E. Huson** lived in HINKLEY from 1966 to 1987 and during
11 that period he worked at several of the dairies that were and are within the PLUME.  He
12 resided on Jade Road, Hidden River Road, Community Boulevard. Plaintiff, during his time
13 in HINKLEY, used the PARK and visited friends who lived within the PLUME.

14     219.  As a result of his exposure to Defendants' poison, Plaintiff Vernon E. Huson
15 has suffered urinary tract problems, gastro intestinal problems, has had tumors removed
16 from his prostate. He has also had part of his intestine surgically removed as a result of the
17 tumors.  These injuries would not have been suffered had Defendants told the truth about
18 poisoning the water in HINKLEY.  As a result Plaintiff has suffered the above list health
19 problems in addition to others.

20     220.  Plaintiff **Augusta Marie Huson** is the wife of Plaintiff Vernon E. Huson and
21 has suffered the same exposure to Chromium-VI which Defendants dumped into
22 groundwater as her husband.

23     221.  Plaintiff Augusta Marie Huson has suffered, nose bleeds, headaches,
24 allergies, uterine tumors, intestinal bleeding, bone and joint pain, because of her poisoning
25 by Defendants. Plaintiff had to undergo a hysterectomy.

26     222.  Plaintiff **Ida Ercell (Trail) Huson** lived in HINKLEY from 1959 to 1970 at
27 37472 Mulberry.  During that time she was poisoned directly by Defendants in the manner
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-60-

EXHIBIT A



alleged above. Plaintiff's family, having been poisoned by Defendants, suffered similar devastating injuries. Plaintiff is the daughter of Plaintiff Anna Lou Williams and the sister of Plaintiff Evalynn Williams Cullison. During the time Plaintiff lived in HINKLEY she used the PARK, swam in the reservoirs and visited friends who lived within the PLUME.

223. As a direct result of being poisoned by Defendants, as well as their material omissions, Plaintiff and her family have suffered life changing personal injuries. Plaintiff has suffered tumors on her ovaries, kidney problems, acid reflux, bone and joint pain, headaches and noses bleeds.

224. Plaintiff **William H. Williams** is the step father of Plaintiff Ida Ercell Trail Hutson and the father of Plaintiff Evalynn Williams Cullison and the husband of Plaintiff Anna Lou Williams. Plaintiff lived in HINKLEY from 1952 to 1992 at 37472 Mulberry. Plaintiff was a member of the HFD and spent countless days at the PARK.

225. Plaintiff and his family have suffered as a direct result of being poisoned by Defendants. Plaintiff has suffered bone and joint pain, cysts, tumors on his testicles, prostate cancer and other serious injuries. Plaintiff would not have suffered the above listed injuries had it not been for Defendants' material omissions. Plaintiff did not learn he was poisoned directly by Defendants until June of 2000.

226. Plaintiff **Anna Lou Williams** is the wife of Plaintiff William H. Williams and the mother of Plaintiff Evalynn Williams Cullison, Ida Ercell (Trail) Hutson and Alison W. William. Plaintiff lived in HINKLEY at 37472 Mulberry from 1959 to 1992. During her time in HINKLEY, Plaintiff swam and used the PARK, visited friends who lived directly across from the STATION and was poisoned by Defendants in the manner described above.

227. Plaintiff Anna Lou Williams has suffered numerous health problems after moving to HINKLEY including skin cancer, heart problems, uterine tumors/cysts, headaches, nose bleeds, as a direct result of being poisoned by Defendants. Plaintiff had to undergo a hysterectomy. Plaintiff would not have suffered such damages if Defendants did not make material omissions regarding their poisoning of the water.



228.    Plaintiff **Alison W. Williams** is the daughter-in-law of Plaintiff Anna Lou Williams and William H. Williams. Plaintiff lived in HINKLEY from 1983 to 1989. During that time she resided at 37472 Mulberry and was directly poisoned by Defendants' Chromium VI. Plaintiff used the PG&E PARK on countless occasions during this time period.

229.    Plaintiff has suffered personal injuries as a direct result of Defendants' material omissions and directly poisoning her in a manner described above in this complaint. Plaintiff has suffered miscarriages, nose bleeds, headaches, cysts/tumor of the uterus and ovaries and other health problems. Plaintiff would not have suffered these problems had it not been for Defendants' material omissions of their poisoning the groundwater.

230.    Plaintiff **Evalynn Williams Cullison** lived in HINKLEY from 1959 to 1974 at 37472 Mulberry Avenue. She was a victim of direct poisoning by the Defendant PG&E in the manner described above in this complaint. Plaintiff used the PARK and visited friends within the PLUME on countless occasions.

231.    Plaintiff Evalynn Williams has suffered life changing personal injuries including uterine tumors, hypothyroidism, diseased gull bladder which was removed, nose bleeds, headaches, as a direct result of being poisoned with Chromium-VI. Plaintiff had to undergo a hysterectomy. Plaintiff would not have suffered such horrific injuries but for Defendants' material omissions regarding the poisoning of the water in HINKLEY. Plaintiff first learned she had been poisoned directly by Defendants in June of 2000.

232.    Plaintiff **April Bays** resided in Hinkley at 36614 Red Rock Road from 1979 to 1987. During that time she was poisoned directly by Defendants in the manner alleged above. During the time Plaintiff lived in Hinkley she used the park, swam in the reservoirs, and visited friends who lived within the plume.

233.    As a direct result of being poisoned by Defendants, and their material omissions, Plaintiff has suffered life changing personal injuries. Plaintiff April Bays injuries include but are not limited to respiratory problems, including severe asthma, gall bladder

EXHIBIT ___4___
PAGE 25 OF 101



1 infections, surgery to remove her gall bladder, as well as reproductive problems. Plaintiff

2 would not have suffered these injuries but for poisoning of her water by Defendants.

3       234. Plaintiff did not learn of the contamination of her water in Hinkley until April of

4 2000. Plaintiff was advised by Defendant PG&E that she did not live in the contaminated

5 area and therefore had nothing to worry about.

6       235. Plaintiff **Sally Rae Becerra** resided in Hinkley from April of 1970 to June 1981

7 at 24357 Highway 58. During that time she was poisoned directly by Defendants in the

8 manner described above. Plaintiff swam in at the PG&E PARK and within the plume.

9       236. As a result of being poisoned by Defendants, Plaintiff has suffered the

10 following personal injuries: respiratory problems, nosebleeds, and reproductive problems.

11 At the present time, Plaintiff's doctors are recommending that Plaintiff undergo a

12 hysterectomy. Plaintiff first became aware that she had been poisoned by Defendants in

13 April, 2000.

14       237. Plaintiff **Michael A. Burt** lived at 37152 Serra Road in Hinkley, from 1974 to

15 1993. From 1993 to 1999, he has resided at Alcudia Road in Hinkley. Plaintiff Michael Burt

16 worked at the Mojave Dairy for 15 years directly across from Defendant PG&E's compressor

17 STATION. As a result, Plaintiff has been poisoned directly by Defendants in the manner

18 described above.

19       238. As a direct result of being poisoned by Defendants, Plaintiff has suffered

20 respiratory problems, heart problems, nosebleeds, and rashes. Because of Defendants'

21 material omissions and deliberate misrepresentations, Plaintiff did not learn that he had

22 been poisoned by Defendants until recently.

23       239. Plaintiff **Gabriel Roberts** lived in Hinkley from 1979 to 1999. Plaintiff has lived

24 at the following addresses: 37760 Somerset Road, 25779 Community Blvd., and 22275

25 Granada Street. In addition, Plaintiff swam at the PG&E park as well as local reservoirs

26 within the plume. As a direct result, Plaintiff has been poisoned by Defendants in the

27 manner described above.

28

EXHIBIT A
PAGE 63 of 104



240.  Plaintiff has suffered the following personal injuries as a result of conduct, material omissions and misrepresentations of Defendants.  Plaintiff has suffered kidney problems, gastro intestinal problems, respiratory problems, rashes, and has contracted Crohns disease.  As a direct result of being poisoned by Defendants,  Plaintiff has had to undergo gastro intestinal surgery.  Plaintiff first became aware he had been poisoned by Defendants in June of 2000.

241.  Plaintiff **Lorna E. Roberts** has lived in Hinkley from 1970 to the present. Plaintiff has resided at 37760 Somerset, 23835 Highway 58, 25779 Community Boulevard, and 22275 Granada.  During those years Plaintiff was poisoned by Defendants in the manner described above in this complaint.

242.  As a direct result Plaintiff has suffered the following personal injuries: nose bleeds, respiratory problems, rashes, and cysts on the ovaries.  As a direct result of being poisoned by Defendants, Plaintiff has had to undergo emergency surgery to repair her ovaries.

243.  Plaintiff and her family have suffered as a direct result of being poisoned by Defendants.  Plaintiff would not have suffered the above listed injuries had it not been for Defendants' material omissions and misrepresentations.  Plaintiff did not learn that she had been poisoned by Defendants until June of 2000.

244.  Plaintiff **Don Schultz** lived in HINKLEY from 1977 to 1997 at 36827 Hill View Road.  During his time in Hinkley, Plaintiff swam in the reservoirs and at the PG&E PARK and was poisoned by Defendants in the manners described above.

245.  As a direct result of being poisoned by Defendants, Plaintiff has suffered from bloody noses, rashes, respiratory problems, and problems with his immune system.

246.  Plaintiff would not have suffered these injuries had it not been for the material omissions and misrepresentations by Defendants.  Plaintiff first learned that he had been poisoned in May 2000.

247.  Plaintiff **Betty Marie Shipley** lived in HINKLEY from April 1970 to November

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-64-

EXHIBIT ___4___



PAGE 104 OF 104




1986.  During that time Plaintiff resided at 24357 Highway 58 in Hinkley.  In addition, Plaintiff swam at the PG&E PARK as well as reservoirs within the plume.  Furthermore, Plaintiff visited friends who lived within the plume and within the contaminated area. As a direct result of being poisoned by Defendants in the manners described above, Plaintiff has suffered the following personal injuries: respiratory problems, bloody noses, rashes, and reproductive problems requiring surgery.  Plaintiff is currently suffering from a cysts on her uterus.

