WALTER J. LACK, State Bar No. 57550
GARY A. PRAGLIN, State Bar No. 101256
JOY L. ROBERTSON, State Bar No. 165150
ELIZABETH A. HERNANDEZ, State Bar No. 204322
**ENGSTROM, LIPSCOMB & LACK**
A Professional Corporation
Sixteenth Floor
10100 Santa Monica Boulevard
Los Angeles, California 90067-4107
(310) 552-3800

THOMAS V. GIRARDI, State Bar No. 36603
**GIRARDI & KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211

EDWARD L. MASRY, State Bar No. 31016
**MASRY & VITITOE**
5707 Corsa Avenue, Second Floor
Westlake Village, California 91362
(818) 991-8900

Attorneys for Claimants/Plaintiffs

**FILED**
DEC 2 1 2001
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation,<br><br>Debtor.<br><br><br>Federal I.D. No. 94-0742640 | Bankruptcy Case No.<br>01-30923 SFM11 - Chapter 11<br>[Assigned to: Judge Dennis Montali]<br><br>**CLAIMANTS' OPPOSITION TO MOTION TO CERTIFY AND TRANSFER THE PERSONAL INJURY CHROMIUM CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently With The Declaration Of Joy L. Robertson and Appendix of Non-Federal Cases]<br><br>DATE:   January 3, 2002<br>TIME:   1:30 p.m.<br>PLACE: 235 Pine Street<br>            22nd Floor<br>            San Francisco, CA |

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:159675.1                                    1

3982

Case: 01   Claimants' Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims   Case No. 01-30923 SFM11

25

TO THE HONORABLE DENNIS MONTALI, UNITED STATES
BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, THE DEBTOR AND DEBTOR-IN-
POSSESSION, AND OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF
RECORD:

Claimants hereby submit the following Opposition to the Debtor's and Debtor-in-
Possession's Motion to Certify and Transfer the Personal Injury Chromium Claims
pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 157(c)(1), and 28 U.S.C. § 1334(c)(1) and
(c)(2).

This Opposition is also based upon the following grounds:

1.     The Bankruptcy Court has the power to deny the transfer of the cases at
issue to the District Court;

2.     The Bankruptcy Court is not required to transfer Claimants' loss of
consortium claims;

3.     The Bankruptcy Court may recommend that the District Court should
abstain from exercising jurisdiction over the Claimants' personal injury and wrongful
death claims since these cases can be timely adjudicated in the Los Angeles Superior
Court;

4.     Los Angeles Superior Court is the proper venue for the cases at issue;

5.     The ends of justice will not be served if the Debtor's Motion is granted;

6.     Judicial economy will be better served by denying PG&E's motion; and

7.     The Claimants and witnesses will suffer great hardship if the action is
transferred to the District Court in Northern California.

/ / /

/ / /

/ / /

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:159675.1

Claimants' Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims   Case No. 01-30923 SFM11

Case: 01-30923   Doc# 388   Filed: 12/21/01   Entered: 12/28/01 14:42:00   Page 2 of

1   This Opposition is further based upon the attached Memorandum of Points and

2   Authorities, the accompanying Declaration of Joy L. Robertson and the exhibits attached

3   thereto, Claimants' Appendix of Non-Federal Cases, the papers and pleadings on file

4   herein, and upon any further oral and documentary evidence that may be presented at the

5   hearing of the Debtor's Motion.

6

7   DATED: December 19, 2001        Respectfully submitted,

8                                    ENGSTROM, LIPSCOMB & LACK
                                     GIRARDI & KEESE
9                                    MASRY & VITITOE

10

11                                   By: _____

12                                   WALTER J. LACK
                                     GARY A. PRAGLIN
13                                   JOY L. ROBERTSON
                                     ELIZABETH A. HERNANDEZ
14                                   Attorneys for Claimants

15

16

17

18

19

20

21

22

23

24

25

26

ENGSTROM,
LIPSCOMB
& LACK      27

28

Case: 01-30923    Doc#: 384    Filed: 12/26/01    14:43:00    Page 1 of 30
25

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   BASIS FOR CLAIMANTS' OPPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  THE BANKRUPTCY COURT HAS THE POWER TO DENY THE TRANSFER
OF THE PERSONAL INJURY CLAIMS TO THE DISTRICT COURT. . . . . . . . . . . 7

V.   THE BANKRUPTCY COURT HAS THE INHERENT POWER TO MANAGE
ITS OWN PROCEDURES AND DENY THE TRANSFER OF THE PERSONAL
INJURY CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.  THE BANKRUPTCY COURT IS NOT REQUIRED TO TRANSFER THE
LOSS OF CONSORTIUM CLAIMS TO THE NORTHERN DISTRICT
OF CALIFORNIA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.  IN THE INTERESTS OF JUSTICE, THE BANKRUPTCY COURT
SHOULD RECOMMEND THAT THE DISTRICT COURT ABSTAIN
FROM HEARING THE CASES AT ISSUE AND TRANSFER THIS MATTER
BACK TO THE LOS ANGELES SUPERIOR COURT. . . . . . . . . . . . . . . . . . . . 10

VIII.  THE BANKRUPTCY JUDGE IS IN THE BEST POSITION TO
EVALUATE ABSTENTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IX.  LOS ANGELES SUPERIOR COURT IS THE PROPER VENUE FOR
THESE CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   A Special Master Was Appointed in February 1996 . . . . . . . . . . . . . . . . . . . 13

