

COPY

FILED

JAN - 2 2002

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

1   LATHAM & WATKINS
        Michael S. Lurey (State Bar No. 48235)
2       Ernest J. Getto (State Bar No. 55662)
        Kirk A. Wilkinson (State Bar No. 128367)
3       Cynthia H. Cwik (State Bar No. 141234)
    633 West Fifth Street, Suite 4000
4   Los Angeles, California 90071-2007
    Telephone: (213) 485-1234
5   Facsimile: (213) 891-8763

6
    TATRO • COFFINO • ZEAVIN •
7   BLOOMGARDEN LLP
        Rene Tatro (State Bar No. 78383)
8   1875 Century Park East, Suite 1220
    Los Angeles, California 90067
9   Telephone: (310) 229-2491

10  Attorneys for Pacific Gas and Electric Company,
    Debtor and Debtor in Possession
11

12                  UNITED STATES BANKRUPTCY COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15  | In re | Bankruptcy Case No. 01-30923 SFM11 |
16  | | |
    | PACIFIC GAS AND ELECTRIC | Chapter 11 |
17  | COMPANY, a California corporation, | |
18  | Debtor | OPPOSITION TO CLAIMANTS' MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
19  | | |
20  | | |
    | Federal I.D. No. 94-0742640 | PRELIMINARY HEARING DATE: |
21  | | Date: January 3, 2002 |
    | | Time: 1:30 p.m. |
22  | | Place: 235 Pine Street, 22nd Floor |
23  | | San Francisco, CA |

24  TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE,

25  THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED

26  CREDITORS, THE CLAIMANTS AS DEFINED IN THE OPPOSITION, AND OTHER

27  INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD

28

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

Opposition To Plaintiffs' Motions For Relief From The
Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 1 of
36

# TABLE OF CONTENTS

                                                                                    **Page**

I.    INTRODUCTION & SUMMARY ............................................................... 1

II.   BACKGROUND ................................................................................. 4

      A.    The Claims ............................................................................. 4

      B.    PG&E's Motion To Certify ....................................................... 5

      C.    Claimants' Motion To Abstain .................................................. 5

      D.    Procedures For Resolving PG&E's Objections To The Chromium
            Claims .................................................................................. 5

      E.    The Lawsuits .......................................................................... 7

            1.    *Anderson* ..................................................................... 7

            2.    *Aguayo* ........................................................................ 8

            3.    *Adams, Alderson and Kearney* ....................................... 10

            4.    *Martinez, Monice and Fordyce* ...................................... 10

III.  ARGUMENT ..................................................................................... 10

      A.    PG&E's Motion To Certify Should Be Granted And The District
            Court Should Determine The Venue And Abstention Issues Before
            The Bankruptcy Court Considers Claimants' Motion To Lift The
            Stay. ..................................................................................... 11

      B.    There Is No Need To Lift The Stay Because Section 157(b)(5)
            Provides A Federal Forum For Resolving The Chromium Claims. ..... 12

      C.    Even If This Court Considers The Automatic Stay Factors
            Analyzed In Non-Personal Injury Cases, Because Section
            157(b)(5) Applies To The Chromium Claims, There Is No "Cause"
            To Lift The Automatic Stay. ...................................................... 13

            1.    Resolving The Chromium Claims In The District Court
                  Will Be Most Efficient. .................................................... 14

            2.    Lifting The Stay Is An Inefficient Method For Resolving
                  the Chromium Claims ...................................................... 15

            3.    Balancing The Hardships Weighs Against Lifting The Stay. ...... 18

            4.    Any Public Policy Favoring Personal Injury Claims Will
                  Not Be Affected If The Stay Remains In Place. .................... 19

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 2 of
36

5. The Claims Do Not Involve Any Unsettled Questions Of State Law. .......................................................................... 20

6. The Lawsuits Against PG&E And Betz Can Be Transferred To The District Court. ................................................... 21

7. There Are Threshold Bankruptcy Issues. ............................ 22

8. Claimants Have Not Shown A Significant Probability Of Success On The Merits. ........................................................ 24

IV. CONCLUSION ............................................................................................. 25

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

ii Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

# TABLE OF AUTHORITIES

## CASES

A.H. Robins Co. v. Piccinin,
  788 F.2d 994 (4th Cir. 1986) ................................................................ 22

Baumgart v. Fairchild Aircraft Corp.,
  981 F.2d 824 (5th Cir. 1993) ................................................................ 16

Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.),
  96 F.3d 346 (9th Cir. 1996) ................................................................ 23

Broughton v. Celotex Corp.,
  183 B.R. 945 (M.D. Fla. 1995) ............................................................ 1

Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.),
  950 F.2d 839 (2d Cir. 1991) ................................................................ 20

Edmonson v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.),
  148 B.R. 920 (Bankr. D. Ariz. 1993) .................................................. 14

Gen. Am. Communications Corp. v. Landsell (In re Gen. Am. Communications
  Corp.),
  130 B.R. 136 (S.D.N.Y. 1991) ........................................................ 3, 21

In re Aquarius Disk Servs., Inc.,
  254 B.R. 253 (Bankr. N.D. Cal. 2000) ................................................ 13

In re Baldwin-United Corp.,
  57 B.R. 751 (S.D. Ohio 1985) .............................................................. 25

In re Bock Laundry Machine Co.,
  37 B.R. 564 (Bankr. N.D. Ohio 1984) ............................................ 18, 19

In re Curtis,
  40 B.R. 795 (Bankr. D. Utah 1984) ............................................ 16, 20, 22

In re Fietz,
  852 F.2d 455 (9th Cir. 1988) ................................................................ 21

In re Johnson,
  115 B.R. 634 (Bankr. D. Minn. 1989) ........................................ 15, 17, 22

In re Marvin Johnson's Auto Serv., Inc.,
  192 B.R. 1008 (Bankr. N.D. Ala. 1996) ...................................... 12, 20, 25

In re Todd Shipyards Corp.,
  92 B.R. 600 (Bankr. D.N.J. 1988) ............................................... 12, 18

In re United States Lines, Inc.,
  216 F.3d 228 (2d Cir. 2000) ................................................................ 1

In re Waterman Steamship Corp.,
  63 B.R. 435 (Bankr. S.D.N.Y. 1986) ................................... 2, 11, 23

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

iii

... Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 4 of 36

| | |
|---|---|
| Katchen v. Landy,<br>382 U.S. 323 (1966) | 15, 23 |
| Lindsey v. Dow Chem. Co. (In re Dow Corning Corp.),<br>113 F.3d 565 (2d Cir. 1997) | 2, 11, 21 |
| Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In<br>re Dow Corning Corp.),<br>86 F.3d 482 (6th Cir. 1996) | 21, 22 |
| Livesey v. Kates (In re Mazzocone),<br>1993 Bankr. LEXIS 1172 (Bankr. E.D. Pa. Aug. 25, 1993) | 23 |
| MacDonald v. MacDonald (In re MacDonald),<br>755 F.2d 715 (9th Cir. 1985) | 13 |
| McKelvey v. Boeing N. Am. Inc.,<br>74 Cal. App. 4th 151 (1999) | 6 |
| Novak v. Callahan (In re GAC Corp.),<br>681 F.2d 1295 (11th Cir. 1982) | 6, 23 |
| Pacor, Inc. v. Higgins,<br>743 F.2d 984 (3d Cir. 1984) | 21 |
| Pieklik v. Hudgins (In re Hudgins), 102 B.R. 495 (Bankr. E.D. Va. 1989) | 11, 12 |
| Piombo Corp. v. Castlerock Props. (In re Castlerock Props.),<br>781 F.2d 159 (9th Cir. 1986) | 19, 20 |
| Santa Clara County Fair Assoc., Inc. v. Sanders (In re Santa Clara County Fair<br>Assoc., Inc.),<br>180 B.R. 564 (B.A.P. 9th Cir. 1995) | 14 |

## STATUTES

| | |
|---|---|
| 11 U.S.C. § 362(d) | 2, 13 |
| 11 U.S.C. § 501 | 22 |
| 11 U.S.C. § 502(b)(7) | 22 |
| 28 U.S.C. § 1334(c)(1) | passim |
| 28 U.S.C. § 1334(c)(2) | 2, 11, 20, 21 |
| 28 U.S.C. § 1412 | 12 |
| 28 U.S.C. § 1452(a) | 12, 21, 24 |
| 28 U.S.C. § 157(b)(2)(B) | 12, 20 |
| 28 U.S.C. § 157(b)(4) | 2, 11, 20, 21 |
| 28 U.S.C. § 157(b)(5) | passim |

| | | |
|---|---|---|
| 1 | Cal. Civ. Proc. Code § 170.6 ............................................................. | 10 |
| 2 | Fed. R. Bankr. P. 3003 .................................................................... | 22 |
| 3 | Fed. R. Bankr. P. 9027 .............................................................. | 12, 21, 24 |
| 4 | Fed. R. Civ. P. 32(a)(4) .................................................................. | 17 |
| 5 | Local Rule 9015-2(d) ................................................................ | passim |

**OTHER AUTHORITIES**

EPA Office of Water: Drinking Water and Health, <u>Technical Fact Sheet on: Chromium</u>, at 1. ........................................................................ 6

OEHHA Chromate Toxicity Review Committee, Scientific Review of Toxicological and Human Health Issues Related to the Development of a Public Health Goal for Chromium(VI), Aug. 31, 2001 ........................... 6

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

v

Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

# I. INTRODUCTION & SUMMARY

The Claimants' Motion For Relief From The Automatic Stay (the "Stay Motion") is based upon an incorrect description of the legal issue posed and an inaccurate description of the civil lawsuits by the Claimants.[1]  Claimants' Stay Motion[2] should be denied until the District Court determines whether it will abstain from its jurisdiction over the Chromium Claims.

