FILED

02 JAN -8 PM 2:47

U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
SAN FRANCISCO, CA.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    ) Bankruptcy Case
                                         ) No. 01-30923DM
PACIFIC GAS & ELECTRIC COMPANY,          )
                                         ) Chapter 11
                         Debtor.         )
_____)

MEMORANDUM DECISION REGARDING
CHROMIUM CLAIMS

I.   INTRODUCTION

The court has been asked to answer a question for which there
is just a little help in the reported decisions and a little more
found in national and local bankruptcy rules.   That question is,
may a bankruptcy judge, rather than a district judge, make the
decision whether or not to abstain from having personal injury and
wrongful death claims heard and tried before the district judge
sitting as a bankruptcy court.   For the reasons that follow, this
bankruptcy judge concludes that he not only has the legal
authority to make that decision, but he also has the legal
obligation and responsibility to do so.   To pass the important
question to a district judge in this case at this time, while
arguably permissible, would amount to an abdication of duty.
This is not because - in the abstract - a district judge is unable

-1-

to make the decision. Clearly he or she is able to do so, and with an enormous effort could come to know and understand how the factors relevant to the abstention decision apply in this enormously complex case. Rather, it is because this bankruptcy judge, who has presided over virtually every aspect of this Chapter 11 reorganization, from moments after the petition was filed until now, when it is time to evaluate the proposed reorganization plan and the accompanying disclosure statement, is better situated - in a real and practical sense - to make the critical analysis of whether and how keeping those personal injury and wrongful death claims in the federal bankruptcy system as compared to leaving them for resolution in the state court system will impact the debtor's crucial reorganization.

For the reasons that follow, the court first decides that it can and should make the decision; then it decides that abstention is proper so that those claims can be resolved in state court.

II.  DISCUSSION

A. Procedural Setting

Approximately 1,250 individuals (the "Chromium Claimants" or "Claimants") have filed proofs of claim (the "Chromium Claims" or "Claims") in this Chapter 11 case. The Chromium Claims allege personal injury[1] and wrongful death claims (for convenience, referred to simply as "personal injury claims" throughout this decision, both with reference to the Chromium Claims and generally

---

[1]  Chromium Claimants contend that their loss of consortium claims do not constitute claims for personal injury. PG&E and this court disagree. In order to recover on a claim of lost consortium, a plaintiff must prove that a personal injury impacted the marital relationship. Rodriguez v. Bethlehem Steel Corp., 12 Cal.3d 382, 405-07, 525 P.2d 669 (1974).

-2-

in discussing statutory provisions), purportedly caused by exposure to chrome six (hexavalent chromium) from facilities owned or operated by debtor Pacific Gas and Electric Company ("PG&E"). On November 14, 2001, PG&E filed its Omnibus Objections to Chromium Claims, setting forth various defenses to the Chromium Claims (the "Omnibus Objections"). On the same date, PG&E filed a motion to certify and transfer ("Motion To Certify") the Chromium Claims to the United States District Court for the Northern District of California, San Francisco Division (the "District Court").

Walter J. Lack, Esq. and associated counsel filed an opposition to the Motion To Certify on behalf of 1,035 Chromium Claimants (the "Lack Claimants"). Similarly, T. Scott Belden, Esq. filed an opposition to the Motion To Certify[2] on behalf of 232 Chromium Claimants (the "Belden Claimants"). The Lack Claimants also filed a motion for abstention ("Abstention Motion"), which the Belden Claimants joined. Finally, the Belden Claimants filed a motion for relief from stay (the "Stay Motion"), which the Lack Claimants joined.

The Lack Claimants are plaintiffs in eight lawsuits (the "Lack Lawsuits") and the Belden Claimants are plaintiffs in three lawsuits (the "Belden Lawsuits"), all pending in the various California Superior Courts. Approximately 15 other Chromium Claimants are plaintiffs in three other lawsuits (the "Other Lawsuits", and together with the Lack Lawsuits and the Belden Lawsuits, the "State Court Lawsuits"). The plaintiffs in the

---

[2] The opposition was inaccurately titled "Opposition To Motion To Withdraw Reference."

-3-

1   Other Lawsuits did not join in the Abstention Motion or in the
2   Stay Motion, and they did not oppose the Motion to Certify.

