GARY M. COHEN, SBN 117215
AROCLES AGUILAR, SBN 94753
MICHAEL M. EDSON, SBN 177858
CALIFORNIA PUBLIC UTILITIES COMMISSION
505 Van Ness Avenue
San Francisco, California 94102
Telephone: (415) 703-2015
Facsimile: (415) 703-2262

ALAN W. KORNBERG
BRIAN S. HERMANN
SUSAN E. WELBER
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Attorneys for California Public Utilities Commission

**FILED**

JAN - 8 2002

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>  a California corporation,<br><br>                Debtor.<br><br><br><br><br>Federal I.D. No. 94-0742640 | Case No. 01-30923 DM<br><br>Chapter 11 Case<br><br>**DECLARATION OF GARY M. COHEN IN SUPPORT OF OBJECTION TO PACIFIC GAS & ELECTRIC COMPANY'S SECOND MOTION FOR ORDER FURTHER EXTENDING EXCLUSIVITY PERIOD FOR FILING PLAN OF REORGANIZATION TO PERMIT THE CALIFORNIA PUBLIC UTILITIES COMMISSION TO FILE AN ALTERNATE PLAN OF REORGANIZATION**<br><br>Date: January 16, 2002<br>Time: 9:30 a.m.<br>Place: 235 Pine Street, 22nd Floor,<br>San Francisco, California<br>Judge: Hon. Dennis Montali |

GARY M. COHEN declares as follows under penalty of perjury:

NY6:117153.1

1. I am the General Counsel of the California Public Utilities Commission (the "Commission"), a position I have held since March 2001. As General Counsel I am directed by statute to represent and appear for the State of California, the Commission and the Commission staff in all actions and proceedings involving any question under California's Public Utilities Code or under any order or act of the Commission. In addition, I am authorized to act for and on behalf of the Commission in the chapter 11 case of Pacific Gas & Electric Company ("PG&E").

2. The CPUC is an independent, Constitutional agency of the State of California charged with, among other things, regulating California's public utilities, including PG&E.

3. I submit this Declaration in support of the Commission's objection to PG&E's second motion seeking a further extension of its exclusive period to file a plan of reorganization, dated January 8, 2002 (the "Objection").

4. I have personal knowledge of the facts stated herein except as to matters stated upon information and belief, and as to those matters, I believe them to be true. If called upon to testify, I could and would testify competently to the facts set forth herein.

## Background

5. On or about September 20, 2001, PG&E, together with its parent company, PG&E Corporation (the "Parent"), as co-proponent, filed a Plan of Reorganization under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company (the "Plan") together with a proposed disclosure statement (the "Disclosure Statement"). Pursuant to this Court's Order dated December 5, 2001, on December 19, 2001 PG&E filed an amended Disclosure Statement and Plan. I have reviewed copies of both the original and amended Plan and Disclosure Statement, and I am generally familiar with their contents.

6. On November 27, 2001, the Commission filed an objection to PG&E's Disclosure Statement (the "Disclosure Statement Objection") cataloguing numerous infirmities with PG&E's Plan and Disclosure Statement. On December 18, 2001, I attended a "meet and confer" with PG&E's and the Parent's legal representatives to discuss the Commission's Disclosure Statement Objection. I am advised by counsel, and therefore I believe, that, as of the date hereof,

- 2 -

Case: 01-30923   Doc# 4189   Filed: 01/08/02   Entered: 01/09/02 14:16:00   Page 2 of 5

many of the objections contained in the Commission's Disclosure Statement Objection remain unaddressed by PG&E's amended Disclosure Statement, although I understand from counsel that a further "meet and confer" with the Commission is scheduled to occur on January 9, 2002.

7. On or about December 19, 2001, PG&E filed its second motion seeking to further extend its exclusive period to file and solicit acceptances to a plan of reorganization from February 4, 2001 (the current plan exclusivity deadline) through June 30, 2001 (the "Second Extension Motion"). PG&E's Sec. Ext. Mot. at 3. The Commission filed its Objection on January 8, 2001. I have reviewed copies of both PG&E's Second Extension Motion and the Commission's Objection and I am generally familiar with the contents of each.

