FILED

02 MAR 18 PM 1:55

U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
SAN FRANCISCO, CA.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>a California corporation,<br><br>Debtor. | ) Bankruptcy Case<br>) No. 01-30923DM<br>)<br>) Chapter 11<br>)<br>)<br>) |

ORDER AND JUDGMENT DISAPPROVING
DISCLOSURE STATEMENT; RULE 54(b) CERTIFICATION

I.  DISAPPROVAL OF DISCLOSURE STATEMENT

For the reasons stated in the court's Memorandum Decision Regarding Preemption and Sovereign Immunity filed on February 7, 2002 ("Memorandum Decision"), the Plan (as defined in the Memorandum Decision) could not be confirmed as a matter of law. Therefore the Disclosure Statement (also as defined in the Memorandum Decision) is DISAPPROVED.

II. REQUEST FOR FINAL JUDGMENT

This Order and Judgment Disapproving Disclosure Statement ("Order") is issued pursuant to Rules 54(b) and 58 of the Federal Rules of Civil Procedure and Rules 7054, 9014 and 9021 of the Federal Rules of Bankruptcy Procedure (the "Rules"), upon the Request For Final Judgment and/or Order Re Express Preemption ("Request") filed on February 21, 2002, by Debtor, Pacific Gas and

Electric Company ("PG&E", and with its corporate parent, PG&E Corporation, "Proponents") for a separate and final order regarding the matter of express preemption addressed by the Memorandum Decision, which sustained the objections of the State of California ("State"), the California Public Utilities Commission ("CPUC"), and various other parties (collectively, "Objectors") to the adequacy of the Disclosure Statement.

This Order is based upon rejection of Proponents' express preemption theory, as explained in the Memorandum Decision, and is not intended to and does not address or finally adjudicate any other issues or disputes among Proponents and Objectors, including but not limited to the implied preemption and sovereign immunity disputes discussed in the Memorandum Decision. The latter issues (and numerous other anticipated objections to confirmation based on matters unrelated to preemption) remain subject to further litigation, and the court reserves these issues for final rulings in connection with the plan confirmation process. For purposes of Rule 54(b), these are other claims within the concept of multiplicity of claims, or theories, in the Plan and Disclosure Statement and any future versions of them.

After consideration of the Request, the oral arguments presented by counsel for the parties at a hearing on February 27, 2002, and the memorandum filed by CPUC and the City and County of San Francisco ("CCSF")(and joined by State) on March 14, 2002, the court concludes that it is appropriate to enter the Order as a final judgment and to make the necessary determinations under Rule 54(b). The fact that there are apparently no reported cases dealing with the particular type of contested matter presented on

-2-

Case: 01-30923   Doc# 5424   Filed: 03/18/02   Entered: 03/22/02 10:39:00   Page 2 of 10

an objection to approval of a disclosure statement, and whether there can be a discrete and separate "claim" in that context, does not justify denying the Request. The civil litigation and bankruptcy adversary proceeding cases cited by CPUC and CCSF generally involve traditional claims for relief based upon historical facts presented under varying legal theories. Here, instead, is an attempt to reorganize PG&E under Chapter 11 of the Bankruptcy Code premised upon a business proposition, disaggregation. An essential, if not indispensable feature of that strategy, is the overriding of numerous state laws and regulations by one powerful device, 11 U.S.C. § 1123(a). This theory - now rejected by the court - is as much a claim for relief in the context of a proposed Chapter 11 reorganization plan as any other "cause of action" in traditional litigation seeking relief. Further, although the denial of approval of a disclosure statement is interlocutory (See Memorandum Decision, pp. 46-47), it is very much an order that could be appealed under 28 U.S.C. § 158(a)(3) or (b)(1). Thus, the court rejects CPUC's and CCSF's argument that the order is not a "judgment" within the meaning of the Rules.[1] The court has no doubt that the Order is a decision on a cognizable "claim" asserted by Proponents that the Plan, dependent upon express preemption, is confirmable. Moreover, that claim will not be revisited: it is the law of this case and the court's decision on that claim is final.

