

| | |
|---|---|
| 1 | STROOCK & STROOCK & LAVAN LLP |
| | ALAN Z. YUDKOWSKY (State Bar No. 194994) |
| 2 | PETER F. JAZAYERI (State Bar No. 199626) |
| | AMY H. PERLIS (State Bar No. 208488) |
| 3 | 2029 Century Park East, Suite 1800 |
| | Los Angeles, California 90067-3086 |
| 4 | Telephone: (310) 556-5800 |
| | Facsimile: (310) 556-5959 |

FILED
MAR 2 2 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Attorneys for Party in Interest
SEMPRA ENERGY TRADING CORP.

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

In re

PACIFIC GAS AND ELECTRIC COMPANY,
a California corporation,

　　　　Debtor.

Federal I.D. No. 94-0742640

CASE NO. SF 01-30923 DM

CHAPTER 11

**Hearing**
Date:　March 27, 2001
Time:　9:30 a.m.
Place:　235 Pine Street, 22nd Floor
　　　　San Francisco, California

**OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES; MEMORANDUM OF POINTS AND AUTHORITIES**
OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES

Case: 01-30923　Doc# 5430　Filed: 03/22/02　Entered: 03/22/02 14:08:00　Page 1 of 12

50171044v3

Sempra Energy Trading Corp. ("SET") submits the following as its Opposition to PG&E's Motion for Order Determining Procedures for Estimating Certain Claims for Plan Feasibility Purposes ("Motion").

## I. INTRODUCTION

Debtor's Motion should not be granted because it is unpermitted by law, and is against the best interest of creditors. Under the guise of furthering an efficient confirmation process, Debtor proposes to estimate Class 6 (Generator/ISO/PX) Claims for the allegedly limited purpose of assessing plan feasibility. Yet, within a week of filing the instant Motion, the Debtor filed its Second Amended Disclosure Statement, revealing that this estimation procedure will be used to determine not only feasibility, but voting rights and the amounts reserved for disputed claims. (Second Amended Disclosure Statement, Redline Draft, p. 218, fn. 59). Thus, the Motion is nothing more than an end-run around the Bankruptcy Code's objection process since it simply is illogical for the Debtor to seek to estimate claims for the "sole" purpose of feasibility when such claims may be determined at a significantly higher amount for purposes of the disputed claims reserve.

Significantly, the Debtor also concedes that "there is no particular Bankruptcy Code provision or rule that directly addresses the bankruptcy court's power to estimate claims for feasibility purposes." This is because Class 6 claims are neither contingent nor unliquidated, making them incapable of estimation under 11 U.S.C. §502(c), or under any other creative hybrid of case and statutory law. By proposing to estimate claims whose liability is fixed and certain in the name of feasibility, the Debtor is essentially jury-rigging the amount of the disputed claims reserve and any allowable claims in order to proceed with its "visionary scheme" that this is a "full pay case." Simply put, if PG&E cannot fund the disputed claims reserve in the maximum amount of those claims and establish that it has the ability to pay the full amount of such claims, any findings by this Court regarding estimation and feasibility are meaningless.

Thus, as set forth in detail below, the instant Motion should be denied because it: (1) does not achieve the goal of feasibility; (2) is unsupported by case law; and (3) is factually inaccurate.

- 2 -

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES

Case: 01-30923    Doc# 5430    Filed: 03/22/02    Entered: 03/22/02 14:08:00    Page 2 of 12

50171044v3

## II. FACTS

On September 20, 2001, the Debtor filed its Disclosure Statement and Proposed Plan of Reorganization (the "Plan"), promising full-payment to creditors, while at the same time granting a complicated asset transfer to equity holders. Specifically, the Debtor stated that all Class 6 Claims were to be considered disputed, and that it intended to object to such claims. On November 27, 2001, SET filed its Objection, arguing that the Disclosure Statement lacked information regarding the treatment of disputed claims, including an explanation of what unsecured creditors would receive under the Plan, when the Debtor would object to claims, when creditors would be paid under the Plan, and what contingencies existed prior to distribution. In addition, SET objected because there were no provisions for a disputed claims reserve.

On December 19, 2001, the Debtor filed its Amended Disclosure Statement and Amended Plan, again reiterating that this would be a "full pay case." This time, however, the Debtor unveiled the existence of a disputed claims reserve. But, instead of simply providing for a full reserve based on the aggregate amount of all disputed claims, the Debtor referenced an ambiguous estimation process. When this estimation process is viewed in the light of day, it is evident that the Debtor's definition of "full pay case" is contingent upon discounting all disputed claims.

On January 10, 2002, SET objected to the Amended Disclosure Statement on the grounds that it lacked adequate information regarding the procedure and timing of the estimation and objection process,[1] did not disclose how the disputed claims reserve would be funded, and whether the Plan would be feasible if the Debtor was required to reserve the full amount of disputed claims — a point which this Court raised during the January 14, 2002 Disclosure Statement hearing:

> So suppose I estimate on your number, and then two years later, proved to be wrong, and somebody in class 6 or 7 ends up 20, or 30 or 40 cents short on the dollar. How is that the right result?

---

[1] Apparently, as a warning, the Second Amended Disclosure Statement stated that the Debtor intended to object to claims of $15 million or more by February 28, 2002. To date, the Debtor has not objected to SET's Class 6 claim, which is in excess of $98 million.

- 3 -

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER
DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES

See Declaration of Peter Jazayeri ¶ 2, Ex. A. Further, this Court noted that the only way to avoid such unfairness is to reserve the full amount of disputed claims: "[T]he easy way is you estimate on the maximum." Id.

Despite this, the Debtor ignored the Court's understandable concerns and filed the Motion on March 1, 2002. Lacking any controlling case law, Debtor's Motion allegedly seeks to estimate Class 6 claims solely for the limited purpose of feasibility. In reality, the Motion is the next step in Debtor's legerdemain of a "full-pay case." This is because the Motion proposes to estimate the claims of Class 6 creditors whose liability is fixed, certain and known; it seeks to replace a not-yet-reached decision by the Federal Energy Regulatory Commission ("FERC") with a study prepared by its own consultant designed to reduce Class 6 claims by an additional $400 million; and, it endeavors to confuse this Court into believing that Class 6 claims are complex and incalculable. In short, the Debtor's motion attempts to sidestep the process contemplated by the Bankruptcy Code, and replace it with an unprecedented and byzantine estimation procedure designed to improperly reduce claims and bring Class 6 claimants to their knees.

Indeed, the Debtor confirmed this in its March 7, 2002 Second Amended Disclosure Statement and Plan by revealing that the estimation of claims would be to determine voting rights, establish reserves for disputed claims, and establish feasibility. Second Amended Disclosure Statement, Redline Draft, p. 218, fn. 59. Therefore, as set forth below, the Debtor's Motion should be denied.

### III. ARGUMENT

#### A. THE DEBTOR'S MOTION DOES NOT FURTHER THE GOAL OF FEASIBILITY.

A central tenet of the Debtor's motion is that estimation is necessary to determine feasibility under Section 1129(a)(11) and ensure an efficient path towards confirmation. See Motion at 5-8. In reality, the only way to adequately ensure the feasibility of the plan is to estimate the disputed claims at their maximum potential amount. Otherwise, the Court risks confirming a "visionary scheme which promises creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Pizza of Hawaii Inc. v. Shakey's Inc. (In re Pizza of

- 4 -

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES

Case: 01-30923    Doc# 5430    Filed: 03/22/02    Entered: 03/22/02 14:08:00    Page 4 of 12

Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985). See also In re 8315 Fourth Ave. Corp., 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994) (explaining that the purpose of feasibility is to avoid "visionary schemes...where the financial realities do not support the proposed plan's projections, or where the proposed assumptions are unreasonable"); In re Lakeside Global II, Ltd., 116 B.R. 499, 507 (Bankr. S.D. Tex. 1989) (the purpose of the feasibility requirement is to prevent confirmation of "visionary schemes" and to avoid hopeless situations).

This is precisely what the Court in In re Pizza of Hawaii, a case affirmatively cited by the Debtor throughout its Motion as "controlling Ninth Circuit Authority," warned against. Specifically, in that case the Court would not allow confirmation of debtor's plan without estimating a potential large judgment pending in a civil case. Because the amount of the judgment was not known and fixed, the Court based its estimate on the worst-case scenario and assumed that the claimant would recover a large judgment from the Debtor. Id. at 1382.

Here, PG&E proposes to do just the opposite by determining feasibility based on its "best-case scenario,"—that is that Class 6 claims must be reduced because its consultant has determined that they are subject to a $400 million FERC refund. It is simply illogical to estimate the claims at this lower amount, for if PG&E's estimates turn out to be wrong, the plan will not be feasible. Since the only way the Debtor can meet its burden of establishing feasibility is to show that it can pay the full amount of claims, the most logical and efficient approach is to reserve based on the maximum amount of disputed claims. See In re Belluci, 119 B.R. 763, 768 (Bankr. E.D. Cal. 1990) (where the Debtor contended that its assets were ample to fund a "full payment" plan, the Court rejected Debtor's argument that it could estimate claims and ordered it to place its assets in neutral hands until final amounts were resolved); In re Wheeling-Pittsburgh Steel Corp., 123 B.R. 18, 19 (Bankr. W.D. Pa. 1990) (explaining that a feasibility determination must be based on the "probable maximum magnitude of the claim and the effect of future allowance thereof" and noting "the prejudicial effect of setting aside an escrow fund established on far less than a full trial").

- 5 -

**OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES**

Case: 01-30923    Doc# 5430    Filed: 03/22/02    Entered: 03/22/02 14:08:00    Page 5 of 12

## B. THE MOTION HAS NO BASIS IN LAW AS SET'S CLASS 6 CLAIM IS NEITHER CONTINGENT, NOR UNLIQUIDATED.

The Debtor's Motion lacks any controlling authority for estimating SET's Class 6 Claim. Instead, the best the Debtor can muster is to attempt to shoehorn SET's claim within Section 502(c) of the Bankruptcy Code, which governs estimation for purposes of allowance. The relevant portion of Section 502(c) states: "There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." Here, SET's Class 6 claim is neither contingent nor unliquidated and therefore not capable of estimation pursuant to 11 U.S.C. §502. See Matter of Continental Airlines, 981 F.2d 1450, 1461 (5th Cir. 1993) (estimation is "simply inappropriate in cases where a claim is neither contingent nor unliquidated").

### 1. SET's Claim is Not Contingent, as All Events Giving Rise to Liability Occurred Pre-Petition and, Therefore, It Cannot Be Estimated.

Although the Bankruptcy Code does not define the terms contingent or unliquidated, it is generally settled that "if all events giving rise to liability occurred prior to the filing of the bankruptcy petition," the claim is not contingent. In re Nicholes, 184 B.R. 82, 88 (9th Cir. BAP 1995); In re Keenan, 201 B.R. 263, 264 (Bankr.S.D.Cal. 1996). Here, all the events which could give rise to liability for a Class 6 claim occurred prior to the filing of the bankruptcy petition—SET sold energy through the ISO and PX markets, and PG&E purchased SET's energy via these markets[2]. Under the ISO and PX tariffs, all that remains is for PG&E to pay for what it took. See In re Keenan, 201 B.R. at 265 (finding that a claim based on a breach of contract was not contingent and capable of estimation under Section 502(c) because all of the events upon which

---

[2] While SET submitted a Proof of Claim characterizing portions of its claim as contingent, the events giving rise to SET's Class 6 claim occurred prepetition. Portions of SET's claim were characterized as contingent, because liability had not yet been fixed at the time of the filing of the Proof of Claim. At that point, SET had lifted the bankruptcy stay and was involved in litigation with PG&E to determine certain set-off rights under pre-petition contracts. However, the events giving rise to liability under these contracts occurred prior to PG&E's April 6th bankruptcy petition. It is well settled that if all events upon which liability could be imposed occurred pre-petition, then the claim is not contingent even though liability has yet to be fixed. In re Keenan, 201 B.R. at 265; In re Nicholes, 184 B.R. at 89 at n.7. Even so, liability has now been fixed since that litigation has been settled, and an Order approving the Settlement was entered by this court on December 26, 2001.

- 6 -

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER
DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES

Case: 01-30923    Doc# 5430    Filed: 03/22/02    Entered: 03/22/02 14:08:00    Page 6 of 12
50171044v3

liability could be imposed occurred pre-petition). Therefore, PG&E cannot establish that SET's Class 6 claim is contingent, as all events giving rise to liability occurred pre-petition.

### 2. PG&E Cannot Claim that SET's Class 6 Claim is Contingent as a Result of the Pending FERC Proceedings.

PG&E cannot point to the current refund proceeding pending before the FERC to argue that the claim is contingent. Indeed, under the Filed Rate Doctrine, PG&E has a legal obligation to pay the rate charged by SET on file with the FERC, and then subsequently make an application to FERC to determine that the rate it was paid was "unjust and unreasonable" under the Federal Power Act. See 16 U.S.C. §§824d(a), (c) (setting forth the Filed Rate Doctrine and the requirement of just and reasonable rates); Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 576-577 (1981) (explaining that the filed rate is the legal rate, and must be charged by the seller and paid by the buyer of wholesale electric power); Miss. Power & Light Co. v. Miss., 487 U.S. 354 (1988) (explaining that FERC has exclusive authority to determine the reasonableness of wholesale electricity rates); Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 251 (1951) (denying a utility recovery where it claimed the rates it paid were the product of fraud and over-reaching and holding that "the reasonable rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one"). Moreover, FERC has definitively ruled that rates bid or negotiated under a general market-based rate tariff, like the rates charged by SET pre-petition, are binding filed rates for purposes of the Filed Rate Doctrine. San Diego Gas & Electric Co. v. Sellers of Energy, 96 FERC ¶ 61,120 at p. 61,506 (2001). Thus, all events establishing PG&E's liability to pay for energy purchases occurred pre-petition. See Id. at fn. 31.

### 3. Since SET's Claim is Readily Calculable, it is Liquidated and Therefore Cannot be Estimated.

In addition, SET's claim is liquidated and therefore cannot be estimated pursuant to Section 502(c) of the Bankruptcy Code. A debt is liquidated if it is "readily capable of computation." In re Keenan, 201 B.R. at 265-66. See also In re Audre, 202 B.R. 490, 492 (Bankr.S.D.Cal. 1996)

- 7 -

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER
DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY
PURPOSES

(finding that a debt is liquidated if it is subject to ready determination and precision and computation of the amount due.) Some cases have also stated the test as to "whether the amount due is capable of ascertainment by reference to an agreement or by simple computation." In re Sylvester, 19 B.R. 671, 673 (9th Cir. BAP 1982). Here, SET's claim is liquidated because it is "readily calculable" and also "capable of ascertainment by reference to an agreement." Indeed, pursuant to the market participation agreements with both the ISO and the PX, SET sells energy to PG&E, and PG&E buys energy from SET. Moreover, under these agreements, both parties receive detailed statements from the ISO and the PX, segregated out by debtors and creditors, and who owes how much and to whom, including the amount of money owed to SET for energy sales and the amount of money owed by PG&E for energy purchases. Accordingly, SET's claim is liquidated and therefore not capable of estimation pursuant to Section 502(c). See In re Audre, 202 B.R. at 491; Matter of Continental Airlines, 981 F.2d at 1461.

### 4. The Fact that PG&E Disputes SET's Class 6 Claim Does Not Render the Claim Contingent or Unliquidated.

The fact that PG&E disputes the claim does not automatically transform the claim into an unliquidated or contingent claim. In In re Keenan, 201 B.R. at 266, the Court specifically held that a readily calculable claim remains liquidated regardless of whether it is disputed. See also In re Loya, 123 B.R. 338, 340-41 (9th Cir. BAP 1991) (finding that "a disputed debt which is capable of ready determination is liquidated"); In re Mazzeo, 131 F.3d. 295, 303, 305 (2d Cir. 1997) (holding that "we cannot view a debt as contingent merely because the debtor disputes the claim" and explaining that "to rule that a claim is unliquidated whenever it is disputed would be to render the term 'unliquidated' mere surplusage"); In re McGovern, 122 B.R. 712, 716-17 (Bankr. N.D. Ind. 1990) (merely because a debtor disputes a claim does not render such a claim contingent or unliquidated).

### C. DEBTOR'S MOTION FUNDAMENTALLY MISREPRESENTS CLASS 6 CLAIMS AS COMPLEX.

In an attempt to confuse this Court, the Debtor misrepresents Class 6 claims by calling them "complex," by littering the record with inaccuracies to create the impression that the Class 6 claims

- 8 -

**OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES**

are incalculable, and by lumping them together with factually inapposite claims. *Rather, Class 6 claims are exceedingly simple: PG&E bought power pre-petition from sellers of energy. It must now pay for that power.* Yet rather than confront this issue, the Debtor's Motion obfuscates it by relying on arguments that Southern California Edison ("SCE") also is responsible for outstanding power debts; that the cash being held by the PX somehow hampers the process; that claimants should look to the California Department of Water Resources ("DWR") for payment; and by collateralizing a FERC refund that has not yet been ordered.

To begin with, PG&E's argument that it is impossible to calculate Class 6 claims because $850 million of the claims belongs to Southern California Edison ("SCE") is now moot, as SCE has paid nearly $875 million to the PX. Since PG&E is the only party which has *yet to* pay the PX, calculating how much it owes is relatively simple.

Next, the argument that certain PX cash holdings are hampering calculation of Class 6 claims is another inappropriate distraction. PX cash holdings and any potential distributions are frozen because of an injunction issued by the Central District in <u>Enron Power Marketing, Inc. v. California Power Exchange</u>, (Case No. 01-00901CM and Related Cases, C.D. Cal. Mar. 5, 2001). The terms of that injunction allow any party to dissolve the injunction by application to the Court, and do not have anything to do with PG&E's bankruptcy reorganization. Furthermore, the Injunction specifically states that it is not intended to limit market participants from proceeding against PG&E. See Request for Judicial Notice, Ex. A, ¶¶ 7,10.

Similarly unavailing is the argument that the DWR is responsible for power purchases after January 17, 2001. The power purchased by DWR was for PG&E's customers. Clearly, PG&E did not send notices to all its customers instructing them to pay their monthly electric bills to DWR after January 17, 2001. Instead, PG&E gladly accepted payment from its ratepayers while it here seeks to disassociate itself from having to pay for the power its customers consumed.

In addition, PG&E cannot point to the pending proceedings before FERC to argue that Class 6 claims are complex and incalculable. By definition, the term "refund" means "to pay back." In this case, because PG&E has yet to pay Class 6 claimants, it is essentially asking this

- 9 -

**OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES**

Court to credit it for something that another tribunal has not yet even done. Indeed, it is ludicrous to state that PG&E's consultant has "modeled the likely outcome of the FERC refund process," and determined that FERC-ordered refunds will reduce Class 6 claims by $400 million. If that were the case, administrative tribunals would be replaced with consultants and their modeled studies. FERC has not yet ruled on an amount of refunds, and this Court should not sanction PG&E's palm-reader view of FERC's role under the Federal Power Act.

Lastly, Class 6 claims are fundamentally different from the other claims that are lumped together in the Motion. As stated above, Class 6 claims are merely claims for power sold pre-petition. This is completely unrelated to environmental claims covering hundreds of sites, governed by a myriad of environmental laws. It is also vastly different from a chromium tort claim (or some other garden-variety tort claim), where liability and amount has yet to be determined. There simply is no reason for this Court to estimate a claim that is contingent and liquidated. If PG&E has any problems with the amount or liability of the claim, it should object to it. And if PG&E's true goal is feasibility, then the only way it can meet its burden is to reserve for the full amount of disputed claims and show that it can truly pay all claims in full.

## IV. CONCLUSION

For the reasons stated above, Debtor's Motion should be denied.

Dated: March 21, 2002

STROOCK & STROOCK & LAVAN LLP
ALAN Z. YUDKOWSKY
PETER F. JAZAYERI
AMY H. PERLIS

By: /s/ Peter F. Jazayeri
PETER F. JAZAYERI

Attorneys for Party in Interest
SEMPRA ENERGY TRADING CORP.

- 10 -
OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER
DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY
PURPOSES

50171044v3
Case: 01-30923    Doc# 5430    Filed: 03/22/02    Entered: 03/22/02 14:08:00    Page 10 of 12

## PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action. My business address is: 2029 Century Park East, Suite 1800, Los Angeles, California 90067-3086.

On March 21, 2002, I served the foregoing document(s) described as: **OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

See Attached Service List

☐ **(VIA PERSONAL SERVICE)** By causing such envelope to be delivered by messenger to the office of the addressee.

☐ **(VIA U.S. MAIL)** In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth below.

☐ **(VIA FACSIMILE)** By causing such document to be delivered to the office of the addressee via facsimile.

☒ **(VIA OVERNIGHT DELIVERY)** By causing such envelope to be delivered to the office of the addressee(s) at the address(es) set forth above by overnight delivery via Federal Express or by a similar overnight delivery service.

I declare under penalty of perjury that the above is true and correct and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 21, 2002, at Los Angeles, California.

Regina Harcourt
[Type or Print Name]          [Signature]

**OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES**

STROOCK & STROOCK & LAVAN LLP
ATTORNEYS AT LAW
2029 CENTURY PARK EAST, SUITE 1800
LOS ANGELES, CALIFORNIA 90067-3086
PHONE 310-556-5800

## Service List

**In re Pacific Gas & Electric Co.**
**USBC, NDCA Case No. 01-30923-DM**

| | |
|---|---|
| **Counsel for Pacific Gas & Electric Company**<br>James L. Lopes, Esq.<br>Howard, Rice, Nemerovski, Canady,<br> Falk & Rabkin<br>A Professional Corporation<br>Three Embarcadero Center, 7th Floor<br>San Francisco, California 94111-4065 | [VIA FEDERAL EXPRESS] |
| **Counsel for PG&E Corporation**<br>Michael P. Kessler, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153 | [VIA FEDERAL EXPRESS] |
| **Counsel for Official Committee of Unsecured Creditors**<br>Paul S. Aronzon, Esq.<br>Robert Jay Moore, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>601 South Figueroa Street<br>Los Angeles, California 90017 | [VIA FEDERAL EXPRESS] |
| **Office of the U.S. Trustee**<br>Attn: Stephen L. Johnson, Esq.<br>250 Montgomery Street, Suite 1000<br>San Francisco, California 94104-3401 | [VIA FEDERAL EXPRESS] |

---

OPPOSITION BY SEMPRA ENERGY TRADING CORP. TO PG&E'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES