GORDON P. ERSPAMER (BAR NO. 83364)
ANDREW B. SABEY (BAR NO. 160416)
ROGER E. COLLANTON (BAR NO. 178831)
CESAR A. ALVARADO (BAR NO. 193973)
MORRISON & FOERSTER LLP
101 Ygnacio Valley Road, Suite 450
P.O. Box 8130
Walnut Creek, California 94596-8130
Telephone: (925) 295-3300
Facsimile: (925) 946-9912

ADAM A. LEWIS (Bar No. 88736)
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-72232
Facsimile: (415) 268-7522

Attorneys for
SIERRA PACIFIC INDUSTRIES

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation<br><br>Debtor.<br><br>Federal I.D. No. 94-0742640 | Case No. 01 30923 DM<br><br>(Chapter 11)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES OF SIERRA PACIFIC INDUSTRIES IN OPPOSITION TO PG&E'S MOTION FOR ORDER DETERMINING CLAIMS ESTIMATION PROCEDURES FOR FEASIBILITY PURPOSES<br><br>Date: March 27, 2002<br>Time: 9:30 a.m.<br>Place: Hon. Dennis Montali<br>235 Pine Street, 22nd Fl.<br>San Francisco, California 94104 |

SPI'S OPP. TO DEBTOR'S MO. TO ESTIMATE CLAIMS
sf-1271616

## I. INTRODUCTION

Sierra Pacific Industries ("SPI") submits this brief in opposition to PG&E's Motion for Order Determining Procedures for Estimating Certain Claims for Plan Feasibility Purposes (dated March 1, 2002) (the "Motion"). By the motion, debtor and debtor in possession Pacific Gas and Electric Corporation ("PG&E") in this case (the "Case") seeks this Court's approval of "procedures" for estimating certain claims, including SPI's, purportedly for feasibility purposes only in connection with PG&E plan of reorganization. Currently, with this Court's permission, SPI's claims against PG&E are being liquidated in Superior Court (where its claims against the California Independent System Operator ("CalISO") as a co-defendant and co-conspirator of PG&E are being adjudicated).

SPI urges the Court to deny the Motion for several reasons. First, the central tenet of the Motion -- that PG&E cannot wait for SPI's claims to be resolved in the Superior Court-- is wholly unsupported by any evidence. Second, there is no precedent for estimating claims for feasibility purposes when there is no plan confirmation proceeding. In this regard, moreover, the proposed estimation proceedings are also wholly premature. And third, PG&E fails to describe with sufficient particularity the nature of the proceeding it seeks to commence as to SPI's claim. That asks the Court to approve something it has not even seen, leaving it to PG&E unilaterally to determine the nature and scope of what it actually does. But, of course, the nature and scope of the estimation proceeding as to SPI is of the essence, the more so because SPI's claims against PG&E involve allegations of a conspiracy between PG&E and its co-defendant, CalISO.

## II. BACKGROUND

Although by now the Court is familiar with the SPI/PG&E relationship, it is worth reviewing it briefly for this Motion.

SPI and PG&E entered into four Power Purchase Agreements ("PPAs") for energy and capacity deliveries. As a result of PG&E's repeated failure to make significant monthly energy and capacity payments, and in light of PG&E's failure to provide adequate assurances of future performance, SPI had no choice but to suspend power deliveries and cancel the PPAs for cause.

After SPI cancelled the PPAs, SPI sought to mitigate its damages by attempting to sell its power to financially solvent companies in the power markets administered by the CalISO.[1] PG&E and the CalISO, however, conspired to prevent SPI from selling power to third parties in the CalISO-controlled markets. First, with the CalISO's blessing, PG&E unilaterally inserted itself as the SC for the SPI plants, and refused to permit SPI's newly appointed SC to take over. Then, in concert with PG&E, and in violation of its own Tariff and of a specific mandate issued by the Federal Energy Regulatory Commission ("FERC") (preventing PG&E from acting as an SC for third parties because it could not satisfy the "creditworthiness" requirements), ISO refused to permit SPI to replace PG&E as the SC for the SPI power plants. In short, CalISO and PG&E undertook a concerted effort to shut SPI out of the California energy marketplace altogether, and force SPI to continue power deliveries to PG&E despite PG&E's repudiation and continuing material breaches.

For this conduct, 0n April 2, 2001, SPI filed a complaint in Sacramento County Superior Court against both CalISO and PG&E. SPI alleged several causes of action against both defendants, including civil conspiracy, violations of the state antitrust laws (Bus. & Profs. Code § 16720 *et seq.*) and the Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*). In addition, SPI alleged various causes of action against PG&E for breach of contract. Without the ability to sell its power to third parties, SPI faced irreparable harm and was forced to curtail its energy-producing operations to the detriment of its employees and the people of California. SPI thus sought a temporary restraining order ("TRO") from the Sacramento County Superior Court on April 5, 2001, seeking to prohibit PG&E and CalISO from preventing SPI from selling its power to third parties. The day after the Sacramento Superior Court granted the TRO (April 6, 2001), PG&E filed this bankruptcy case. SPI then pursued its preliminary injunction against CalISO in the Sacramento Superior Court. However, within an hour after the state court issued a

---

[1] The ISO administers real-time markets for energy in California, and to sell energy in California, SPI must have the ISO's cooperation. To inject power into the ISO, SPI must have a viable Scheduling Coordinator ("SC"). The SC serves as the generators' agent, representing its interests at the ISO. Without an SC working for the generator at the ISO, the generator simply cannot sell power in California.

tentative ruling extending the TRO against CalISO, PG&E filed a notice of removal of the entire action (including SPI's claims against CalISO), to this Court. Ultimately, however, this Court reaffirmed the state-issued TRO and granted SPI's motion for a preliminary injunction against both PG&E and CalISO.

On July 10, 2001, SPI filed its motion for partial summary judgment on its declaratory relief claim against PG&E. On September 21, 2001, this Court granted SPI's motion for partial summary judgment on this issue and ruled that PG&E materially breached and repudiated the PPAs and that SPI validly cancelled the PPAs for cause prior to PG&E's prior bankruptcy filing.

At that point (as now), all that remained of SPI's breach of contract claims against PG&E is the determination of SPI's damages. SPI's other claims remaining to be litigated against PG&E and CalISO are for civil conspiracy, violations of California antitrust and unfair competition laws as well as for state law tort violations. These were all matters of state law which did not require the time or expertise of this Court. Accordingly, SPI moved for relief from the automatic stay of Code[2] section 362(a) to liquidate its breach of contract and other state law claims against PG&E and for remand of the entire Action (including both the claims against PG&E to be liquidated and the claims against CalISO for all purposes) to the Superior Court.

PG&E stipulated to stay relief. However, it opposed the motion to remand. The Court granted the Motion to remand, and the parties are now proceeding in Superior Court.[3] Following

---

[2] The "Code" is the Bankruptcy Code, 11 U.S.C. sections 101-1330.

[3] Although arguing, among other things, that judicial economy and the balance of prejudice and harms weighed against remand (*see, e.g.,* Memorandum of Points and Authorities in Opposition to Sierra Pacific Industries' Motion to Remand Case to State Court (the "Remand MPA"), at 1:19-27; 2:3-13; 7:9-8:7; 9:3-10:4; 11:5-12:7; 12:25-13:11), nowhere did PG&E state that it anticipated bringing a claim estimation proceeding for feasibility purposes when making these arguments even though such a prospect might have been relevant to the Court's decision. For example, PG&E wrote:

> SPI has filed a $1.1 billion claim against the estate .... This Court ultimately will need to address SPI's claim, to which PG&E will object *in the same manner as it is defending the state court lawsuit.*

(Remand MPA, at 2:3-6 (emphasis added).) Indeed, it said, more specifically,

> SPI has filed the seventh largest claim against the estate, essentially restating its state court lawsuit in its entirety. Resolution of this

(Footnote continues on following page.)

remand, PG&E, among other things, made an wholly unsuccessful demurrer (*see* Exhibit A hereto) and filed to designate the Action as complex (*see* Exhibit B hereto). Discovery is ongoing.

PG&E has filed and amended a proposed plan and disclosure statement in this Case. It has had hearings on the latter, but as yet does not have an approved disclosure statement, let alone a confirmation hearing date. Moreover, as the Court knows, of course, the schedule for a PG&E plan may be affected by the California Public Utilities Commission's attempt to file a competing plan.

## III. ARGUMENT

### A. The Motion

In the Motion, PG&E asserts that major claims of certain creditors or classes of creditors will not be decided in time to deal with the feasibility issue for confirmation of its plan or reorganization. Thus, if it is to convince the Court that the plan meets the feasibility test of Code section 1129(a)(11), it argues, it must have the Court estimate the claims solely for purposes of determining the plan's feasibility. SPI's claim is one of those claims. However, PG&E does not describe the nature of the proceeding it intends to bring with regard to SPI. For a number of reasons, SPI submits, this Court should deny the Motion.

### B. The Motion Is Unsupported

PG&E's fundamental predicate for the Motion is that the normal liquidation of claims will come too late for plan feasibility purposes. Yet, as to SPI, PG&E presents *no* evidence whatsoever that the SPI claims cannot be liquidated in time for confirmation of whatever plan PG&E takes to confirmation (indeed, as yet no disclosure statement has been approved and no confirmation proceeding has been scheduled). PG&E's only "evidence" is that SPI's claims are

---

(Footnote continued from previous page)

> substantial claim will be of significant importance to the overall administration of PG&E's estate *and the approval of the plan of reorganization.*

(*Ibid.,* 9:5-8.) Nowhere did PG&E suggest that it would need to do anything but address SPI's claim by objection in the ordinary course.

4

SPI'S OPP. TO DEBTOR'S MO. TO ESTIMATE CLAIMS
sf-1271616

Case: 01-30923    Doc# 5437    Filed: 03/22/02    Entered: 03/22/02 15:59:00    Page 5 of 9

large (true, but irrelevant to the issue of timing), have a large punitive damages component (true, but again irrelevant to the issue at hand) and are familiar to the Court (false, for the Court only has been exposed to the contract termination issues, and again, irrelevant). By contrast, it was PG&E that insisted repeatedly regarding the motion to remand that it wanted to resolve SPI's claims expeditiously. This Court found that PG&E could do so in Superior Court.

### C. The Motion Is Premature

SPI acknowledges that in appropriate circumstances, a bankruptcy court may have to estimate claims to determine the feasibility of a plan of reorganization. *See, e.g., Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985). However, this case has not reached that stage for at least two reasons. The first is that there is no plan confirmation proceeding underway -- or even set -- of which this estimation process for feasibility purposes can be a part. In fact, as yet PG&E's disclosure statement has not been approved. PG&E cites no precedent for such disembodied feasibility estimation proceedings.

The second reason is that PG&E has not said that it cannot confirm a plan if claims are allowed as filed. It has complained about their size and asserted that they are inflated, but it has not said what effect they would actually have. Perhaps the PG&E plan, if and when it eventually gets to confirmation proceedings, will be feasible with claims as filed or negotiated by that time. This is but another way of pointing out that feasibility estimation should take place, if at all, in the context of confirmation proceedings for a specific plan. Otherwise, the feasibility proceedings will be a little like a valuation hearing under Code section 506(a) without a "purpose", a procedure that clearly is improper. *See Gold Coast Asset Acquisition, L.P. v. 1441 Veteran Street Co. (In re 1441 Veteran Street Co.)*, 144 F.32 1288, 1291-92 (9th Cir. 1998) ("A valuation under section 506(a) appears to be linked to -its [the proceeding's] identified purpose -- e.g., a plan of reorganization.").

The Motion is also premature to the extent that it seeks to precede confirmation hearings because circumstances may change between the time feasibility estimation occurs and the time any actually plan gets to confirmation. There may be rulings on the merits upon fully litigated matters in the Superior Court that might change the calculus for feasibility estimation even if

5

those rulings are not fully dispositive.[4] That will make the feasibility estimate dated and unfair to one party or the other. The only cure will be to repeat the exercise at still more expense.

In effect, PG&E is asking the Court and all the creditors involved for proceedings to allow PG&E to decide whether to go ahead with the plan it has now filed or modify it in some way. Thus, the Court is being put to the inconvenience, and the parties to the expense, of proceedings to help PG&E test the waters. That is an inappropriate burden on them all.

### D. The Motion Seeks Unspecified Relief

The Motion also should be denied because it is not clear what PG&E really is asking for. It does not describe with any particularity the nature and scope of the estimation proceeding it will initiate. Will it be a simple motion 28 days' notice under the Local Bankruptcy Rules? Would such a motion be fair to SPI in terms of timing given that PG&E evidently has been lining up its ducks for months? And what role, if any, would CalISO have in it as PG&E's alleged joint tort feasor? In essence, the Court simply cannot know what it is approving if it grants the Motion. At the very least, if the Court is inclined to entertain the Motion, it should order PG&E to file a pleading setting forth the nature and scope of what it proposes to do, give SPI an opportunity to file a response and then hold a status conference to decide whether there will be such a proceeding, and if there will be one, what its contours and timing will be.

//
//
//
//
//
//
//
//

---

[4] Indeed, as noted above, PG&E's predicate for the Motion as to SPI is *wholly* unsupported. PG&E presents no evidence whatsoever that the SPI claims cannot be resolved in time in the Superior Court.

6

## IV. CONCLUSION

The Motion is an ill-conceived, premature device that will not adequately or fairly serve its purported purpose and seeks to impose on the Court and other parties the burden of proceedings that only benefit other purposes of PG&E. It should be denied.

Dated: March 22, 2002

GORDON P. ERSPAMER
ANDREW B. SABEY
ROGER E. COLLANTON
CESAR A. ALVARADO

and

ADAM A. LEWIS

MORRISON & FOERSTER LLP

By: /s/ Adam A. Lewis
Adam A. Lewis
Attorneys for SIERRA PACIFIC INDUSTRIES

## PROOF OF SERVICE BY MAIL
FRCivP 5(b)

I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California, 94105; I am not a party to the within cause; I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice for collection and processing of correspondence for mailing with the United States Postal Service and know that in the ordinary course of Morrison & Foerster's business practice the document described below will be deposited with the United States Postal Service on the same date that it is placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

**MEMORANDUM OF POINTS AND AUTHORITIES OF SIERRA PACIFIC INDUSTRIES IN OPPOSITION TO PG&E'S MOTION FOR ORDER DETERMINING CLAIMS ESTIMATION PROCEDURES FOR FEASIBILITY PURPOSES**

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California, 94105, in accordance with Morrison & Foerster's ordinary business practices:

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady,
Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4065

Robert J. Moore, Esq.
Milbank, Tweed, Hadley & McCloy
601 South Figueroa Street
Los Angeles, CA 90017

Stephen L. Johnson, Esq.
Attorney- Advisor
Office of the U.S. Trustee
250 Montgomery Street, Suite 1000
San Francisco, CA 94104-3401

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed at San Francisco, California, this 22nd day of March, 2002.

| Jeannie Baker-Sanders | *Jeannie Baker-Sanders* |
|---|---|
| (typed) | (signature) |

sf-1274852