

COPY

1    ADAM A. LEWIS (Bar No. 88736)
     MORRISON & FOERSTER LLP
2    425 Market Street
     San Francisco, CA 94105-2482
3    Telephone: (415) 268-7000
     Fax: (415) 268-7522

4

5    LARREN M. NASHELSKY (*Pro Hac Vice*)
     MARK B. JOACHIM (*Pro Hac Vice*)
     MORRISON & FOERSTER LLP
6    1290 Avenue of the Americas
     New York, New York 10104
7    Telephone: (212) 468-8000
     Facsimile: (212) 468-7900

8

9    Attorneys for EL PASO MERCHANT ENERGY, L.P.

**FILED**

MAR 2 2 2002

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

10               UNITED STATES BANKRUPTCY COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13    In re:

14    PACIFIC GAS AND ELECTRIC COMPANY,
     a California corporation,

15                  Debtor.

16

     Federal I.D. No. 94-0742640

17

18

19

20

Case No. 01-30923 (DM)

Chapter 11

EL PASO MERCHANT ENERGY'S OBJECTIONS TO PG&E'S MOTION TO ESTIMATE CLAIMS FOR FEASIBILITY

Date: March 27, 2002
Time: 9:30 a.m.
Place: Hon. Dennis Montali
       235 Pine Street, 22nd Floor
       San Francisco, CA 94104

21

22    **I. INTRODUCTION**

23        El Paso Merchant Energy, L.P. ("El Paso"), submits this brief in opposition to PG&E's

24    Motion for Order Determining Procedures for Estimating Certain Claims for Plan Feasibility

25    Purposes (dated March 1, 2002) (the "Motion"). By the motion, debtor and debtor in possession

26    Pacific Gas and Electric Corporation ("PG&E") in this case (the "Case") seeks this Court's approval

27    of "procedures" for estimating certain claims, including El Paso's, purportedly for feasibility

28    purposes only, in connection with PG&E plan of reorganization.

Case: 01-30923    Doc# 5438    Filed: 03/22/02    Entered: 03/22/02 16:01:00    Page 1 of 10

1   El Paso is a creditor of PG&E.  It is owed about $57 million for energy sold in transactions

2   involving the California Power Exchange ("PX") and California Independent System Operator

3   ("ISO") for which it has not been paid because of the defaults of PG&E and Southern California

4   Edison.  It filed its Proof of Claim on September 5, 2001.  PG&E has not yet objected to the Proof of

5   Claim.  However, El Paso expects such an objection.  PG&E has filed and amended both a proposed

6   plan and a proposed disclosure statement.  However, no disclosure statement has been approved, and,

7   of course, no hearing has been set on a plan of reorganization.  El Paso is a Class 6 creditor in

8   PG&E's current plan.

9   PG&E proposes for the purpose of determining feasibility under Code[1] section 1129(a)(11) to

10  discount Class 6 claims in a claims estimation process based on *its own consultant's* prediction of

11  refunds that may result from currently pending Federal Energy Regulatory Commission ("FERC")

12  proceedings.  The Motion is flawed as to Class 6 claims for several reasons.  First, the Motion is

13  premature since there is no plan confirmation proceeding underway.  Second, the Class 6 energy

14  sellers' debtors are neither contingent nor unliquidated.  The amounts PG&E owes for its PX/ISO

15  purchases are liquidated amounts, ascertainable from settlement account statements of PX and ISO.

16  What is unliquidated is PG&E's claim for a refund, who is currently the subject of intensive and

17  complex proceedings before FERC.   PG&E should be required to demonstrate the feasibility of its

18  Plan based on the *liquidated* amounts it owes for PX/ISO claims and not on its disputed and

19  *unliquidated* refund claim.   Third, the estimation proceedings for which PG&E seeks authority could

20  in effect determine other plan confirmation issues -- namely, what reserves should be establsihed for

21  disputed claims -- without their being expressly addressed in the context of confirmation.  Finally, the

22  Motion fails to address adequately the nature and scope of the proceedings for which it asks this

23  Court's advance authority to initate (and, to the extent that it does address them, envisions a biased

24  process that dramatically underestimates what would have to be done to estimate the claims).

25

26

27

28  [1] The "Code" is 11 U.S.C. sections 101-1330.

## II. PG&E'S DEBT TO ENERGY SELLERS IN CLASS 6

According to the PX's records, PG&E owes $1.7 billion to the PX for its purchases of energy in the PX and ISO markets through January 17, 2001. PG&E acknowledges this accounting in its Second Amended Disclosure Statement filed March 7, 2002 (the "Disclosure Statement"), page 200, and in its own proof of claim filed in the PX bankruptcy. Claims of the PX and of individual energy sellers for PG&E's unpaid energy bill are classified as Class 6 of its Second Amended Plan of Reorganization.

Of the $1.7 billion, PG&E states that one generator has agreed to a prepetition setoff, which would reduce the PX/ISO related debt to $1.5 billion. (Disclosure Statement, at 201.) However, PG&E seeks to "estimate" the Class 6 claims not at $1.5 billion, but at $1.1 billion on the ground that it is entitled to reduce its debt by offsetting $400 million for an expected FERC refund.[2]

## III. ARGUMENT

PG&E's attempt to have the Court "estimate" Class 6 claims based on an anticipated FERC refund is totally inappropriate, unfair and prejudicial to Class 6 creditors. The Court should decline to make such an estimation and should reject PG&E's effort to involve the Bankruptcy Court in speculating on the outcome of THE FERC proceedings now in process.

### A. The Motion is Premature

Preliminarily, PG&E's motion is premature. Although it may be appropriate for a bankruptcy court to estimate claims to determine the feasibility of a plan of reorganization (see, e.g., *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985), there is no plan confirmation proceeding underway of which the requested estimation process for feasibility purposes can be a part. Having consistently sought to prevent the Court from ruling on any issues that it considers to be plan confirmation issues in advance of the confirmation hearing, PG&E now seeks to have the court consider feasibility issues separately, even in advance of approval of its Disclosure Statement. PG&E cites no precedent for such disembodied feasibility estimation proceedings.

---

[2] PG&E states that total filed claims in Class 6 are $8 million, and it also requests the Court to reduce the claims for feasibility purposes on grounds other than FERC refunds, such as duplicative claims, cash already paid into the PX and overlap with debts owed by Southern California Edison. (Motion, at 32-35.) While not admitting that PG&E has a valid basis for reducing Class 6 claims for each of the other stated reasons, El Paso's main concern is with the proposed refund discount, and only that discount will be addressed in this opposition.

Case: 01-30923    Doc# 5438    Filed: 03/22/02    Entered: 03/22/02 16:01:00    Page 3 of 10

1        PG&E has not said that it cannot confirm a plan if claims are allowed as filed, or that it needs

2    to reduce Class 6 claims by $400 million for its Plan to be viable. It has complained about the size of

3    the claims and asserted that they are inflated, but has not said what effect the claims would actually

4    have. Perhaps the Plan, if and when it eventually gets to confirmation proceedings, will be feasible

5    regardless of THE FERC refund issue or will look entirely different because of negotiations with

6    interested parties. Feasibility estimation should take place, if at all, in the context of confirmation

7    proceedings for a specific plan. Otherwise, the feasibility proceedings are akin to conducting a

8    valuation hearing under Code section 506(a) without a "purpose." *See Gold Coast Asset Acquisition,*

9    *L.P. v. 1441 Veteran Street Co. (In re 1441 Veteran Street Co.)*, 144 F.32 1288, 1291-92 (9th Cir.

10    1998) ("A valuation under section 506(a) appears to be linked to -its [the proceeding's] identified

11    purpose -- e.g., a plan of reorganization.").

12        In effect, PG&E is asking the Court and all the creditors to allow PG&E to decide whether to

13    go ahead with the Plan as filed or modify it in some way. Thus, the Court is being put to the

14    inconvenience, and the parties to the expense, of proceedings to help PG&E test the waters. That is

15    an inappropriate burden on them all.

16                **B. The Class 6 Claims are Neither Contingent nor Unliquidated**

17        If feasibility estimation proceedings are allowed to go forward, the estimation process is

18    inappropriate for Class 6 claims. The Class 6 energy debt owed by PG&E cannot be compared to

19    unliquidated tort or environmental claims. PG&E's energy bill is not contingent, as the events giving

20    rise to liability have already occurred. *In re Nicholes*, 184 B.R. 82, 88 (9th Cir. BAP 1995.) The

21    claims are also liquidated, as they are "readily capable of computation." *In re Keenan*, 201 B.R. 201

22    B.R. 263, 265-66 (S.D. Cal. 1996.) The amounts billed to PG&E for its purchases through the PX

23    and ISO markets were based on FERC approved tariffs. PG&E does not dispute the accuracy of the

24    account statements it has received from the PX, setting forth its unpaid energy bill at $1.7 billion.

25        While the debt PG&E owes to energy sellers is neither contingent or unliquidated, what is

26    contingent and unliquidated is PG&E's claim for a FERC refund. Until the refunds have been

27    ordered by FERC, and reviewed upon any appeal, PG&E has no entitlement to a refund or to subtract

28    expected refunds from its liquidated payment obligation for energy it purchased. Nowhere does

1  PG&E provide any authority that the Court may estimate a contingent, unliquidated claim *of PG&E*,

2  as contrasted to claims against PG&E.

3          PG&E contends that claims estimation for feasibility purposes, as contrasted to claims

4  estimation for allowance purposes, is not limited to unliquidated or contingent claims. Rather, PG&E

5  claims, that a feasibility determination "can require the estimation of any sort of disputed claim."

6  (Motion, at 9.) If the claim is merely "disputed," there is no need to "estimate" the claims for

7  feasibility or any other purpose. PG&E should not be entitled to confirm a Plan if the feasibility of

8  the Plan depends on its prevailing in hotly contested litigation at FERC. PG&E should be required

9  to establish the feasibility of its Plan at the full amount of $1.5 billion for Class 6 claims.

10         Recently, Southern California Edison ("SCE") paid its full PX obligation of $880 million into

11  the PX -- with no offset for any anticipated FERC refunds. In doing so, SCE reserved its right to seek

12  a refund after FERC determines its entitlement to a refund.  The same should be required of PG&E.

13  For plan feasibility purposes,  PG&E should be required to demonstrate its ability to pay the full

14  amount of its PX/ISO debt to the energy sellers -- without deduction for potential FERC refunds

15  which have not yet been established.

16                  **C. Claims Estimation for Feasibility Will Likely Lead to Claims**
                        **Estimation for the Disputed Claims Reserve**
17

18         PG&E asserts that it seeks claims estimation for feasibility only. However, it will logically

19  follow that the reserve for disputed claims will be set at the same claims level as determined for

20  feasibility. Otherwise, the estimation of claims for feasibility will be illusory. If PG&E's plan is

21  feasible only if claims are reduced to a certain level, it would be illogical for the Court to confirm the

22  Plan as feasible and then later require PG&E set reserves for disputed claims at a higher amount than

23  PG&E  demonstrated that it had the capacity to absorb.

24         If it is appropriate to discount Class 6 claims by projected FERC refunds in assessing the

25  feasibility of its Plan, the same argument will inevitably be made that it is likewise appropriate to

26  discount the claims in setting the reserve for disputed claims.  Claims estimation for feasibility will

27  lay the ground work for PG&E to argue later that requiring a higher claims reserve would jeopardize

28  the viability of the confirmed Plan.  The Court should deny the Motion as to Class 6 claims.



## D. PG&E's Proposed Estimation Procedure for Class 7 is Unfair and Inadequate

Even if the Court were to rule that some estimation of Class 6 claims is appropriate for feasibility purposes, PG&E's proposed procedure for estimating Class 6 claims is totally inadequate, unrealistic and unfair.

Preliminarily, PG&E does not provide an adequate description of its proposed process for estimating FERC refunds. In the Motion, PG&E states that its "consultant has modeled the likely outcome of the FERC refund process." (Motion, at 34.) PG&E proposes that Class 6 claims be estimated based on its consultants' analysis and projections of the expected FERC refunds. (Motion, at 34.) PG&E also states that it proposes to file a motion for estimation of Class 6 claims by April 17, 2002. (Motion, at 4.)

In other words, this Motion is not the "real" motion. PG&E will tell what it has in mind in another motion to be filed later. The Motion is apparently a motion for authority to file a motion. But just the "peek" that PG&E provides in the Motion suggests that PG&E has a totally unacceptable and unrealistic framework in mind. The thought that this Court should estimate what FERC will likely order in refunds based on the analysis of *PG&E's* consultant reeks of bias and self-serving jurisprudence. But beyond that, PG&E tells this Court and the creditors nothing about the nature, scope and calendar for the proceedings for which it asks this Court's advance authority to bring. By this device, PG&E seeks to assume control over practice and procedure without regard to fairness to the creditors of how PG&E chooses to go about initiating the proceedings it plainly has been revving up for months out of the light of day.

Moreover, in evaluating PG&E's request, the Court should consider the what is going on at FERC to determine whether it is practical or appropriate for the Court to attempt to predict the outcome of the FERC refund proceedings. El Paso believes that based upon such an assessment, the Court will agree that trying to estimate the outcome of the FERC proceedings will be a consuming and futile project.

On July 25, 2001, FERC issued an order initiating the currently ongoing FERC refund proceedings and setting forth a methodology to be used in calculating potential refunds for wholesale

Case: 01-30923   Doc# 5438   Filed: 03/22/02   Entered: 03/22/02 16:01:00   Page 6 of
10

1    power purchases in the PX and ISO markets for the period of October 2, 2000 through June 20, 2001.

2    *San Diego Gas & Elec. Co.*, 96 FERC ¶ 61, 120 (2001.)  The July 25, 2001 order triggered

3    evidentiary hearings which are currently ongoing before FERC.

4         Since the July 25, 2001 FERC order initiating refund proceedings, the FERC refund

5    proceedings in Washington, D.C. have been complex and intense.  FERC ordered the refund

6    proceedings to occur in three stages, the first of which is to establish a mitigated market clearing

7    price *for each hour* in the October 2, 2000 through June 20, 2001 period for each PX and ISO market.

8    The second stage will involve calculating the refunds owed by each wholesale energy supplier, and

9    the third stage will involve calculating the amount currently owed to each supplier by the ISO, the

10   utilities and the Sate of California, after the refunds are calculated.   The second and third stages will

11   be conducted without the benefit of any findings as to "Stage 1" mitigated market clearing prices by

12   either the Administrative Law Judge or FERC.  Only after all three stages have been litigated and

13   briefed will the Administrative Law Judge submit proposed findings of fact to FERC.

14        While FERC has set forth a broad methodology for calculating the market clearing price on

15   which refunds are based, there has been no agreement and no definitive FERC decision on how the

16   methodology is to be applied.  The disagreements and lack of clarity in the July 25, 2001 order

17   resulted in suspension of the refund proceedings in December, 2001, to resolve numerous petitionns

18   seeking rehearing and clarification of various issues in previous orders.  On December 19, 2001,

19   FERC issued a 175  page order clarifying and modifying its July 25, 2001 methodology.  *San Diego*

20   *Gas & Elect. Co.*, 97 FERC ¶ 61,275 (2001).  The refund proceedings then resumed.

21        Months later, the FERC refund proceedings are still in process.  FERC's chief administrative

22   law judge has recently ordered that a portion of the hearings to be held in San Francisco this summer.

23   This raises the possible spectacle of the Bankruptcy Court trying to "estimate" in one courtroom in

24   San Francisco what FERC will likely order in refunds, while at the same time,  a FERC

25   administrative law judge is holding hearings in another part of the city on the same refund issues.

26   This Court should not allow itself to be put in such a position.

27        The complexity of the refund issues is illustrated by the "Order Adopting Revised Joint

28   Stipulation of Issues on MMCP Issues," *San Diego Gas & Elect. Co.*, 98 FERC ¶ 63,026 (2002),

Case: 01-30923    Doc# 5438    Filed: 03/22/02    Entered: 03/22/02 16:01:00    Page 7 of
10



1  issued by FERC on March 11, 2002, and attached hereto as Exhibit A. This order identifies the issues

2  that must be decided in determining just the first phase of the FERC refund proceedings, namely

3  setting the mitigated market clearing price ("MMCP"), to be used in calculating refunds. It also sets

4  forth the various interested parties' competing positions on each of the issues.

5      The order divides the FERC litigants into several "camps," such as the "ISO Position," the

6  "California Parties' Position," the "California Generators' Position," and the "Sellers' Position."

7  PG&E is a member of the "California Parties." (Exh. A, at 1, n. 1.)[3] El Paso largely is in the same

8  position as the Sellers.

9      On many issues pertaining to the MMCP, the litigants are in significant disagreement on how

10  the broad methodology ordered by FERC in its July 25, 2001 and December 19, 2001 orders is to be

11  applied in calculating refunds. The determination of these issues could cause very substantial

12  "swings," estimated at hundreds of millions of dollars, in the ultimate refund outcome.

13      Furthermore, for marketers, such as El Paso, as contrasted with generators owning power

14  plants in California, FERC has left open the possibility that the MMCP that is established after

15  months of litigation will not even apply to them. Marketers have argued that proposed methodology

16  for the MMCP -- which is based on costs of generation facilities in California -- has no relevance to

17  the reasonableness of prices charged by marketers, who buy and sell energy. FERC's December 19,

18  2001 order provides that after the conclusion of the refund proceedings, marketers will have the

19  opportunity to submit cost evidence and seek adjustments of the refund methodology as it applies to

20  them. This is further reason why PG&E's proposal for claims estimation is inappropriate and highly

21  prejudicial, especially to marketers.

22      In summary, it would obviously be unfair to energy sellers for the Court to adopt wholesale

23  PG&E's position on the complex refund issues. If the Court institutes a claims estimation procedure

24  on the FERC refund issue, energy sellers doubtless would oppose PG&E's analysis and insist on the

25  Court considering their positions and their experts' analysis. They also would want an equal role in

26  _____

27  [3] The other "California Parties" are the California Attorney General, the California Electricity Oversight Board, the
     California Public Utilities Commission, and the other two California utilities, SCE and San Diego Gas & Electric

28  Company. (Exhibit A, at 1, n. 1.)

Case: 01-30923    Doc# 5438    Filed: 03/22/02    Entered: 03/22/02 16:01:00    Page 8 of
10

1  fashioning the nature of the proceedings. Combined with the complexity of the issues, the resulting

2  process, though far more fair and rational than what PG&E proposes, would still be inadequate. Yet,

3  at the same time it could mire the Court in FERC refund issues for many months.

4  **IV. CONCLUSION**

5        For all of the above reasons, El Paso urges this Court to deny the Motion, as it applies to

6  Class 6 claims.

7        Dated: March 22, 2002

8

9              LARREN M. NASHELSKY
               MARK B. JOACHIM

10             ADAM A. LEWIS
11             MORRISON & FOERSTER LLP

12

13             By:_____
                       Adam A. Lewis

14             Attorneys for EL PASO MERCHANT ENERGY,
15             L.P.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 01-30923     Doc# 5438     Filed: 03/22/02     Entered: 03/22/02 16:01:00     Page 9 of 10

# PROOF OF SERVICE BY MAIL
## FRCivP 5(b)

I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California, 94105; I am not a party to the within cause; I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice for collection and processing of correspondence for mailing with the United States Postal Service and know that in the ordinary course of Morrison & Foerster's business practice the document described below will be deposited with the United States Postal Service on the same date that it is placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

## EL PASO MERCHANT ENERGY'S OBJECTIONS TO PG&E's MOTION TO ESTIMATE CLAIMS FOR FEASIBILITY

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California, 94105, in accordance with Morrison & Foerster's ordinary business practices:

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady,
Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4065

Robert J. Moore, Esq.
Milbank, Tweed, Hadley & McCloy
601 South Figueroa Street
Los Angeles, CA 90017

Stephen L. Johnson, Esq.
Attorney- Advisor
Office of the U.S. Trustee
250 Montgomery Street, Suite 1000
San Francisco, CA 94104-3401

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed at San Francisco, California, this 22nd day of March, 2002.

| Jeannie Baker-Sanders | *Jeannie Baker-Sanders* |
|---|---|
| (typed) | (signature) |

sf-1274839