ANDREA A. WIRUM # 95616
GREGOR BAER #171511
MICHAEL P. ELLIS # 209434
PILLSBURY WINTHROP LLP
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Phone: (415) 983-1000
Fax: (415) 983-1200

Counsel to Creditors
DYNEGY POWER MARKETING, INC., and
WEST COAST POWER LLC

**FILED**
**MAR 2 2 2002**
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PACIFIC GAS AND ELECTRIC CO., a California Corporation,<br><br>                Debtor | No. 01-30923 DM<br><br>CHAPTER 11<br><br>Date: March 27, 2002<br><br>Time: 9:30 a.m.<br><br>Place: 235 Pine Street, 22nd Floor<br>        San Francisco, California |

<u>OPPOSITION OF DYNEGY POWER MARKETING, INC. TO THE DEBTOR'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES</u>

Dynegy Power Marketing, Inc. and West Coast Power LLC (collectively, "Dynegy") object to Article IV of the Debtor's Motion for Order Determining Procedures for Estimating Certain Claims for Plan Feasibility Purposes (the "Motion"). The Debtor is seeking, under the guise of "class estimation for feasibility purposes," to have this Court estimate the value of the Debtor's claim to a right of refund from Generators arising out of a matter presently pending before the Federal Energy Regulatory Commission ("FERC") (the "Debtor's Unmatured Refund Claim(s)"). Estimating the Debtor's Unmatured Refund Claim – a contingent estate asset of undetermined value – creates a risk that up to $400 million of Class 6 claims will never be paid. At this point in the case, it is both unfair and unnecessary for this Court to exercise its powers under § 105 of the Bankruptcy Code (the "Code") to create a situation where creditors holding Class 6 Disputed Claims are placed at greater economic risk than other unsecured creditors holding Disputed Claims that are not being estimated.

## POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS.

The Debtor states that it believes the actual amount of its obligations to Class 6 claimants is approximately $1.1 billion. Motion, at 32, n.37; Debtor's Second Amended Disclosure Statement (the "Disclosure Statement"), at 200. Dynegy understands that such amount was determined by first deducting duplicate claims and the like from the total amount of Class 6 claims filed. The Debtor then subtracts $200 million, representing a pre-petition offset apparently agreed to by one Class 6 claimant, and an additional $400 million, representing the Debtor's estimate of the minimum amount of its refund as a result of the proceedings currently pending before FERC. See Motion at 32-35; Disclosure Statement at 200.

Debtor does not assert that the amount of Class 6 claims is liquidated or non-contingent. Rather, the Debtor asserts that the Class 6 claims should be estimated "because they involve complex factual matters and calculations, and resolutions of the disputes involves more than a cursory examination." Motion at 13. The Debtor claims that it is not asking for estimation of individual Class 6 claims for allowance or voting purposes nor is it for the purposes of fixing

reserves. Motion at 2. The Debtor also claims that a determination by this Court that the Class 6 claims are $1.1 billion will not be binding on parties.[1] If that is truly the case, then this Motion is unnecessary as to Class 6.

## II. THERE IS NO NEED OR JUSTIFIABLE BASIS TO ESTIMATE CLASS 6 CLAIMS AS A WHOLE.

Neither the Code, any Federal Rule of Bankruptcy Procedure ("Rule") nor any controlling authority, including the Ninth Circuit's decision in Pizza of Hawaii, Inc. v. Shakey's, Inc. (In the Matter of Pizza of Hawaii, Inc.), 761 F.2d 1374 (9th Cir. 1985), authorizes a court to estimate a class of claims. Indeed, the Debtor cites no authority for its request that the Court estimate Class 6 claims in the aggregate. Section 502(c)[2] and Rule 3018[3] speak of estimating only individual creditor claims.[4]

In A.H. Robins v. Piccinin 788 F.2d 994, 1012 (4th Cir. 1986), and Roberts v. Johns-Manville Corp., 45 B.R. 823, 826 (S.D.N.Y. 1984) — cases the Debtor cites to justify class-wide estimation for feasibility purposes—courts ordered estimation of unliquidated personal injury claims to "convert all claims against the debtor[s] to dollar amounts," and thus facilitate the feasibility determination. A.H. Robins v. Piccinin, 788 F.2d 994, 1012 (4th Cir. 1986); Roberts v. Johns-Manville Corp. (In re Johns-Manville), 45 B.R. 823, 826 (S.D.N.Y. 1984). Such estimation was justified upon facts not presented by the Generator Claims in this case, i.e., thousands of unliquidated personal injury lawsuits "throughout the land and spread over an

---

[1] The Disclosure Statement, however, states that the Debtor will seek estimation for purposes of voting, establishing Disputed Claims reserves, and feasibility. Disclosure Statement at 200, n.59.

[2] Section 502(c) provides in pertinent part that "[t]here shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case...." (emphasis added).

[3] Rule 3018 provides in pertinent part, that "[n]otwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan" (emphasis added).

[4] Similarly, Bankruptcy Rule 3003(c)(1) allows only a creditor, not a class of creditors, to file a proof of claim. Bankruptcy Rule 3003(c)(1) provides, in pertinent part, that "[a]ny creditor or indenture trustee may file a proof of claim."

Case: 01-30923   Doc# 5455   Filed: 03/22/02   Entered: 03/25/02 15:02:00   Page 3 of 13

interminable time," the expense of which would drain the estates' resources and divert management's attention. A.H. Robins, 788 F.2d at 1012-13.

A.H. Robins followed asbestos cases in which courts strayed beyond existing law, permitting estimation of classes of thousands of unliquidated personal injury claimants in response to a "national crisis" facing the federal judiciary. See In re Joint Eastern and Southern Dist. Asbestos Litig., 1991 U.S. Dist. LEXIS 7527, *58; Ahearn v. Fibreboard, 1995 U.S. Dist LEXIS 11532, *12-13. Unlike those cases, in which reorganization would have been impossible had the debtors estimated thousands of claims individually, the Debtor's motion to estimate Class 6 (including the Debtors' Unmatured Refund Claims) involves a class comprised of only 200 claims, Motion at 32, no crisis taxing the nations' judiciary beyond its limits, and no threat to the prospect of reorganizing the Debtor absent Class 6 estimation. If no estimation takes place and FERC ultimately determines that the Debtor is entitled to a refund, then the Debtor or the Reorganized Debtor, as the case may be, will have its refund proceeds available to satisfy claims or to support operations.

III. **THIS COURT SHOULD REFRAIN FROM ESTIMATING CLASS 6 CLAIMS AND THE DEBTOR'S UNMATURED REFUND CLAIM.**

A. Neither Section 105 nor controlling authority mandates estimation of Class 6 claims.

The chief dispute between the Generators and the Debtor—and the chief focus of the Motion as concerns the Generators—is the Debtor's Unmatured Refund Claim. The Debtor is currently pursuing its refund claims before FERC, which has, according to many courts, exclusive jurisdiction to grant such Refunds and is far along in the process of sorting through complex issues necessary to determine the Debtor's claims.

Section 502(c) permits estimation of individual claims for purposes of allowance, but it does not permit estimation of a debtor's claims (such as this Debtor's Unmatured Refund Claims) for feasibility purposes or otherwise. Thus, to justify such estimation, the Debtor seeks to rely on 11 U.S.C. § 105 and 1129(a)(11). Exercise of the Court's power under Section 105, however,

requires the Debtor to prove that such estimation is "necessary" or "appropriate" to carry out the provisions of Title 11. To this end, the Debtor offers merely the conclusory allegation that "billions of dollars of overstated claims may clearly affect the feasibility of the Plan." Motion at 2. The Debtor should provide more information as to whether or not estimation is necessary to determine if the Second Amended Plan of Reorganization (the "Plan") is feasible.

Far from being necessary or appropriate in furtherance of section 1129(a)(11), the Debtor's Motion asks the Court to disregard the language and intent of Section 502(c) of the Code (and 11 U.S.C. § 157(b)(2)(B),(C)) "and instead employ its equitable powers to achieve a result not contemplated by the Code" —estimation of the value of a contingent and unliquidated asset of the Debtor. See In re Fesco Plastics Corp., 996 F.2d 152 (7th Cir. 1993); Sea Harvest v. Riviera Land Co., 868 F.2d 1077, 1080 (9th Cir. 1989); In re Ionosphere Clubs, Inc., 114 B.R. 379, 403 (S.D.N.Y. 1990).

Although bankruptcy courts value assets at confirmation for purposes of plan feasibility, it is not appropriate for a bankruptcy court to estimate a debtor's claim as part of the claim estimation process.[5] In Apex Oil Co. v. Stinnes Interoil, Inc. (In re Apex Oil Company), 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989), for instance, the bankruptcy court refused to estimate four claims against the estate, because those claims were "inextricably intertwined" with the debtor's claims against each creditor for antitrust violations under the Sherman Act which the bankruptcy court "would not be permitted by law to estimate." As in that case, where the debtor's claims were ready for trial before the district court, establishing or quantifying this Debtor's Unmatured Refund Claims before FERC would not unduly delay or imperil the confirmation of this Debtor's Plan.

---

[5] See also In re American Solar King Corp., 90 B.R. 808, 829-830 (Bankr. W.D. Tex. 1988), where a Texas bankruptcy court estimated **for purposes of voting only** under Bankruptcy Rule 9018 a claim which was already the subject of a claim objection. Because the debtors' counter-claim was at issue in the ongoing litigation of the claim objection, the court, when estimating the creditor's claim for purposes of voting only, considered both the creditor's claim and the debtor's counter-claim. This is a much different circumstance than the present motion to estimate for feasibility purposes a debtor's refund claim that is subject to ongoing proceedings before FERC, where the creditor's claim is not even the subject of individual estimation, let alone a claim objection. Solar King's estimation for purposes of voting did not prejudice the creditor's ultimate right to fully participate in a distribution. This Debtor's estimation motion could do so by its impact on the confirmation process and on claims reserves.

10603364v1    - 4 —  DYNEGY'S OPPOSITION TO DEBTOR'S MOTION FOR ESTIMATION PROCEDURES

Case: 01-30923    Doc# 5455    Filed: 03/22/02    Entered: 03/25/02 15:02:00    Page 5 of 13

The Ninth Circuit's decision in Pizza of Hawaii does not mandate—or even permit—estimation of the Debtor's Unmatured Refund Claims. 761 F.2d at 1382. In Pizza of Hawaii, the Ninth Circuit held that "[u]ntil the bankruptcy court has estimated the value of [one large, unliquidated] claim, it is impossible to determine whether $291,295.99 [in assets] is sufficient to effectuate the plan and enable Pizza to continue in business." There, the creditor's claim represented over one-fourth of the plan's estimated cash disbursements. Id.

The Debtor has given no indication that its Plan rests upon such a slim margin that the failure to offset the asserted $400 million Unmatured Refund Claims against the Class 6 claims at this early stage could result in the Plan becoming unfeasible. Since the value of the Debtor's Unmatured Refund Claims may not affect either "the viability of the reorganized debtor [or] its ability to meet its future obligations, both as provided for in the plan and as may be incurred in operations," 7 Lawrence P. King, Collier on Bankruptcy, ¶ 1129.03[11] at 1129-65 (15th ed. Rev. 2001), their valuation for feasibility purposes is unnecessary at this time.

B.  **FERC should determine the Debtor's Unmatured Refund Claim.**

Congress has granted the bankruptcy court broad power to estimate unliquidated or contingent creditor claims, the liquidation of which is essential to the objectives of Title 11, but there is no clear authority (or necessity) to estimate a debtor's claim.[6] The Motion invites this Court to venture into uncharted jurisdictional territory without a compelling reason to do so. Estimation of the Debtor's Unmatured Refund Claims would place before the Bankruptcy Court matters within the unique expertise and jurisdiction of FERC.[7] Since the Debtor is not contesting the amount of power it purchased from October 2, 2000 until January 17, 2001, its effort to have

---

[6] 28 U.S.C. § 157(b)(2)(B) provides that a bankruptcy court has "core" jurisdiction over certain matters including, without limitation, "allowance or disallowance of claims against the estate ... and estimation of claims or interests for purposes of confirming a plan." Although Section 157(b)(2)(C) provides bankruptcy courts core jurisdiction over "counterclaims by the estate against persons filing claims against the estate," that core matter jurisdiction does not extend to estimating counterclaims by the estate.

[7] Courts have enforced this non-justiciability rule in non-bankruptcy cases to preserve the exclusive jurisdiction of federal agencies and to protect the Congressional goal of uniform interstate regulation. See, e.g., County of Stanislaus v. Pacific Gas & Electric Company, 114 F.3d 858, 862 (9th Cir. 1997), cert. denied, 522 U.S. 1076 (1998) ("We apply the filed rate doctrine out of deference to a congressional scheme of uniform ... regulation. Otherwise, we would impermissibly usurp[ ] a function that Congress has assigned to a federal regulatory body.") (citations and quotations omitted). See Montana-Dakota Utilities v. Northwestern Public Services, 341 U.S. 246, 251-52, 95 L. Ed. 912 (1951).

Case: 01-30923   Doc# 5455   Filed: 03/22/02   Entered: 03/25/02 15:02:00   Page 6 of 13

this Court estimate the Debtor's Unmatured Refund Claims is necessarily a request for review of rates charged pursuant to duly-filed FERC tariffs. Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 418-423, 106 S.Ct. 1922, 90 L. Ed. 2d 413 (1986). See, e.g., Marcus v. AT&T Corp., 138 F.3d 46, 58, 61 (2d Cir. 1998).[8] FERC is actively asserting its jurisdiction over the wholesale rates in question and the market mechanisms that impact those rates. FERC's determination of those matters can proceed concurrently with the plan confirmation process, which could be lengthy, given the California Public Utilities Commission's (the "CPUC") filing of a competing term sheet. At least as to matters now before FERC, estimation is premature.

IV. **ESTIMATION IS NOT APPROPRIATE FOR CLASS 6 CLAIMS.**

A. *Class 6 claims are liquidated and are not contingent.*

Section 502(c) of the Code empowers a bankruptcy court to estimate a claim of a creditor if such claim is contingent or unliquidated and the fixing or liquidation of such claim would unduly delay the administration of the case. While the Code does not define "contingent" or "unliquidated," courts have held that a debt is "non-contingent" if "all events giving rise to liability occurred prior to the filing of the bankruptcy petition." Nicholes v. Johnny Appleseed of Washington (In re Nicholes), 184 B.R. 82, 88 (9th Cir. B.A.P. 1995). The fact that a debt might be disputed has no bearing on the determination of whether a debt is contingent. In re Morrison, 1999 U.S. Dist LEXIS 8057,*4-5 (D. Nev. 1999) ("[a]ll of the events giving rise to the [debtor's] liability for the claims at issue here occurred long before [the debtor] filed for bankruptcy ... **The fact that a claim is disputed does not make it contingent**" (emphasis added)).

Likewise, a debt is not unliquidated simply because it is disputed or subject to defenses or counter-claims. Loya v. Rapp (In re Loya), 123 B.R. 338, 341 (9th Cir. B.A.P. 1991) ("[t]hus, a

---

[8] It also bears noting that Section 11.18 of the Plan already provides the Debtor with a mechanism to "reserve[ ] its rights to pursue" certain "contingent and unliquidated claims of the Debtor against third parties" that are listed on Schedule B of its amended schedules "in any appropriate forum, either prior to or following the Effective Date." Clearly the Debtor would not suffer any prejudice if its Unmatured Refund Claims against Dynegy and other Generators were not determined until post-confirmation, as both the Plan and the Code provide sufficient mechanisms to protect these alleged rights of the Debtor against the Generators.

disputed debt which is capable of ready determination is liquidated.") In re Sylvester, 19 B.R. 671, 673 (9th Cir. B.A.P. 1982). Rather, a debt is "liquidated" if it is capable of "ready computation"[9] and the amount of such debt is "easily calculable."[10]

The foregoing principles give effect to the Bankruptcy Code's and Rules' structure— under which the plan confirmation process utilizes the value of claims in the amount filed, unless disallowed. See Rule 3001(f), Code §§ 501(a), 1129(b)(2)(B). Section 502(c) permits a narrow exception, facilitating plan confirmation by estimating (subject to reconsideration under Section 502(j)) an individual claim, the value of which cannot be readily ascertained or which has not become fixed as to liability before the petition date. The exception created by the estimation power is not, as the Debtor urges, a rule permitting debtors to supercede the claims objection process (and the creditor safeguards carefully crafted into section 1129) based on debtors' unmatured claims. Motion at 7, 9.

Here, the Generator's Claims are not properly susceptible to estimation, individually or collectively. First, all of the events giving rise to the obligation of the Debtor to pay for the energy purchased occurred prior to the Debtor's filing of a Chapter 11 petition. Under the filed rate doctrine of 16 U.S.C. § 824d(a) and (c), a public utility has a legal obligation to pay the rate on file with FERC and charged by the individual generators, but may seek any appropriate refunds through administrative proceedings before FERC. FERC has already definitively determined that the market-based rates on file with the FERC at the time of the pre-petition sales are binding filed rates for purposes of the Filed Rate Doctrine. San Diego Gas & Electric Co. v. Sellers of Energy, 96 FERC ¶ 61,120, ¶ 61,506 (2001). These are the rates which must be charged by a seller and paid by the buyer of wholesale electric power. Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 576-577 (1981). Pursuant to §824e of the Federal Power Act, FERC is

---

[9] "Whether a debt is liquidated ... does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation." In re Loya, 123 B.R. 338, 340 (9th Cir. BAP 1991); In re Keenan, 201 B.R. 263, 265 (Bankr. S.D. Cal. 1996) (a debt is liquidated if it is "subject to 'ready determination and precision in computation of the amount due.'")

[10] Whether a debt is subject to ready determination or computation "will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor." In re Slack, 187 F.3d 1070, 1074 (9th Cir. 1999).

10603364v1 - 7 — DYNEGY'S OPPOSITION TO DEBTOR'S MOTION FOR ESTIMATION PROCEDURES

Case: 01-30923  Doc# 5455  Filed: 03/22/02  Entered: 03/25/02 15:02:00  Page 8 of 13

authorized to "make **refunds of any amounts paid** ... in excess of those which **would have been paid** under the just and reasonable rate." 16 U.S.C. § 824e(b) (emphasis added).[11] The claims of the individual Generators are therefore not contingent – all that remains is for the Debtor to pay for the electricity it received. Further, all such Generators' claims are capable of "ready computation" as the sales have already been made subject to the market participation agreements with both the ISO and the PX.[12] Those claims are therefore already liquidated.

B. <u>Failure to estimate the Class 6 claims will not result in undue delay.</u>

Should this Court find that the Generator's claims are unliquidated or contingent, the Debtor must still prove under Section 502(c) that estimation is necessary because the administration of the bankruptcy case will be delayed "unduly" by permitting FERC to determine issues before it. <u>In re Dow Corning Corp.</u>, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997) (delay associated with liquidation of claims must be "undue" to require estimation of such claims by the bankruptcy court under §502(c).) Considering the nature of the Class 6 claims in light of ongoing FERC proceedings and the filing of the CPUC competing term sheet, it is unlikely that undue delay will result if the Court refuses to perform the requested estimation. As the <u>Dow Corning</u> court observed, liquidation—which is "the rule" in bankruptcy—will usually delay case administration, so the propriety of estimation turns on the prejudice such delay would cause. <u>Id.</u>

Other than Debtor's broad statement asserting that it is necessary to estimate numerous types of creditor claims, Debtor has provided no support for the proposition that the timing of the FERC adjudication of the Debtor's $400 million Unliquidated Refund Claim would delay any matters essential to plan confirmation. Motion at 2. Without such a showing, unless the FERC makes a determination before confirmation, the Debtor's Unmatured Refund Claim should "ride

---

[11] The Debtor's effort to reserve for less than its full obligation for wholesale power purchases is also inconsistent with FERC's rejection of similar efforts by the California Department of Water Resources after it assumed the obligation of procuring electricity for the Debtor's ratepayers. Thus, in its Order Granting Motion Concerning Creditworthiness Requirement and Rejecting Amendment No. 40, 97 FERC ¶ 61, 151, *30 (November 7, 2001) FERC observed: "[A] creditworthy party pays its bills when they are due .... Neither DWR nor any other party should be engaging in the types of self-help described in this proceeding."

[12] Unlike the Debtor, Southern California Edison ("SCE") has since deposited with the California Power Exchange (which was SCE's "Scheduling Coordinator" in the PX and ISO markets during the relevant time periods) the full amount it was invoiced for wholesale power purchases for which it defaulted.

through" the Plan confirmation process as an asset of the Reorganized Debtor rather than be estimated by this Court at this time. Plan, §§ 9.2, 11.18.

V. THE PROPOSED PROCEDURES ARE INADEQUATE.

It appears that the Debtor is requesting a procedure whereby this Court will estimate Class 6 claims as a whole based solely on its consultants' analysis of the anticipated FERC ordered refund. Motion at 34. But see In re Baldwin United Corp., 55 B.R. 885 (Bankr. S.D. Ohio 1985). Although estimation is not appropriate as to Class 6 Claims or the Debtor's Unmatured Refund Claim, if the Court does order estimation, then it should be pursuant to a procedure in which Class 6 claimants may also submit their expert analyses.

VI. CONCLUSION.

For the foregoing reasons, Dynegy Power Marketing, Inc. and West Coast Power LLC submit that the Debtor's Motion should be denied as to Class 6.

DATED: March 22, 2002.    Respectfully submitted,

PILLSBURY WINTHROP LLP
ANDREA A. WIRUM
GREGOR BAER
MICHAEL P. ELLIS
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By: /s/ Andrea W.
Andrea A. Wirum

Attorneys for DYNEGY POWER MARKETING, INC., for itself and as agent for WEST COAST POWER LLC

Docket No. 01-30923 DM

PROOF OF SERVICE BY FACSIMILE, MAIL, HAND DELIVERY AND E-MAIL

I, Neven Borak, the undersigned, hereby declare as follows:

1. I am over the age of 18 years and am not a party to the within cause. I am employed by Pillsbury Winthrop LLP in the City of San Francisco, California.

2. My business address is 50 Fremont Street, San Francisco, CA 94105-2228. My mailing address is 50 Fremont Street, P. O. Box 7880, San Francisco, CA 94120-7880.

3. On March 22, 2002, at 50 Fremont Street, San Francisco, California at , I served a true copy of the attached document titled exactly OPPOSITION OF DYNEGY POWER MARKETING, INC. TO THE DEBTOR'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES by sending it via facsimile transmission to the following persons at the fax numbers so indicated:

**[See Attached Service List]**

4. The telephone number of the facsimile machine I used was (415) 983-1200. This facsimile machine complies with Rule 2003(2) of the California Rules of Court.

5. In addition to the facsimile transmission, a true copy of said document(s) was placed in a sealed envelope, addressed as indicated in paragraph 3, above, and deposited in regularly maintained interoffice mail for collection, postage, and same-day delivery to the United States Postal Service for delivery to the addressee.

6. On March 22, 2002, I served a true copy of the attached document(s) titled exactly OPPOSITION OF DYNEGY POWER MARKETING, INC. TO THE DEBTOR'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES by placing it/them in an addressed sealed envelope clearly labeled to identify the attorney being served at the address shown below and delivering it to the attorney, or to the office of the attorney and leaving it with a receptionist or other person having charge thereof, or (if there was no such

person at the office) by leaving it between 9 A.M. and 5 P.M. in a conspicuous place in the office. Such service was effected on the following attorneys:

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
(Counsel for Pacific Gas and Electric Company)

Stephen L. Johnson, Esq.
Office of the United States Trustee
250 Montgomery Street, Suite 1000
San Francisco, CA 94104

7. On March 22, 2002, at 50 Fremont Street, San Francisco, California at , I served a true copy of the attached document titled exactly OPPOSITION OF DYNEGY POWER MARKETING, INC. TO THE DEBTOR'S MOTION FOR ORDER DETERMINING PROCEDURES FOR ESTIMATING CERTAIN CLAIMS FOR PLAN FEASIBILITY PURPOSES by sending it via e-mail transmission to the following persons at the e-mail addresses so indicated:

**[See Attached Service List]**

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of March, 2002, at San Francisco, California.

_____
Neven Borak

## SERVICE LIST

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel.: (415) 399-3015
Fax: (415) 217-5910
Email: jlopes@hrice.com
(Counsel for Pacific Gas and Electric Company)


Michael P. Kessler, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8675
Fax: (212) 310-8007
Email: michael.kessler@weil.com
(Counsel for PG&E Corporation)


Stephen L. Johnson, Esq.
Office of the United States Trustee
250 Montgomery Street, Suite 1000
San Francisco, CA 94104
Tel.: (415) 705-333
Fax: (415) 705-3379
Email: stephen.johnson2@usdoj.gov


Paul Aronzon, Esq.
Milbank, Tweed, Hadley & McCloy
601 South Figueroa Street
Los Angeles, CA 90017
Tel.: (213) 892-4377
Fax: (213) 629-5063
Email: paronzon@milbank.com
(Counsel for the Official Committee of Unsecured Creditors)

10602360v1