1  JAMES L. LOPES (No. 63678)
   ETHAN P. SCHULMAN (No. 112466)
2  GARY M. KAPLAN (No. 155530)
   KIMBERLY A. BLISS (No. 207857)
3  HOWARD, RICE, NEMEROVSKI, CANADY,
       FALK & RABKIN
4  A Professional Corporation
   Three Embarcadero Center, 7th Floor
5  San Francisco, California 94111-4065
   Telephone:  415/434-1600
6  Facsimile:  415/217-5910

7  Attorneys for Debtor and Debtor in Possession
   PACIFIC GAS AND ELECTRIC COMPANY

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13  In re                              Case No. 01-30923 DM

14  PACIFIC GAS AND ELECTRIC            Chapter 11 Case
    COMPANY, a California corporation,
15                                      Date:   June 17, 2002
              Debtor.                   Time:   1:30 p.m.
16                                      Place:  235 Pine Street, 22nd Floor
                                                San Francisco, California
17  Federal I.D. No. 94-0742640

18

19

20      NOTICE OF MOTION AND MOTION FOR TEMPORARY ALLOWANCE
                        OF CLAIMS OF CERTAIN
21    ELECTRICITY GENERATORS AND DISALLOWANCE OF CLAIMS OF
        CALIFORNIA POWER EXCHANGE FOR PLAN VOTING PURPOSES;
22     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

23

24

25

26

27

28

FILED
MAY 1 3 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Case: 01-30923   Doc# 6444   Filed: 05/13/02   Entered: 05/14/02 14:58:00   Page 1 of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on June 17, 2002, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dennis Montali, located at 235 Pine Street, 22nd Floor, San Francisco, California, Pacific Gas and Electric Company, the debtor and debtor in possession in the above-captioned Chapter 11 case ("PG&E" or the "Debtor"), will and hereby does move the Court (the "Motion") for entry of an order temporarily allowing the claims of the certain sellers of power and ancillary services (collectively, "Generators") and temporary disallowing the claims of the California Power Exchange (the "PX"), pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3018(a). The Motion seeks to temporarily allow for purposes of voting on a Chapter 11 plan in this case each of the claims filed by the Generators as listed on Exhibit A attached hereto (collectively, the "Generator Claims"), in the amounts set forth on Exhibit A in the column labeled "Allowed Claim for Voting Purposes" and to temporarily disallow Claim Nos. 7411 and 7412 filed by the PX (the "PX Claims").

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Bankruptcy Local Rule 9014-1(c)(1) for the Northern District of California, any opposition or other response to the Motion must be filed and served on appropriate parties (including counsel for the Debtor) at least 14 days prior to the scheduled hearing date. If no timely opposition is made to the Motion, the Court may enter an order granting the relief requested by default.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the record of this case, and any admissible evidence presented to the Court at or prior to the hearing on the Motion.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

## MEMORANDUM OF POINTS AND AUTHORITIES

1.     PG&E filed a voluntary Chapter 11 bankruptcy petition on April 6, 2001.

2.     PG&E continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.     The PX was created pursuant to California Assembly Bill No. 1890, the 1996 legislation that initiated the restructuring of California's electric industry. As described in more detail in the Disclosure Statement for Plan of Reorganization under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Proposed by Pacific Gas and Electric Company and PG&E Corporation Dated April 19, 2002, the PX was established to conduct a market for the wholesale purchase and sale of electricity. The PX operated and administered several markets for the purchase and sale of wholesale electricity by numerous participants, including the Debtor and Generators, including the "day-ahead market," the "day-of market" and the "Block-Forward Market" ("BFM"). The California Public Utilities Commission ("CPUC") required the Debtor to sell into the PX virtually all of its generated and contracted-for electric power, and to buy the power needed to serve its customers through the PX. The PX also acted as a scheduling coordinator for some of the market participants, including the Debtor, in the "real-time markets" administered by the California Independent System Operator (the "ISO"). The PX ceased its market operations in January 2001, and commenced its own Chapter 11 case on March 9, 2001.

4.     The PX filed Claim Nos. 7411 and 7412 in the approximate amounts of $1.73 billion and $629 million, respectively, for power and ancillary services sold through markets administered by the PX or markets administered by the ISO in which the PX acted as a scheduling coordinator.

5.     Generators have filed over 200 claims totaling approximately $6.4 billion (this amount does not include the PX Claims) against PG&E in this case for power and ancillary services sold through markets administered by the PX or the ISO, as well as claims totaling approximately $300 million for certain other amounts, including amounts for energy procured through the BFM administered by the PX, amounts arising under "bilateral"

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

contracts with PG&E, ISO "reliability must run" charges and various other claims (collectively, the "Miscellaneous Market Portions of the Generator Claims").

6.     As set forth in PG&E's (i) Omnibus Objection to Duplicate PX and Generator Claims, (ii) Omnibus Objection to PX Claim for Certain Purchases of Electricity Satisfied by the California Department of Water Resources, and (iii) Omnibus Objection and Omnibus Objection to PX and Generator Claims re Underscheduling Penalties, all of which are being filed and scheduled for hearing concurrently herewith (collectively, the "Omnibus Objections"), the PX Claims and Generator Claims are duplicative of each other to a large extent.[1] While the PX filed the PX Claims on behalf of various Generators who sold power to PG&E, the Generator Claims seek to recover for the same power purchases and other transactions that are the subject of the PX Claims.[2] Although PG&E does not at this time take any position, or ask the Court to determine, whether the PX or the individual Generators are the proper holder of the Claims, it requests that the PX Claims be temporarily disallowed for purposes of voting on a Chapter 11 plan in this case, as they are duplicative of the Generator Claims, and, in view of the PX's clearinghouse function, the Generators presumably have a greater economic stake than the PX with respect to such Claims.

7.     PG&E further requests that the Court temporarily allow each of the Generator Claims for voting purposes based on their respective *pro rata* share of the total debt owed to the PX and the ISO by PG&E <u>and</u> Southern California Edison ("SCE") (PG&E and SCE are collectively referred to herein as the "IOUs"), plus the unallocated cash held by the PX with

---

[1] Indeed, as the PX acknowledges in its Claim No. 7411, the PX's "clearinghouse function" included reconciliation of amounts due to and from the market participants, as well as collection and payment of the cash due to and from such participants. Thus, when PG&E purchased power in the PX markets, the PX billed PG&E for the power and remitted the money collected to the Generator or Generators that sold the power.

[2] The Official Committee of Participant Creditors in the PX's bankruptcy case (the "Participants Committee"), which is comprised of Generators holding some of the largest claims against PG&E, has expressly acknowledged the overlap, stating that "CalPX's claim is inclusive of the claims of all individual market participants in Class 6 . . . ." Opposition of Official Committee of Participant Creditors of California Power Exchange to PG&E's Motion for Order Determining Procedures for Estimating Certain Claims for Plan Feasibility Purposes (filed March 22, 2002) at 2.

MOTION TO TEMPORARILY ALLOW PX AND GENERATOR CLAIMS FOR PLAN VOTING PURPOSES

Case: 01-30923   Doc# 6444   Filed: 05/13/02   Entered: 05/14/02 14:58:00   Page 4 of 7

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

respect to such debt obligations [3] (collectively, the "IOU Debt"). The reason for using the combined debt of the IOUs to the PX and the ISO is that the total amount of the IOU Debt, as well as the Generators' respective share of the IOU Debt are readily ascertainable (within a reasonable range), based on information provided by the PX and the ISO, and are apparently not subject to material dispute. By contrast, since the PX and the ISO have not yet provided an allocation of the IOUs' respective debts among each of the Generators, such amounts are neither readily ascertainable, nor free from material dispute. Indeed, most of the Generator Claims include the combined amount that is claimed to be owed to them by the IOUs.

8. Thus, the Debtor submits that each Generator Claim should be temporarily allowed for voting purposes in an amount equal to (i) that Generator's respective percentage of the IOU Debt, multiplied by the total amount owed by PG&E with respect to the PX, in the amount of approximately $1.52 billion, as will be determined pursuant to the Omnibus Objections,[4] plus (ii) the amount claimed for the Miscellaneous Market Portions of the Generator's Claim[5], all as set forth on Exhibit A attached hereto.[6]

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

---

[3] This unallocated cash amount, in the amount of approximately $400 million, represents cash in a PX account that has yet to be distributed to its market participants.

[4] PG&E submits that the multiplied sum for each Generator should approximate such Generator's respective share of the amount owed by PG&E with respect to the PX.

[5] PG&E disputes a substantial amount of the Non-ISO/PX Portions of the Generator Claims and expressly reserves its right to object to such Claims. However, PG&E is amenable to the temporary allowance of such amounts for plan voting purposes only.

[6] The "Allowed Claim for Voting Purposes" on Exhibit A hereto was derived in the following manner: The Generators' "PX/ISO" amount was determined using the following information provided to PG&E: (i) monthly invoice, payment, daily transaction and adjustment information provided by the ISO; (ii) adjustments to Account Summaries as of June 30, 2001 and March 13, 2002 provided by the PX. From these sources, PG&E calculated the total amount owed to Scheduling Coordinators and Market Participants from November 2000 through January 17, 2001 to be $2.933 billion. This amount was then offset by: (i) an assumed payment to the PX by Southern California Edison ("SCE") of $825 million based on SCE's account summary balance as of June 30, 2001, less interest charges; and (ii) PX cash of $400 million. This results in forty-two percent (42%) (or $1.225 billion) of the outstanding payables satisfied by PX cash and SCE payment. The remaining fifty-eight percent (58%) (or $1.708 billion) is assumed attributable to PG&E; however, that amount was revised to $1.760 billion based on updated information PG&E recently received from the PX. PG&E then allocated this $1.760 billion share to individual generators on a pro rata basis based on information it received in response to its Federal Rule of Bankruptcy Procedure 2004 discovery requests regarding specific amounts owed by the ISO and PX to

9. PG&E submits that the temporary allowance of each of the Claims as requested by this Motion should be solely for plan voting purposes, and should have no preclusive effect on the allowance of such claims for distribution or other purposes.

10. The Participants Committee and Generators holding some of the largest claims against PG&E (including Reliant Energy Services, Inc., Dynegy Power Marketing, Inc., West Coast Power LLC, Powerex Corp., and Duke Energy Trading and Marketing, LLC) support the relief requested by this Motion.

11. Bankruptcy Rule 3018 authorized the Court to temporarily allow claims for purposes of determining plan voting rights.[7] See, e.g., In re Windsor Plumbing Supply Co., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (estimating for voting purposes unliquidated portion of claim seeking treble damages under RICO and damages based on fraud and conspiracy theories).

## REQUEST FOR RELIEF

WHEREFORE, PG&E respectfully requests that this Court enter its order as follows:

A. Granting the Motion;

B. Temporarily disallowing the PX Claims for purposes of voting on a Chapter 11 plan in this case;

///

///

///

///

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

---

individual generators, resulting in the "PX/ISO" amount. (The total "PX/ISO" amount reflected in Exhibit A, however, only equals $1.518 billion—as opposed to $1.760 billion—because PG&E has excluded itself as a transmission owner and Duke from Exhibit A, as neither is entitled to vote on the Plan.) The "ISO/PX" amount for each generator was then added to other amounts the generators included in their claims (e.g., RMR, BFM, interest, etc.) and which fall within the definition of Class 6 claims in PG&E's proposed Plan of Reorganization.

[7] Bankruptcy Rule 3018(a) states, in relevant part, that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting the plan."

MOTION TO TEMPORARILY ALLOW PX AND GENERATOR CLAIMS FOR PLAN VOTING PURPOSES

C.   Temporarily allowing each of the Claims in the amounts set forth on Exhibit A in the column labeled "Allowed Claim for Voting Purposes" for purposes of voting on a Chapter 11 plan in this case;

D.   Granting such other and further relief as this Court deems just and appropriate.

DATED: May 13, 2002.

Respectfully,

HOWARD, RICE, NEMEROVSKI, CANADY,
    FALK & RABKIN
A Professional Corporation

By: _____
        JAMES L. LOPES

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

WD 051102/1-1419913/42/988591/v5

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

Case: 01-30923   Doc# 6444   Filed: 05/13/02   Entered: 05/14/02 14:58:00   Page 7 of
7