    248.   Plaintiff would not have suffered the above personal injuries had it not been for the material omissions and misrepresentations of Defendants. Plaintiff did not learn that she had been poisoned until March of 2000.

    249.   Plaintiff **Robert G. Durbin** did not live in HINKLEY, however, his father worked at the PG&E station from 1951 to 1985. As a result, Plaintiff constantly used the swimming pool at the PG&E PARK from 1960 to 1985.  In addition, Plaintiff swam in the reservoirs within the plume and visited friends who lived within the plume. As a direct result of being poisoned by Defendants, Plaintiff, throughout his life has suffered severe personal injury. Plaintiff has had tumors and cysts removed surgically from his body, as well as suffering from gastro intestinal problems, nose bleeds, rashes, and respiratory problems .

    250.   Plaintiff did not know that he had been poisoned until March of 2000.  Plaintiff moved from the Hinkley area prior to 1987 and has lived out of state.

    251.   Plaintiff **Jessica Mae Trentecoste** has resided at 22232 Community Boulevard since 1983 to the present.  In addition, Plaintiff has swam in the reservoirs within the plume as well as the PG&E PARK.

    252.   As a direct result of being poisoned by Defendants, Plaintiff has suffered from nose bleeds, severe allergies, sinus infections, rashes, and reproductive health problems. The Plaintiff was told by Defendant PG&E that she was outside of the contaminated area and did not have anything to worry about.  Plaintiff has just recently learned that she was within the contaminated area and suffered these personal injuries as a direct result of being

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-65-





poisoned by Defendants, and their material omissions and misrepresentations regarding the facts behind the contamination of the Hinkley valley.

253. Plaintiff **Carl V. Stogsdill** lived in HINKLEY from 1986 to 1998, during that time he worked on the Mojave Dairy. Plaintiff resided at 37176 Serra Road from 1986 to 1998. In addition, Plaintiff swam in at the PG&E PARK as well as the reservoirs within the contaminated area. As a direct result, Plaintiff was poisoned in the manners described above.

254. As a direct result of the above exposure, Plaintiff has suffered the following personal injuries: gastro intestinal problems, respiratory problems, kidney problems, liver problems, prostate problems, as well as rashes. Plaintiff first learned that he had been poisoned in March of 2000.

255. Plaintiff **Teresa Sterba** did not live in HINKLEY but her father worked at the PG&E station for 34 years. Plaintiff swam at the PG&E pool from 1960 to 1974. As a direct result Plaintiff was poisoned by PG&E in the manner described herein above. Plaintiff did not learn he had been poisoned by PG&E through the HVWC while living on Mulberry in the manner described above until within one year of the filing of this complaint.

256. Plaintiff has suffered the following personal injuries as a direct result of being poisoned by the Defendants and their material omissions and misrepresentations. Plaintiff has suffered from cysts on her ovaries, endometriosis, allergies, rashes, and respiratory problems.

257. Plaintiff suffered the above personal injuries as a direct result of being poisoned by Defendants. Plaintiff first learned that she had been poisoned by Defendants in April of 2000. Plaintiff is the sister of Plaintiff Robert Derbin. Plaintiff did not learn that, while living on Locust, she had been poisoned by the Defendants through the HVWC until within one year of the filing of this complaint.

258. Plaintiff **Mary STARKEY** lived in HINKLEY from 1970 to 1986. Plaintiff lived at 37760 Somerset from 1970 to 1980, at 22275 Granada from 1981 to 1986. During that

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-66-

EXHIBIT A




1  time Plaintiff was poisoned by Defendants in the manners described in this complaint
2  above.

3       259.    As a direct result of being poisoned by Defendants, Plaintiff has suffered the
4  following personal injuries: cysts on her ovaries resulting in a hysterectomy in 1972 at the
5  age of 42, respiratory problems, rashes, gastro intestinal problems resulting in stomach
6  surgery removing 13 inches of her intestines, as a direct result of which Plaintiff almost died.

7

8       260.    Plaintiff would not have suffered the personal injuries listed above had it not
9  been for the material omissions and misrepresentations of the Defendants, and their
10 conduct in contaminating the groundwater in HINKLEY. Plaintiff first learned she had been
11 poisoned in June 2000.

12      261.    Plaintiff **Donna Lambert** has resided in Hinkley since 1985 at 37105 Serra.
13 Plaintiff was poisoned by Defendants in the manners previously described within this
14 complaint.  Furthermore, Plaintiff used the PG&E pool from 1976 to 1982, in addition,
15 Plaintiff swam within reservoirs within the contaminated area.  As a direct result of being
16 poisoned by Defendants, Plaintiff has suffered the following personal injuries: respiratory
17 problems, tumors which have been surgically removed from her body, reproductive
18 problems resulting in a hysterectomy, rashes, as well as other medical problems.

19      262.    Plaintiff would not have suffered the above referenced personal injuries had
20 it not been for the material omissions, misrepresentations and despicable conduct of
21 Defendants.  Plaintiff first learned that she had been poisoned by Defendants in July 2000.

22      263.    Plaintiff **Virginia Kay Hammerstein** lived in Hinkley from 1973 to 1985, at
23 25996 Highway 58 and 24811 Community Boulevard.  During that time Plaintiff was
24 poisoned by Defendants in the manner described above in this complaint.  As a direct result
25 of being poisoned by Defendants, Plaintiff has suffered the following personal injuries:
26 gastro-intestinal problems, respiratory problems, breast tumors, and reproductive problems
27 resulting in a hysterectomy.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-67-

EXHIBIT _A_
PAGE 67 OF 104



1    264.   Plaintiff suffered the above personal injuries because of the material
2  omissions, misrepresentations and despicable conduct of Defendants. Plaintiff first learned
3  that she had been poisoned by Defendants in April of 2000.

4    265.   Plaintiff **Levi HIMMELRICK** resided in HINKLEY from 1985 to 1994 at 22178
5  High crest. During that time Plaintiff was poisoned by Defendants in the manner previously
6  described in this complaint. In addition, Plaintiff swam in the reservoirs and the PG&E
7  PARK within the contaminated area during the time he lived in HINKLEY. As a direct result,
8  Plaintiff has suffered the following personal injuries: respiratory problems, gastro intestinal
9  problems, tumors, and rashes.

10    266.   Plaintiff recently learned that she was poisoned by Defendants. Had it not
11  been for the conduct of the Defendants and the material omissions and misrepresentations,
12  Plaintiff would not have suffered the personal injuries listed above. 266.   Plaintiff **AVALYN**
13  **L. HIMMELRICK** has resided in Hinkley since 1982 to the present. In addition, Plaintiff has
14  been a frequent visitor to Hinkley since the 1960's. Plaintiff has resided at 22178 High crest
15  and 35426 Tamarack to the present date. As a direct result, Plaintiff has been poisoned
16  in a manner previously described within this complaint by Defendants and as a direct result
17  has suffered the following personal injuries: respiratory problems, liver problems, gall
18  bladder problems resulting in the removal of her gall bladder in 1992, and rashes.

19    267.   As a direct result of Defendants' material omissions and misrepresentations,
20  and despicable conduct, Plaintiff has suffered the personal injuries listed above. Plaintiff
21  just recently became aware that Defendants had poisoned her and caused such injuries.

22    268.   Plaintiff **MALISSA Himmelnick** resided in Hinkley from 1983 to the present
23  at 22178 High crest and 35426 Tamarack. During that time Plaintiff was poisoned by
24  Defendants in the manner described above in this complaint. As a direct result of being
25  poisoned by Defendants, Plaintiff has suffered the following personal injuries: respiratory
26  problems, allergies, rashes, heart problems, and tumors.

27    269.   Plaintiff would not have suffered the above listed personal injuries had it not
28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-68-

EXHIBIT A



1 been for the material omissions, misrepresentations, and overall despicable conduct of

2 Defendants in polluting the groundwater in HINKLEY. Plaintiff first learned that she had

3 been poisoned by Defendants within the past year.

4     270.   Plaintiff **Judy A. Howell** resided in HINKLEY from 1968 to 1971. During that

5 time, she swam in the reservoirs within the contaminated area as well as the PG&E PARK.

6 In addition, she visited friends and relatives who lived within the contaminated area. During

7 this time Plaintiff was poisoned by Defendants in the manner previously described within

8 this complaint. As a direct result, Plaintiff has suffered the following personal injuries:

9 respiratory problems, rashes, cysts on her ovaries, and other medical problems.

10     271.   Plaintiff has suffered the above personal injuries as a direct result of

11 Defendants material omissions, misrepresentations, and conduct in contaminating the

12 groundwater in HINKLEY. Plaintiff first learned that she had been poisoned by Defendants

13 in May, 2000.

14     272.   Plaintiff **Tiffanie Kay Klauer** resided in Hinkley from 1975 to 1986 at 25791

15 Highway 58 and 26312 Community Blvd. In addition, Plaintiff swam at the PG&E pool and

16 reservoirs within the area of contamination. During this time, Plaintiff was poisoned by

17 Defendants in the manner previously described within this complaint. As a direct result,

18 Plaintiff has suffered the following personal injuries: gastrointestinal problems, respiratory

19 problems, endometriosis, as well as other medical problems.

20     273.   Plaintiff would not have suffered the above listed personal injuries had it not

21 been for the material omissions, misrepresentations, and despicable conduct of Defendants.

22 Plaintiff first learned that she had been poisoned by Defendants in May, 2000.

23     274.   Plaintiff **Eric Hammerstein** resided in HINKLEY from 1973 to 1985 at 25996

24 Highway 58 and 24811 Community Blvd. During that time, Plaintiff swam at the PG&E

25 PARK, as well as visiting friends who lived within the contaminated area. During this time

26 Plaintiff was poisoned by Defendants in the manner previously described above. Plaintiff

27 has suffered personal injuries as follows: gastrointestinal problems, respiratory problems,

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-69-

EXHIBIT <u>A</u>






1  tumors, and other medical problems.  Plaintiff would not have suffered these personal

2  injuries had it not been for the material omissions, misrepresentations, and overall

3  despicable conduct by Defendants in polluting the groundwater in HINKLEY.  Plaintiff first

4  learned that he been poisoned in April, 2000.

5    275.    Plaintiff **Robert L. Morris** has resided in Hinkley since 1960 at 37414 Mulberry

6  and 36696 Valley Wells Road. During that time Plaintiff was poisoned by Defendants in the

7  manners previously described within this complaint.  As a direct result, Plaintiff has suffered

8  the following personal injuries: nose bleeds, respiratory problems, sinus problems,

9  gastrointestinal problems, and heart problems.

10    276.    Plaintiff would not have suffered the above listed personal injuries had it not

11  been for the material omissions, misrepresentations, and despicable conduct of Defendants

12  in contaminating the groundwater in HINKLEY. Plaintiff only recently found out he had been

13  poisoned by Defendants.

14    277.    Plaintiff **LaDora Brown** resided in HINKLEY from 1973 to 1992 at 21792

15  Alcudia and 37125 Locust.   During that time, Plaintiff was poisoned in the manner

16  previously described in this complaint.  As a direct result of being poisoned by Defendants,

17  Plaintiff has suffered the following personal injuries: respiratory problems, gall bladder

18  problems, asthma, chronic sinus problems, and other medical problems.

19    278.    Plaintiff would not have suffered the above personal injuries had it not been

20  for the material omissions, misrepresentations, and overall despicable conduct of

21  Defendants.  Plaintiff did not learn that she had been poisoned until May, 2000.

22    279.    Plaintiff **Lorraine P. Briggs** has resided in HINKLEY since July, 1979 at

23  36614 Red Rock Road.   During this time, she was poisoned in the manner previously

24  described within this complaint.   In addition, Plaintiff swam at the PG&E PARK and

25  reservoirs within the contaminated area.  As a direct result, Plaintiff has suffered the

26  following personal injuries: severe respiratory problems, kidney problems, nose bleeds, and

27  other medical problems.  Plaintiff moved from the HINKLEY area in 1987 and has resided

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT 4



1 out of state since that time.

2      280.   Plaintiff would not have suffered the above personal injuries had it not been

3 for the material omissions, misrepresentations and overall despicable conduct of the

4 Defendants. Plaintiff first learned that she had been poisoned in May, 2000.

5      281.   Plaintiff **Judy Ann Burns** resided in HINKLEY from 1973 to 1979 at 24553

6 Community Blvd. She swam at the PG&E pool and reservoirs within the contaminated area.

7 In addition, she visited friends and family who lived within the contaminated area. As a

8 direct result of such acts, Plaintiff was poisoned by Defendants in the manner previously

9 described within this complaint.

10      282.   Plaintiff has suffered the following personal injuries as a direct result of being

11 poisoned by Defendants: respiratory problems, rashes, fibrocystic breast disease,

12 gastrointestinal problems, sinus infections, and other medical problems.

13      283.   Plaintiff would not have suffered the above personal injuries had it not been

14 for the material omissions, misrepresentations and the despicable conduct of the

15 Defendants. Plaintiff first learned that she had been poisoned in May, 2000.

16      284.   Plaintiff **Trinity Ann Roos** resided in Hinkley from 1981 to 1992 at Tamarack

17 and High crest. In addition, Plaintiff swam at the PG&E pool, swam in reservoirs, and

18 visited friends who lived in the contaminated area. As a direct result, Plaintiff was poisoned

19 by the Defendants in the manners previously described within this complaint.

20      285.   Plaintiff has suffered the following personal injuries: nose bleeds,

21 gastrointestinal problems, rashes, reproductive problems, and other medical problems.

22 Plaintiff would not have suffered these personal injuries had it not been for the material

23 omissions, misrepresentations, and the conduct of Defendants in contaminating the

24 groundwater in HINKLEY. Plaintiff first became aware that she had been poisoned in May,

25 2000.

26      286.   Plaintiff **Gary Allen Roos** lived in HINKLEY from 1981 to 1992 at Tamarack

27 and High crest. During that time, Plaintiff was poisoned by Defendants in the manner

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT  *A*



1 previously described within this complaint. As a direct result, Plaintiff has suffered the

2 following personal injuries: respiratory problems, rashes, and other medical problems.

3 Plaintiff did not learn that she had been poisoned through the HVWC while living on

4 Mulberry until within one year of the filing of this complaint.

5       287.   Plaintiff would not have suffered the above personal injuries had it not been

6 for the material omissions, misrepresentations, and conduct of the Defendants. Plaintiff first

7 learned that he had been poisoned in May, 2000.

8       288.   Plaintiff **Sylvia Ramirez** resided in HINKLEY from 1974 to 1979 on Somerset

9 Road. During that time, she was poisoned by Defendants in the manner previously stated

10 within this complaint. As a direct result, Plaintiff has suffered the following personal injuries:

11 respiratory problems, gastrointestinal problems, rashes, and other medical problems.

12       289.   Plaintiff would not have suffered the above personal injuries had it not been

13 for the material omissions, misrepresentations and conduct of Defendants. Plaintiff first

14 learned that she had been poisoned in May, 2000. Plaintiff moved out of state prior to

15 1987.

16       290.   Plaintiff **Jessie Naomi Orr** has resided in HINKLEY at 36174 Hidden River

17 Road since 1973 to the present. In addition, Plaintiff visited the PG&E PARK, as well as

18 friends and relatives within the contaminated area. During this time, Plaintiff was poisoned

19 by Defendants in the manner previously alleged in this complaint. Plaintiff has suffered the

20 following personal injuries: ovarian cysts resulting in a hysterectomy, brain tumor,

21 respiratory problem, gastrointestinal problems, nose bleeds, rashes, and other medical

22 problems. Plaintiff has not resided in the Hinkley area since prior to 1987.

23       291.   Plaintiff would not have suffered the above listed personal injuries had it not

24 been for the material omissions, misrepresentations and despicable conduct of Defendants.

25 Plaintiff first learned that she had been poisoned in April, 2000.

26       292.   Plaintiff **Mark Alan Orr** has resided in HINKLEY since 1973 at 36714 Hidden

27 River Road. During this time, Plaintiff was poisoned by Defendants in a manner previously

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-72-



EXHIBIT __A__
PAGE 72 of 104



1 described in this complaint. As a direct result, Plaintiff has suffered the following personal
2 injuries: respiratory problems, gastrointestinal problems, nose bleeds, rashes, and other
3 medical problems.

4     293.   Plaintiff would not have suffered the above personal injuries had it not been
5 for the material omissions, misrepresentations and conduct of Defendants. Plaintiff first
6 learned that he had been poisoned in April, 2000. Plaintiff has not resided in the Hinkley
7 area since prior to 1987.

8     294.   Plaintiff **Ronald R. Orr** resided in HINKLEY from 1973 to 1992 at 36714
9 Hidden River Road. During that time, Plaintiff was poisoned by Defendants in the manners
10 described in this complaint. Plaintiff has suffered the following personal injuries: nose
11 bleeds, respiratory problems, allergies, rashes, and other medical problems.    295.
12 Plaintiff would not have suffered the above personal injuries had it not been for the material
13 omissions, misrepresentations, and conduct of Defendants. Plaintiff did not learn he had
14 been poisoned until May, 2000. Plaintiff has not resided in the state of California since
15 1988.

16     296.   Plaintiff **Deborah L. Ulibarri** resided in HINKLEY from 1960 to 1974 at Petra
17 Street and 35579 Hillview. During this time, Plaintiff was poisoned by Defendants in a
18 manner previously described within this complaint. As a direct result of being poisoned by
19 Defendants, Plaintiff has suffered the following personal injuries: nose bleeds, respiratory
20 problems, reproductive problems, gastrointestinal problems, and other medical problems.

21

22     297.   Plaintiff has suffered the above listed personal injuries as a direct result of
23 Defendants material omissions, misrepresentations, and conduct in contaminating the
24 ground water in Hinkley. Plaintiff first became aware that she had been poisoned in May,
25 2000.

26     298.   Plaintiff **Dawn Thompson** resided in HINKLEY from 1973 to 1982 at 24553
27 Community Blvd. and 24543 Community Blvd. In addition, Plaintiff spent time at the Mojave

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-73-

EXHIBIT _A_




1  Dairy, as well as swimming at the PG&E PARK and reservoirs within the contaminated
2  area. As a direct result, Plaintiff was poisoned by Defendants in the manner previously
3  described within this complaint. Plaintiff has suffered the following personal injuries:
4  respiratory problems, rashes, ovarian cysts and other medical problems.

5       299.  Plaintiff has suffered the above personal injuries as a direct result of the
6  material omissions, misrepresentations, and despicable behavior of the Defendants.
7  Plaintiff first learned she had been poisoned in May, 2000.

8       300.  Plaintiff **Nancy Jane Huson** resided in HINKLEY from 1970 to 1987. During
9  that time, Plaintiff was poisoned by Defendants in the manner described above. As a direct
10  result of being poisoned by Defendants, Plaintiff has suffered the following personal injuries:
11  nose bleeds, asthma, respiratory problems, reproductive problems, and other medical
12  problems.

13       301.  Plaintiff would not have suffered the above personal injures had it not been
14  for the material omissions, misrepresentations, and behavior of Defendants. Plaintiff first
15  learned that she had been poisoned in May, 2000.

16       302.  Plaintiff **Thelma Hunter** has resided in HINKLEY since 1977 at 24553
17  Community Blvd. During this time, she was poisoned by Defendants in the manner
18  previously described within this complaint. Plaintiff has suffered the following personal
19  injuries: respiratory, liver and kidney problems, and other medical difficulties.

20       303.  Plaintiff would not have suffered the above listed personal injuries had it not
21  been for the material omissions, misrepresentations, and conduct of Defendants in
22  contaminating the ground water in HINKLEY. Plaintiff first learned that she had poisoned
23  in May 2000.

24       304.  Plaintiff **Leon Batanian** resided in HINKLEY from 1971 to 1986 at 25791
25  Highway 58 and 26312 Community Blvd. In addition, Plaintiff used the PG&E pool
26  throughout this time, as well as visiting friends within the contaminated area and swimming
27  in reservoirs within the contaminated area. As a direct result, Plaintiff was poisoned by

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-74-

EXHIBIT _A_



1  Defendants in the manner previously listed above in this complaint.  Plaintiff has suffered
2  the following personal injuries as a direct result of being poisoned by Defendants:
3  respiratory problems, asthma, rashes, tumors, lung problems, and other medical problems.

4        305.    Plaintiff has suffered the above personal injures as a direct result of the
5  material omissions, misrepresentations, and conduct of Defendants.  Plaintiff first learned
6  that he had been poisoned in May 2000.

7        306.    Plaintiff **Timothy M. Merritt** resided in HINKLEY from 1974 to the present at
8  2941 Highway 58 and 2944 Highway 58.  In addition, Plaintiff spent time visiting friends who
9  lived within the contaminated area, as well as swimming in the PG&E PARK.  During this
10 time, Plaintiff was poisoned by Defendants in the manners alleged herein above.  Plaintiff
11 has suffered the following personal injuries: tumors and other medical problems.

12       307.    Plaintiff would not have suffered the above personal injuries had it not been
13 for the material omissions and misrepresentations of Defendants.  Plaintiff only recently
14 learned that he had been poisoned by Defendants.

15       308.    Plaintiff **Raeleen King** resided in HINKLEY from 1965 until 1987 at 37396
16 Mulberry and 21284 Santa Fe.  During that time, Plaintiff was poisoned by Defendants in
17 all manners described above in this complaint.  As a direct result of being poisoned by
18 Defendants, Plaintiff has suffered the following personal injuries: respiratory problems,
19 rashes, phibrofibro malaysia, gastro intestinal problems, reproductive problems, and other
20 medical problems.

21       309.    Plaintiff would not have suffered the above mentioned personal injuries had
22 it not been for the material omissions and misrepresentations of the Defendants.  Plaintiff
23 first learned that she had been poisoned in March of 2000.

24       310.    Plaintiff **Richard Findley** resided in HINKLEY at 36327 Hinkley Road and on
25 Community Boulevard between 1955 and 1968.  As a direct result, Plaintiff was poisoned
26 by Defendants in the manner described in this complaint above.  Plaintiff has suffered the
27 following personal injuries as a direct result of being poisoned by Defendants: respiratory

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT ___A___




1  problems, kidney problems, rashes, and other medical difficulties.   310.   Plaintiff would
2  not have suffered the above personal injuries had it not been for the material omissions,
3  misrepresentations and the despicable conduct of Defendants in contaminating the
4  HINKLEY water supply. Plaintiff first learned that he had been poisoned in March of 2000.

5       311.   Plaintiff **Gladys M. Dean** resided in HINKLEY on Highway 58 from 1968 to
6  1971. In addition, Plaintiff visited friends who lived within the contaminated area. Plaintiff
7  has suffered the following personal injuries as a direct result of being poisoned by
8  Defendants in the manner alleged in this complaint above.  Plaintiff has had respiratory
9  problems, reproductive problems, cysts and other medical problems.

10      312.   Plaintiff would not have suffered the above mentioned personal injuries had
11 it not been for the material omissions and misrepresentations of Defendants.  Plaintiff first
12 learned that she had been poisoned by Defendants in May of 2000.

13      313.   Plaintiff **Carolyn M. Crump** resided in HINKLEY from 1968 to 1971 at the
14 corner of Highway 58 and Locust as well as Livingston and Highway 58. During that time,
15 Plaintiff was poisoned by Defendants in the manners described above in this complaint. As
16 a direct result of being poisoned by Defendants, Plaintiff has suffered the following personal
17 injuries: respiratory problems, gastro intestinal problems, reproductive problems resulting
18 in a hysterectomy at the age of 30, and other medical problems.

19      314.   Plaintiff would not have suffered the above personal injuries had it not been
20 for the material omissions, misrepresentations and the conduct of Defendants in
21 contaminating the groundwater of HINKLEY.

22      315.   Plaintiff **Leslie Dee Crafts** resided in HINKLEY from 1951 to 1988 on
23 Somerset and Santa Fe, on Hinkley Road and Santa Fe, and at Flower Street and Highway
24 58. During that time, Plaintiff was poisoned by Defendants in the manners described above
25 in this complaint. As a direct result of being poisoned by Defendants, Plaintiff has suffered
26 the following personal injuries: nose bleeds, kidney problems, bladder problems,
27 reproductive problems resulting in surgery, and other medical problems.

28

EXHIBIT___A




316.   Plaintiff would not have suffered the above mentioned personal injuries had it not been for the material omissions, misrepresentations and despicable conduct of Defendants.  Plaintiff first learned that she had been poisoned in April of 2000.

317.   Plaintiff **Michael Lee Cooper** resided in HINKLEY from 1981 to 1992 on Pera and Petra Street in Hinkley.  During this time, Plaintiff was poisoned by Defendants in the manners described above in this complaint.  As a direct result of being poisoned by Defendants, Plaintiff has suffered the following personal injuries: bloody noses, rashes, respiratory problems, and other medical problems.  Plaintiff did not learn that he had been poisoned until May of 2000.

318.   Plaintiff **Silvestre Castillo, Sr.** has resided in HINKLEY from 1964 to 1978 at 37878 Pera road in Hinkley.  During that time, Plaintiff was poisoned by Defendants in the manner described above in this complaint.  Plaintiff has suffered the personal injuries as following as a direct result of being poisoned by Defendants: gastro intestinal problems, respiratory problems, bladder problems, and other medical problems.

319.   Plaintiff would not have suffered the above personal injuries had it not been for the material omissions and misrepresentations of the Defendants.  Plaintiff first learned that he had been poisoned in April of 2000.

320.   Plaintiff **Monie Castillo** resided in HINKLEY from 1969 to 1978 at 37878 Pera Road.  As a direct result, Plaintiff was poisoned by Defendants in the manner previously described in this complaint.  Plaintiff has suffered the following personal injuries as a direct result of being poisoned by Defendants: respiratory problems, rashes, gall bladder problems, and other medical problems.

321.   Plaintiff would not have suffered the above personal injuries had it not been for the material omissions and misrepresentations of the Defendants.  Plaintiff first learned that she had been poisoned in April of 2000.

322.   Defendants represented to Plaintiffs that the groundwater was safe for  any and all of the Plaintiffs domestic uses when in fact Defendants knew the groundwater,

EXHIBIT ___A___
PAGE ___77___ OF ___104___

 

1  surface and subsurface soil, atmosphere and environment was severely contaminated with
2  Chromium-VI which is highly toxic and harmful to Plaintiffs health and property.

3      323.   Defendant PG&E, Does 1 through 300, inclusive, individually and in concert,
4  knowingly and intentionally communicated and conspired with each other to defraud
5  Plaintiffs. Defendants PG&E, and Does 1-300, and each of them, fraudulently concealed
6  information from Plaintiffs regarding the toxic contamination of the groundwater, surface,
7  subsurface soil, atmosphere and environment in an around Plaintiffs home and farms.

8      324.   Defendant Does 1 through 300 were associated in fact through their
9  management and operation of Defendant PG&E, as well as through their fraudulent
10  schemes to injure Plaintiffs and cover up Defendant PG&E's action thus causing Plaintiff
11  injuries, and enhancing Defendant's profit.

12      325.   Defendant BETZ, and Does 301 through 500, inclusive, individually and in
13  concert, knowingly and intentionally withheld information from the public, including Plaintiffs,
14  and communicated and conspired with each other to defraud Plaintiffs. Defendants BETZ,
15  and Does 301-500, and each of them, fraudulently concealed information from Plaintiffs
16  regarding the toxic contamination of the groundwater, surface, subsurface soil, atmosphere
17  and environment in an around Plaintiffs home and farms.

18      326.   Defendant Does 301 through 500 were associated in fact through their
19  management and operation of Defendant BETZ, their active participation in the operations
20  and use of their chemicals by Defendants PG&E, and Does 1 through 300, inclusive, at the
21  STATION, as well as through their fraudulent schemes to injure Plaintiffs and cover up
22  theirs and  Defendant PG&E's action thus causing Plaintiff injuries, and enhancing
23  Defendant's profit.

24      327.   The Defendants, and each of them, knew that at all times that Plaintiffs relied
25  upon the groundwater within the PLUME for all of Plaintiffs domestic uses.

26      328.   The misrepresentations, failure to disclose information and suppression of
27  information were made with the fraudulent intent to induce Plaintiff to act in reliance

28

EXHIBIT _A_





thereon.

329.   As a direct result and proximate result of the foregoing actions by Defendants, and each of them, Plaintiffs have sustained injury to their person, personal property, and financial interest in an as yet undetermined amount to be proven at trial.

330.   The Defendants, and each of them, consistently failed to disclose to Plaintiffs, although required by law to do so, that inhalation and exposure of the skin to Chromium-VI was carcinogenic.

331.   The true number of lives PG&E and BETZ have affected and taken by its fraudulent conduct and depraved indifference to human life is unknown at this time, but may well be in excess of hundreds.   Such outrageous conduct justifies an award of punitive damages.   Accordingly, the acts of Defendants alleged above were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### (By All Plaintiffs against All  Defendants PG&E, )

### Does 1 through 2000, inclusive)

332.   Plaintiffs incorporate by this reference each and every allegation contained in Paragraphs 1 through 331, inclusive, as though fully set forth verbatim at this point. Defendants, and each of them, owed and breached a duty to Plaintiffs to use that degree of care in conducting the operations of the STATION and in the handling of and disposing of Chromium-VI and other toxic substances which would protect Plaintiffs, and each of them, against any unreasonable risk of harm.

333.   Defendants BETZ and Does 301 through 500 inclusive, were negligent in the design, manufacture, production, licensing, distribution, marketing, testing and sale of the products; in failing to properly inspect same, in failing to maintain adequate quality control standards over the goods sold under its trademark, in negligently, carelessly, and recklessly

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.



EXHIBIT 4



1  selling, supplying and endorsing the products, in manufacturing, selling distributing and

2  delivering inherently dangerous products, without performing proper tests and safeguards

3  against defects, in failing to design, manufacture, sell, distribute, and deliver products which

4  ere safe, in acting in a careless and reckless manner, in causing suffering and permitting

5  Plaintiffs to be exposed to a dangerous condition, in causing and permitting dangerous

6  products to be marketed, sold and distributed, in holding out the products herein to be safe

7  for use when in fact there were not, in selling defective products, in failing to warn of the

8  products' defects and dangers after the sale, in failing to properly supervise, adjust and test

9  said products, in failing to properly supervise, control, and provide for safe disposal or

10 control of their products, for failing to warn Plaintiffs, after acquiring knowledge of the

11 contamination caused by their chemicals, in failing to properly advise PG&E as to the

12 dangers and proper methods for disposal of said products, in negligently disposing of the

13 chemicals, in negligently monitoring the use and disposal of the chemicals at the STATION,

14 and in general, being negligent, careless and reckless.

15    334.   The Defendants knew or should have known that Plaintiffs were using

16 groundwater exclusively for all of their domestic and farm needs.

17    335.   Defendants knew or should have known that the surface soil contaminated

18 with Chromium-VI and other toxic substances was constantly inhaled in microscopic

19 particles by Plaintiffs living within the PLUME.

20    336.   Defendants knew or should have known that Defendants, actions did cause

21 and continue to cause the groundwater, surface and subsurface soil, atmosphere and

22 environment within the PLUME in and about HINKLEY to be contaminated by Chromium-VI

23 and other toxic substances. Defendants, and each of them, had independent knowledge

24 of such contamination.

25    337.   Defendants knew or should have known that Plaintiffs had no knowledge that

26 they were being exposed to, were ingesting, were inhaling and were absorbing toxic and

27 carcinogenic Chromium-VI and other toxic substances.

28

EXHIBIT A
PAGE 82 OF 154



338.  The Defendants, while aware of the carcinogenic and toxic nature of Chromium VI, knew or should have known that Plaintiffs had no reason to know or suspect the extent of the danger or risk of injuries to themselves and to their unborn progeny from their short-term and long-term exposure to Chromium-VI and other toxic substances.

339.  Defendants owed and breached a duty to warn Plaintiffs of the existence of Chromium-VI and other toxic substances in the unlined ponds, groundwater, surface and subsurface soil, atmosphere, and environment. Defendants owed and breached a duty to warn Plaintiffs of the risks of injury to Plaintiffs' health and property.

340.  Defendants acted unreasonably in failing to warn Plaintiffs of the existence of Chromium-VI and other toxic substances in the unlined ponds, groundwater, subsurface soil, atmosphere, and environment.  Defendant acted unreasonably in failing to warn Plaintiffs of the risks of injury to Plaintiffs' health and property.

341.  Defendants owed and breached a duty to Plaintiffs by failing to take action to prevent Plaintiffs' exposure to groundwater and airborne particles which they knew to be contaminated with Chromium-VI and other toxic substances.

342.  Defendants owed and breached a duty to Plaintiffs by concealing the type of substances discharged, the nature and dangerous properties of the Chromium-VI discharged, and the nature and dangerous properties of the other toxic substances Defendants discharged.  Defendants owed and breached a duty to Plaintiffs, once Defendants elected to disclose contamination within the PLUME, to disclose accurately, honestly, truthfully, and completely the exact nature and extent of such contamination and its long-term consequences.

343.  Defendants owed and breached a duty to Plaintiffs by covering up and concealing Defendants' actions of the previous four decades which caused the loss of crucial incriminating evidence and prevented Plaintiffs from comprehending the nature and cause of Plaintiffs' injuries, Plaintiffs' minor children's injuries, and Plaintiffs' personal property damage.

EXHIBIT ___A___
PAGE 8 OF 104



344.   As a direct and proximate result of the conduct of Defendants, and each of them, all Plaintiffs named herein were exposed to Chromium VI, Chromium based chemicals and other toxic substances without any notice of, warning to, or reason to know of the contamination, exposure, and potential impact upon themselves, their family and their lives.  This exposure continued to occur after the STATION discontinued using chromate based chemicals in the cooling towers as the surface, subsurface, groundwater, atmosphere and environment continued to be contaminated.  During this time, Defendants, and each of them, had knowledge of the contamination, and the hazardous nature of Chromium VI, but did nothing to warn Plaintiffs.

345.   Due to the Defendants' actions and the violation of Proposition 65, each and every Plaintiff has suffered damages fully outlined above in the PRELIMINARY ALLEGATIONS Paragraphs 46 through 48, inclusive.

//
//
//
//

## THIRD CAUSE OF ACTION - NEGLIGENCE PER SE

(By All Plaintiffs against Defendants PG&E,

Does 1 through 300, inclusive)

346.   Plaintiffs incorporate by this reference each and every allegation contained in Paragraphs 1 through 345, inclusive, and each of them, as though set forth verbatim at this point.

347.   At a minimum, Defendants have violated the following statutes: Proposition 65, as passed by the citizens of the State of California; California Health and Safety Code §§ 5411, 25249.5, 25249.6; and, on information and belief, California Water Code § 13271.



348.  Defendants have violated Health and Safety Code § 5411 by discharging Chromium-VI, other toxic substances and waste from the STATION which resulted in contamination, pollution, and nuisance within the PLUME

349.  Defendants have violated Proposition 65, as well as corresponding Health and Safety Code § 25249.5 by discharging and releasing carcinogenic Chromium-VI, known to the State of California to cause cancer, into water or onto land where it passed into the drinking water of Plaintiffs living within the PLUME. This conduct exposed Plaintiffs to carcinogenic Chromium-VI.

350.  Defendants failed to provide a warning as required under Proposition 65, as well as corresponding Health and Safety Code § 25249.6 which would have clearly and reasonably advised Plaintiffs of their exposure to one or more chemicals known to the State of California to cause cancer and reproductive toxicity. In addition, from 1952 to the present Defendants have failed to give a warning of any kind to Plaintiffs that they had been exposed to such chemicals through inhalation, ingestion and dermal exposure.

351.  On information and belief, Defendants have failed to notify the proper governmental agency in violation of Water Code § 13271 of such hazardous contamination.

352.  Plaintiffs fall within the class of persons such statutes are designed to protect.

353.  The Defendants, and each of them, violated said statutes and Proposition 65 by knowingly discharging or knowingly permitting the discharge of waste water contaminated with Chromium-VI and other toxic substances into the pristine groundwater supply via open, unlined ponds which were surrounded by Plaintiffs' homes and farms, and by failing to warn Plaintiffs of such unlawful actions.

354.  Defendants, and each of them, violated said statutes and Proposition 65 by knowingly spraying waste water contaminated with Chromium-VI and other toxic substances into the air which contaminated the surface and subsurface soil, atmosphere and environment. Defendants failed to warn Plaintiffs or the proper governmental agencies of such unlawful actions.



356. Due to Defendants' actions, each and every Plaintiff has suffered damages fully outlined above in the PRELIMINARY ALLEGATIONS Paragraphs 46 through 48, inclusive.

## FOURTH CAUSE OF ACTION - STRICT LIABILITY

(By All Plaintiffs against All Defendants PG&E, )

Does 1 through 300, inclusive)

357. Plaintiffs incorporate by this reference each and every allegation contained in Paragraphs 1 through 356, inclusive, and each of them, as though set forth verbatim at this point.

358. Defendants, and each of them, knew or should have known that the discharge of waste water contaminated with Chromium-VI and other toxic substances into unlined ponds near Plaintiffs' homes and farms would create and has created actual harm to the persons, animals, land, and chattels of others from the resulting toxic contamination of the groundwater, surface and subsurface soil, atmosphere and environment.

359. Defendants, and each of them, knew or should have known that there existed, and still exists, a high degree of harm to others that would result from the intentional discharge of the waste water contaminated with Chromium-VI and other toxic substances into the groundwater supply, surrounding surface and subsurface soil, atmosphere and environment.

360. Defendants use of Chromium VI, products containing Chromium-VI and other toxic substances within its cooling system was and is an ultra hazardous activity.

361. The use of Chromium VI, chromium based products, and other hazardous materials by Defendants in such a way so as to readily permit such chemicals to be discharged into open, unlined ponds and spayed into the air and upon the ground is not a matter of common usage.



1   362.   The use of Chromium VI, chromium based products, and other toxic materials

2   in the manner conducted by Defendants is inappropriate in any are, but especially in an

3   area which would, and in fact did, cause exposure to many individuals, families, livestock,

4   pets, and wild animals of extremely high amounts of toxic and carcinogenic substances.

5   363.   Disposal of waste water contaminated with Chromium VI, chromium based

6   products, and other toxic chemicals is an ultra hazardous activity.

7   364.   Defendants, discharge of waste water contaminated with Chromium-VI and

8   other toxic substances into open, unlined ponds and Defendants' spraying of waste water

9   contaminated with Chromium-VI and other toxic substances into the air was and is an ultra

10  hazardous activity.

11  365.   The disposal of Chromium-VI and other toxic substances by Defendants in

12  such a way as to readily permit such chemicals to seep into the groundwater, surface and

13  subsurface soil, atmosphere and environment is not a matter of common usage or practice.

14  366.   The discharge of waste water contaminated with Chromium-VI and other toxic

15  substances into open, unlined ponds is inappropriate in any area, but especially in an area

16  which would, and, in fact, did, cause exposure to many individuals, families, livestock, pets,

17  and wild animals of extremely high amounts of toxic and carcinogenic substances.

18  367.   The discharge of waste water contaminated with Chromium-VI and other toxic

19  substances into air and onto the land is inappropriate in any area, but especially in an area

20  which would, and in fact did, cause exposure to many individuals, families, livestock, pets,

21  and wild animals of extremely high amounts of toxic and carcinogenic substances.

22  368.   Defendants BETZ, as the producer of the hazardous chemicals, knew or

23  should have known that discharge of the contaminated water into unlined ponds, designed

24  for the rapid percolation and evaporation of the water, would cause the water to percolate

25  into the surface and subsurface soils, and eventually into the underground water table, such

26  contamination ultimately being hazardous to all who rely upon the watertable.  Plaintiffs

27  herein are within the foreseeable class of people to whom harm would fall for such actions.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-85-

EXHIBIT  A
PAGE  85  OF  101



1  As such, and in connection with, as before identified, BETZ owed a duty to Plaintiffs to
2  warn of the contamination.

3      369.  As a result of BETZ having knowledge that their chemicals had in fact
4  contaminated the ground water upon which Plaintiffs relied, they breached their duty to
5  these Plaintiffs by failing to provide any warning of the dangerous condition.

6      370.  As a direct and proximate result of Defendant BETZ's breach of their duty,
7  Plaintiffs were injured, as described above.

8      371.  As a result of  Defendant BETZ's active role in monitoring, advising,
9  regulating, and testing the use of the toxic products at the STATION, Defendant BETZ had
10  a duty to advise and warn Defendant PG&E of the proper methods for disposal of such
11  chemicals, and, upon learning of the contamination of the groundwater, to promptly notify
12  the public.

13      372.  Defendant BETZ breached its duty in failing to properly provide warnings to
14  PG&E as to the use and discharge of the products it sold. As Defendant BETZ was actively
15  monitoring, advising, and providing testing services to PG&E in regards to the use and
16  discharge of its products, and was aware of the contamination of the groundwater, Betz
17  breached its duty to Plaintiffs by failing to advise them of the hazardous condition of the
18  groundwater.

19      373.  The extent to which the community received any value for the intentional
20  discharge of the waste water contaminated with Chromium-VI and other toxic substances
21  is outweighed by the activity's known dangerous toxic, carcinogenic, and reproductive
22  affects.

23      374.  Due to Defendants' actions, each and every Plaintiff has suffered damages
24  as fully outlined above in the PRELIMINARY ALLEGATIONS.

25      375.  Defendants' actions in discharging the waste water contaminated with
26  Chromium-VI and other toxic substances into the open, unlined ponds near Plaintiffs'
27  homes and farms resulted in a continuing contamination of the environment and the

28
SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-86-



 

1  groundwater. Such outrageous, willful, malicious, and intentional actions caused Plaintiffs

2  great and irreparable harm thereby justifying an award of punitive damages against

3  Defendants, and each of them.

4

5                    **FIFTH CAUSE OF ACTION - BATTERY**

6       (By All Plaintiffs against Defendants PG&E, Does 1 through 2000300, inclusive)

7

8       376.    Plaintiffs incorporate by this reference each and every allegation contained

9  in Paragraphs 1 through 375, inclusive, and each of them, as though set forth verbatim at

10 this point.

11      377.    Plaintiffs' inhalation, exposure and ingestion of Chromium-VI and other toxic

12 substances through the use of the contaminated groundwater and the exposure to the

13 contaminated surface and subsurface soil, atmosphere and environment, constituted

14 harmful and offensive contacts by Defendants and each of them.

15      378.    Plaintiffs did not consent to these harmful offensive contacts caused by

16 Defendants.

17      379.    Each of the Defendants intended to use and dispose of or was grossly

18 negligent in using and disposing of Chromium-VI and other toxic substances at the

19 STATION.

20      380.    Each of the Defendants intended to discharge waste water contaminated with

21 Chromium-VI and other toxic substances from the STATION.

22      381.    As a result of the intentional or grossly negligent discharge of Chromium-VI

23 and other toxic substances into the unlined ponds, the Chromium-VI and other toxic

24 substances were transferred to the underlying groundwater, surface and subsurface soil,

25 atmosphere and environment by which Plaintiffs were and continue to be damaged.

26      382.    Due to Defendants' actions, each and every Plaintiff has suffered damages

27 as fully outlined above in the PRELIMINARY ALLEGATIONS.

28



1    383.    Defendants, knowing or grossly negligent conduct in discharging Chromium-VI

2  and other toxic substances into the open, unlined ponds near Plaintiffs' homes and farms

3  caused harmful and offensive contacts through the exposure to, inhalation of, and ingestion

4  of the contaminated groundwater, toxic substances in the surface and subsurface soil,

5  atmosphere and environment. Such contacts were willful, malicious, grossly negligent or

6  intentional from which the Plaintiffs have suffered great harm and thereby justify an award

7  of punitive damages.

8

9           **SIXTH CAUSE OF ACTION - INTENTIONAL MISREPRESENTATION**

10               **(By All Plaintiffs against Defendants PG&E,**

11                  **Does 1 through 2000300, inclusive)**

12

13    384.    Plaintiffs incorporate by this reference each and every allegation contained

14  in Paragraphs 1 through 383, inclusive, each of them, as though set forth verbatim at this

15  point.

16    385.    Defendants made false statements and provided misleading articles,

17  discussed fully above in the PRELIMINARY ALLEGATIONS.

18    386.   All such statements and representations described above were intentionally

19  made by Defendants.

20    387.    Each of the above statements, representations and articles are untrue.

21    388.    Defendants did not disclose that Chromium-VI was the type of chromium in

22  Plaintiffs, groundwater.

23    389.    Due to Defendants' actions, Plaintiffs' water was in fact toxic and carcinogenic

24  for any use.

25    390.    Defendants' statement that the water was safe for all purposes other than

26  drinking was false.

27    391.    Defendants knew at the time the above statements and representations were

28



1 | made that the above statements and representations were false.

2 |     392.   Defendants intended to induce Plaintiffs to rely on the above statements,
3 | misrepresentations and articles. Defendants intended to defraud and deceive Plaintiffs
4 | when providing the above statements, misrepresentations and articles. Defendants profited
5 | as a result of the above statements, misrepresentations and articles.

6 |     393.   Plaintiffs, in using the contaminated groundwater all domestic purposes other
7 | than drinking, were damaged by actually and justifiably relying on Defendants' statements,
8 | misrepresentations and articles.

9 |     394.   Plaintiffs, by continuing to live within the PLUME and continuing to be exposed
10 | to Chromium-VI and other toxic substances in the groundwater, surface and subsurface soil,
11 | atmosphere and environment through ingestion, inhalation and skin contact were damaged
12 | by actually and justifiably relying on Defendants' statements.

13 |     395.   Due to Defendants' actions, each and every Plaintiff has suffered damages
14 | fully outlined above in the PRELIMINARY ALLEGATIONS.

15 |     396.   Defendants, intentionally misrepresented the nature of the discharge of their
16 | actions, i.e., the discharge of waste water contaminated with Chromium-VI and other toxic
17 | substances, thus exposing Plaintiffs to Chromium-VI and other toxic substances through
18 | long-term ingestion, inhalation, and by skin contact. The long duration of Plaintiffs,
19 | exposure could have been avoided if Defendants simply had told the truth. The acts of
20 | Defendants alleged above were willful, wanton, malicious, and oppressive, and justify the
21 | awarding of exemplary and punitive damages.

22 |

23 |       **SEVENTH CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION**
24 |             (By All Plaintiffs against Defendants PG&E,
25 |                 Does 1 through 300, inclusive)

26 |

27 |    397.   Plaintiffs incorporate by this reference each and every allegation contained

28 |

EXHIBIT A
PAGE 89 of 104



1  in Paragraphs 1 through 396 inclusive, and each of them, as though set forth verbatim at
2  this point.

3       398.    Defendants made certain false statements and provided misleading articles
4  discussed fully above in the PRELIMINARY ALLEGATIONS.

5       399.    All such statements described above were negligently made by Defendant.

6       400.    Each of the above statements, representations, and articles is untrue and
7  misleading.

8       401.    Defendants did not disclose that Chromium-VI was the type of chromium in
9  Plaintiffs' groundwater.

10      402.    Due to Defendants' actions, Plaintiffs' water was in fact toxic and carcinogenic
11  for any use.

12      403.    The Defendants' statements that the water was safe for all purposes other
13  than drinking was false.

14      404.    Defendants made the above statements without reasonable grounds for
15  believing them to be true.

16      405.    Defendants were aware that the Chromium-VI levels in the groundwater
17  exceeded current EPA standards.

18      406.    Defendants were at all times in the best position to warn and advise Plaintiffs
19  of the Chromium-VI and other toxic substances Defendants caused to be released into the
20  groundwater, surface and subsurface soil, atmosphere and environment.

21      407.    Defendants knew or should have known that Plaintiffs would reasonably rely
22  on Defendants' representations.

23      408.    Plaintiffs, in using the contaminated groundwater for all domestic purposes
24  other than drinking, actually and justifiably relied on Defendants, statements to Plaintiffs'
25  detriment.

26      409.    Plaintiffs, by continuing to live within the PLUME and continuing to be exposed
27  to Chromium-VI and other toxic substances in the groundwater, surface and subsurface soil,

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT A



atmosphere and environment, actually and justifiably relied on Defendants' statement to Plaintiffs, detriment.

410.    Due to Defendants' actions, each Plaintiff has suffered damages fully outlined above in the PRELIMINARY ALLEGATIONS.

## EIGHTH CAUSE OF ACTION - FRAUDULENT CONCEALMENT

### (By All Plaintiffs against All Defendants)

411.    Plaintiffs incorporate by this reference each and every allegation contained in Paragraphs 1 through 410, inclusive, and each of them, as though set forth verbatim at this point.

412.    Defendants made oral and written representations to Plaintiffs as described in the PRELIMINARY ALLEGATIONS.

413.    Defendants represented that "chromium" was found in the groundwater around the STATION.

414.    In order to inform Plaintiffs of the toxic and carcinogenic effects of the chemicals to which Plaintiffs were exposed, Defendants were obligated to but did not disclose at any time that Chromium-VI was the type of chromium in Plaintiffs' groundwater.

415.    Health and Safety Code Section 25249.6 requires disclosure by a clear and reasonable warning prior to exposing individuals to one or more chemicals known to the State of California to cause cancer.

416.    Defendants had a duty to disclose by a clear and reasonable warning, reasonably calculated to give Plaintiffs notice, prior to exposing Plaintiffs to one or more chemicals, including Chromium-VI, known to the State of California to cause cancer.

417.    Defendants, and each of them,  knew that hazardous levels of Chromium-VI and other carcinogenic substances had contaminated the groundwater, surface and subsurface soil, atmosphere and environment within the PLUME. Defendants knew that

Case: 01-30923   Doc# 3955   Filed: 12/20/01   Entered: 12/21/01 14:44:00   Page 96
of 109




1  Plaintiffs were being exposed to Chromium-VI and other carcinogenic substances through
2  ingestion, inhalation, and skin contact.

3      418.    Defendants at all times fraudulently concealed the fact that Plaintiffs inhaled
4  high concentrations of carcinogenic Chromium-VI and other toxic substances as a direct
5  result of Defendants' actions.

6      419.    Defendants at all times fraudulently concealed that Plaintiffs were being
7  exposed to Chromium-VI, a known reproductive toxicant which not only caused exposure
8  to Plaintiffs and their children but also will expose their unborn progeny.

9      420.    Plaintiffs were unaware of said toxic and carcinogenic contamination by
10 Defendants. Had Plaintiffs been aware of such material facts, Plaintiffs would have acted
11 to protect themselves.

12     421.    Defendants intended to defraud and deceive Plaintiffs when concealing the
13 above material facts.  Defendants profited as a result of the above concealment.

14     422.    Due to Defendants' actions, each and every Plaintiff has suffered damages
15 as fully outlined above in the PRELIMINARY ALLEGATIONS.

16     423.    Defendants fraudulently concealed the nature of their actions, i.e., discharging
17 waste water contaminated with Chromium-VI and other toxic substances, thus exposing the
18 Plaintiffs to Chromium-VI and other toxic substances through long-term ingestion,
19 inhalation, and by skin contact. The long duration of exposure could have been avoided if
20 Defendants had simply disclosed the truth.  The acts of Defendants alleged above were
21 willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and
22 punitive damages.

23

24              **NINTH CAUSE OF ACTION - CONSTRUCTIVE FRAUD**

25                  (By All Plaintiffs against All Defendants)

26

27     424.    Plaintiffs incorporate by this reference each and every allegation contained

28
                 SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

                                        -92-





1  in Paragraphs 1 through 423, inclusive, and each of them, as though set forth verbatim at
2  this point.

3      425.   After Defendants exposed Plaintiffs to Chromium-VI and other toxic
4  substances, Defendants PG&E undertook to provide "medical services" to Plaintiffs.
5  Defendants also volunteered to protect and inform Plaintiffs of the levels of "chromium"
6  contamination. This conduct by Defendants gave rise to a fiduciary or confidential
7  relationship between Defendants and Plaintiffs. Once Defendants disclosed certain facts,
8  Defendants were obligated to fully and fairly disclose all facts regarding this carcinogenic
9  and toxic exposure to Chromium-VI, so as to provide an adequate and meaningful warning
10 to all individuals exposed.

11     426.   Defendants made false statements and provided misleading articles discussed
12 fully above in the PRELIMINARY ALLEGATIONS.

13     427.   Defendants failed to disclose to Plaintiffs what type of chromium was
14 discharged, the fact that the chromium discharged is a known carcinogen and reproductive
15 toxicant, that Plaintiffs continued to be exposed to Chromium-VI and other toxic substances,
16 and that the contaminated groundwater should not be used under any circumstances for
17 any domestic purpose.

18     428.   Defendants intended to and did deceive Plaintiffs when Defendants failed to
19 disclose to Plaintiffs the type of chromium discharged, the fact that the chromium
20 discharged is a known carcinogen and reproductive toxicant, that Plaintiffs continue to be
21 exposed to Chromium-VI and other toxic substances, and that the contaminated
22 groundwater should not be used under any circumstances for any domestic purpose.

23     429.   Plaintiffs, in using the contaminated groundwater for all domestic purposes
24 other than drinking, were damaged by actually and justifiably relying on Defendants'
25 statements.

26     430.   Plaintiffs, by continuing to live within the PLUME and continuing to be exposed
27 to Chromium-VI and other toxic substances in the groundwater, surface and subsurface soil,

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-93-

EXHIBIT A
PAGE 132 OF 168



1 atmosphere and environment, were damaged by actually and justifiably relying on
2 Defendants' statements.

3    431.   Due to Defendants' actions, each Plaintiff has suffered damages fully outlined
4 above in the PRELIMINARY ALLEGATIONS.

5    432.   Defendants' conduct in concealing the nature of their actions,. i.e., the
6 discharge of waste water contaminated with Chromium-VI and other toxic substances,
7 exposed Plaintiffs to Chromium-VI and other toxic substances through long-term ingestion,
8 inhalation, and by skin contact.  The long duration of exposure could have been avoided if
9 Defendants simply had disclosed the truth.  The acts of Defendants alleged above were
10 willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and
11 punitive damages.

12

13 //

14          **TENTH CAUSE OF ACTION - INTENTIONAL INFLICTION**
15                    **OF EMOTIONAL DISTRESS**
16                (By All Plaintiffs against All Defendants)

17

18    433.   Plaintiffs incorporate by this reference each and every allegation contained
19 in Paragraphs 1 through 432, inclusive, and each of them, as though set forth verbatim at
20 this point.

21    434.   With conscious disregard for the safety of the men, women and children living
22 within the PLUME, Defendants intentionally disposed of the known carcinogen, Chromium-
23 VI, and other toxic substances in unlined ponds, knowing it was certain to invade the
24 groundwater, surface and subsurface soil, atmosphere and environment.

25    435.   Defendants' contamination of Plaintiffs, water supply, surface and subsurface
26 soil, atmosphere and environment is an outrageous act that exceeds all bounds of decency
27 tolerated by our society.

28
          SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

                              -94-

EXHIBIT A
PAGE 94 of 104



436.   Defendants exhibited a reckless disregard for the probability of causing Plaintiffs severe emotional distress by contaminating Plaintiffs, water supply, surface and subsurface soil, atmosphere and environment, and by failing and refusing to take any steps to acknowledge or remedy the situation.

437.   Defendants intentionally failed to take any steps to stop the contamination or to warn Plaintiffs of the contamination and its consequences.

438.   As a proximate result of Defendants' acts, all Plaintiffs are severely emotionally distressed due to the fear of exposure to Chromium-VI and other toxic substances and its consequences.

439.   As a proximate result of Defendants' acts, all Plaintiffs are severely emotionally distressed because Plaintiffs are now aware of the known repercussions of exposure to Chromium-VI and other toxic substances. Plaintiffs suffer and will continue to suffer severe emotional distress because of the reasonable certainty that they will suffer future medical complications, future economic liability as a result of prospective medical expenses, lost wages due to disability, damage to their genes and reproductive systems affecting their desire to raise a family in the future and severe emotional distress regarding the fate of themselves and their already born children.

440.   Defendants, and each of them, made a conscious decision to put corporate profits ahead of the health and lives of the individuals and families living around the STATION.

441.   The above-mentioned conduct was willful, malicious, and intentional from which all Plaintiffs have suffered great harm and justify an the award of punitive damages in an amount according to proof.


**ELEVENTH CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY**

(By All Plaintiffs against Defendant BETZ,

Does 301 through 500, inclusive,

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-95-

EXHIBIT A
PAGE 95 of 104

 

1     Chemical Companies Which Designed, Manufactured,

2     Distributed, Sold and Supplied

3     Defendant PG&E With Toxic Substances)

4

5     442.    Plaintiffs incorporate by this reference each and ever allegation contained in

6 Paragraphs 1 through 441, inclusive, and each of them, as though set forth verbatim at this

7 point.

8     443.    Defendant BETZ is a chemical company which designed, manufactured,

9 distributed, sold and supplied Chromium-VI and/or other toxic substances or derivative

10 components to Defendant PG&E. The true names of Defendants sued herein as Does 1

11 through 300, inclusive, are unknown to Plaintiffs who therefore sue such Defendants by

12 such fictitious names and will amend their complaint to show their true names when

13 ascertained.

14     444.    Plaintiffs are informed and believe and thereon allege that BETZ and Does

15 301 to 500 and each of the Defendants and Betz and Doe 1 through 300, inclusive is

16 responsible in some manner for the occurrence herein alleged and that Plaintiffs' damages

17 hereinafter alleged were proximately caused by such Defendants.

18     445.    At all times mentioned herein the Chromium-VI and other toxic substances

19 used by Defendant PG&E failed to have proper labels, warnings or instructions on how to

20 use, store or dispose of the deadly toxic substances which Defendant BETZ and Does 301

21 through 500 supplied to Defendant PG&E.

22     446.    At all relevant times, BETZ and Does 301 through 300500 failed to warn that

23 human exposure to Chromium-VI and other toxic substances which they manufactured,

24 designed or sold has severe medical side effects which rendered the products unsafe for

25 its intended or reasonably foreseeable use.

26     447.    At all relevant times, BETZ  knew or should have known of the risk to all

27 Plaintiffs by the application of scientific knowledge available at the time of manufacture.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT A
PAGE 96 OF 109



448. At all relevant times, BETZ knew or should have known that discharge of the toxic waste created by its product, if discharged into open, unlined ponds designed for the rapid percolation and evaporation, could and would cause contamination of the underground water table.

449. At all relevant times, BETZ was aware of, familiar with, and knowledgeable as to PG&E's common disposal practices of its toxic waste from BETZ's products into unlined ponds designed for the rapid percolation and evaporation of the waste water.

450. At all relevant times, BETZ was in fact advising, assisting, testing, and working directly with PG&E in the use and disposal of its products at the STATION.

451. At all relevant times, BETZ, and Does 301 through 500, and each of them, failed to properly warn, advise, or supervise PG&E in a safe and effective manner to dispose of the toxic waste created by its product.

452. At all relevant times, BETZ, while working with PG&E in regards to the use and disposal of the toxic waste chemicals produced by its product, failed to properly advise, warn, and dispose of its products' toxic waste water.

453. At all relevant times, BETZ was aware of the improper use and disposal practices by PG&E in connection to their products, and did not act to rectify the improper activity, nor did they take action to warn the public as to the improper activities of PG&E and the potentially deathly repercussions to them. Such actions and omissions therefore constitutes implied endorsement of the use, handling and disposal of its product by PG&E, thereby constituting depraved indifference such as to effectively and in fact condone the use of the products in an improper and unsafe manner, impliedly nullifying any warnings, if any, provided. By effectively invalidating any warnings previously given as to the product, if any were in fact given, this condoning behavior effectively made such warning transparent and without effect, so as to make the product in an unreasonably dangerous defective condition.

454. At all times herein mentioned, the Chromium VI, chromium based chemicals and other toxic substances were not reasonable and safe for use by PG&E at the






1　STATION, and in the vicinity of the Plaintiffs herein, and was not reasonably fit and safe to

2　be discharged into evaporation ponds, sprayed into the air, and placed upon the ground for

3　disposal, and ultimately to be placed into Plaintiffs' groundwater supply, due to the

4　unreasonably dangerous defective condition of the Chromium VI, chromium based

5　products, and other toxic substances.

6　　　455.　At all times herein mentioned, Plaintiffs were users of the water within the

7　watertable, and by BETZ, knowing that its products were being discharged into that water,

8　and with full knowledge that said water table was in fact contaminated by its product, BETZ

9　's acts and omissions, as outlined above, constituted knowledge that Plaintiffs were

10　consuming, and likely to be harmed by, their products so as to effectively make Plaintiffs

11　a known end consumer of the products.

12　　　456.　As a direct and proximate result of the acts and omissions described above,

13　all Plaintiffs sustained serious injuries and damages, as described above in Paragraphs, as

14　a result of BETZ's breach of its duties..

15　　　457.　As a direct and proximate result of the acts and omissions by BETZ as

16　outlined above, and by virtue of the tortuously defective and unreasonably dangerous

17　condition, and the inherently dangerous propensities of the chromium VI, chromium based

18　products, and other toxic products produced by BETZ, BETZ became strictly liable to these

19　Plaintiffs for the injuries and damages sustained and set forth above.

20

21　　　　　　　**TWELFTH CAUSE OF ACTION FOR WRONGFUL DEATH**

22　　　　　　　　　　　(Against All Defendants)

23

24　　　458.　The Plaintiffs set forth hereafter incorporate by this reference each and every

25　allegation contained in paragraphs 1 through 457, inclusive, and each of them, as though

26　set forth verbatim at this point.

27　　　459.　At all times mentioned, John Earl Cravens, was the husband of **Nora Cravens**

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-98-

EXHIBIT A
PAGE 98 of 104



1 and the father of **Sandra Easton and Jean Thompson**. These Plaintiffs are the sole heirs
2 at law of decedent hereinbefore alleged.

3     460. As a direct and proximate result of the conduct of Defendants, as
4 aforementioned, John L. Cravens died on October 10, 1997.

5     461. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff
6 Nora Cravens, Sandra Easton, Jean Thompson did not and could not have discovered the
7 true cause of John Earl Cravens death until immediately prior to the commencement of this
8 action.

9     462. As a further direct and proximate result of John Earl Cravens' death, Plaintiffs
10 Nora Cravens, Sandra Easton and Jean Thompson have been deprived of a kind and loving
11 husband and father and of his care, comfort, love, protection, advice, society, physical
12 assistance and financial support, all to their damages in an amount in excess of the
13 minimum subject matter jurisdiction of this court and according to proof.

14     463. At all times herein mentioned Phillip Melton was the father of **Connie Lee**
15 **Paul Melton and Randolph P. Melton**, Plaintiffs are the sole heirs at law of decedent
16 hereinbefore alleged.

17     464. As a direct and proximate result of the conduct of Defendants ans
18 aforementioned, Phillip Melton died on October 10, 1997.

19     465. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs
20 Randolph Phillip Melton and Connie Lee Paul Melton did not and could not have discovered
21 the true cause of Phillip Melton's death until immediately prior to the commencement of this
22 action.

23     466. At all times herein mentioned **John Morris and Patsy Morris** were the
24 parents of Tammy Bernice Morris. Plaintiffs are the sole heirs at law of decedent
25 hereinbefore alleged.

26     467. As a direct and proximate result of the conduct of Defendants as
27 aforementioned, Tammy Bernice Morris died on December 29, 1968.

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-99-

EXHIBIT A

 

468.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs John and Patsy Morris did not and could not have discovered the true cause of Tammy Bernice Morris' death until immediately prior to the commencement of this action.

469.    As a further direct and proximate result of Tammy Bernice Morris' death, Plaintiff John and Patsy Morris have been deprived of a kind and loving daughter and of her care, comfort, love, protection, advice, society, physical assistance and financial support, in excess of the minimum subject matter jurisdiction of this court and according to proof.

470.    At all times mentioned Plaintiff **Walter E. Young** was the husband of Mary Lou Young.  Plaintiff is the sole heir at law of decedent hereinbefore alleged.

471.    As a direct and approximate result of the conduct of Defendants, as aforementioned, Mary Lou Young died on October 18, 1995.

472.    As a direct and proximate result of Mary Lou Young's death, Plaintiff Walter E. Young has been deprived of a kind and loving wife and of her care, comfort, love, protection, advice, society, physical assistance and financial support, all to his damages in an amount in excess of the minimum matter jurisdiction of this court and according to proof.

473.    At all times herein mentioned Plaintiff **David H. Hunter, Paula S. Copp and Thelma Hunter** are the sole and legal heirs of decedent Paul Adolf Hunter.

474.    As a direct and proximate result of the conduct of the Defendants as aforementioned Adolf Paul Hunter died in September of 1990.

475.    As a direct and proximate result of Defendants' fraudulent conduct Plaintiff's David H. Hunter, Paula S. Copp and Thelma Hunter did not and could not have discovered the true cause of Paul Adolf Hunter's death until immediately prior to the commencement of this action.

476.    As a further direct and proximate result of Paul Adolf Hunter's death, Plaintiffs have been deprived of a kind and loving husband and father and of his care, comfort, love, protection, advice, society, physical assistance and financial support in excess of the

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-100-






1  minimum subject matter jurisdiction of this court and according to proof.

2       477.   At all times herein mentioned Plaintiff's **Gary Roos, Trinity Roos, and**

3  **Michael Cooper** are the sole heirs of decedent Carolyn Roos.

4       478.   As a direct and proximate result of the conduct of the Defendants as

5  aforementioned Carolyn Roos died in 1999 at the age of 43 of lung cancer.

6       479.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs

7  Gary Roos, Trinity Roos, and Michael Cooper did not and could not have discovered the

8  true cause of Carolyn Roos death until immediately prior to the commencement of this

9  action.

10       480.   As a further direct and proximate result of Carolyn Roos' death, Plaintiffs Gary

11  Roos, Trinity Roos and Michael Cooper have been deprived of a kind and loving mother and

12  wife of her care, comfort, love, protection, advice, society, physical assistance and financial

13  support in excess of the minimum subject matter jurisdiction of this court and according to

14  proof.

15       481.   Plaintiff **Della Elizabeth Kilfian** at all times herein mentioned was the mother

16  of Malichi Loehr and as such is her sole legal heir.

17       482.   As a direct and proximate result of the conduct of the Defendant's as

18  aforementioned, Malichi Loehr died on April 5, 1981.

19       483.   As a direct and proximate result of Defendants' fraudulent conduct Plaintiff

20  Della Elizabeth Kilfian did not and could not have discovered the true cause of Malichi

21  Loehr's death until immediately prior to the filing of this action.

22       484.   As a further direct and proximate result of Malichi Loehr's death, Plaintiff, Della

23  Elizabeth Kilfian has been deprived of a kind and loving daughter and of her care, comfort,

24  love, protection, advice, society, physical assistance and financial support, all to her

25  damage in an amount to exceed the minimum subject jurisdiction matter of this court

26  according to proof.

27       485.   By reason of the conduct of Defendants, and each of them, Plaintiffs have

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

-101-

EXHIBIT 4
PAGE 101 of 104



1 incurred funeral and burial expenses in such an amount as will be proven at the time of trial.

2 Plaintiffs have lost the use of interest on money owed from the date of this incident until

3 judgment as follows:

4      a.      On funeral and burial expenses;

5      b.      On loss of support;

6      c.      On pecuniary value of the loss of love, care, companionship, comfort,

7 services, society, solace, and moral support

8

9      **WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of**

10 **them as follows:**

11

12      **ON THE FIRST CAUSE OF ACTION, FRAUD AND DECEIT:**

13      1)      For general damages according to proof;

14      2)      For special damages according to proof;

15      3)      For punitive damages in an amount to be proven at trial;

16

17      **ON THE SECOND CAUSE OF ACTION, NEGLIGENCE:**

18      1)      For general damages according to proof;

19      2)      For special damages according to proof;

20

21      **ON THE THIRD CAUSE OF ACTION, NEGLIGENCE PER SE:**

22      1)      For general damages according to proof;

23      2)      For special damages according to proof;

24      3)      For damages according to statute;

25      4)      For reasonable attorney fees according to proof;

26

27      **ON THE FOURTH THROUGH ELEVENTH CAUSES OF ACTION:**

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT A      102




1      1)     For general damage according to proof;

2      2)     For punitive damages in an amount to be proven at trial;

3      3)     For special damages in an amount to be proven at trial;

4

5    **ON THE TWELFTH CAUSE OF ACTION, WRONGFUL DEATH:**

6      1)     For damages for wrongful death in an amount in excess of the minimum

7 subject matter jurisdiction of this court;

8      2)     For medical, funeral and burial expenses and other special damages

9 according to proof;

10     3)     For medical expense according to proof;

11

12   **ON ALL CAUSES OF ACTION:**

13     1)     For costs of this action;

14     2)     For attorney fees;

15     3)     For interest according to law and;

16     4)     For such other and further relief as this court may deem just and proper.

17

18 Date: March 14, 2001          THOMAS ANTON & ASSOCIATES

19

20

21

22                 By: _____

23                   THOMAS J. ANTON

24                   Attorneys for Plaintiffs

25

26

27             LAW OFFICES OF MICHAEL P. DOLAN

28

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT  A
103

Case: 01-3092  BA  Doc# 2950  Filed 12/20/01  Entered: 12/21/01 14:44:00  Page 108 of 109




By: _Michael P. Dolan_

MICHAEL P. DOLAN

Attorneys for Plaintiffs

C:\FILES\1437\PLEADING\031401AMENDED COMPLAINT.WPD

March 14, 2001

SECOND AMENDED COMPLAINT FOR FRAUD AND DECEIT, ETC.

EXHIBIT _A_

104

PAGE 104 of 164