    B.   Selection of the 20 Trial Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   The Parties Agreed Upon a Pre-Trial Schedule Before the Case Was
       Transferred To the Central Civil West. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.   Voluminous Discovery Has Already Been Conducted . . . . . . . . . . . . . . . . . . 15

       1.   Depositions of witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       2.   Case Management Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    E.   Work Remaining Before Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

X.   IF THE PARTIES ARE FORCED TO CONTINUE IN FEDERAL COURT,
THEN EXPERT DISCOVERY WILL HAVE TO REOPEN BASED
UPON THE DIFFERENT STANDARDS FOR THE ADMISSIBILITY OF
EXPERT TESTIMONY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

XI.  THERE IS NO RISK OF INCONSISTENT JUDGMENTS SINCE ALL
OF THE CLAIMANTS' PENDING CASES WOULD BE LITIGATED IN
THE LOS ANGELES SUPERIOR COURT, CENTRAL CIVIL WEST. . . . . . . . . . 18

XII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

::ODMA\GRPWISE\ELL.DOM.ELL.PO.Documents:160109.1         i

Table of Contents

# TABLE OF AUTHORITIES

## STATUTES AND RULES

11 U.S.C. § 105(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 157(c)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9, 12

28 U.S.C. § 1334(c)(1) and (c)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7, 10, 11

U.S.C.S. Bankruptcy Rule 5011(b) (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

## UNITED STATES SUPREME COURT CASES

Chambers v. NASCO, Inc.,
    501 U.S. 32  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579, 113 S. Ct. 2786  . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Norwest Bank Worthington v. Ahlers,
    485 U.S. 197  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## FEDERAL COURT OF APPEALS AND BANKRUPTCY CASES

Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),
    77 F. 3d 278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Johnson v. McDow (In re Johnson),
    236 B. R. 510, 521 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Levander v. Prober (In re Levander),
    180 F. 3d 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATE CASES

People v. Kelly (1976)
    17 Cal.3d 24  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Case: 01-30923   Doc # 3932   Filed: 12/21/01   Entered: 12/28/01 Table of Authorities 5 of 25

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

The law offices of Engstrom, Lipscomb & Lack, Girardi & Keese, and Masry and Vititoe represent a total of 1,035 plaintiffs in eight (8) separate lawsuits filed against PG&E for injuries sustained as a result of exposure to chromium 6.[1] Each of these 1,035 plaintiffs is a creditor to PG&E. Each plaintiff has filed a Proof of Claim form. There are approximately 811 personal injury claims, 210 wrongful death claims and 168 claims for loss of consortium.[2] A breakdown of the types of clams is attached as Exhibit 1 to the Declaration of Joy L. Robertson ("Robertson Decl."). Every case seeks punitive damages. Therefore, these cases present PG&E with substantial liability, far greater than the unrealistic number proposed in the Plan of Reorganization.

The vast majority of plaintiffs are in the Acosta, Aguayo and Aguilar cases. These three (3) cases have been deemed related cases. A total of 911 plaintiffs are in these 3 related cases. The remaining 124 plaintiffs are in the Baldonado, Bowers, Boyd, Puckett and Miller cases. The related cases have been pending in Los Angeles for more than 6 years. The Aguayo case was filed against PG&E in March of 1995. The Acosta and Aguilar cases were filed in November of 1996 and May of 1997, respectively. After numerous demurrers in all 3 cases, the legal issues surrounding the sufficiency of the

---

1       The seven cases are: Acosta, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 161669; Aguayo, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 123749; Aguilar, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 158588; Baldonado, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 239104; Bowers, et al. v. Pacific Gas & Electric Company, et al., Case Number MC 012543; Boyd, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 249693; Puckett, et al. v. Pacific Gas & Electric Company, et al., Case Number BC 247763; and Miller v. Pacific Gas & Electric Company, et al., Case Number BC 262238. All of these cases were filed in the Los Angeles Superior Court.

2       The evidentiary basis and support for the facts set forth in this Motion are contained in the Declaration of Joy L. Robertson filed concurrently herewith.

ENGSTROM,
LIPSCOMB
& LACK

1    pleadings have now been resolved.[3]  Hundreds of depositions have been taken by the

2    parties.  A total of approximately 400 depositions had been completed at the time PG&E

3    declared bankruptcy.  After almost 5 years of discovery in these cases, 20 trial plaintiffs

4    were selected for the first trial.  A pre-trial schedule was in place and expert witnesses

5    were being deposed at the time PG&E filed for bankruptcy.  Had PG&E not filed for

6    bankruptcy, this case would have gone to trial on July 2, 2001 in the Complex Litigation

7    Division, Department 323, of the Central Civil West Branch of the Los Angeles Superior

8    Court.  This is a specially designed court dedicated exclusively to the trial of complex or

9    lengthy cases, modeled after the Federal system where one judge handles the case from

10    cradle to grave.

11

12    ## II.    BASIS FOR CLAIMANTS' OPPOSITION

13         The Claimants[4] are asking this Court to exercise its discretionary powers to prevent

14    Pacific Gas & Electric Company ("PG&E") from transferring eight (8) cases filed against

15    PG&E from the Los Angeles Superior Court to the District Court of Northern California.

16    Pursuant to 11 U.S.C. § 105(a), 28 U.S.C. §1334(c)(1), 28 U.S.C. §1334(c)(2), and in the

17    interests of justice and comity with state court, the bankruptcy court has the power to deny

18    PG&E's Motion to Certify and Transfer the Personal Injury Chromium Claims.  Claimants

19    ask that this Court exercise its discretionary right to decline to transfer the personal injury

20    claims to the District Court of the Northern District of California.  Claimants also ask this

21    Court to exercise its discretionary right and recommend that the district court abstain from

22

23    3      The <u>Baldonado</u>, <u>Bowers</u>, <u>Boyd</u>, <u>Puckett</u> and <u>Miller</u> cases were filed more recently

24    and include plaintiffs who were unaware of the contamination until they saw the Erin
     Brockovich movie.  The <u>Baldonado</u> case was filed on October 25, 2000 in the Los

25    Angeles Superior Court and was deemed related to the <u>Aguayo</u>, <u>Aguilar</u> and <u>Acosta</u> cases.
     <u>Bowers</u>, <u>Boyd</u>, <u>Puckett</u> and <u>Miller</u> were filed after PG&E declared bankruptcy and thus

26    Notice of Related Cases could not be filed in order to officially deem these cases related to
     the <u>Aguayo</u>, <u>Aguilar</u>, and <u>Acosta</u> cases.

27

28    4      For the purposes of this Motion, the terms "Claimants" and "Plaintiffs" will be
     interchanged throughout the Memorandum of Points and Authorities.

ENGSTROM,
LIPSCOMB
& LACK

1   hearing this matter and transfer it back to the Los Angeles Superior Court where it has

2   been pending for almost 7 years.  This is where all these claims should be liquidated.

3

4   **III.    SUMMARY OF THE CASE**

5            Beginning in 1952, PG&E began polluting certain remote locations with tons of

6   the deadly **carcinogen, hexavalent chromium**.  At three gas compressor stations along

7   PG&E's California Line 300 - - located in **Topock** near California's southeastern border

8   with Arizona, in **Hinkley** near Barstow, and in **Kettleman** near Fresno - - PG&E added

9   massive amounts of chromium to the water circulating in various open cooling towers to

10  prevent corrosion of certain pipes.  Everyday for decades, at each of the three stations,

11  chromium was released through multiple emission stacks on top of the cooling towers (in

12  the form of chromium-containing mists), and through daily purging of cooling tower water

13  into **unlined** ponds adjacent to the towers.  The chromium-containing mists polluted the

14  surrounding population as deadly airborne contaminants and the purged water polluted the

15  groundwater which was used by the surrounding population as its source of drinking

16  water.  Hundreds of millions of gallons of water were disposed of in this fashion.  In one

17  handwritten note to PG&E's Pipeline Operations Manager dated January 14, 1966, PG&E

18  admitted that (at Hinkley) **"[f]or the past 15 years we have been contaminating the ...**

19  **subterranean water with 15 tons of chromate."**  (See Exhibit 2 attached to the

20  Robertson Decl.)  PG&E's own expert, Ron Cavagrotti, estimates that PG&E disposed of

21  at least 26 tons of chromium at Hinkley, and at least 39 tons of chromium at Kettleman.

22  (See Exhibit 3 attached to the Robertson Decl.)

23           PG&E knew about the contamination, but concealed it from the local residents.

24  PG&E concealed the contamination from the governmental authorities such as the local

25  Water Quality Control Boards and from the state of California.  As a result, the chromium

26  litigation plaintiffs were unknowingly exposed to chromium *for decades*.

27  ///

28

ENGSTROM,
LIPSCOMB
& LACK

Case: 01-30923   Doc #   Filed: 12/27/01   Entered: 12/28/01 14:43:00   Page 5 of
25

## IV. THE BANKRUPTCY COURT HAS THE POWER TO DENY THE TRANSFER OF THE PERSONAL INJURY CLAIMS TO THE DISTRICT COURT.

The Debtor, PG&E, claims that the Bankruptcy Court is required to transfer the personal injury chromium claims to the District Court for the Northern District of California. PG&E is wrong. The Bankruptcy Court may use its discretion in determining whether to transfer the personal injury claims to the Northern District of California. The Bankruptcy Court may also recommend that the District Court abstain from exercising jurisdiction over the personal injury claims.

Title 11 U.S.C. § 105(a) provides in pertinent part:

"The court may issue any order, process, or judgment that is **necessary or appropriate** to carry out the provisions of this title. (emphasis added.)

Section 105(a) vests the Bankruptcy Court with the authority to decline PG&E's request to transfer the personal injury chromium claims to the Northern District of California.

It is well established that the equitable powers of the Bankruptcy Court pursuant to Section 105 must be exercised consistent with and within the confines of the Code. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988). Here, the Court's exercise of its power under Section 105(a) to make appropriate orders would be appropriate to the exercise of its powers under 28 U.S.C. § 157(b)(5), B.L.R. 9015-2(d), 28 U.S.C. § 1334(c)(1), and 28 U.S.C. § 1334(c)(2).

## V. THE BANKRUPTCY COURT HAS THE INHERENT POWER TO MANAGE ITS OWN PROCEDURES AND DENY THE TRANSFER OF THE PERSONAL INJURY CLAIMS.

In addition to its broad statutory powers under 11 U.S.C. § 105(a), the Bankruptcy Court has the inherent power to utilize procedures to ensure judicial efficiency and to do justice. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (discussing courts'

ENGSTROM, LIPSCOMB & LACK

Case: 01-30923 Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims Case No. 01-30923 SFM11

25

1  inherent authority to sanction). The Supreme Court in <u>Chambers</u> described the nature of

2  the inherent power as follows:

3  > It has long been understood that "[c]ertain implied powers must necessarily

4  > result to our Courts of justice from the nature of their institution," powers

5  > "which cannot be dispensed with in a Court, because they are necessary to

6  > the exercise of all others." . . . These powers are "governed not by rule or

7  > statute but by the control necessarily vested in courts to manage their own

8  > affairs so as to achieve the orderly and expeditious disposition of cases."

9  > (<u>Chambers</u>, 501 U.S. at 43 (citations omitted).)

10  Bankruptcy courts likewise have inherent powers to manage their own proceedings. <u>See</u>

11  <u>Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)</u>, 77 F. 3d 278, 284 (9th

12  Cir. 1996) (holding that the bankruptcy court had inherent power to impose sanctions

13  against debtor's principal for orchestrating a bad faith filing: Section 105 is "intended to

14  imbue the bankruptcy courts with the inherent powers recognized by the Supreme Court in

15  <u>Chambers</u>") (citation omitted); <u>Levander v. Prober (In re Levander)</u>, 180 F. 3d 1114, 1118

16  (9th Cir. 1999) (holding bankruptcy court had inherent power to amend judgment when

17  obtained through fraud on the court: "The inherent power[] of federal courts . . .(which is

18  based on equity) . . . springs forth from courts' traditional power "to manage their own

19  affairs so as to achieve the orderly and expeditious disposition of cases'") (citations and

20  some internal punctuation omitted); <u>Johnson v. McDow (In re Johnson)</u>, 236 B.R. 510,

21  521 (D.D.C. 1999) (bankruptcy court has inherent power to strike debtor's irrelevant

22  vituperative allegations against the United States Trustee contained in debtor's

23  opposition).

24  > As the <u>Johnson</u> court explained:

25  > Section 105 specifically codifies what are traditionally called "inherent

26  > powers" to give the Bankruptcy Courts the necessary ability to manage the

27  > cases on their docket. It is imperative that courts have the necessary

28  > authority to manage the arguments and conduct of parties to ensure judicial

ENGSTROM,
LIPSCOMB
& LACK

efficiency and to do justice . . . Inherent powers take into account the fact that legislatures cannot foresee the infinite circumstances of life and all the necessary orders that courts may have to issue to do justice. Id. (citation omitted)

Although PG&E argues that pursuant to 28 U.S.C. § 157(b)(5) and B.L.R. 9015-2(d), the Bankruptcy Court is mandated to transfer the personal injury and wrongful death claims to the District Court, the Bankruptcy Court may exercise its discretionary powers and deny the transfer because judicial economy and efficiency will be better served if the claims are litigated in the Los Angeles Superior Court.

## VI. THE BANKRUPTCY COURT IS NOT REQUIRED TO TRANSFER THE LOSS OF CONSORTIUM CLAIMS TO THE NORTHERN DISTRICT OF CALIFORNIA.

PG&E alleges that the Claimants' personal injury and wrongful death claims should be transferred from the Los Angeles Superior Court to the District Court in Northern California pursuant to 28 U.S.C. § 157(b)(5). However, there are also claims for loss of consortium involved in the instant action which do not fall under the realm of 28 U.S.C. § 157(b)(5). Specifically, there are approximately 168 loss of consortium claims in addition to the personal injury and wrongful death claims. Therefore, it is not mandatory that all of the claims be transferred to the District Court in Northern California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ENGSTROM, LIPSCOMB & LACK

9

**VII. IN THE INTERESTS OF JUSTICE, THE BANKRUPTCY COURT SHOULD RECOMMEND THAT THE DISTRICT COURT ABSTAIN FROM HEARING THE CASES AT ISSUE AND TRANSFER THIS MATTER BACK TO THE LOS ANGELES SUPERIOR COURT.**

In addition to using its discretion to deny the transfer of the personal injury chromium claims to the civil division of the Northern District of California, the bankruptcy court should also recommend that the district court abstain from exercising jurisdiction over these claims. The bankruptcy court may enter a finding of fact and conclusion of law recommending that the district court exercise its equitable powers to abstain from hearing this case which rightfully belongs in the Los Angeles Superior Court pursuant to 28 U.S.C. 1334(c)(1) and (c)(2).

Title 28 U.S.C. § 1334 (c)(1) provides:

> "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Title 28 U.S.C. § 1334(c)(2) provides:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court **shall abstain** from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." (emphasis added.)

ENGSTROM,
LIPSCOMB
& LACK

Clearly, it is in the interests of justice to return this case to state court. As explained in greater detail below, this case has been pending in state court since *March of 1995*. For more than 6 years, the parties prepared this case for trial in state court. More than 400 depositions were taken. Experts on both sides testified about causation. The Los Angeles Superior Court has intimate knowledge of this extremely complex toxic tort case. To disregard 6 years of preparation by both parties simply does not make sense. This case belongs back in the Complex Litigation Department 323 of the Central Civil West Branch of the Los Angeles Superior Court. This action would not be before the District Court but for the fact that PG&E filed for bankruptcy. It is a state court case.

## VIII. THE BANKRUPTCY JUDGE IS IN THE BEST POSITION TO EVALUATE ABSTENTION.

On April 6, 2001, PG&E filed for reorganization under Chapter 11. Thereafter, each of the chromium claimants filed a Proof of Claim form with the Bankruptcy Court. The claim form set forth the amount of each claim and also provided a brief summary of the chromium litigation cases. The District Court has absolutely no information regarding the plaintiffs and the values of their claims. Therefore, it is the Bankruptcy Judge who should evaluate abstention.

This position is consistent with U.S.C.S. Bankruptcy Rule 5011(b)(2001) which permits Claimants to file a Motion For Abstention pursuant to 28 U.S.C. §1334(c)[5]. The historical notes for Rule 5011 provide that "[t]he bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention. This subdivision (b) provides that the initial hearing on the motion is before the bankruptcy judge."

/ / /

/ / /

---

5    Claimants filed a Motion for Abstention on December 6, 2001 which is scheduled to be heard by the Bankruptcy Court on January 3, 2002, the same day as PG&E's Motion to Certify and Transfer the Personal Injury Chromium Claims.

ENGSTROM,
LIPSCOMB
& LACK

Case: 01-30923    Doc# 3982    Filed: 12/21/01    Entered: 12/28/01 14:42:00    Page 13 of 25

1    Moreover, 28 U.S.C. §157(c)(1) provides that "[a] bankruptcy judge may hear a

2    proceeding that is not a core proceeding but that is otherwise related to a case under title

3    11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and

4    conclusions of law to the district court, and any final order or judgment shall be entered by

5    the district judge after considering the bankruptcy judge's proposed findings and

6    conclusions . . . ."

7            Thus, it is the bankruptcy judge who should recommend abstention to the District

8    Court Judge.

9

10   **IX.    <u>LOS ANGELES SUPERIOR COURT IS THE PROPER VENUE</u>**

11   **<u>FOR THESE CASES.</u>**

12           During the year 2000, the cases were transferred to the Los Angeles Superior

13   Court, Central Civil West Division, to take advantage of that Court's Complex Litigation

14   Program. The <u>Aguayo</u> case was assigned to the Honorable Carolyn B. Kuhl who has

15   already ruled on a variety of complex pre-trial motions and actually scheduled the trial of

16   the cases to commence on July 2, 2001. This case belongs in the Complex Litigation

17   Department 323 of the Central Civil West Branch of the Los Angeles Superior Court.

18           Litigation against PG&E for chromium 6 contamination has been pending in state

19   court for the past 8 years. The original case entitled <u>Anderson, et al., v. Pacific Gas &</u>

20   <u>Electric Company, et al.</u> was filed on January 26, 1994. This case spawned the movie *Erin*

21   *Brockovich*. The <u>Anderson</u> case involved 650 plaintiffs who sued PG&E for injuries after

22   being exposed to chromium 6 at PG&E's Hinkley Compressor Station. This case was

23   ultimately settled by PG&E for $333,000,000.00 after a seven month trial (binding

24   arbitration) before three distinguished retired judges.

25           From the time of the initial filing of the <u>Aguayo</u> case in March of 1995, this case

26   has been extremely active. The goal of the parties was to eventually get to trial on a small

27   number of test cases. Had PG&E not filed for bankruptcy, the trial of 20 test plaintiffs

28   would have commenced on July 2, 2001.

ENGSTROM,
LIPSCOMB
& LACK

## A. A Special Master Was Appointed in February 1996.

On February 16, 1996, Judge Wisot was appointed Special Master in the <u>Aguayo</u> and related cases and acted in that capacity until early 1998. (Attached as Exhibit 4 to the Robertson Decl. is a true and correct copy of the order appointing Judge Wisot as Special Master). Judge Wisot held Status Conferences on a monthly basis to decide all parties' motions and to attempt to steer the case toward a trial involving Test Plaintiffs. Justice Howard Wiener replaced Judge Wisot as the Special Master on the cases. Justice Wiener's first status conference was held on May 28, 1998 and he held monthly status conferences thereafter. The status conferences largely included discovery disputes and matters related to getting these cases to trial in a timely fashion.

Through participation in the monthly status conferences, the parties agreed and the court ordered the selection of a test plaintiff population. In November of 1996, 150 plaintiffs were selected to serve as representatives of the entire plaintiff population. Discovery as to the remaining plaintiffs was stayed and defendants immediately began conducting discovery for the 150 Test Plaintiffs. Beginning in March of 1997, defendants began deposing the 150 Test Plaintiffs. By March of 1998, more than 150 depositions of Test Plaintiffs had been completed by the parties.

## B. Selection of the 20 Trial Plaintiffs.

On September 16, 1998, Justice Wiener held a status conference. This hearing addressed the matter of selecting trial plaintiffs. Justice Wiener ordered that the trial plaintiffs would consist of twenty (20) plaintiffs. Two (2) alternate plaintiffs were also selected. (Attached as Exhibit 5 to the Robertson Decl. is a true and correct copy of the Order from the September 16, 1998 hearing). In order to select the trial plaintiffs, the following procedure was utilized:

///

///

///

ENGSTROM,
LIPSCOMB
& LACK

Case: 01-30923   Doc# 3982   Filed: 12/21/01   Entered: 12/26/01 14:42:06   Page 15 of 25

- Four (4) plaintiffs were randomly selected from the <u>Aguayo</u> action;[6]

- Seven (7) plaintiffs were selected by plaintiffs from the <u>Aguayo</u> action;

- Three (3) plaintiffs were selected by plaintiffs from the <u>Aguilar</u> and <u>Acosta</u> actions; and

- Six (6) plaintiffs were selected by defendants from all three (3) actions.[7]

Plaintiffs selected one alternate from any of the three actions and defendant selected one alternate from any of the three actions. Thus, a total of twenty-two (22) plaintiffs were selected by the parties.

A significant amount of pre-trial discovery was conducted for these plaintiffs. Each plaintiff was deposed. The treating physicians were deposed. The family members and other witnesses were deposed. PG&E obtained all medical, employment and school records for each of the trial plaintiffs.

## C. The Parties Agreed Upon a Pre-Trial Schedule Before the Case Was Transferred To the Central Civil West.

On February 19, 1999, the parties held a meet and confer to discuss pre-trial scheduling. At the time of the meet and confer, plaintiffs' Motion For Trial Preference was scheduled to be heard on February 24, 1999. However, in exchange for plaintiffs taking their motion off calendar, the parties agreed to a pre-trial schedule which included a November 16, 1999 trial date. This schedule met with the recommendation of the Special Master (Attached hereto as Exhibit 6 is a true and correct copy of the Recommendation of the Special Master Regarding Pre-Trial Schedule).

---

6    The randomly selected plaintiffs were chosen by lottery. Plaintiffs objected to this practice because there was a strong likelihood that the plaintiffs chosen would have "smaller claims," and thus their verdicts would not be representative of the case.

7    Plaintiffs objected to defendant being allowed to select plaintiffs for trial on the grounds that defendant would naturally select cases of "small value." Defendant selected cases of lesser value. Defendant selected cases that are not representative of the claims of the plaintiffs chosen by plaintiffs' counsel.

ENGSTROM,
LIPSCOMB
& LACK

Case: 01-30923   Doc# 3982   Filed: 12/21/01   Entered: 12/28/01 14:42:00   Page: 16
of 25

During 2000, the case was transferred to the Central Civil West, Department 323, of the Los Angeles Superior Court, by order of the Presiding Judge.

### D. **Voluminous Discovery Has Already Been Conducted.**

The volume of discovery conducted over the years is extremely large. The Los Angeles Superior Court has intimate knowledge of the discovery process and the extensive law and motion conducted regarding discovery issues.

#### 1. **Depositions of witnesses**

Over the past six (6) years in the <u>Aguayo</u> case, numerous depositions have been taken by the parties. As noted above, numerous experts have now been deposed. In addition to these experts, approximately 400 witnesses have been deposed in this case. (See Exhibit 7 attached to the Robertson Decl.)

In the event the case is transferred to the District Court, the parties run the risk that much of the discovery will need to be duplicated in the federal court action which will cause great expense and further delay of a trial.

#### 2. **Case Management Orders**

Prior to the Bankruptcy filing, the parties already entered into three different stipulations regarding Case Management Orders which governed various phases of written discovery in the state court actions. The first Case Management Order was issued on April 2, 1996. (See Exhibit 8 attached to the Robertson Decl.) The second Case Management Order was issued on November 25, 1996. (See Exhibit 9 attached to the Robertson Decl.) The third Case Management Order was issued on February 21, 1997. (See Exhibit 10 attached to the Robertson Decl.)

/ / /

/ / /

/ / /

ENGSTROM,
LIPSCOMB
& LACK

### E.   **Work Remaining Before Trial.**

At the time of the Bankruptcy filing, the Honorable Carolyn Kuhl of the Los Angeles Superior Court, Central Civil West, Department 323, had already issued an Order regarding the briefing schedule of the parties, including the schedule for defense motions. (See Exhibit 11 attached to the Robertson Decl.)

The following matters were pending at the time of the Bankruptcy filing:

- PG&E's fourteen (14) Motions for Summary Judgment or Summary Adjudication (See Exhibit 11 attached to the Robertson Decl.)
- Plaintiffs' Motion to Shift the Burden of Proof
- Motions in Limine
- Pre-Trial Conference Issues
- Depositions of defendant's medical experts (approximately twenty (20) days of depositions)

Prior to April 6, 2001 when PG&E filed for bankruptcy, Claimants were in the process of opposing PG&E's fourteen (14) Motions for Summary Judgment or Summary Adjudication.  Most of these Oppositions were already completed by the plaintiffs. Claimants were also prepared to begin the trial scheduled for July 2, 2001 at the time PG&E filed for bankruptcy.

The Chromium 6 Litigation Creditors estimate that 3-5 months time will be required to accomplish the work outlined above before the trial can begin.

### X.   **IF THE PARTIES ARE FORCED TO CONTINUE IN FEDERAL COURT, THEN EXPERT DISCOVERY WILL HAVE TO REOPEN BASED UPON THE DIFFERENT STANDARDS FOR THE ADMISSIBILITY OF EXPERT TESTIMONY.**

Since the initial case entitled <u>Anderson, et al. v. Pacific Gas & Electric Company, et al.</u>, case number BCV 00822, was filed on January 26, 1994, counsel for both parties have taken and defended expert depositions based upon the standard set forth in <u>People v.</u>

ENGSTROM,
LIPSCOMB
& LACK

Kelly, (1976) 17 Cal. 3d 24. Approximately forty-eight (48) days of experts' depositions have been completed by the parties. (See Exhibit 12 attached to the Robertson Decl.). If these actions are transferred to the District Court in Northern California, then the Claimants will be forced to abandon the Kelly standard and disregard the expert depositions taken thus far.

Based upon Kelly, to determine the admissibility of expert witness testimony, the Court must find:

    1.    The witness is qualified as an expert to give an opinion;

    2.    The scientific method upon which the expert testimony is based must be reliable; and

    3.    Correct scientific procedures must have been followed. People v. Leahy, (1994) 8 Cal.4th 587, which affirms the test set forth in People v. Kelly (1976) 17 Cal.3d 24.

In People v. Kelly, the California Supreme Court adopted the test set forth in Frye v. United States (D.C. Cir. 1923) 293 F. 1013, and found that when faced with a "novel method of proof" California courts require a "preliminary showing of general acceptance of this new technique in the relevant scientific community." Id. at 30. In People v. Leahy, the California Supreme Court affirmed the applicability of the Kelly/Frye standard, and found that the Supreme Court decision of Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786 (1993), had not altered that standard in California.

In the event the Bankruptcy Court decides to transfer the current actions to the District Court in the Northern District of California, the interests of justice will be severely impaired and the parties will suffer great hardship since they will be required to essentially start from the beginning and depose every single expert all over again based upon the federal standard for the admissibility of expert testimony.

Unlike the California state law standard regarding the admissibility of expert testimony, the federal Daubert standard requires a different showing by the parties.

///

ENGSTROM,
LIPSCOMB
& LACK

1   Under the federal system, trial courts will not admit expert opinion testimony based upon

2   "scientific evidence" (including tests, theories, and procedures) unless the court has

3   determined that the findings are derived by "scientific methods," concerns work product

4   that is "good science," and would "assist the trier of fact." Daubert v. Merrell Dow

5   Pharmaceuticals, Inc., 509 U.S. 579 (1993). The five Daubert factors that are applied to

6   "scientific evidence" are whether the theory or method has been: (1) tested, (2) peer

7   reviewed and published, (3) generally accepted in the scientific community, (4) deemed to

8   have an acceptable rate of error, and (5) subjected to standards controlling technique

9   operation. Id. at 593-594. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F. 3d

10  1311 (9th Cir. 1995), cert. denied, 516 U.S. 869 (1995) (Daubert II), the United States

11  Supreme Court set forth another factor for examining the reliability of expert testimony

12  which is showing that an expert's testimony is based on "pre-litigation research."

13      For nearly a decade, the Claimants have been litigating the cases against PG&E

14  under the California state court standard regarding the admissibility of expert witness

15  testimony. Thus far, the parties have deposed forty-eight (48) experts. (See Exhibit 12

16  attached to the Robertson Decl.) This testimony will be useless if the current state court

17  actions are transferred to the District Court. Therefore, the interests of justice and judicial

18  economy will be greatly served if the current actions remain in the Los Angeles Superior

19  Court.

20

21  **XI.    THERE IS NO RISK OF INCONSISTENT JUDGMENTS SINCE**

22  **ALL OF THE CLAIMANTS' PENDING CASES WOULD BE**

23  **LITIGATED IN THE LOS ANGELES SUPERIOR COURT,**

24  **CENTRAL CIVIL WEST.**

25      It has always been plaintiffs' counsel's intention to file a Notice of Related Cases

26  in addition to a motion to consolidate the Baldonado, Boyd, Puckett, Bowers, and Miller

27  cases so that these cases would be tried in the Central Civil West Division, Department

28  ///

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:159675.1

18

Claimants' Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims Case No. 01-30923 SFM11

323 of the Los Angeles Superior Court along with the <u>Aguayo</u>, <u>Aguilar</u>, and <u>Acosta</u> cases once the bankruptcy stay is lifted by the Court.

Contrary to PG&E's allegations, there would be no risk or very little risk of inconsistent judgments or multiple state court trials since these cases would be tried in the same court before the same judge.

## XII.   **CONCLUSION**

The Bankruptcy Court is not required to transfer the personal injury chromium claims to the Northern District of California. The Bankruptcy Court may exercise its discretionary powers to deny the transfer because the interests of justice and judicial economy would be better served if these claims are litigated in the Los Angeles Superior Court.

The PG&E cases have been pending for seven (7) years now. The <u>Anderson</u> case was arbitrated and mediated by distinguished retired judges in Los Angeles. The <u>Aguayo</u> and related cases have been pending in the Los Angeles Superior Court since 1995.

The <u>Aguayo</u> case was set for trial on July 2, 2001. The facts of the case were voluminous and sometimes complex. Indeed, the <u>Aguayo</u> case qualified for the Los Angeles Superior Court's Complex Litigation Program. The <u>Aguayo</u> case was managed through a series of comprehensive Case Management Orders as stated above. The Orders cover issues of discovery, depositions, production of records, issuance of subpoenas and information authorizations, Motions, experts and pre-trial preparation. (See Exhibits 8 through 10 attached to the Robertson Decl.)

When the <u>Aguayo</u> case was assigned to Judge Kuhl, she set a trial date, pre-trial deadlines and issued a Trial Readiness Conference Order. Forty-eight (48) days of experts' depositions have now been completed. The parties were set to meet to comply with the Order in May 2001. Plaintiffs have completed a substantial amount of the ambitious Pre-Trial Conference work, including a witness list of over 200 witnesses, exhibit list (listing hundreds of Exhibits, totaling thousands of pages), motions in limine,

ENGSTROM,
LIPSCOMB
& LACK

1  and a motion to shift the burden of proof. Plaintiffs expect that defendant PG&E was

2  equally prepared as of the time of the Bankruptcy filing on April 6, 2001.

3       The <u>Aguayo</u> test plaintiff trial was scheduled to begin on July 2, 2001 in Judge

4  Kuhl's courtroom. There are now eighteen (18) Test Plaintiffs.

5       The trial estimate was six (6) months for the <u>Aguayo</u> case. In the <u>Anderson</u> case, it

6  took seven (7) months of time to try the first 39 Test cases to a panel of three Judges.

7  Realistically, with <u>Aguayo</u> being a jury trial, the trial could conceivably last longer than

8  six (6) months even with the best intentions of both sides.

9       One purpose of the test trial was (1) to establish the value of the 18 cases; and (2)

10  to use its results to globally evaluate the case for settlement. With 1,035 cases pending,

11  the test trial is important to any potential global resolution of the case. If a global

12  settlement cannot be reached, subsequent trials would go forward.

13       It also needs to be mentioned that <u>Aguayo</u> named both PG&E and Betz Chemical

14  Company as defendants. Betz has settled and paid $70.0 million in full settlement of its

15  liabilities. PG&E is claiming a credit of $70.0 million against any amounts it might owe

16  the existing plaintiff population. <u>The State court has jurisdiction over the allocation of the</u>

17  <u>individuals' awards from the money paid by Betz and this adjudication would impact</u>

18  <u>whatever PG&E expects as a credit in any individual case.</u>

19       Based upon the above, the interests of justice would be better served if the pending

20  cases remain in the Los Angeles Superior Court. The Los Angeles Superior Court is the

21  appropriate forum to maintain jurisdiction over these cases since this court is already

22  extremely familiar with this litigation because it has been pending in that court since 1995.

23  Furthermore, the <u>Aguayo</u> and the related cases can be timely adjudicated in the Los

24  Angeles Superior Court since the parties were apparently prepared to begin trial on July 2,

25  2001 until PG&E filed for bankruptcy. Therefore, Claimants respectfully request that the

26  Court deny PG&E's Motion to Certify and Transfer the Personal Injury Chromium

27  ///

28  ///

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELL.DOM.ELLPO.Documents:159675.1

Case: 01-30923 Doc# 5982 Filed: 12/21/01 Entered: 12/28/01 14:42:00 Page 22 of 25

Claimants' Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims Case No. 01-30923 SFM11

Claims.  In the event the Court is inclined to grant PG&E's Motion, Claimants respectfully request the Bankruptcy Court to recommend that the District Court transfer these cases back to the Los Angeles Superior Court.

DATED: December 19, 2001

Respectfully submitted,

ENGSTROM, LIPSCOMB & LACK
GIRARDI & KEESE
MASRY & VITITOE

By: _____
WALTER J. LACK
GARY A. PRAGLIN
JOY L. ROBERTSON
ELIZABETH A. HERNANDEZ
Attorneys for Claimants

ENGSTROM,
LIPSCOMB
& LACK

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:159675.1

21

Claimants' Opposition To Motion To Certify and Transfer the Personal Injury Chromium Claims - Case No. 01-30923 SFM11

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Boulevard, 16th Floor, Los Angeles, California 90067.

On December 19 , 2001, I served the foregoing documents described as **CLAIMANTS' OPPOSITION TO MOTION TO CERTIFY AND TRANSFER THE PERSONAL INJURY CHROMIUM CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JOY L. ROBERTSON FILED IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO CERTIFY AND TRANSFER THE PERSONAL INJURY CHROMIUM CLAIMS; AND CLAIMANTS' APPENDIX OF NON-FEDERAL CASES FILED CONCURRENTLY WITH CLAIMANTS' OPPOSITION TO MOTION TO CERTIFY AND TRANSFER THE PERSONAL INJURY CHROMIUM CLAIMS** on the interested parties in this action by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

## SEE ATTACHED SERVICE LIST

**X** (BY MAIL) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid to the offices of the addressee(s) noted on the attached Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**X** (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

**X** (BY FEDERAL EXPRESS) I caused such envelope(s) to be delivered by FEDERAL EXPRESS to the offices of the addressee(s) noted on the attached Service List.

___ (BY ELECTRONIC TRANSFER) I caused all of the pages of the above-entitled documents to be sent to the recipients noted via electronic transfer (FAX) at the respective telephone numbers indicated.

**X** (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 12 , 2001 at Los Angeles, California.

__MAUREEN JOHNSON__

Signature

Our File No.: 38000/1850

| | |
|---|---|
| Ernest J. Getto, Esquire<br>**LATHAM & WATKINS**<br>633 West Fifth, Suite 4000<br>Los Angeles, California 90071-2007<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763 | Attorneys for Defendant<br>PACIFIC GAS AND ELECTRIC<br>COMPANY<br>(Via Hand Delivery) |
| Thomas V. Girardi, Esquire<br>**GIRARDI & KEESE**<br>1126 Wilshire Boulevard<br>Los Angeles, California 90017<br>Telephone: (213) 977-0211<br>Facsimile: (213) 481-1554 | Attorneys for Plaintiffs<br>(Via U.S. Mail) |
| Edward L. Masry, Esquire<br>**MASRY & VITITOE**<br>5707 Corsa Avenue, 2nd Floor<br>Westlake Village, California 91362<br>Telephone: (818) 991-8900<br>Facsimile: (818) 991-6200 | Attorneys for Plaintiffs<br>(Via U.S. Mail) |
| Rene Tatro, Esquire<br>Craig S. Bloomgarden, Esquire<br>**TATRO COFFINO ZEAVIN<br>BLOOMGARDEN**<br>1875 Century Park East, Suite 1220<br>Los Angeles, California 90067<br>Telephone: (310) 229-2493<br>Facsimile: (310) 229-2491 | Attorneys for Defendant,<br>PG&E<br>(Via Hand Delivery) |
| Office of the U.S. Trustee<br>Attention Stephen Johnston<br>250 Montgomery Street, Suite 1000<br>San Francisco, CA 94104-3401 | Via Federal Express |

::ODMA\GRPWISE\BELLDOM.ELLPO.Documents:159097.1

NGSTRON,
IPSCOMB
LACK