Pacific Gas and Electric Company's ("PG&E" or "Debtor") Motion To Certify And Transfer The Personal Injury Chromium Claims asks this Court to certify that the Chromium Claims are personal injury tort claims within the jurisdiction of the District Court pursuant to 28 U.S.C. § 157(b)(5) and Bankruptcy Local Rule 9015-2(d).  Once this Court certifies that these are personal injury tort claims, the Claims will be automatically transferred to the District Court.  Local Rule 9015-2(d).  The District Court should then determine the proper venue and rule upon any motion for abstention.  See, e.g., In re United States Lines, Inc., 216 F.3d 228, 234 (2d Cir. 2000) (holding that "the bankruptcy court lacked the power to set venue under Section 157(b)(5)"); Broughton v. Celotex Corp., 183 B.R. 945, 948 (M.D. Fla. 1995) ("Section 157(b)(5) . . . allows the district court in which the bankruptcy case is pending to choose between . . . . the district court in which the bankruptcy case is pending, or [the district] court in which the claim arose . . . [T]he next question [is] whether the case should be tried in [the] District Court or should remain in the [state court], as allowed by Section 1334(c)(1).")

Claimants' Stay Motion is written as if this Court will choose venue between the federal District Court and the Los Angeles County Superior Court.  However, for personal injury tort cases, that decision is vested in the District Court.  The District Court has jurisdiction over the personal injury Chromium Claims under Section 157(b)(5).  If the District Court refuses to

---

[1] The claims for damages to a person including wrongful death and loss of consortium allegedly due to Claimant's exposure to hexavalent chromium ("chrome six") used by PG&E in Kettleman, Hinkley and Topock, California will be referred to as the "Claims" or the "Chromium Claims."  The 1,250 individuals pursuing the Claims will be referred to collectively as the "Claimants" or the "Chromium Claimants."

[2] The Stay Motion, filed on behalf of the Claimants in the Adams, Alderson and Kearney cases, has been joined by the Claimants in the Aguayo, Acosta, Aguilar, Baldonado, Bowers, Boyd, Puckett and Miller cases.  See Note 8 for a list of the fifteen lawsuits.

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

1

1  abstain its jurisdiction under 28 U.S.C. § 1334(c)(1), as it should for the reasons set forth in

2  PG&E's Opposition To Claimants' Motion For Abstention, then the Claims will be resolved

3  according to the procedures adopted by the District Court.  Because the Claimants can resolve

4  their Claims in the District Court, there is no need to grant relief from the stay for the state court

5  lawsuits that duplicate the Claims.

6         In contrast, if this Court were to grant Claimants' Stay Motion, it would create the

7  potential for inconsistent rulings on the Stay Motion and the Abstention Motion, inefficient use

8  of resources, and ultimately inconsistent verdicts on the Chromium Claims. Because the District

9  Court is empowered to decide the venue and jurisdiction issues under Section 157(b)(5) and

10 1334(c)(1), this Court should deny the Stay Motion until the District Court determines venue and

11 rules upon any request for abstention.  See In re Waterman Steamship Corp., 63 B.R. 435, 437

12 (Bankr. S.D.N.Y. 1986) (denying a motion to lift the stay without prejudice to allow the Section

13 157(b)(5) motion to be determined first by the District Court).

14         Even if this Court undertakes a relief from stay analysis, the Stay Motion should

15 be denied. Under Section 362(d) of the Bankruptcy Code, "cause" does not exist to lift the

16 automatic stay with respect to the fifteen civil suits.  Rather, the 1,250 Chromium Claims should

17 be resolved in one federal proceeding as provided by bankruptcy law, including any hearings on

18 PG&E's Omnibus Objections To The Chromium Claims (the "Objections"). Claimants' Stay

19 Motion erroneously relies upon decisions determining whether to lift the stay under mandatory

20 abstention principles (see 28 U.S.C. Section 1334(c)(2)) – situations where if the stay were not

21 lifted, there would be no forum to hear the state law claims.  These decisions are not applicable

22 in the present case because Section 1334(c)(2) does not apply to the Chromium Claims. See 28

23 U.S.C. Section 157(b)(4).  Under the circumstances, Section 157(b)(5) provides a federal forum

24 for resolving the Chromium Claims and Section 1334(c)(1) provides the abstention standard.

25 Because the Chromium Claims do not present unsettled questions of state law, the District Court

26 should not abstain. See, e.g., Lindsey v. Dow Chem. Co. (In re Dow Corning Corp.), 113 F.3d

27 565, 570-71 (2d Cir. 1997) ("'[The] primary determinant for the exercise of abstention [under

28 Section 1334(c)(1)] is whether there exists unsettled questions of state law'" (emphasis added)

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

2  Opposition To Plaintiffs' Motions For Relief From The
   Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 8 of
36

1  (quoting Gen. Am. Communications Corp. v. Landsell (In re Gen. Am. Communications Corp.),

2  130 B.R. 136, 146 (S.D.N.Y. 1991))). This Court should not usurp the District Court's

3  abstention authority under Section 1334(c)(1) by applying a contradictory relief from stay

4  standard developed in cases that did not involve Section 157(b)(5) and Section 1334(c)(1).

5  　　　　　Claimants also erroneously apply the factors in the stay cases they cite,

6  mischaracterize the status of the lawsuits pursued by the Claimants and overstate the purported

7  connection to Los Angeles. PG&E would be prejudiced if the Claims are not consolidated in a

8  single forum applying the more efficient claims allowance procedures provided by bankruptcy

9  law. Claimants will suffer no prejudice from resolving the Claims in the District Court. There is

10  no cause to lift the stay when Section 157(b)(5) provides a forum for resolving the Claims.

11  　　　　　The Stay Motion's assertion that the lawsuits have achieved significant progress

12  toward trial readiness is a misleading generalization. The Adams, Alderson and Kearney cases

13  involving more than 200 plaintiffs are still in the pleading stage—the last demurrer being

14  *sustained* with leave to amend. Not a single plaintiff in those cases has been deposed. Even the

15  Aguayo case in which test plaintiffs have been selected is more than one year from a verdict for

16  any of the eighteen test cases (selected from the more than 900 plaintiffs whose cases are far

17  from trial) that survive PG&E's pending motions.

18  　　　　　Nor do the lawsuits have extensive ties to Southern California as Claimants' Stay

19  Motion attempts to suggest. Less than twenty-five of the more than 900 Chromium Claimants

20  who answered written discovery currently reside in Los Angeles County.[3] More than half of the

21  civil lawsuits are based upon allegations of exposure at the Kettleman Compressor Station, in

22  Kings County at the Fresno County line, in the Eastern District of California. Getto Decl. ¶ 18.

23  The Aguayo case brought by more than 900 of the Claimants was transferred to Judge Carolyn

24  B. Kuhl in November 2000. The Adams case involving approximately 200 of the Claimants was

25  _____

26  [3]  The Claimants who are plaintiffs in the Aguayo case (including Acosta and Aguilar)
      answered a written questionnaire in lieu of interrogatories that provided residence

27  information. Declaration of Ernest J. Getto In Opposition to Claimants' Motion for Relief
      From Stay ("Getto Decl.") ¶ 19. The Adams, Alderson and Kearney Complaints describe

28  some plaintiffs who live out of state and some that still reside in Hinkley, California, in San
      Bernardino County, but do not identify any current Los Angeles residents. Getto Decl. ¶ 20.

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

3  Opposition To Plaintiffs' Motions For Relief From The
   Automatic Stay

1   assigned to Judge Anthony Mohr thereafter.  No dispositive rulings were issued before the

2   PG&E's Chapter 11 Case was filed.  Getto Decl. ¶¶ 13-16.

3           Judicial economy favors resolution in one federal forum where the bankruptcy

4   claims process can be applied to all 1,250 Chromium Claims. The District Court should grant

5   PG&E's Motion to Certify and deny Claimants' Stay Motion.

6   **II.    BACKGROUND**

7           On April 6, 2001, PG&E filed for relief under Chapter 11 of the United States

8   Bankruptcy Code (the "Chapter 11 Case").  On December 19, 2001, PG&E filed its First

9   Amended Plan of Reorganization (the "Plan").  The Chromium Claims are treated in Class 9 of

10  the Plan, to be paid in cash and notes to the extent, if any, they are allowed.

11          **A.    The Claims**

12          By the September 6, 2001 claims bar date, PG&E received proofs of claim from

13  approximately 1,250 Claimants[4] alleging that exposure to chrome six caused personal injuries.

14  The vast majority of the Claimants are also plaintiffs in fifteen state court lawsuits pending

15  against PG&E in two counties and multiple courtrooms. Getto Decl. ¶ 3.

16          Approximately 1,035 disputed, unsecured Claims were filed by the law firm of

17  Engstrom, Lipscomb & Lack.  These Claims are identical to each other except for the amount

18  claimed.  The one-page narrative provides a general description of the litigation history, some of

19  the cases pending at the time the Claim was filed, the types of injuries alleged by all Claimants,

20  the historical use of chrome six and the alleged pathways of exposure.  The injuries and exposure

21  of each particular Claimant are not described in the proofs of claim.  The amounts claimed range

22  from approximately $10,000 to $10 million, and total more than $500 million for these

23

24  [4]  There were approximately 1,450 Claims filed, but approximately 200 Claimants filed
    duplicate claims.  When considering this significant number of Claims and the even larger
25  number of plaintiffs in the civil lawsuits, it is important to remember that Hinkley, Kettleman
    and Topock are sparsely populated areas.  At Hinkley, chrome six in the groundwater
26  extended approximately one mile north of the Hinkley Compressor Station.  When a well
    survey was performed in 1987, approximately twelve wells serving approximately fifty
27  people contained chrome six above the drinking water standard.  Other Claimants can only
    allege exposure by visiting this area -- they did not live at properties served by these wells.
28  At Kettleman, chrome six was detected in one on-site well that served as a back up for the
    industrial water (not domestic water) system at the Kettleman Compressor Station.

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

4   Opposition To Plaintiffs' Motions For Relief From The
    Automatic Stay

1  approximately 1,035 Claims.  (Getto Decl. ¶ 4 and Exhibit B.)

2          More than 200 disputed, unsecured Claims were filed by the Law Offices of

3  Michael Dolan (excluding duplicate Claims filed by the Claimants). These Claims were filed for

4  an unknown amount with no description of the alleged exposure, injury or damages of the

5  individual Claimants. (Getto Decl. ¶ 5 and Exhibit C.)

6          Fewer than 25 other Claims were filed, some seeking recovery in an unspecified

7  amount and others are seeking up to $10 million.  (Getto Decl. ¶ 6.)

8      **B.      PG&E's Motion To Certify**

9          On November 14, 2001, PG&E filed its Motion to Certify pursuant to Section

10  157(b)(5) and Local Rule 9015-2(d).  Section 157(b)(5) provides that personal injury tort claims

11  shall be tried in the District Court where the Bankruptcy case is pending.[5]

12     **C.      Claimants' Motion To Abstain**

13          On December 6, 2001, Claimants filed their Motion to Abstain asking this Court

14  to recommend that the District Court abstain from hearing the Chromium Claims.  Because the

15  abstention and venue decisions are vested in the District Court under Section 1334(c)(1) and

16  Section 157(b)(5), PG&E opposed the Abstention Motion on December 20, 2001.

17     **D.      Procedures For Resolving PG&E's Objections To The Chromium Claims**

18          On November 14, 2001, PG&E filed its Objections describing many of the legal

19  and factual deficiencies of the Chromium Claims.  As described in greater detail in PG&E's

20  Abstention Opposition, PG&E is prepared to proceed with a series of motions in the District

21  Court that will challenge the pending Claims.  Most importantly, PG&E anticipates filing several

22  rounds of medical causation motions for summary judgment regarding specific cancers and other

23  illnesses, on the grounds that Claimants cannot establish that alleged exposure to chrome six

24  from PG&E caused the wide range of specific conditions alleged. Written discovery answered by

25  the Aguayo Claimants indicates that they are seeking to recover for approximately 200 different

26  _____

27  [5]  The District Court can also assign the Claims to the venues in which they arose.  Section
28  157(b)(5).  Because the Hinkley Claims arose in the Central District of California and the
    Kettleman Claims arose in the Eastern District, such an assignment is not efficient here.

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

5  Opposition To Plaintiffs' Motions For Relief From The
   Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 11
                                of 36

1    illnesses and more than 20 types of cancer that they allege have been caused by chromium

2    exposure. (Getto Decl. ¶ 9 and Exhibit A.) The motions will be based upon the lack of

3    admissible scientific evidence linking the wide range of alleged ailments with exposure to

4    chrome six as alleged by Claimants. PG&E's medical causation motions will be further

5    supported by the deposition testimony of Claimants' own experts, who in many instances have

6    admitted that there are no scientific or epidemiological studies associating exposure to chrome

7    six with these conditions.

8         PG&E also anticipates filing motions for summary judgment on the grounds that

9    Claimants with certain types or levels of alleged exposure to chrome six cannot establish medical

10    causation. One or more of the motions will be based upon the lack of evidence that ingestion of

11    chromium[6] or airborne exposure to environmental (as opposed to occupational) levels of

12    chromium[7] can cause the illnesses claimed. PG&E also will file motions to disallow the

13    Chromium Claims addressing the remaining legal and procedural grounds for its Objections,

14    such as the statute of limitations (see McKelvey v. Boeing N. Am. Inc., 74 Cal. App. 4th 151,

15    160 (1999)(plaintiffs must bring actions within one year after they knew, or should have known,

16    of their claims based upon publicity regarding similar lawsuits) and the attempt to recover

17    punitive damages against the Debtor for the use of chrome six water treatment products that

18    ceased more than 15 years ago (see Novak v. Callahan (In re GAC Corp.), 681 F.2d 1295, 1301

19    n.5 (11th Cir. 1982) ("Where the punitive damages claim is asserted against a representative of

20    the wrongdoer, whether it be a receiver, executor, or, as in this case, a trustee in bankruptcy, the

---

22,23   [6] For example, the EPA Office of Water has concluded: "There is no evidence that chromium in drinking water has the potential to cause cancer from lifetime exposure." EPA Office of Water: Drinking Water and Health, Technical Fact Sheet on: Chromium, at 1.

24,25,26,27,28   [7] For example, after reviewing the scientific literature, a "blue ribbon" panel of eminent scientists established by the California Office of Environmental Health and Hazard Assessment ("OEHHA") concluded that "[t]aken together, the epidemiologic data on [chrome six] exposure from environmental sources (as opposed to generally much higher occupational exposures) provide no support for a causal association of exposure to [chrome six] and overall or site-specific cancer mortality for the general public." OEHHA Chromate Toxicity Review Committee, Scientific Review of Toxicological and Human Health Issues Related to the Development of a Public Health Goal for Chromium(VI), Aug. 31, 2001 (the "OEHHA Report"), at 19-20.

1 purposes for awarding punitive damages will not be furthered and thus the punitive damages

2 claim should not be allowed.")) Because PG&E's Objections apply to numerous Claims,

3 centralizing the Claims in one forum is justified and there is no "cause" to lift the stay.

4     **E.**     <u>**The Lawsuits**</u>

5         PG&E is currently a defendant in fifteen state court lawsuits pending in multiple

6 courtrooms in Los Angeles County and San Bernardino County.[8]

7         **1.**     <u>**Anderson**</u>

8         The first lawsuits by approximately 650 plaintiffs alleging that their personal

9 injuries were caused by exposure to chrome six at PG&E's Hinkley Compressor Station were

10 filed beginning in 1993 and consolidated in an action commonly known as <u>Anderson v. PG&E</u>.

11 The parties agreed to proceed with mediation including certain binding arbitration procedures.

12 (Getto Decl. ¶ 12.) Although Claimants cite the settlement made with the <u>Anderson</u> plaintiffs

13 (Stay Motion at 10), these awards were without *any* reliable scientific basis. Commentators on

14 the movie "Erin Brockovich" have reported on the lack of scientific support for the movie's

15 premise that exposure to chrome six from the PG&E facilities could have caused the myriad of

16 injuries alleged. <u>See, e.g.</u>, "A Hit Movie Is Rated 'F' In Science," <u>N.Y. Times</u>, Apr. 11, 2000

17

---

18 [8] These cases are: (1) <u>Aguayo v. Pacific Gas and Electric Company</u>, filed March 15, 1995, in Los Angeles County Superior Court, (2) <u>Aguilar v. Pacific Gas and Electric Company</u>, filed October 4, 1996, in Los Angeles County Superior Court, (3) <u>Acosta, et al. v. Betz Laboratories, Inc., et al.</u>, filed November 27, 1996, in Los Angeles County Superior Court, (4) <u>Adams v. Pacific Gas and Electric Company and Betz Chemical Company</u>, filed July 25, 2000, in Los Angeles County Superior Court, (5) <u>Baldonado v. Pacific Gas and Electric Company</u>, filed October 25, 2000, in Los Angeles County Superior Court, (6) <u>Gale v. Pacific Gas and Electric Company</u>, filed January 30, 2001, in Los Angeles County Superior Court, (7) <u>Monice v. Pacific Gas and Electric Company</u>, filed March 15, 2001, in San Bernardino County Superior Court, (8) <u>Fordyce v. Pacific Gas and Electric Company</u>, filed March 16, 2001, in San Bernardino County Superior Court, (9) <u>Puckett v. Pacific Gas and Electric Company</u>, filed March 30, 2001, in Los Angeles County Superior Court, (10) <u>Alderson, et al. v. PG&E Corporation, Pacific Gas and Electric Company, Betz Chemical Company, et al.</u>, filed April 11, 2001, in Los Angeles County Superior Court, (11) <u>Bowers, et al. v. Pacific Gas and Electric Company, et al</u>, filed April 20, 2001, in San Bernardino County Superior Court, (12) <u>Boyd, et al. v. Pacific Gas and Electric Company, et al.</u>, filed May 2, 2001, in Los Angeles County Superior Court, (13) <u>Martinez, et al. v. Pacific Gas and Electric Company</u>, filed June 29, 2001, in San Bernardino County Superior Court, (14) <u>Kearney v. Pacific Gas and Electric Company</u>, filed November 15, 2001, in Los Angeles County Superior Court, and (15) <u>Miller v. PG&E</u>, filed November 21, 2001, in Los Angeles County Superior Court. Six of these cases were filed in violation of the automatic stay in the Chapter 11 Case. PG&E reserves its right to seek all appropriate relief for the stay violations.

1   (Getto Decl. Exhibit D). Questions have also been raised about the process that led to the large

2   arbitration awards. See, e.g., "Sailing into Controversy:  Luxury Cruise Makes Waves for

3   Private Judges," L.A. Daily J., Dec. 11, 1997 (Getto Decl. Exhibit D).  The settlement

4   referenced in the Stay Motion is not a realistic measure of the value of the Claims or the

5   Claimants' probability of success on the merits,[9] because the scientific evidence, including the

6   testimony of Claimants' own experts, does not support a finding that chrome six from PG&E

7   caused the extremely wide variety of cancers and other ailments Claimants assert.

8                    **2.     Aguayo**

9           While the Anderson case was pending, the same plaintiffs' counsel filed cases on

10  behalf of thousands of additional plaintiffs beginning in March 1995.  The parties refer to the

11  largest of these consolidated cases as Aguayo.  The Aguayo case was assigned to Judge Francis

12  Rothschild with retired Judge Keith Wisot and later retired Judge Howard Wiener serving as

13  discovery referees.  In November 2000 Aguayo was assigned to Judge Carolyn B. Kuhl in the

14  Los Angeles County Superior Court.  There were once more than 2,500 plaintiffs in Aguayo,[10]

15  more than 1,500 of whom were pursuing claims against PG&E (with the remaining plaintiffs

16  suing only Betz, the manufacturer of chromium water treatment products used by PG&E at the

17  three compressor stations).  There are now approximately 925 plaintiffs remaining in the

18  consolidated Aguayo action against PG&E.  (Getto Decl. ¶¶ 13-14.)

19          There are now eighteen Aguayo trial test cases that have been subject to

20  percipient discovery and partial expert discovery:  ten chosen by plaintiffs, six by defendants,

21  and two at random.  These eighteen cases are not representative of the 1,250 Claims.  They were

22  not randomly selected by a statistically appropriate method.  Instead, plaintiffs' counsel was

23  permitted to select a majority.  As a result, half of the eighteen test plaintiffs allege they have

24

---

25   [9]   The Anderson settlement resolved approximately 650 Hinkley cases, where there was
      documented off-site groundwater contamination.  In contrast, a majority of the remaining
26    Chromium Claims are Kettleman cases that involve a completely different compressor
      station.  The Kettleman cases include more than 350 Claimants who allege exposure at
27    ranches located one to five miles from the Kettleman Station where there is no chrome six in
      the groundwater.  See supra note 4.

28   [10]   Including the consolidated Acosta and Aguilar cases.

1 contracted cancer from chrome six exposure whereas only approximately fifteen percent of the

2 1,250 Claims involve cancer.[11]  (Getto Decl. ¶14.)

3          At the time PG&E filed its Chapter 11 Case, there were fourteen summary

4 judgment motions and related motions *in limine* pending in these test cases.  Plaintiffs' experts

5 were deposed on the subjects raised in PG&E's motions and discovery of PG&E's experts was

6 underway.  Plaintiffs had not filed their oppositions and Judge Kuhl had not heard any of the

7 substantive motions against the test cases.  PG&E agrees with Claimants' estimate (Claimants'

8 Motion for Abstention at 13, 16) that it would take approximately one year to finish preparing

9 for and conducting a trial of any test plaintiffs who survive PG&E's motions.  (Getto Decl. ¶ 14.)

10          The Claimants who are plaintiffs in the Aguayo case are predominately from

11 Central California, where the Kettleman claims arose -- more than 450 reside in Central

12 California, with more than 300 of these in Kings, Kern and Fresno Counties.  Only 22 of the

13 Aguayo plaintiffs currently reside in Los Angeles County.[12]  There are approximately 160

14 Aguayo Claimants residing in Northern California, approximately 140 in Southern California

15 and approximately 175 residing out of state.  Many of the potential witnesses who have been

16 deposed are residents of Central and Northern California, and few are residents of Los Angeles.

17 (Getto Decl. ¶ 19.)

18          These same counsel have continued to file additional cases against PG&E

19 (Baldonado, Gale, Puckett, Bowers, Boyd and Miller), several of which have not been served,

20 consolidated or subject to any discovery.  (Getto Decl. ¶ 15.)

21

22

---

23 [11]  Claimants argue that exposure to chromium at or several miles away from the compressor
stations caused at least the following cancers:  bladder, bone, brain, breast, cervical, colon,
24 endometrial, eye, gall bladder, kidney, leukemia, liver, lung, lymphoma, ovarian, pancreatic,
prostate, skin, stomach, testicular, thyroid, uterine and Hodgkin's disease.  No chemical or
25 substance, not even radiation, has ever been associated with such an array of cancers and the
scientific literature does not support such an association with chromium.

26 [12]  More than 900 Claimants who are plaintiffs in the civil lawsuits have answered written
27 discovery identifying their residence location.  The Complaints of other Claimants who have
not answered written discovery identify Hinkley residents (San Bernardino County) and out
28 of state residents, but they do not identify any alleged ties to Los Angeles.  (Getto Decl. ¶¶
19-20).

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

9  Opposition To Plaintiffs' Motions For Relief From The
Automatic Stay

**3.** **Adams, Alderson and Kearney**

In July 2000, April 2001 and November 2001, counsel Thomas Anton and Michael Dolan brought additional cases against PG&E.[13] After Betz's statute of limitations demurrer was sustained with leave to amend, the Third Amended Complaint is due January 17, 2002. Adams is in the early stages of written discovery. No depositions have been taken and no expert discovery has been conducted. Alderson and Kearney were filed by the same counsel in violation of the automatic stay. Alderson was recently consolidated with Adams. No responsive pleadings have been filed in Alderson pending resolution of the statute of limitations issues in Adams. Kearney, filed in November 2001, has not been served. (Getto Decl. ¶ 16.)

**4.** **Martinez, Monice and Fordyce**

The Martinez, Monice and Fordyce actions pursued by three separate counsel on behalf of approximately fifteen plaintiffs are pending in San Bernardino County Superior Court. No responsive pleadings were filed by PG&E before the Chapter 11 Case was filed and no discovery has been taken. (Getto Decl. ¶ 17.)

**III.** **ARGUMENT**

Typically, in a motion requesting relief from the automatic stay in order to proceed with a lawsuit, the question facing the court is *whether* the litigation should proceed. However, PG&E is not preventing the Claimants from proceeding. Because of the application of Section 157(b)(5), the Claimants will have a fair hearing in the District Court where the Chromium Claims can be most efficiently handled.

The Claimants are asking this Court to lift the automatic stay at the wrong time and for the wrong reasons. Once this Court certifies that the Chromium Claims are personal injury tort claims, they will be automatically transferred to the District Court pursuant to Local Rule 9015-2(d). The District Court will decide the proper venue for the Claims and determine whether to abstain from its jurisdiction over the Claims. Until the District Court makes such

---

[13] The Adams case was assigned to Judge Kuhl to be coordinated with Aguayo. Plaintiffs' exercised their peremptory challenge under California law (Cal. Civ. Code § 170.6), and Adams was then re-assigned to Judge Mohr. While the action has been stayed as to PG&E, it has been proceeding against co-defendant Betz. (Getto Decl. ¶ 16.)

1    rulings, this Court should deny the Claimants' Stay Motion.  See In re Waterman Steamship

2    Corp., 63 B.R. at 437 (denying a motion to lift the stay to allow a Section 157(b)(5) motion to be

3    ruled on in the district court).

4             However, even if this Court rules upon the Stay Motion with the Motion to

5    Certify pending, Claimants' Stay Motion should be denied.  Because Section 157(b)(5) makes a

6    federal forum available to resolve the Claims, the factors a court may look at in determining

7    whether to lift the automatic stay favor denying Claimants' Stay Motion.

8    A.    **PG&E's Motion To Certify Should Be Granted And The District Court**

9          **Should Determine The Venue And Abstention Issues Before The Bankruptcy**

10         **Court Considers Claimants' Motion To Lift The Stay.**

11            Claimants incorrectly argue that this Court should lift the stay despite the fact that

12   PG&E's Motion to Certify is pending.  When motions pursuant to Section 157(b)(5) and a

13   motion for relief from stay are pending simultaneously, the motion concerning Section 157(b)(5)

14   should be determined first. See In re Waterman Steamship Corp., 63 B.R. at 437 (denying a

15   motion to lift the stay because "the notion that the district court should rule on a § 157(b)(5)

16   motion is strongly compelling"). The District Court is vested with the authority to determine

17   venue pursuant to Section 157(b)(5) and jurisdiction pursuant to Section 1334(c)(1).[14]  The key

18   element for the District Court in determining whether to abstain from its jurisdiction is whether

19   there are "unsettled questions of state law." See, e.g., In re Dow Corning Corp., 113 F.3d at 570-

20   71.  That is the standard upon which the District Court will determine whether these actions

21   should proceed in federal court.  This Court should not interfere with the District Court's

22   1334(c)(1) abstention analysis by substituting its analysis under stay standards advanced by

23   Claimants that do not apply to cases under Section 157(b)(5) and 1334(c)(1).[15]

24   _____

25   [14]  As noted above, personal injury tort claims are specifically exempted from Section
     1334(c)(2) mandatory abstention by Section 157(b)(4).

26   [15]  Claimants cite Pieklik v. Hudgins (In re Hudgins), 102 B.R. 495 (Bankr. E.D. Va. 1989), for
27         the proposition that "the Court should consider the instant motion for relief from stay
           notwithstanding the pending Motion to Withdraw the Reference filed by Debtor." (Stay
28         Motion at 6 n.7.) However, despite Claimants' suggestion to the contrary, in In re Hudgins, a
           motion to transfer the claims pursuant to Section 157(b)(5) was never filed.  Further, even

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

Opposition To Plaintiffs' Motions For Relief From The
11 Automatic Stay

**B.** **There Is No Need To Lift The Stay Because Section 157(b)(5) Provides A Federal Forum For Resolving The Chromium Claims.**

Most cases analyzing whether "cause" exists to lift the stay assume that if the stay is not lifted plaintiffs will be effectively precluded from pursuing their lawsuits. That is not the case where Section 157(b)(5) applies to give the plaintiffs a federal forum to resolve their claims. In In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008 (Bankr. N.D. Ala. 1996), the court stated that "cause" to lift the stay "may exist if the equities in a particular case dictate that a lawsuit . . . should proceed in a forum *other than the bankruptcy court for the purpose of liquidating the claim* on which the lawsuit is premised." Id. at 1013 (emphasis added). In PG&E's case, Section 157(b)(5) provides for the liquidation of the Claims in the District Court.

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the *district court* in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5) (emphasis added).[16] Local Rule 9015-2(d) similarly states:

> If . . . the bankruptcy judge determines that a claim is a personal injury tort or wrongful death claim requiring trial by a district court judge, the bankruptcy judge *shall* certify to the district court that the claim is one which requires trial in the

though the automatic stay was lifted, the bankruptcy court recognized that it did not have jurisdiction to set venue and that the District Court would set venue under Section 157(b)(5). See id. at 498 ("In no way does a dissolution of the automatic stay in this case constitute a *de facto* adjudication of the question of the proper forum for trial of the underlying tort suit."); see also In re Todd Shipyards Corp., 92 B.R. 600, 601 n.1, 604 (Bankr. D.N.J. 1988) (lifting the automatic stay only as it applied to a case already pending in the District Court because Section 157(b)(5) would mandate the trial of that claim in that District Court anyway).

The In re Hudgins court also noted that after the stay was lifted, the debtor could remove the case to federal court. See In re Hudgins, 102 B.R. at 498. If the Claimants' Stay Motion is granted, PG&E will then have the option to remove the fifteen civil suits pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027 and then transfer the civil suits to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1412. If Claimants move to remand, the District Court would again be charged with determining if the case should be heard in federal or state court.

[16] See also 28 U.S.C. § 157(b)(2)(B) (excepting from core proceedings the "liquidation . . . of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11").

district court under 28 U.S.C. § 157(b)(5). Upon such certification, the reference of the claim *shall be automatically withdrawn*, and the claim assigned to a judge of the district court. (Emphasis added.)

Because the Chromium Claims will automatically be transferred to the District Court, there is no need to lift the stay to allow the civil lawsuits presenting the same issues to proceed in the state courts. The District Court can use the claims allowance process to dispose of the Claims that are so factually and legally deficient that they should not proceed. Those Chromium Claims remaining after the claims allowance process, if any, can then proceed to trial in the District Court pursuant to Section 157(b)(5). Under the circumstances, whatever standard they advance, Claimants cannot demonstrate that there is any "cause" to lift the stay.

**C.** **Even If This Court Considers The Automatic Stay Factors Analyzed In Non-Personal Injury Cases, Because Section 157(b)(5) Applies To The Chromium Claims, There Is No "Cause" To Lift The Automatic Stay.**

Under Section 362(d) of the Bankruptcy Code, "the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . (1) for cause." 11 U.S.C. § 362(d). Although the term "cause" is not defined by the Bankruptcy Code, courts have determined that "cause" is intentionally a broad and flexible concept that extends beyond the lack of adequate protection. See, e.g., MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985) ("Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis."); In re Aquarius Disk Servs., Inc., 254 B.R. 253, 260 (Bankr. N.D. Cal. 2000) (same). Claimants' Stay Motion asks this Court to undertake a traditional stay analysis employed in non-Section 157(b)(5) cases. For the reasons set forth above, this Court should not undertake this type of stay analysis for Claims that will be transferred to the District Court pursuant to Section 157(b)(5). Even if this Court considers the traditional stay elements, relief should be denied because it is most efficient to resolve all 1,250 Chromium Claims in the District Court.

In a traditional stay analysis, the factors courts should consider when determining

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

whether there is "cause" to lift the automatic stay include: (1) whether litigation will prejudice

the Debtor; (2) whether balancing the hardships of the Debtor and the plaintiffs militates in favor

of lifting the automatic stay; and (3) whether public policy supports the kind of action the

plaintiffs have brought against the Debtor. See Edmonson v. Am. W. Airlines, Inc. (In re Am.

W. Airlines, Inc.), 148 B.R. 920, 923 (Bankr. D. Ariz. 1993), cited with approval in Santa Clara

County Fair Assoc., Inc. v. Sanders (In re Santa Clara County Fair Assoc., Inc.), 180 B.R. 564,

567 (B.A.P. 9th Cir. 1995). In addition, under traditional stay analysis, courts may also consider

other factors such as those discussed by Claimants: (1) whether lifting the stay will be a financial

burden on the debtor; (2) whether judicial economy weighs in favor of lifting the stay; (3)

whether the claims are ready for trial; (4) whether the claims concern state law issues; (5)

whether claims against a non-debtor co-defendant can be tried in the bankruptcy court; (6)

whether there are threshold bankruptcy issues; and (7) whether there is a probability of success

on the merits. See In re Am. W. Airlines, Inc., 148 B.R. at 923; In re Johnson, 115 B.R. 634,

636 (Bankr. D. Minn. 1989). Because all 1,250 Claims can be resolved more efficiently in the

District Court under Section 157(b)(5), the analysis of these factors is vastly different than

suggested by Claimants in their Stay Motion: litigation in the state court would prejudice PG&E

by depriving it of the more efficient claims allowance procedures Congress has made available to

a debtor; Claimants will not be prejudiced because they will have a federal forum to resolve the

Claims fairly; the Chromium Claims are not tied to Los Angeles as Claimants pretend; and the

Chromium Claims do not involve unsettled questions of state law. In light of Section 157(b)(5),

even if this Court considers the factors set forth in Claimants' Stay Motion, the Stay Motion

should be denied.

        1.      **Resolving The Chromium Claims In The District Court Will Be Most Efficient.**

       Section 157(b)(5) will enable all of the Chromium Claims to be consolidated

before the District Court. Lifting the stay to litigate fifteen civil suits, at different stages of

litigation, in multiple courtrooms would prejudice the Debtor by imposing inefficiency and

denying the Debtor access to the claims allowance process Congress has created. See Katchen v.

1   <u>Landy</u>, 382 U.S. 323, 397 (1966) ("[T]he expressly granted power to 'allow,' 'disallow' and

2   'reconsider' claims [given to the bankruptcy courts] which is of 'basic importance in the

3   administration of a bankruptcy estate,' is to be exercised in summary proceedings and not by the

4   slower and more expensive process of a plenary suit." (citations omitted)).

5           Despite Claimants' assertion to the contrary (Stay Motion at 8), the financial

6   burden to PG&E will be greater if PG&E is forced to defend against multiple lawsuits in the

7   state courts. The procedures for the disallowance of Claims summarized in this Opposition (and

8   PG&E's Opposition to Claimants' Abstention Motion) will be a less expensive and more efficient

9   way to process the Chromium Claims.  Not only will the claims allowance process enable all of

10  the Chromium Claims to be heard in a single court, but it will also streamline the handling of the

11  Chromium Claims by the use of summary procedures.

12          As described above, the claims allowance process is a more effective way to deal

13  with the Chromium Claims in PG&E's Chapter 11 Case.  PG&E is prepared to file a series of

14  motions challenging Claimants' assertion that chromium can cause approximately 200 different

15  illnesses and more than 20 types of cancer.  (Getto Decl. ¶ 9 and Exhibit A.)  PG&E will also file

16  motions identifying those Claimants whose type and level of alleged exposure cannot support

17  their Claims, and motions describing the other legal shortcomings of the Claims. The District

18  Court should consider the bankruptcy claims allowance issues raised by PG&E's Objections. <u>See</u>

19  <u>In re Johnson</u>, 115 B.R. at 638.  Trial of the remaining Claims, if any, will then occur according

20  to procedures adopted by the District Court.

21          **2.    Lifting The Stay Is An Inefficient Method For Resolving The Claims**

22          In contrast to resolution in the District Court, lifting the stay would present

23  additional case management issues because the fifteen civil cases currently pending before

24  multiple judges in the California state courts are at different stages of litigation.  The <u>Aguayo</u>

25  case, that was furthest along when PG&E's Chapter 11 Case was filed, was at least six months

26  from a test trial and twelve months from a verdict for eighteen test cases.  Expert discovery was

27  proceeding and PG&E's medical causation motions against the test cases were filed.

28  Oppositions and hearings were taken off calendar as a result of the automatic stay.  At the same

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

15 Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

1    time, the Adams cases involving more than 200 plaintiffs are still at the pleading stages.

2    Restarting litigation in multiple state courtrooms, with cases presenting similar issues at varying

3    stages of development would be extremely inefficient.  If Claimants cannot present admissible

4    evidence that chrome six exposures like those alleged caused the absurdly wide variety of

5    conditions alleged (see Exhibit A), the Claims should be disallowed.

6              Nor is an Aguayo test trial a particularly efficient way to address the 1,250 claims.

7    Ten of the Aguayo trial test plaintiffs were chosen by plaintiffs' counsel, six by defense counsel,

8    and two at random.  (Getto Decl. ¶ 14.)  Not surprisingly they present some of the cases on

9    which plaintiffs' counsel places the highest value and some that should have little or no value.

10   Because the Aguayo trial test plaintiffs were not selected to be representative of the Claimants, to

11   the extent that a trial is necessary for any of these eighteen test cases, committing the time

12   necessary to prepare and litigate the test plaintiff trial to completion may not contribute to the

13   final resolution of the Claims involving other types of alleged injury.  The potential for

14   inconsistent verdicts would remain, with more than 200 plaintiffs in cases pending other than the

15   test plaintiff courtroom.[17]

16             The assertion by the Adams Claimants that the civil lawsuits are ready for trial

17   (Stay Motion at 3) is contrary to the record.  Not one of the complaints in the Adams case has yet

18   survived a demurrer.  The Adams plaintiffs will not file their Third Amended Complaint until

19   January 17, 2002.  The hearing on the Third Amended Complaint is scheduled for March 11,

20   2002 and no depositions have been taken.  (Getto Decl. ¶ 16.) See In re Curtis, 40 B.R. 795, 805

21   (Bankr. D. Utah 1984)(denying relief from the stay where significant pre-trial discovery would

22

23

24

---

25   [17]   The Claimants' assertion that the Los Angeles County Superior Court is the best forum for
26         trial of the Chromium Claims is not a basis for lifting the stay.  Section 157(b)(5) grants the
          District Court additional venue powers in bankruptcy-related matters.  They are not designed
27         to permit forum selection by Claimants.  See Baumgart v. Fairchild Aircraft Corp., 981 F.2d
          824, 834 (5th Cir. 1993) ("[Section] 157(b)(5) was intended to confer new power upon the
28         district court in which a bankruptcy is pending to qualify the choice of venue made by a
          plaintiff, and was not enacted 'to vest the power of choice in the plaintiff.'")

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

16   Opposition To Plaintiffs' Motions For Relief From The
     Automatic Stay

Case: 01-30923   Doc# 4104   Filed: 01/02/02   Entered: 01/07/02 16:20:00   Page 22
of 36

1    still have to be completed before trial).[18]  Amended pleadings in <u>Alderson</u> and <u>Kearney</u> will be

2    filed after any ruling on the amended complaint in <u>Adams</u>.  No representative method for test

3    plaintiff selection should be adopted until after the demurrers are resolved.  Other cases, (e.g.,

4    <u>Gale</u>, <u>Puckett</u>, <u>Monice</u>) are similarly at the early pleading and discovery stages).  (Getto Decl. ¶¶

5    15, 17.)  Claimants admit that even the eighteen test plaintiffs in <u>Aguayo</u> are still six months

6    away from trial and one year away from a verdict.  Because the Chromium Claims are not on the

7    eve of trial, denying relief from the stay will not prejudice the Claimants.  <u>See</u> <u>In re Johnson</u>, 115

8    B.R. 634, 637 (Bankr. D. Minn. 1989) (denying relief from the stay where the case was not ready

9    for trial and so denying relief from the stay would not prejudice the plaintiff).

10            Claimants' recitation of the <u>Aguayo</u> procedural history is also an attempt to

11    exaggerate the connection with the Los Angeles County Superior Court.  Prior to PG&E's

12    Chapter 11 Case, Judge Kuhl had the <u>Aguayo</u> cases pending in her court for six months.  She has

13    dealt with case management issues and established schedules for dispositive motions, but has not

14    made any substantive rulings.  Judge Mohr, who was assigned to the <u>Adams</u> and <u>Alderson</u> cases

15    months after Judge Kuhl began handling proceedings in <u>Aguayo</u> has granted a statute of

16    limitations demurrer in <u>Adams</u>, with leave to amend.  Claimants have not provided any evidence

17    that the time to get the Chromium Claims to any trial would be longer in the District Court.

18            The Stay Motion also gives an incomplete description of the location where the

19    Claims arose and the Claimants' residence location in an attempt to portray a connection to Los

20    Angeles where none exists.  For example, the Stay Motion carefully uses the undefined term

21    "Southern California" when asserting that "the plaintiffs and witnesses are primarily in Southern

22    California."  (Stay Motion at 11.)  This statement is misleading at several levels.  Fewer than 25

23    Claimants currently reside in Los Angeles County according to their written discovery responses.

24    More than 450 Claimants reside in Central California (predominately Kings, Kern and Fresno

25    counties), approximately 160 in Northern California and more than 170 reside out of state.

26

---

27    [18]  As set forth in PG&E's Opposition To Claimants' Motion For Abstention, no discovery
      taken in the state courts will have to be re-taken if the Claims are transferred to the District

28    Court.  <u>See</u> Fed. R. Civ. P. 32(a)(4).  Therefore, there will be no additional discovery costs by
      transferring the Claims to the District Court that PG&E would not have incurred otherwise.

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

17  Opposition To Plaintiffs' Motions For Relief From The
    Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 23
                              of 36

1    (Getto Decl. ¶ 19.)  More than half of the remaining Chromium Claims concern alleged exposure

2    at Kettleman, California, located at the Fresno and Kings County line in the Eastern District of

3    California. (Getto Decl. ¶ 18.)  Even the Hinkley claims arose in San Bernardino County, not Los

4    Angeles.  The only reasons that these cases were brought in Los Angeles is because Betz, who is

5    now a co-defendant in civil cases pursued by approximately 200 of the 1,250 Claimants, had an

6    office in Los Angeles and plaintiffs counsel in Aguayo lives in Los Angeles.

7         Claimants' argument that the Claimants and witnesses are located primarily in

8    Southern California and that it would constitute a great hardship on the Claimants if the Claims

9    were to be tried in Northern California (Stay Motion at 3) is contrary to the sworn discovery

10    responses.[19]  The percipient witnesses to events at the three compressor stations will not

11    generally reside in Los Angeles County.  (Getto Decl. ¶ 19.)  Transferring the cases to a single

12    District Court pursuant to Section 157(b)(5) will not take the cases away from any compelling

13    historical connection to Los Angeles.

14         **3.**      **Balancing The Hardships Weighs Against Lifting The Stay.**

15         These same arguments apply to balancing the hardships between PG&E and the

16    Claimants.  It will be more efficient to handle all 1,250 Chromium Claims in the District Court

17    and the Claimants are not being deprived of their opportunity to resolve their Claims.  Thus, the

18    balance militates in favor of resolving the Claims in the District Court (the result if the stay is not

19    lifted) rather than litigating fifteen cases in the California state courts subject to removal (the

20    potential result if the stay is lifted).

21         Claimants argue that In re Bock Laundry Machine Co., 37 B.R. 564 (Bankr. N.D.

22    Ohio 1984), and In re Todd Shipyards Corp. apply when balancing the hardships.  However,

23    both cases are inapplicable.  In In re Todd Shipyards Corp., the bankruptcy court lifted the

24    automatic stay for a case already pending in district court where it would have been transferred

25    pursuant to Section 157(b)(5), so there was no harm in allowing the case to proceed in that

26

27    [19] Hiring experts that work in Southern California should hardly be a criteria for venue because

28      experts are excluded from venue statutes.  See Section 157(b)(5) (allowing venue to be set
      either where the bankruptcy case is pending or where the claims arose).

1   federal court. See In re Todd Shipyards Corp., 92 B.R. at 601 n.1, 604. In re Bock Laundry

2   Machine Co. was a pre-Section 157(b)(5) case. Therefore, if the bankruptcy court in that case

3   did not lift the stay, the plaintiffs would have been prevented from proceeding with their personal

4   injury lawsuits in any forum. See In re Bock Laundry Mach. Co., 37 B.R. at 566. Because

5   Section 157(b)(5) applies to the Chromium Claims in PG&E's Chapter 11 Case, lifting the stay

6   is not required to allow the Claims to proceed in the District Court. Therefore, there will be no

7   hardship for the Claimants if the stay remains in place.

8           **4.    Any Public Policy Favoring Personal Injury Claims Will Not Be**

9                   **Affected If The Stay Remains In Place.**

10          Any public policy that favors allowing the personal injury Claims to proceed will

11  not be affected because the Claimants are not being prevented from proceeding with their Claims

12  in the District Court. The majority of the cases Claimants cite for the proposition that the

13  bankruptcy court should grant its Stay Motion now, despite PG&E's pending Motion to Certify,

14  ignore the fact that Section 157(b)(5) provides a federal forum in which the Chromium Claims

15  can be considered. For example, certain cases cited by the Claimants that involve personal injury

16  claims arose before the 1984 enactment of Section 157(b)(5). See, e.g., In re Bock Laundry

17  Mach. Co., 37 B.R. at 566 (arising before Section 157(b)(5) and lifting the automatic stay so that

18  the plaintiffs were not denied their opportunity to litigate personal injury tort claims until the

19  termination of the automatic stay at the closing of the bankruptcy case) (Stay Motion at 11).

20  Other cases Claimants' cite from after the enactment of Section 157 involve non-personal injury

21  claims not subject to Section 157(b)(5). See, e.g., Piombo Corp. v. Castlerock Props. (In re

22  Castlerock Props.), 781 F.2d 159 (9th Cir. 1986) (involving a contract law cause of action and

23  citing mandatory abstention, a doctrine inapplicable in cases dealing with personal injury claims,

24  as evidence of a congressional policy to hear state law causes of action in state court) (Stay

25  Motion at 6, 9). These cases do not apply to PG&E's Chapter 11 Case because the Claimants are

26  being given an opportunity to resolve their Claims in the District Court as mandated by Congress

27  in Section 157(b)(5).

28

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

19  Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

1    **5.    The Claims Do Not Involve Any Unsettled Questions Of State Law.**

2              Claimants repeatedly ignore the fact that personal injury tort claims subject to

3    Section 157(b)(5) are not subject to mandatory abstention (28 U.S.C. § 1334(c)(2))[20] because of

4    28 U.S.C. § 157(b)(4).[21]  This makes a fundamental difference in analyzing whether relief from

5    stay is appropriate. Because the Chromium Claims are not subject to mandatory abstention, the

6    District Court should only abstain from asserting its jurisdiction if there are *unsettled* issues of

7    state law involved.  See e.g., Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.), 950

8    F.2d 839, 846 (2d Cir. 1991) (stating that a federal court should abstain in favor of a state court

9    only for a "particularly unusual" question of state law).  The mere presence of state law issues is

10   not a basis to lift the stay in a Section 157(b)(5) personal injury tort case.

11             Bankruptcy courts deciding whether to lift the stay with respect to lawsuits based

12   upon state law causes of action not arising from personal injuries cite Section 1334(c)(2) as a

13   congressional mandate to send such lawsuits back to the state court for litigation.  See, e.g., In re

14   Castlerock Props., 781 F.2d at 163 (citing Section 1334(c)(2) as a "clear congressional policy . . .

15   to give state law claimants a right to have claims heard in state court") (Stay Motion at 9).[22]  For

16   a court to abstain from hearing a proceeding pursuant to mandatory abstention under Section

17   _____

18   [20]  Section 1334(c)(2) (mandatory abstention) states that "[u]pon timely motion of a party in a

19   proceeding based upon a State law claim or State law cause of action, related to a case under
     title 11 but not arising under title 11 or arising in a case under title 11, with respect to which

20   an action could not have been commenced in a court of the United States absent jurisdiction
     under this section, the district court shall abstain from hearing such proceeding if an action is

21   commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  28
     U.S.C. § 1334(c)(2) ("Section 1334(c)(2)").

22   [21]  Section 157(b)(4) states that "non-core proceedings under section 157(b)(2)(B) of title 28,

23   United States Code [i.e., personal injury tort and wrongful death claims], shall not be subject
     to the mandatory abstention provisions of section 1334(c)(2)."  28 U.S.C. § 157(b)(4).

24   [22]  See also In re Marvin Johnson's Auto Serv., Inc., 192 B.R. at 1020 n.27 ("This Court's

25   conclusion that [the plaintiff's] lawsuit, which involves purely state law issues that can be
     readily tried in state court, should be allowed to proceed is however, *bolstered* by Section

26   1334(c)(2) which, at the very least, represents a strong expression of Congressional
     preference that, when possible and expedient, trials involving state law issues should be tried

27   in familiar state forums, with attendant trappings of due process."); see In re Curtis, 40 B.R.
     795, 805 (Bankr. D. Utah 1984) (denying relief from the automatic stay where lawsuits

28   alleged causes of action for fraud, negligent misrepresentation and breach of contract because
     "[t]hese matters do not involve *unsettled* questions of state law" (emphasis added)).

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

1  1334(c)(2), it must only find that the proceeding is "based upon a State law claim" and can be

2  "timely adjudicated" in a state court.

3          This mandate does not, however, apply in personal injury cases that are exempted

4  from 1334(c)(2). By enacting Section 157(b)(5) and Section 157(b)(4), Congress provided for

5  personal injury tort claims to be heard in the District Court, not the state courts. Pursuant to

6  Section 1334(c)(1), the District Court has *discretion* to abstain from hearing a personal injury

7  tort or wrongful death claim, but only where the state law at issue is *complex* or *unsettled*. See,

8  e.g., In re Dow Corning Corp., 113 F.3d at 570-71 ("'[The] primary determinant for the exercise

9  of abstention [under Section 1334(c)(1)] is whether there exists *unsettled* questions of state law'"

10  (emphasis added) (quoting Gen. Am. Communications Corp. v. Landsell (In re Gen. Am.

11  Communications Corp.), 130 B.R. 136, 146 (S.D.N.Y. 1991)). Because there are no unsettled

12  issues of state law in the civil lawsuits (see PG&E's Abstention Opposition), the mere presence

13  of state law issues is not a basis to grant Claimants' Stay Motion in a personal injury tort case.

14          **6.      The Lawsuits Against PG&E And Betz Can Be Transferred To The**

15                  **District Court.**

16          In an attempt to make the District Court venue appear less attractive, Claimants

17  incorrectly state that the cases against Betz cannot be heard in the District Court. However, once

18  the Chromium Claims are transferred to the District Court, the cases against PG&E and Betz can

19  be removed to the District Court pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027 if

20  the Betz cases are "related to" the cases against PG&E under 28 U.S.C. § 1334(b). An action is

21          related to bankruptcy if the outcome could alter the debtor's rights, liabilities,

22          options, or freedoms of action (either positively or negatively) and which in any way

23          impacts upon the handling and administration of the bankrupt estate. A proceeding

24          "need not necessarily be against the debtor or the debtor's property."

25  Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow

26  Corning Corp.), 86 F.3d 482, 489 (6th Cir. 1996) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984

27  (3d Cir. 1984), adopted by In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988)).

28          The Sixth Circuit, in In re Dow Corning Corp., agreed with the Fourth Circuit

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

21  Opposition To Plaintiffs' Motions For Relief From The Automatic Stay

1 Court of Appeals in <u>A.H. Robins Co. v. Piccinin</u>, 788 F.2d 994 (4th Cir. 1986), that

2 Section 157(b)(5) should be read to allow a district court to fix venue for cases

3 pending against non-debtor defendants which are "related to" a debtor's bankruptcy

4 proceedings pursuant to Section 1334(b). This approach will further the prompt, fair,

5 and complete resolution of all claims "related to" bankruptcy proceedings, and

6 harmonize Section 1334(b)'s broad jurisdictional grant with the oft-stated goal of

7 centralizing the administration of a bankruptcy estate.

8 <u>In re Dow Corning Corp.</u>, 86 F.3d at 497. The District Court can assert jurisdiction over the

9 lawsuits against PG&E and Betz if it will further resolution of the Chromium Claims.

10         **7.**     **There Are Threshold Bankruptcy Issues.**

11         Claimants erroneously assert that by filing the Motion to Certify PG&E was

12 acknowledging that there were no threshold bankruptcy issues. (Stay Motion at 10.) By filing

13 the Motion to Certify, PG&E was simply acknowledging this Bankruptcy Court's lack of

14 jurisdiction for trial of the Chromium Claims. Bankruptcy issues still apply to the Claims and

15 they should be resolved in the District Court.[23] See <u>In re Johnson</u>, 115 B.R. at 638 (determining

16 that the threshold bankruptcy issue of the application of the cap in Section 502(b)(7) of the

17 Bankruptcy Code (capping damages for termination of an employment contract) established that

18 there was no "cause" to lift the stay). Similarly, in <u>In re Curtis</u>, 40 B.R. at 800, the court noted

19 that when considering the factors for "cause" to lift the stay, "it must be borne in mind that the

20 process of determining the allowance of claims is of basic importance to the administration of

21 the bankruptcy estate."

22         There is no reason to litigate all of the Chromium Claims in the state courts when

23 most, if not all, of the Claims may be disposed of in the claims allowance process. As the Ninth

24

25 [23] PG&E is not "taking advantage of its bankruptcy filing to 'remove' all of these cases to a
court that otherwise would have no jurisdiction to try these claims" as alleged by the
Claimants. (Stay Motion at 10.) As stated in the Plan, PG&E commenced its Chapter 11

26 Case because of the California energy crisis. See Disclosure Statement to First Amended
Plan of Reorganization. Once PG&E commenced its Chapter 11 Case, Claims were filed as

27 required by Congress in 11 U.S.C. § 501 and Fed. R. Bankr. P. 3003. Section 157(b)(5) and
Local Rule 9015-2(d) mandate that these Chromium Claims be tried in the District Court,

28 subject to any abstention decision by the District Court.

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

1  Circuit Court of Appeals recognized in Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo
2  Enterprises, Inc.), 96 F.3d 346, 353( 9th Cir. 1996), "[b]y staying the state action, the bankruptcy
3  court promoted judicial economy and efficiency by minimizing the duplication of litigation in
4  two separate forums and preventing litigation of a claim that *may have been discharged in*
5  *bankruptcy proceedings.*" (Emphasis added.)  In In re Waterman Steamship Corp., 63 B.R. at
6  437, the bankruptcy court stated that "[a]n obvious issue impacting [the Section 157(b)(5)]
7  motion is whether the trials can be structured to try common issues."

8       In PG&E's case, the issues common to hundreds of the Chromium Claims can be
9  dealt with together in the claims allowance process.  For example, according to written discovery
10  in the pending litigation, more than 200 Chromium Claimants never lived or worked at or near
11  the Hinkley, Kettleman or Topock stations.  Instead, their Claims are based upon periodic visits
12  of very short duration to the areas where they assert chrome six would have been present.  In
13  addition, written discovery responses confirm that more than 350 Chromium Claimants allege
14  that they were exposed to chrome six at ranches that are located two to five miles away from the
15  Kettleman Station. The claims allowance process,[24] can adjudicate the legally and factually
16  deficient Chromium Claims in a summary manner.  See Katchen v. Landy, 382 U.S. at 397
17  ("[T]he expressly granted power to 'allow,' 'disallow' and 'reconsider' claims [given to the
18  bankruptcy courts] which is of 'basic importance in the administration of a bankruptcy estate,' is
19  to be exercised in summary proceedings and not by the slower and more expensive process of a
20  plenary suit." (citations omitted)).  In Livesey v. Kates (In re Mazzocone), 1993 Bankr. LEXIS
21  1172 at *8 (Bankr. E.D. Pa. Aug. 25, 1993), the court did not lift the stay, stating:

22       Rarely, if ever, will the bankruptcy claims process be delegated to other forums by
23       bankruptcy courts.  The fact that state law issues are presented in the claims process
24       is neither unusual nor significant.  Claims usually involve state-law issues.  We

26  [24]  In addition to the claims allowance issues, the punitive damage portion of the Claims raise
27  bankruptcy questions. See In re GAC Corp., 681 F.2d at 1301 n.5 ("Where the punitive
   damages claim is asserted against a representative of the wrongdoer, whether it be a receiver,
28  executor, or, as in this case, a trustee in bankruptcy, the purposes for awarding punitive
   damages will not be furthered and thus the punitive damages claim should not be allowed.")

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

23  Opposition To Plaintiffs' Motions For Relief From The
    Automatic Stay

1    appreciate that the [state court] has given years of attention, to the extent of special

2    appointments of a distinguished judge and a master, to administer and attempt to

3    resolve these matters.  However, it is difficult for us to see what promise the state

4    court processes present that they will be quicker and more efficient than the

5    summary bankruptcy claims process in bringing these matters to a final resolution.

6    This Court should not ignore the efficiency that the bankruptcy claims process can provide by

7    restarting fifteen state court lawsuits.[25]

8         **8.    Claimants Have Not Shown A Significant Probability Of Success On**

9                 **The Merits.**

10   As described in PG&E's Objections, hundreds of the Chromium Claims should be

11   disallowed because the Claimants will be unable to present admissible scientific evidence that

12   exposure to environmental levels of chrome six can cause the massive list of ailments they claim.

13   Other Chromium Claims should be disallowed because they are based on causes of action that

14   were brought after the expiration of the applicable one-year statute of limitations or fail to set

15   forth a valid legal or equitable basis for relief.

16   The fact that PG&E settled the Anderson suit for $333 million is not evidence of

17   Claimants' probability of success on the merits in the current fifteen suits against PG&E.  As

18   summarized in PG&E's Objections, the settlement awards were not made on any reliable

19   scientific evidence.  Rather the settlement came about after a binding arbitration proceeding in

20   which the arbitrators ignored the scientific evidence.  As indicated above, questions have been

21   raised about this proceeding and it provides no indication as to the probability of success on the

22   merits in the fifteen current civil suits.  Neither is the $160 million figure cited in the Plan a

23   reliable indicator of the probability of Claimants' success on the merits.  As set forth in the

24   Disclosure Statement, the Plan will pay only for allowed Claims.  The $160 million is an

25   accounting reserve for the Claims, that will never be realized if the numerous challenges

26

27   [25]  As noted above (see note 15), even if relief from stay were granted, PG&E has the right to
28        remove the lawsuits pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027, and the
             venue and jurisdiction decisions would again be before the District Court.

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

24  Opposition To Plaintiffs' Motions For Relief From The
    Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 30
of 36

1   described in PG&E's Objections cause the Claims to be disallowed as they should . This

2   estimate, like estimates by Courts for other reasons, does not establish the value of the Claims.

3   See, e.g., In re Marvin Johnson's Auto Serv., Inc., 192 B.R. at 1019 n.21 (stating that "if the

4   claim is ultimately allowed in a different amount by the nonbankruptcy tribunal, the claimant

5   may become entitled to a greater or lesser distribution than originally anticipated under the

6   confirmed plan"); In re Baldwin-United Corp., 57 B.R. 751, 758 (S.D. Ohio 1985) (noting that

7   "the estimation proceeding is purely to facilitate efficient administration of the bankruptcy

8   proceeding and to prevent undue delay; it does not resolve the issue of debtors' liability to

9   claimants or the actual amount of their liability").

10  **IV.    CONCLUSION**

11          For all the foregoing reasons, PG&E respectfully requests that PG&E's Motion to

12  Certify and Transfer the Chromium Claims be granted and the Claimants' Motion to Lift the

13  Automatic Stay be denied.

14  Dated:  January 2, 2002

                                        LATHAM & WATKINS
15                                        Michael S. Lurey
                                        Ernest J. Getto
16                                        Kirk A. Wilkinson
                                        Cynthia H. Cwik
17

18

19
                                    By _____
20                                        Ernest J. Getto
                                        Attorneys for Pacific Gas and Electric
21                                        Company, Debtor

22

23

24

25

26

27

28

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

25   Opposition To Plaintiffs' Motions For Relief From The
     Automatic Stay

Case: 01-30923    Doc# 4104    Filed: 01/02/02    Entered: 01/07/02 16:20:00    Page 31
                                    of 36

1  described in PG&E's Objections cause the Claims to be disallowed as they should. This

2  estimate, like estimates by Courts for other reasons, does not establish the value of the Claims.

3  See, e.g., In re Marvin Johnson's Auto Serv., Inc., 192 B.R. at 1019 n.21 (stating that "if the

4  claim is ultimately allowed in a different amount by the nonbankruptcy tribunal, the claimant

5  may become entitled to a greater or lesser distribution than originally anticipated under the

6  confirmed plan"); In re Baldwin-United Corp., 57 B.R. 751, 758 (S.D. Ohio 1985) (noting that

7  "the estimation proceeding is purely to facilitate efficient administration of the bankruptcy

8  proceeding and to prevent undue delay; it does not resolve the issue of debtors' liability to

9  claimants or the actual amount of their liability").

10  **IV.    CONCLUSION**

11          For all the foregoing reasons, PG&E respectfully requests that PG&E's Motion to

12  Certify and Transfer the Chromium Claims be granted and the Claimants' Motion to Lift the

13  Automatic Stay be denied.

14  Dated: January 2, 2002

15                                LATHAM & WATKINS
                                  Michael S. Lurey
16                                Ernest J. Getto
                                  Kirk A. Wilkinson
17                                Cynthia H. Cwik

18

19                                By _____

20                                Kirk A. Wilkinson
                                  Attorneys for Pacific Gas and Electric
21                                Company, Debtor

22

23

24

25

26

27

28

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

25  Opposition To Plaintiffs' Motions For Relief From The
    Automatic Stay

Case: 01-30923   Doc# 4104   Filed: 01/02/02   Entered: 01/07/02 16:20:00   Page 32
                              of 36

1

## PROOF OF SERVICE
### (Fax and Mail)

2

3      I am employed in the County of Los Angeles, State of California. I am over the
age of 18 and not a party to the within cause. My business address is Latham & Watkins, Suite
4      4000, 633 West Fifth Street, Los Angeles, California 90071.

5      I served the below listed document(s) described as:

6      **OPPOSITION TO CLAIMANTS' MOTION FOR RELIEF FROM STAY**

7      on January 2, 2002 the following parties to this cause by mailing or faxing a copy of the above
document(s) as follows:

8

### SEE ATTACHED LIST

9

10     I am familiar with the office practice of Latham & Watkins for collecting,
processing, and transmitting facsimiles. Under that practice, when a facsimile is deposited with
the Latham & Watkins personnel responsible for facsimiles, such facsimile is transmitted that
11     same day in the ordinary course of business. I deposited the above-described document for
facsimile transmission in accordance with the office practice of Latham & Watkins for collecting
12     and processing facsimiles. The facsimile of the above-described document was transmitted to
the following party from Los Angeles, California on January 2, 2002, at the time noted on the
13     attached confirmation sheet.

14     I am familiar with the office practice of Latham & Watkins for collecting and
processing documents for mailing with the United States Postal Service, which practice is that
15     when documents are deposited with the Latham & Watkins personnel responsible for depositing
documents with the United States Postal Service, such documents are delivered to the United
16     States Postal Service that same day in the ordinary course of business with postage thereon fully
prepaid. I placed a sealed envelope containing the document(s) in Latham & Watkins' Los
17     Angeles mail, addressed to the above parties.

18     I affirm under penalty of perjury that the above is true and correct.

19     Executed on January 2, 2001, at Los Angeles, California.

20

21

22     _____

23                    George L. MacDonell

24

25

26

27

28

# SERVICE LIST

| | |
|---|---|
| Thomas V. Girardi, Esq.<br>Girardi & Keese<br>1126 Wilshire Blvd.<br>Los Angeles, CA 90017<br>Fax (213) 481-1554<br>**(via fax)** | Walter J. Lack, Esq.<br>Gary A. Praglin, Esq.<br>Engstrom, Lipscomb & Lack<br>10100 Santa Monica Blvd., 16th Floor<br>Los Angeles, CA 90067-4107<br>Fax (310) 552-9434<br>**(via fax)** |
| Edward L. Masry, Esq.<br>Law Offices of Masry & Vititoe<br>5707 Corsa Drive, 2nd Floor<br>Westlake Village, CA 91362 | Michael P. Dolan, Esq.<br>Law Offices of Michael P. Dolan<br>1315 "L" Street<br>Bakersfield, CA 93301 |
| Thomas J. Anton, Esq.<br>Anton & Associates<br>1605 "G" Street<br>P.O. Box 2127<br>Bakersfield, CA 93301-2127<br>Fax (661) 327-4755<br>**(via fax)** | Steven L. Crane, Esq.<br>Michelizzi, Schwabacher, Ward and<br>  Bianchi<br>767 West Lancaster Boulevard<br>Lancaster, CA 93534-3135 |
| Evan C. Hollander, Esq.<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036 | Todd Duncan<br>BNY Western Trust<br>700 South Flower Street, 5th Floor<br>Los Angeles, CA 90017 |
| Michael Perdue, Esq.<br>2750 Roosevelt Street, Suite 100<br>Carlsbad, CA 92008 | Office of the U.S. Trustee<br>Attn: Stephen Johnston<br>250 Montgomery Street, Suite 1000<br>San Francisco, CA 94104-3401 |
| Robert Jay Moore, Esq.<br>Paul S. Aronzon, Esq.<br>Milbank, Tweed, Hadley & McCoy LLP<br>601 South Figueroa Street<br>Los Angeles, CA 90017 | Melissa Cobb<br>1568 Mentone<br>Grover Beach, CA 93433 |
| Wayne & Susan Gesiriech<br>23677 Community Boulevard<br>Hinkley, CA 92347 | Molly Elizabeth Smith<br>Hayton and Hunt<br>15520 Bear Valley Boulevard<br>Victorville, CA 92392 |
| Tina Marie Smith<br>Hayton and Hunt<br>15520 Bear Valley Boulevard<br>Victorville, CA 92392 | Warren Wallis<br>3890 Lenwood Road<br>Barstow, CA 92311 |

LATHAM & WATKINS
ATTORNEYS AT LAW
LOS ANGELES

1

2　　T. Scott Belden
　　Klein, DeNatale, Goldner, Cooper,
3　　Rosenlieb & Kimball, LLP
　　4550 California Avenue
4　　Second Floor
　　Bakersfield, CA 93309
5　　Fax (661)326-0418
　　**(via fax)**
6

7

8　LA_DOCS\769561.1[W2000]
　　023907-0029

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATHAM & WATKINS
ATTORNEYS AT LAW
LOS ANGELES

```
                ●        ×*×*×*×*×*×*×*×*×*×*×*×*×*×*×          ●
                         × SERIAL BROADCAST REPORT (1) ×
                         ×*×*×*×*×*×*×*×*×*×*×*×*×*×*×
```

(WED) JAN  2 2002 12:14
LATHAM & WATKINS LA  213-891-8763  #08

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | TOT. DST | PAGES |
|---|---|---|---|---|---|
| 4861822-127 | 1. 2 11:45 | 1. 2 11:46 | 42'15" | 5 | 35 |

| FIN. | 4 |
|---|---|

| #03094811554 | #030613105529434 |
|---|---|
| #030616613271755 | #030616613260418 |

| T. B. S. | 1 |
|---|---|

| #030616616311917 | BUSY | |
|---|---|---|



**Latham & Watkins**
ATTORNEYS AT LAW
WWW.LW.COM

633 WEST FIFTH STREET, SUITE 4000
LOS ANGELES, CALIFORNIA 90071-2007
PHONE: (213) 485-1234
FAX: (213) 891-8763

---

# FACSIMILE TRANSMISSION

## JANUARY 2, 2002

**TO:**

| Name | Fax No. | Phone No. |
|---|---|---|
| Thomas V. Girardi, Esq.<br>Girardi & Keese | (213) 481-1554 | (213) 977-0211 |
| Walter J. Lack, Esq.<br>Gary A. Praglin, Esq.<br>Engstrom, Lipscomb & Lack | (310) 552-9434 | (310) 552-3800 |
| Michael P. Dolan, Esq.<br>Law Offices of Michael P. Dolan | (661) 631-1917 | (661) 631-2181 |
| Thomas J. Anton, Esq.<br>Anton & Associates | (661) 327-4755 | (800) 699-7051 |
| T. Scott Belden<br>Hayton and Hunt | (661) 326-0418 | (661) 395-1000 |

**FROM:**  Kirk A. Wilkinson

**RE:**  *In re Pacific Gas & Electric Company, a California corporation, Debtor*
*Federal I.D. No. 94-0742640*
*Bankruptcy Case No. 01-30923 SFM11*

| ☐ ORIGINAL(S) WILL FOLLOW | NUMBER OF PAGES, INCLUDING COVER: 35 |
|---|---|

**MESSAGE:**