3       There is some slight confusion in the present record as to
4   which Chromium Claimants are plaintiffs in the State Court
5   Lawsuits, and which plaintiffs in the State Court Lawsuits did not
6   timely file proofs of claim in PG&E's Chapter 11 case by the
7   claims bar date, thus presumably removing those plaintiffs from
8   the group described as the Chromium Claimants.  Further, some of
9   the State Court Lawsuits were filed after PG&E filed Chapter 11 on
10  April 6, 2001, in violation of the automatic stay of 11 U.S.C.
11  § 362(a).  These matters are not material to the legal and factual
12  analyses pertinent to the court's decisions on the three motions
13  before it.  The orders that will be entered to carry out the
14  decision will straighten out any present uncertainties.

15      Taking the substance of the Abstention Motion and the Stay
16  Motion together, they ask the court not to resolve the Omnibus
17  Objections, but to permit the Lack Lawsuits and the Belden
18  Lawsuits to proceed to final judgments in state courts.  Counsel
19  for the Chromium Claimants agree, however, that enforcement of any
20  judgments will remain subject to the automatic stay of 11 U.S.C. §
21  362(a) and the claims distribution process as part of PG&E's
22  contemplated reorganization.  The Chromium Claimants' opposition
23  to the Motion to Certify is consistent with their position in
24  support of their own two motions.

25      The Motion To Certify, the Abstention Motion and the Stay
26  Motion all came on for hearing on January 3, 2002.  At the
27  hearing, Michael S. Lurey, Esq. appeared on behalf of PG&E.
28  Walter J. Lack, Esq. appeared on behalf of the Lack Claimants and

-4-

Thomas J. Anton, Esq. and T. Scott Belden, Esq. appeared on behalf of the Belden Claimants. After considering the extensive briefs and supporting papers presented, together with the oral arguments of counsel, the court took all three motions under submission. This Memorandum Decision disposes of those motions.

    B.   <u>This Court Has Authority to Decide Abstention Motion</u>

      **1.  Title 28 and Federal Case Law**

Several provisions of the Judicial Code, Title 28, refer to the district court or courts; few mention the bankruptcy court. Nevertheless, 28 U.S.C. § 151[3] describes the bankruptcy judges of each judicial district in regular active service as a "unit of the district court to be known as the bankruptcy court...." And section 157(a) authorizes each district court to refer to the bankruptcy judges of the district "...any and all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11...." In this district the referral has been made. <u>See</u> B.L.R. 5011-1(a). This is how PG&E's Chapter 11 case, the Claims and the Omnibus Objections come before this court.

The starting point for examination, therefore, is not one of <u>jurisdiction</u> over bankruptcy matters (all jurisdiction is in the district court, with the bankruptcy judges simply constituting the unit known as the bankruptcy court) but one of judicial <u>authority</u>. Simply stated, bankruptcy judges lack the authority to perform certain functions that are exclusively to be carried out by district judges.

---

[3]  Unless otherwise indicated, all section references are to the United States Judicial Code, 28 U.S.C. §§ 1-4001.

-5-

1    In the following analysis (except in direct quotations) the
2  court will refer to the bankruptcy judge or the district judge to
3  signify the judicial officer charged with the relevant duty or
4  authority.

5    PG&E's position is that, pursuant to sections 157(b)(2)(B)
6  and (b)(5), this bankruptcy judge cannot decide the Abstention
7  Motion.  Section 157(b)(2)(B) specifies that the liquidation or
8  estimation of personal injury claims for the purposes of
9  distribution is not a core matter.  Section 157(b)(5) provides
10 that the "district court shall order that personal injury tort and
11 wrongful death claims shall be tried in the district court in
12 which the bankruptcy case is pending, or in the district court in
13 the district in which the claim arose, as determined by the
14 district court in which the bankruptcy case is pending."  The
15 joinder of these two separate tasks is unwarranted.  The decision
16 whether or not to abstain from having the federal court system
17 resolve the disputed personal injury claims is a separate inquiry
18 from the ultimate task: the liquidation of those personal injury
19 claims.  There is no dispute that the authority to liquidate the
20 claims rests with the district judge, not with the bankruptcy
21 judge.[4]  Had Congress intended for the bankruptcy judge not to

22

23       [4]  Even with that restriction, in some situations the
   bankruptcy judge has authority to make threshold legal
24 determinations affecting the validity of such claims, such as
   whether the claims are barred by a claims deadline or a statute of
25 limitations.  As persuasively stated in In re Chateaugay Corp.,
   111 B.R. 67, 72-74 (Bankr. S.D.N.Y. 1990), aff'd in relevant part
26 and rev'd on other grounds, 146 B.R. 339 (S.D.N.Y. 1992) (a
   bankruptcy court may allow or disallow personal injury claims as a
27 matter of law):

28       Although [section] 157(b)(2)(B) restricts a bankruptcy

-6-

decide abstention motions in the context of personal injury
claims, it could have so provided in section 1334 or 157. It did
not.[5] The bankruptcy judge may, and is in a better position to,
make such preliminary determinations about the efficient and
effective administration of a Chapter 11 case.

This case illustrates the point dramatically. This
bankruptcy judge has considered numerous motions for relief from
stay filed by other litigants seeking to liquidate their claims
(including some personal injury claims) in state court. He has
also dealt with complex motions dealing with assumption of

---

> court's power to liquidate or estimate personal injury
> tort or wrongful death claims for purposes of
> distribution, it imposes no corollary restriction upon a
> bankruptcy court's ability to disallow such claims in
> the first instance if they are not sustainable at law.
> Allowing or disallowing claims is clearly a separate and
> distinct function from liquidating or estimating that
> claim. Had Congress meant to deny any jurisdiction
> whatsoever to the bankruptcy court to disallow claims
> based on the mantra of personal injury tort or wrongful
> death, it could have said so; but it did not.

111 B.R. at 73-74 (emphasis added). See also, U.S. Lines, Inc. v.
U.S. Lines Reorganization Trust, 262 B.R. 223, 233 (S.D.N.Y. 2001)
(disallowance of personal injury claim based on late filing of
proof of claim is not prohibited "liquidation", of that claim);
Standard Insulations, Inc., 138 B.R. 947 (Bankr. W.D. Mo. 1992)
(bankruptcy court may determine allowability of personal injury
claim, as opposed to estimating or liquidating the claim, for
failure to follow procedural requirements such as timely filing a
proof of claim), abrogated on other grounds, Pioneer Investment
Services Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380
(1993).

It may be, however, that in this district those pre-trial
decisions are to be made by the district judge because of B.L.R.
9015-2(d). See discussion in B, 2, infra.

[5] Note that among the few times title 28 refers to
bankruptcy judge rather than bankruptcy court are in sections
157(b)(3) and 157(c)(1), permitting the bankruptcy judge to
determine core vs. non-core issues and to hear non-core issues,
respectively. It could easily have placed the same restriction in
Section 1334(c).

-7-

executory contracts and payment of substantial amounts of money on those contracts prior to confirmation; payment of employee claims; retention (and payment) of counsel and other professionals necessary to the reorganization; extension of plan exclusivity; and preliminary matters concerning the adequacy of PG&E's disclosure statement relative to its proposed plan of reorganization. This judge has already studied that plan and shortly will make important decisions concerning its future. Further, the proposed plan describes how the Claims will be dealt with by reorganized PG&E (if the plan is confirmed).

Resolution of the Chromium Claims, together with PG&E's proposed treatment of all of its billions of dollars of other claims, is a complex matter that has been the subject of many issues brought to the court's attention. All of those issues intersect as part of the complex plan proposed by PG&E and likely affect its ability to reorganize successfully.

The court also agrees with PG&E that, absent discretionary abstention under section 1334(c)(1), only the district judge can decide the venue for the liquidation of the claims (i.e., whether the claims should be heard by the district judge where the bankruptcy case is pending or by the district judge where the claim arose). The venue decision, however, is distinct from the abstention decision.

Section 1334(c)(1), the provision governing discretionary abstention in bankruptcy cases and proceedings, states that "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular

-8-

proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Unquestionably a bankruptcy judge may exercise discretionary abstention under section 1334(c)(1). See Schulman v. California State Water Resources Control Board (In re Lazar), 200 B.R. 358, 372 (Bankr. C.D. Cal. 1996) ("This provision [section 1334(c)(1)] applies to the bankruptcy court following reference of a case thereto.") See also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) ("Section 1334 sets forth when a bankruptcy court must abstain and when it may abstain in favor of state court adjudication of an issue") (emphasis added). No exception is set forth in section 1334 which would limit the ability of the bankruptcy judge to hear and determine abstention motions relating to personal injury claims.[6]

The court has been able to locate two district court decisions which have determined that bankruptcy judges do have the authority to decide abstention motions pertaining to personal injury claims. In Scherer v. Carroll, 150 B.R. 549, 551-52 (D. Vt. 1993), the bankruptcy judge entered an order remanding to state court a personal injury action after determining that the federal court should abstain under section 1334(c). The district court affirmed, finding "the Bankruptcy Court's abstention in this

---

[6]  PG&E imports the district judge's sole authority to try personal injury claims under section 157(b)(5) into the language of section 1334(c)(1), but offers no convincing authority to justify such an insertion into the plain words of the latter section. Although it cites several cases where district judges have made the section 1334(c)(1) abstention decision on personal injury claims, or approved recommendations to abstain made by bankruptcy judges, none has even discussed whether or not the reference to "district court" in section 1334(c)(1) excludes bankruptcy judges.

-9-

related noncore proceeding, and the consequent equitable remand pursuant to 28 U.S.C. § 1452(b), an appropriate and sound exercise of discretion." Id. at 553. In affirming, the district court acknowledged the authority of the bankruptcy court to decide finally the abstention issue (as opposed to recommending a resolution to the district court), even though the underlying action involved personal injury claims:

> I note at the outset that questions regarding abstention and remand may be addressed sua sponte by the Bankruptcy Court. In re Southmark Storage Assoc. Ltd., 132 B.R. 231, 233 (Bankr. D. Conn. 1991) (citing Naylor v. Case & McGrath, Inc., 585 F.2d 557, 563 (2d Cir. 1978)); In re Ramada Inn-Paragould Gen. Partnership, 137 B.R. 31, 33 (Bankr. E.D. Ark. 1992). Furthermore, under recent amendments to 28 U.S.C. §§ 1334(c), 1452(b) and the Federal Bankruptcy Rules of Procedure, a Bankruptcy Court has the power to enter final orders regarding both abstention and remand issues. Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 309, 104 Stat. 5089 (1990); Fed. R. Bankr. P. 5011(b), 9027(d) (as amended in 1991). In the interests of judicial economy, it is no longer appropriate for a Bankruptcy Court to recommend findings of fact and conclusions of law to the District Court on these issues.

Scherer, 150 B.R. at 552. This court agrees with the Scherer analysis: a bankruptcy judge has the power to enter final orders regarding both abstention and remand issues relating to personal injury claims.[7]

Similarly, in In re Dreis & Krump Manufacturing Co., 1995 WL 41416 (N.D. Ill. 1995), the district court concluded that the bankruptcy judge should rule on a motion for abstention, then pending in the bankruptcy court, relating to a personal injury

---

[7] None of the State Court Lawsuits has been removed to this court, so remand is not an issue. By granting the Abstention Motion and denying the Motion To Certify, the effect will be the same. The Lack Lawsuits and the Belden Lawsuits, possibly with some exceptions, will proceed in state court.

-10-

action against the estate before the district court would grant a motion to withdraw the reference of the action. The district court noted that the debtor provided no compelling reason for the district court to "inject itself into the administration of this case" and decide the motion to abstain, "when the bankruptcy court is <u>perfectly capable and better equipped</u> to do so." <u>Id.</u> at *3 (emphasis added). <u>See also</u> <u>In re Schepps Food Stores, Inc.</u>, 169 B.R. 374, 378 n.5 (Bankr. S.D. Tex. 1994) (bankruptcy court notes that "it has historically been this judge's practice to screen for personal injury adversaries and claims objections with an eye towards ... abstention on equitable grounds" to ensure the timely administration of bankruptcy cases).

Apart from the cases just considered, there is further support for the bankruptcy judge making the abstention decision in the Federal Rules of Bankruptcy Procedure. Prior to 1991, a bankruptcy judge was required by Fed. R. Bankr. P. 5011 to make a recommendation to the district judge whether or not to abstain. Now, however, Rule 5011 simply treats an abstention motion like any other motion to be considered by a bankruptcy judge as a contested matter under Rule 9014.[8] Had the rule drafters intended

_____

[8]  One noted bankruptcy commentator has described the history of the changes to Rule 5011:

> Rule 5011(b) was amended in 1991 to completely change the treatment of motions for abstention. Previously, under the 1987 version of Rule 5011(b), motions for abstention were heard initially by the bankruptcy court with *de novo* review by the district court. Thus, motions to abstain were treated as "related proceedings" and the bankruptcy judge made a recommendation to the district judge, who, after *de novo* review, entered a final order. This process was considered necessary because decisions concerning

-11-

1  to leave the bankruptcy judge as an advisor to the district judge
2  this change would have made no sense.  Similarly, if the
3  abstention decision could not be made for personal injury claims
4  by bankruptcy judges, the rule would certainly have been drafted
5  to reflect such a curtailment of judicial authority.

6      In sum, as in <u>Dreis & Krump</u>, this court is in a better
7  position -- more "capable and better equipped" -- to analyze the
8  factors relevant to an abstention analysis, particularly when the
9  most important factor necessarily involves an examination of the
10 effect of litigating the personal injury claims on the
11 reorganization of the debtor.  Section 1334(c)(1) does not
12 prohibit this judge from deciding the Abstention Motion; neither
13 does section 157(d)(5) or any other statute or rule.[9]

14 _____

15      mandatory abstention under 28 U.S.C. § 1334(c)(2) were
        not appealable.  Only the district court could make a
16      final abstention decision.  While permissive abstention
        under 28 U.S.C. § 1334(c)(1) was appealable, the Rule
17      treated all abstention decisions under 28 U.S.C. § 1334
        as related proceedings subject to <i>de novo</i> review.  The
18      Judicial Improvements Act of 1990 amended 28 U.S.C.
        § 1334(c)(2) to allow appeals, meaning that the related
19      proceeding procedure was unnecessary.  Accordingly, in
        1991, Rule 5011(b) was amended to allow bankruptcy
20      courts to enter final orders on motions to abstain.

21      Rule 5011(b) specifically makes motions to abstain
        contested matters governed by Rule 9014 and requires
22      that service be made on the parties to the proceeding.
        Since Rule 9014 incorporates the provisions of Rule 7004
23      governing service, service must be made in the manner
        prescribed by that section.
24
   Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 5011.02 (15th ed. 2001).
25

26      [9]  PG&E cited <u>Pieklik v. Hudgins (In re Hudgins)</u>, 102 B.R.
   495, 498 (Bankr. E.D. Va. 1989) in support of its contention that
27 the bankruptcy court lacks the authority to decide an abstention
   motion involving personal injury claims.  <u>Hudgins</u> is neither
28 binding nor persuasive.  Without analysis, the <u>Hudgins</u> court

                                  -12-

## 2. Bankruptcy Local Rule 9015-2(d) and (f)

Regardless of who is better situated to make the decision, PG&E contends that pursuant to B.L.R. 9015-2(d), this judge lacks authority to decide the Abstention Motion. B.L.R. 9015-1(d) provides that

> If, upon timely motion of a party or upon the Judge's own motion, the Bankruptcy Judge determines that a claim is a personal injury tort or wrongful death claim requiring trial by a District Court Judge, the Bankruptcy Judge shall certify to the District Court that the claim is one which requires trial in the District Court under 28 U.S.C. § 157(b)(5). Upon such certification, the reference of the claim shall be automatically withdrawn, and the claim assigned to a Judge of the District Court pursuant to the Assignment Plan.

PG&E argues that this court must grant the Motion To Certify once the Claims have been identified as personal injury claims and the request to certify is made. It is true that personal injury claims must be certified to the district court when trial on those claims is <u>required</u>; trial is not required when abstention is appropriate. B.L.R. 9015-2(d) and (f). PG&E also fails to take into consideration B.L.R. 9015-2(f), which specifically provides that nothing in the other subsections of B.L.R. 9015-2 preclude entry of remand or abstention decisions. In other words, the rules of this district's bankruptcy court (on which PG&E so heavily relies) contemplate the possibility of the abstention decisions as separate and apart from the certification decision. Nor do court's own rules dictate which motion must be decided

indicated that a district court should hear any such motion to abstain, concluding that "the question of *where* the personal injury suit is to be heard is, as the debtor rightly points out, beyond the scope of this Court's authority." <u>Hudgins</u>, however, does not explain why a bankruptcy judge would be precluded from resolving such a motion.

-13-

first.  There is a logical and rational decisional process to be followed.  First, the abstention decision; second, if the abstention decision is to keep the personal injury claims in the federal system, the venue decision (viz. which district court); and third, once venue is decided, the amount of the personal injury claim.  See Citibank N.A. v. White Motor Corp. (In re White Motor Credit), 761 F.2d 270, 273 (6th Cir. 1985) (discretionary abstention applies in personal injury cases and only "where abstention does not occur will the requirement for adjudication in a district court take effect").  These three decisions involve separate considerations of separate factors.  The bankruptcy judge is better able to make the first decision; only the district judge can make the other two.  Thus, B.L.R. 9015-2(d) requires certification only where the bankruptcy judge concludes that a personal injury claim requires a trial by the district court.  To the extent the bankruptcy judge believes that abstention is appropriate, trial is not required in district court.  Consequently, the mandatory certification provisions of B.L.R. 9015-2(d) do not come into play.

The local rules are completely consistent with the policies embedded in sections 1334(c) and 157(b)(2)(B) and 157(b)(5).  The judicial officer most familiar with the main bankruptcy case and the effect related litigation has upon that case makes that judgment.  The judicial officer most able to afford tort claimants their access to a jury trial before a judicial officer whose constitutional authority is not circumscribed -- the Article III district judge -- makes the venue decision and the ultimate liquidation decision.

-14-

C.   Abstention Is Appropriate

Even though section 157(b)(4) provides that mandatory abstention is inapplicable to personal injury claims, courts nevertheless have held that such claims may be subject to discretionary abstention under section 1334(c)(1).   White Motor Credit, 761 F. 2d at 263; Coker v. Pan American Airways, Inc. (In re Pan American Corp.), 950 F.2d 839, 844-45 (2d Cir. 1991) (interpreting section 157(b)(5) to permit discretionary abstention in wrongful death action); Wilkins v. Bolar Pharmaceutical Co. (In re Pharmakinetics Laboratories, Inc.) 139 B.R. 350 (D. Md. 1992) (personal injury action may be subject to discretionary abstention based upon equitable considerations).

In Tucson Estates, 912 F.2d at 1166-68, the Ninth Circuit laid out the factors the bankruptcy court should consider in deciding whether to exercise discretionary abstention under section 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
>
> (2) the extent to which state law issues predominate over bankruptcy issues,
>
> (3) the difficulty or unsettled nature of the applicable law,
>
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,
>
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
>
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
>
> (7) the substance rather than form of an asserted 'core' proceeding,
>
> (8) the feasibility of severing state law claims

-15-

from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

      (9) the burden of [the bankruptcy court's] docket,

      (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

      (11) the existence of a right to a jury trial, and

      (12) the presence in the proceeding of nondebtor parties.

Id. at 1167 (quoting Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)). The Ninth Circuit then concluded that the bankruptcy court had abused its discretion in not abstaining because virtually every factor favored abstention. Id. at 1169. In this case, the factors enumerated in Tucson Estates weigh heavily in favor of abstention.[10]

The first factor, the impact on efficient administration of the bankruptcy estate, favors abstention. The Claimants and their prosecution of the State Court Lawsuits did not precipitate this bankruptcy; the resolution of the Claims will not affect the

---

[10] PG&E argues that different factors apply, namely that the impact of the litigation of the Chromium Claims before the district judge should be considered; its brief does not consider the Tucson Estates factors or even mention the case. This is difficult to explain in light of the binding effect of the Tucson Estates decision and the articulation by it of the factors to be considered, with particular emphasis on the effect on the bankruptcy estate. See Honigman, Miller, Schwartz & Cohn v. Weitxman (In re DeLorean Motor Co.), 155 B.R. 521, 524-25 (9th Cir. BAP 1993) (applying the Tucson Estates factors, the bankruptcy appellate panel states that the "dispositive factors ... are those involving the relationship of this proceeding to the bankruptcy case, the affect (sic) of this proceeding on the bankruptcy estate and this proceeding's placement within the federal bankruptcy jurisdictional framework"). There is no carve-out of personal injury claims from those stated factors.

-16-

reorganization. Debtor's plan provides for full payment of these
and other claims, with interest. Debtor has generally stipulated
to (or not opposed) relief from the stay so that other personal
injury claims can proceed in state court. While the Chromium
Claims are great in number and high in dollar exposure to PG&E if
sustained, they do not represent such a significant portion of
PG&E's total debt that their ultimate allowance or disallowance
will jeopardize the reorganization. As noted, this court has
reviewed the proposed plan and disclosure statement, and the
objections thereto filed to date. The presence and treatment of
the Chromium Claims has little or no impact on the overall theory
and potential implementation of that plan.

The second factor, the extent to which state law issues
predominate over bankruptcy issues, strongly favors abstention.
All of the claims involve purely state law issues; there are no
bankruptcy issues. The third consideration, the difficulty or
unsettled nature of the applicable law, probably is neutral or
supports denying abstention, but it is worth noting that there are
no difficult or complex <u>federal</u> law issues presented.

The fourth factor, the presence of a related proceeding
commenced in state court, favors abstention. Almost all of the
Chromium Claimants commenced litigation in state court prior to
the petition date. Litigation commenced after the petition date
will be treated slightly differently, as shown in Part III, <u>infra</u>.
The fifth factor, whether any basis exists for federal
jurisdiction other than the bankruptcy filing, favors abstention.
No federal jurisdictional basis other than section 1334 has been
shown.

-17-

The sixth factor, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, favors abstention. As previously stated, the Chromium Claims did not cause this bankruptcy, and are not significant matters with respect to the plan and main bankruptcy case.

The seventh and eighth factors, the substance rather than the "form" of the asserted core proceeding and the feasibility of separating state law matters from core bankruptcy matters, favors abstention. The Claims are excepted from the bankruptcy court's "core" jurisdiction by virtue of section 157(b)(2)(B). Moreover, as indicated previously, this court might possibly retain authority to allow or disallow the Claims as a matter of law, including bankruptcy law. The state court can easily and separately liquidate the Claims.

The ninth factor, the burden on the bankruptcy court's docket, might be neutral, inasmuch as the Claims would not be tried here. However, despite B.L.R. 9015-2(d), the district judge could presumably leave many pretrial matters for this court to handle (see Dreis & Krump, 1995 WL 41416 at *3), which would amount to a substantial burden for this court. It should be self-evident that sending 1,250 claims to the district court for trial would severely and detrimentally affect that court's docket.[11]

The tenth factor, the likelihood that the parties are engaged in forum shopping, is neutral. The Chromium Claimants clearly had

---

[11] As the Schepps Food court noted, the district court would have been saddled with hundreds of additional personal injury jury trials had the bankruptcy court not abstained in such actions. "The toll of such a backlog on the District Court, the litigants, and the timely administration of bankruptcy cases is not a pleasant thought." See Schepps Food, 169 B.R. at 378 n.5.

-18-

to file proofs of claims here to preserve their claims, and PG&E necessarily had to lodge its Omnibus Objections here. No illegitimate forum shopping has occurred.

The eleventh factor, the existence of a right to jury trial, is neutral, inasmuch as both the state court and the district court can provide a jury trial. Section 1411 preserves the right to jury trial on personal injury claims notwithstanding the traditional notion that filing a proof of claim constitutes the claimant's waiver of jury trial rights.[12]  See 28 U.S.C. § 1411. The twelfth factor, the presence of non-debtor parties, favors abstention. There is at least one non-debtor defendant in some of the State Court Lawsuits.

PG&E expresses its sanguine belief that many of the Chromium Claims will be disposed of, in whole or in part, via summary judgment motions it would make (and no doubt win, according to it) in federal court while such procedural tactics are not available to it in the state courts. This court has not attempted to work through the nuances of such pretrial strategy. It will take PG&E's argument at face value, and weigh this factor (not mentioned in Tucson Estates) in its factor.

On a similar note, the court is unable to speculate whether all of the Chromium Claims would be adjudicated faster or slower in the state courts or the federal courts. Some State Court Lawsuits are closer to trial than others. But by the same token, no federal court proceedings other than the Motion To Certify have even commenced. What a district judge would do about venue and

---

[12]  PG&E does not contest the right to jury trial on the Chromium Claims.

-19-

Case: 01-30923   Doc# 4186   Filed: 01/08/02   Entered: 01/09/02 13:47:00   Page 19 of 24

other pretrial matters, and when the Chromium Claims would go to
trial in any district court, is far too much of a guess for this
court to weigh in favor of either side.

After considering all of the foregoing factors, the court
concludes that abstention is appropriate here, and will grant the
Abstention Motion.[13]

D.   Relief From Stay is Appropriate

Under 11 U.S.C. § 362(a), a bankruptcy filing imposes an
automatic stay of virtually all civil litigation against the
debtor.   A bankruptcy court "shall" lift the automatic stay "for
cause."   11 U.S.C. § 362(d)(1); Tucson Estates, 912 F.2d at 1166.
"'Cause' has no clear definition and is determined on a case-by-
case basis."   Id.
"Where a bankruptcy court may abstain from deciding issues in
favor of an imminent state court trial involving the same issues,
cause may exist for lifting the stay as to the state court trial."
Id., citing Piombo Corp. v. Castlerock Props. (In re Castlerock
Props.), 781 F.2d 159, 163 (9th Cir. 1986).

Here, the court has decided that abstention is appropriate.
Trial in state court should proceed as expeditiously as possible.[14]
Under Tucson Estates cause exists for lifting the stay.

_____

[13]   If this court's decision - subject to an abuse of
discretion standard, which discretion has necessarily been abused
if it is premised on an error of law (Koon v. United States, 518
U.S. 81, 100 (1996))- is reviewed and reversed on appeal, then the
foregoing analysis should be considered this court's
recommendation to the district judge to abstain from considering
the Chromium Claims and the Omnibus Objections.

[14]   The trial of twenty test plaintiffs in one lawsuit was
scheduled to commence on July 2, 2001, but was stayed by the April
6, 2001 filing.

-20-

## E. The Motion to Certify

It would make no sense to permit the State Court Lawsuits to proceed to judgment and at the same time grant the Motion To Certify and send the Omnibus Objections to the district court. The Chromium Claims should be decided once and for all in one forum, subject only to surviving bankruptcy related issues. For the court to certify these matters to the district court while abstaining and also granting relief from stay would create chaos and invite unnecessary expense, delay and confusion, not to mention the risk of inconsistent results. For the reasons the Abstention Motion and the Stay Motion will be granted, the Motion to Certify will be denied.

## III. CONCLUSION

The court will enter several separate orders. First, counsel for the Claimants should prepare three orders: granting the Abstention Motion; granting the Stay Motion; and denying the Motion to Certify, each with respect to those Chromium Claimants (1) who were plaintiffs in the Belden Lawsuits and the Lack Lawsuits prior to the petition date (April 6, 2001), and (2) who filed proofs of claim on or before the claims bar date of September 5, 2001. Counsel should append to this order an alphabetized list of those Chromium Claimants who satisfy both criteria.

Second, counsel for PG&E should prepare an order granting the Motion to Certify as to any Chromium Claimants who are plaintiffs in the State Court Lawsuits not covered by the orders called for in the preceding paragraph or who were not plaintiffs in a state

-21-

court action prior to the petition date. PG&E should append an alphabetized list identifying any such Chromium Claimants. The order should indicate that certification shall be stayed for sixty days, during which time the Claimants may either file motions to vacate or annul the automatic stay and to abstain, or obtain stipulations from PG&E for such relief. If a party fails to obtain an appropriate order on such a motion or stipulation within sixty days of entry of the order, his or her Claim will be certified to the district court.

Next, counsel for PG&E should prepare two separate orders that deny the Abstention Motion and the Stay Motion, respectively, as to any parties for whom Mr. Lack or Mr. Belden filed the Stay Motion and the Abstention Motion, but who did not file a proof of claim on or before the claims bar date of September 5, 2001. PG&E should append an alphabetized list identifying any such parties.

When submitting their respective orders, counsel should comply with B.L.R. 9021-1 and 9022-1.

Dated: January 8, 2001

_____
Dennis Montali
United States Bankruptcy Judge

-22-

1  I, the undersigned, a regularly appointed and qualified clerk in the office of the Bankruptcy Judge of the United States
2  Bankruptcy Court for the Northern District of California, at San Francisco, hereby certify:

3
That I, in the performance of my duties as such clerk,
4  served a copy of the foregoing document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter
5  listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
6  located in the Clerk's Office, or by facsimile to the facsimile numbers listed below, at San Francisco, California, on the date
7  shown below.

8
Dated: January 8, 2002
9

10                                          Dorothy A. Timo

11  James L. Lopes, Esq. (via fax-415-217-5910)
    Howard, Rice, Nemerovski, Canady, Falk & Rabkin
12  Three Embarcadero Ctr., 7th Fl.
    San Francisco, CA 94111-4065
13
    Robert Jay Moore, Esq. (via fax-213-629-5063)
14  Paul S. Aronzon, Esq.
    Milbank, Tweed, Hadley & McCoy LLP
15  601 So. Figueroa St.
    Los Angeles, CA 90017
16
    Stephen Johnson, Esq. (via fax-415-705-3379)
17  Office of the United States Trustee
    250 Montgomery St., Ste. 1000
18  San Francisco, CA 94104

19  T. Scott Belden, Esq. (via fax-661-326-0418)
    Klein, DeNatale, et al.
20  P.O. Box 11172
    Bakersfield, CA 93389-1172
21
    Thommas J. Anton, Esq. (via fax-661-327-7051)
22  Anton & Associates
    1605 "G" St.
23  P.O. Box 2127
    Bakersfield, CA 93301-2127
24
    Michael S. Lurey, Esq. (via fax-213-891-8763)
25  Latham & Watkins
    633 West Fifth St., Ste. 4000
26  Los Angeles, CA 90071-2007

```
 1   Walter J. Lack, Esq. (via fax-310-552-9434)
     Gary A. Praglin, Esq.
 2   Engstrom, Lipscomb & Lack
     10100 Santa Monica Blvd., 16th Fl.
 3   Los Angeles, CA 90067-4107

 4   Michael P. Dolan, Esq.
     Law Offices of Michael P. Dolan
 5   1315 "L" St.
     Bankersfield, CA 93301
 6
     Thomas V. Girardi, Esq.
 7   Girardi & Keese
     1126 Wilshire Blvd.
 8   Los Angeles, CA 90017

 9   Edward L. Masry, Esq.
     Law Offices of Masry & Vititoe
10   5705 Crosa Dr., 2nd Fl.
     Westlake Village, CA 91362
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```