## Lack of Negotiations Between The Commission and PG&E

8. PG&E has never attempted to negotiate the terms of either its original or amended Plan (or any alternatives) with me, or, to the best of my knowledge, and upon information and belief, any other representatives of the Commission. I was not nor, to the best of my knowledge, and upon information and belief, was any other representative of the Commission, given any meaningful notice of PG&E's filing of its Plan. Upon information and belief, what minimal contact there has been between the Commission and PG&E regarding PG&E's Plan has been limited to the following: (i) a phone call I received from PG&E's General Counsel the morning of PG&E's Plan filing informing me of same; (ii) a meeting which I attended on November 30, 2001, in which PG&E outlined its FERC and NRC filings in connection with the Plan and answered questions with respect thereto; and (iii) the Court-ordered "meet and confer" I attended on December 18, 2001 to discuss the Commission's Disclosure Statement Objection.

## The Commission's Alternate Plan

9. The Commission has worked diligently with its advisors to consider its own plan alternatives. As a result of these efforts, the Commission has agreed upon the principal terms of an alternative plan of reorganization (the "Alternate Plan"), certain of which are summarized below:

- 3 -

- PG&E's short-term borrowings incurred during the energy crisis would be paid in full in cash (including accrued and unpaid interest through the effective date) by the first quarter of 2003 through a combination of (1) PG&E's cash on hand (approximately $4.9 billion as of November 30, 2001 according to PG&E's most recent 8-K filing with the Securities and Exchange Commission), and (2) PG&E's residual revenues after deducting authorized revenue requirements from billed revenues ("residual revenues");

- all of PG&E's remaining indebtedness would be reinstated or refinanced;

- PG&E's creditworthiness and financial viability would be restored – the Commission would adopt a post-bankruptcy rate structure consistent with state law that would provide PG&E with an opportunity to earn a reasonable return that would allow it to maintain an investment-grade credit rating;

- potentially valuable claims against the Parent (which under PG&E's Plan are to be released), including, among others, claims that the Parent has violated the "first priority" condition imposed upon the Parent by a Commission order approving PG&E's holding company structure and claims that PG&E declared and paid dividends to its Parent while it was insolvent, and other assets such as PG&E's refund claims pending before FERC, would be preserved and transferred to a litigation trust or similar entity and prosecuted for the benefit of PG&E's ratepayers;

- costly and time-consuming preemption litigation would be avoided;

- PG&E would emerge promptly from chapter 11;

- the Commission and State of California would continue to regulate PG&E's operations;

- rates would not increase and may be reduced in 2003 (or earlier);

- PG&E's integrated operations would not be disaggregated;

- utility assets would not be diverted to pay the Parent's expenses; and

- costly litigation at the FERC, NRC and SEC would be avoided.

10. Upon information and belief, based upon information provided to me by Commission staff, the Alternate Plan is made possible primarily by the surplus in retail electric rates over wholesale electric costs that PG&E has benefitted from since around at least June 2001 and should continue to exist. Upon further information and belief, also provided to me by Commission staff, this surplus has allowed PG&E to significantly increase its cash on hand during the pendency of its chapter 11 case and should, together with its cash on hand, provide it with a sufficient basis upon which to successfully emerge from chapter 11.

11. I am informed by counsel that if this Court denies PG&E's Second Extension Motion and allows the Commission to file and solicit acceptances to its Alternate Plan, the

Commission would be prepared to promptly file the Alternate Plan and a disclosure statement in respect thereof.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: San Francisco, California
January 8, 2002

_____
Gary M. Cohen

Case: 01-30923   Doc# 4189   Filed: 01/08/02   Entered: 01/09/02 14:16:00   Page 5 of 5
CASE No. 01-30923 DM