---

[1] Rule 9001(7) provides that "'Judgment' means any appealable order," and Rule 9002 provides that "Judgment" in the Federal Rules of Civil Procedure "includes any order appealable to an appellate court."

Case: 01-30923   Doc# 5424   Filed: 03/18/02   Entered: 03/22/02 10:39:00   Page 3 of 10

III. CERTIFICATION DETERMINATIONS[2]

The United States Supreme Court, in <u>Curtis-Wright Corporation v. General Electric Company</u>, 446 U.S. 1 (1980) and the Ninth Circuit, in <u>Morrison-Knudsen Company, Inc. v. Archer</u>, 655 F.2d 962 (9th Cir. 1981), have set forth the particulars to be addressed by the trial court in making the Rule 54(b) certification. The court addresses the particulars:

A. "A district court must first determine that it is dealing with a 'final judgment.'" <u>Curtis-Wright</u>, 446 U.S. at 7. The court determines that it is doing exactly that. <u>See</u> discussion in II, supra.

B. The "judgment" must be a "decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" <u>Id.</u>, quoting <u>Sears, Roebuck & Co. v. Mackey</u>, 351 U.S. 427, 436 (1956). The court determines that the Order is exactly that. <u>See</u> discussion in II, supra.

C. Once the foregoing factors are established, the court must answer the inquiry in Rule 54(b) whether there is any just reason for delay. <u>Curtis-Wright</u>, 446 U.S. at 8. That requires dealing with the following:

First, the issues and facts involved in the court's Memorandum Decision regarding express preemption are separable from those involved for implied preemption and other confirmation and disclosure issues. The risk of overlap is minimal, given the sweeping reach of Proponents' proposed preemption in the Plan.

---

[2] The following constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-4-

Next, the nature of the Proponents' express preemption claims is such that it is unlikely an appellate court would have to decide the same issue more than once, assuming there are subsequent appeals regarding any part of the disclosure and confirmation process. The court has ruled on the issue of express preemption. Unless reversed on appeal, the law of the case has been established: there is no express preemption under 11 U.S.C. § 1123(a) of all state laws that conflict with the Plan or the Debtor's implementation of it if confirmed.

Related to the concerns about duplication of appeals is the problem of whether the issues on appeal would be mooted by subsequent developments in the case. Morrison-Knudsen, 655 F.2d at 965, quoting Curtis-Wright, 446 U.S. at 5-6. The court recognizes the possibility that pending an appeal of the express preemption issue, an alternative plan might be confirmed.[3] This is a distinct possibility, and is a factor the court weighs against making the certification. But Curtis-Wright makes clear that the presence of such a factor does not make certification improper. Rather, it requires the court to go further and find sufficient reason for certification. Curtis-Wright, 446 U.S. at 8, fn. 2.

Here there are several compelling reasons to do so. This is a Chapter 11 case of enormous significance to thousands of

---

[3] The court takes judicial notice of Proponents' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company, filed on March 7, 2002.

-5-

creditors owed billions of dollars.[4] It is clearly one of the largest bankruptcies in United States history, and definitely the largest involving a public utility. An attempt by a utility to free itself from state regulation to the extent contemplated in the Plan is virtually without precedent. Further, PG&E expects to pay creditors in full with interest, but already this case is nearly a year old and further delay should be avoided. Creditors have a real economic interest in a speedy resolution of the case. If a court on appeal believes that express preemption is available here, the rule of law should be settled forthwith.

Next, as proponents point out, the court's ruling on express preemption raises the evidentiary burden they must sustain to obtain plan confirmation premised upon implied preemption. If this court's decision is going to be reversed, then PG&E and its creditors should not suffer the consequences and delay (and potentially staggering administrative expenses) of having to attempt to confirm its alternative plan.

In addition, bankruptcy procedure allows for appellate review by the district court or the bankruptcy appellate panel ("BAP"), and that might give this court and the parties the benefit of at least one level of appellate review far more quickly than in non-bankruptcy cases. That speed means mootness is less likely.[5]

---

[4] Not to mention millions of ratepayers/customers of the state's largest utility.

[5] Appeals to the BAP are normally disposed of within a few months and already in this case one appeal to the district court has been completed promptly. The court does not address whether and in what circumstances the Ninth Circuit could or would review any decision by the BAP or district court.

-6-

D. There is one last consideration favoring certification, not found in any other case that has been cited or located. That has to do with the standard a court on appeal is to apply in considering whether to review the Order on the merits. In Morrison-Knudsen the court cautioned that sometimes a particular appeal "will materially advance disposition of the claims before the trial court, but in such cases the appropriate procedure for the district court is to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b)." Morrison-Knudsen, 655 F.2d at 966. In that situation, however, the circuit court can make its own determination whether to accept the appeal, considering the likelihood or probability of having to issue multiple opinions on the same or related issues of law. Here, the bankruptcy court does not have the § 1292(b) option available to it. But the Order is interlocutory, and the district court or the BAP will decide to review an interlocutory order on appeal only after considering: the likelihood of avoiding wasteful litigation and expense; whether the court is presented with a meritorious issue of a controlling question of law; and whether considering the appeal materially advances the ultimate termination of the litigation. Belli v. Temkin (In re Belli) 268 B.R. 851, 858 (9th Cir. BAP 2001). The Rule 54(b) certification considerations (discussed, supra) are different, and to this court, far more meaningful in the context of the present controversy. Put differently, under the standards for interlocutory review proponents could be caught in a procedural limbo: at present and as long as another plan can be proposed their appeal might not meet the standards for interlocutory review, but after another plan is confirmed their

-7-

Case: 01-30923  Doc# 5424  Filed: 03/18/02  Entered: 03/22/02 10:39:00  Page 7 of 10

appeal presumably would be moot. For these reasons as well, there is even greater justification for making the Rule 54(b) certification than for denying it.

IV. CONCLUSION

This Order, although interlocutory as decided by the authorities cited in the Memorandum Decision, is final for purposes of certification under Rule 54(b). The court <u>determines</u> that there is no just reason for delay within the meaning of Rule 54(b). The clerk of the court is <u>directed</u> to enter this Order as a final judgment pursuant to Rule 54(b).

Dated: March 18, 2002

_____
Dennis Montali
United States Bankruptcy Judge

I, the undersigned, a regularly appointed and qualified clerk in the office of the Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of California, at San Francisco, hereby certify:

That I, in the performance of my duties as such clerk, served a copy of the foregoing document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's Office, or by facsimile to the facsimile numbers listed below, at San Francisco, California, on the date shown below.

Dated: March 18, 2002

Dorothy A. Timo

Gary M. Cohen, Esq.
California Public Utilities Commission
505 Van Ness Ave.
San Francisco, CA 94102

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Ctr., 7th Fl.
San Francisco, CA 94111-4065

Robert Jay Moore, Esq.
Milbank, Tweed, Hadley & McCloy
601 S. Figueroa St., 30th Fl.
Los Angeles, CA 90017-5735

Paul J. Pascuzzi, Esq.
Felderstein, Fitzgerald, Willoughby & Pascuzzi LLP
400 Capital Mall, Ste. 1450
Sacramento, CA 95814

D. Cameron Baker,
Deputy City Attorney
Office of the City Attorney
City Hall, Rm. 234
1 Dr. Carlton B. Goodlett Pl.
San Francisco, CA 94102-4682

United States Trustee
250 Montgomery St., Ste. 1000
San Francisco, CA 94104

| | |
|---|---|
| 1 | Walter Reiman, Esq. |
| | Paul, Weiss, Rifkind, Wharton & Garrison |
| 2 | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |