MARC S. COHEN (SBN 65486)
RONALD L. LEIBOW (SBN 038043)
BRYANT S. DELGADILLO (SBN 208361)
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6048
Telephone: (310) 788-1000
Fax: (310) 788-1200

Attorneys for the Official
Committee of Participant Creditors of
California Power Exchange Corporation

**FILED**
JUN 0 3 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

**FAXED**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>a California corporation,<br><br>Debtor.<br><br>Federal I.D. No. 94-0742640 | CASE NO. SF 01-30923 DM<br><br>CHAPTER 11<br><br>Date: June 17, 2002<br>Time: 1:30 p.m.<br>Place: 235 Pine Street, 22nd Floor<br>San Francisco, California |

**MEMORANDUM OF POINTS AND AUTHORITIES OF OFFICIAL COMMITTEE OF PARTICIPANT CREDITORS OF THE CALIFORNIA POWER EXCHANGE CORPORATION IN SUPPORT OF DEBTOR'S MOTION FOR TEMPORARY ALLOWANCE OF CLAIMS OF CERTAIN ELECTRICITY GENERATORS AND DISALLOWANCE OF CLAIMS OF CALIFORNIA POWER EXCHANGE FOR PLAN VOTING PURPOSES**

## INTRODUCTION

The Official Committee of Participant Creditors of California Power Exchange Corporation ("Participants Committee") was appointed by the Office of the Unites States Trustee for the Central District of California in the Chapter 11 case of California Power Exchange Corporation, Case Number LA 01-16577-ES, pending in the United States Bankruptcy Court, Central District of California to represent the interests of the market participants who assert that they are owed money for sales into the markets administered by the California Power Exchange Corporation ("CalPX") or are owed money for sales into the real time market administered by the California Independent System Operator Corporation ("CalISO") for which CalPX acted as scheduling coordinator for the investor owned utilities, including debtor-in-possession Pacific Gas and Electric Company ("PG&E" or "Debtor"). The Participants Committee hereby submits this memorandum of points and authorities in support of PG&E's "Motion for Temporary Allowance of Claims of Certain Electricity Generators and Disallowance of Claims of California Power Exchange for Plan Voting Purposes" ("Debtor's Motion"). For the reasons stated in the Debtor's Motion, as well as the additional grounds stated below, the Participants Committee agrees that this Court should temporarily allow each of the market participants' claims, and temporarily disallow the related CalPX claims, solely for purposes of voting on any chapter 11 plan in this case.[1] The right to vote on PG&E's proposed plan, or the plan proposed by the California Public Utility Commission ("CPUC"), should be exercised by the parties that hold the actual beneficial, economic interests in this case -- the individual market participants -- not the CalPX, which acted as an intermediary in the transactions which give rise to the claims at issue.

---

[1] The Participants Committee in this Memorandum does not address and hereby expressly reserves the issue of whether CalPX, or each Market Participant, individually, is the ultimate holder of claims, but rather addresses only which has the right to and should be authorized by this Court to exercise the right to vote on the plan.

2

## ARGUMENT

### A. The Market Participants Hold the Economic Interests in the Claims Against PG&E.

The market participants are the beneficial owners with the ultimate economic interests in the claims identified in Exhibit A of the Debtor's Motion. Under the FERC-approved tariffs governing CalPX's operations, CalPX performed a "clearinghouse function" by, among other things, reconciling amounts due to and from the market participants for trading in the markets operated by CalPX and (to some extent) by CalISO, as well as collecting and paying cash due to and from such participants. Such funds were deposited into and disbursed from a system of settlement clearing accounts, which were held in trust for market participants. See California Power Exchange Corporation FERC Electric Service Tariff No. 2, Schedule 2, §§ 6.1-6.5, pp. 70-72. In its "clearinghouse function" CalPX acted as an intermediary on behalf of the market participants, collecting and distributing monies to market participants for power sold. The market participants, not CalPX, are the ones with the ultimate economic interests in the claims against PG&E. Accordingly, each individual market participant, not CalPX, should be permitted to vote its claims.

In this case, the position of CalPX is analogous to that of an agent or indenture trustee. An agent or indenture trustee may appear and file a proof of claim in a Chapter 11 bankruptcy case. *See, e.g.*, 11 U.S.C. § 501; Fed. R. Bankr. Proc. 3003 & 9010. An agent, however, can only act within its express authority and cannot act in contravention of its principal. Similarly, an indenture trustee cannot exercise powers not granted to it in its enabling indenture. *See, e.g., In re Allied Owners' Corp.*, 74 F. 2d 201, 203 (2d Cir. 1934) (the powers and duties of a trustee are measured by the terms of the indenture); 7 Collier on Bankruptcy, ¶ 1126.02[2], n.13 (*citing* American Bar Association Committee on Developments in Business Financing, Model Simplified Indenture ("Model Simplified Indenture"), § 6.09). Thus, while an agent or indenture trustee may file a claim on behalf of its principal or bondholders for whom it is trustee, it may not vote such claims unless specifically authorized by the principal or under the terms of the trust instrument. *See, e.g., Allied Owners'*, 74 F. 2d at 203 (noting that nothing in the trust indenture is indicative of authority to the trustee to vote for or against any plan); 7 Collier on Bankruptcy, ¶ 1126.02[2]; Model Simplified Indenture, § 6.10

(1999). This is consistent with the policy behind section 1126 of the Bankruptcy Code that the beneficial owner of the interest or claim should be permitted to vote such interest or claim. *In re Pioneer Finance Corp.*, 246 B.R. 262, 634 (Bankr. D. Nev. 2000). Just as an agent or indenture trustee cannot be permitted to vote bankruptcy claims unless it has been specifically authorized to so act by its principal or under its enabling indenture, so too CalPX should not be permitted to vote in place of the market participants, because it has not been specifically authorized to do so by the market participants or under its tariff.

### B. CalPX Cannot Adequately Represent The Diverse Interests of The Individual Market Participants.

The interests of the individual market participants are diverse, non-uniform and often competing. For example, individual market participants such as Duke Energy Trading and Marketing L.L.C. and Reliant Energy Services, Inc., have filed claims against the State of California based on the Governor's commandeering of certain block forward power contracts, while the remainder of the market participants have chosen to rely on the claims filed by Participants Committee (acting on behalf of the CalPX estate). In addition, only a handful of individual market participants has been named as defendants in the various federal and state actions brought as a result of the collapse of the California electricity markets. Some market participants paid chargeback invoices (issued by CalPX based on its interpretation of its tariff) relating to PG&E's nonpayments, while others did not. Market participants also may have differing ongoing business relationships with PG&E, or may have discussed settlements of their claims against PG&E, while others did not. As a result of these and other factors, market participants are likely to have differing views on the best methods to recover the amounts they are owed. A single party, such as CalPX, could not possibly represent all of these interests with a single vote. Each individual market participant should be permitted to exercise its own business judgment in voting on a chapter 11 plan for PG&E.

Furthermore, there are two competing, vastly different plans in this case. Each individual market participant must make its own economic decision as to which plan, if either, it should support. CalPX which, except to the extent of its own claims for administrative fees, is not in the

position of making the economic analysis necessary to support one plan over the other, or to disapprove both plans. Any such rationale cannot possibly take into account the varying interests of the market participants.

In fact, CalPX would be hopelessly conflicted, and in violation of its self-proclaimed duty of neutrality, if it is permitted to cast a single vote on behalf of all the market participants. CalPX has continually maintained that under its tariff, it has a duty to act in a nondiscriminatory manner that does not favor one market segment (*e.g.* the investor owned utilities such as PG&E, or net sellers such as the market participants) over another. Any decision to accept or reject a plan for PG&E is a value-laden judgment, not a neutral act. Indeed, in the exercise of its duties under its tariff, even if it were granted the right to vote, CalPX may need to recuse itself from voting altogether.

As discussed above, the market participants do not have uniform interests which can be represented by a single vote. Any plan for PG&E is likely to have terms that may favor PG&E's interests over those of market participants and vice-versa, and so determining how to vote will severely challenge the "neutrality" of CalPX. The exercise of the vote directly by market participants will avert issues over CalPX's "neutrality," including the potential of a recusal from voting by CalPX. While the Participants' Committee believes that under its tariff, CalPX has a duty to take all necessary and appropriate steps to collect the amounts owed by PG&E for the benefit of the unpaid market participants, under the present circumstances the choice of accepting or rejecting a plan or selecting one plan over another must be made by each market participant based on its independent business judgment.

As a practical matter, even if CalPX were to vote the claims of market participants to the extent related to the CalPX related markets, even then, the same market participants will be called upon to vote on the other claims based on bilateral contracts and other transactions not related to the CalPX markets or transactions in which CalPX did not act as scheduling coordinator in CalISO Markets. Since market participants will be called upon to vote in any event, there would be no or little savings to them in having CalPX vote their claims.

### C. CalISO Has Recognized Its Inability to Represent The Diverse Interests of Individual Market Participants.

CalISO operates an electricity trading exchange (the "real-time markets"), which places it in a position somewhat similar to that of CalPX with respect to participants trading in those markets. The larger portion of market participants' claims through CalPX arise from trading in CalISO's markets, in which CalPX acted as Scheduling Coordinator for various market participants and for the investor owned utilities, including PG&E. (In the CalPX case, claims arising in connection with the CalISO markets total approximately $2.4 billion versus claims arising from the CalPX markets, which total approximately $500 million.) CalISO has acknowledged its inability to adequately represent the interests of each market participant, and specifically has stated that it is not authorized to assert the claims of the market participants, instead leaving that responsibility directly with the participants. See Notice ("California ISO/Important Notice/PG&E and PX Bankruptcy Proceedings/ Claims Bar Date And Proofs Of Claim") transmitted by CalISO to market participants prior to the September 5, 2001 claims bar date, attached hereto as Exhibit 1. CalISO also decided not to file proofs of claims in the PG&E bankruptcy case on behalf of the individual market participants. Thus, CalISO, the entity most similar to CalPX, has properly decided that each market participant must prosecute its own claim and should be accorded the right to vote based upon its own business judgment and economic interest. CalPX cannot adequately explain the basis for its conflicting position.

### D. FERC May Reduce or Eliminate CalPX's Role in Settling Obligations of PG&E.

In June and July of 2001, the Federal Energy Regulatory Commission ("FERC") issued orders in which it established evidentiary hearing procedures related to the issues as to the amounts due to market participants for transactions involving CalPX. In doing so, FERC gave a strong indication that it expects the payments to be made directly between the buyers and sellers in the markets, rather than through CalPX. Specifically, FERC ordered that Administrative Law Judge Birchman make findings of fact with respect to "the amount currently owed to each supplier [i.e., market participant] (with separate quantities due from each entity) by the ISO, the investor owned

utilities, and the State of California." <u>San Diego Gas & Electric Co.</u>, 96 FERC 61,120, pp. 43-44 (July 25, 2001). If FERC orders that payments be made directly by PG&E to the market participants, it may render the "clearinghouse function" performed by CalPX unnecessary with respect to payments by PG&E. This Court should not permit CalPX to choose a plan on behalf of the market participants whose economic interests are at stake, when its own limited role in settling payments from PG&E may be reduced or eliminated.

## CONCLUSION

For the foregoing reasons, the Participants' Committee requests that the Debtor's Motion be granted.

Date: June 3, 2002

KAYE SCHOLER LLP

By: Ronald L. Leibow

Attorneys for the Official
Committee of Participant Creditors of California
Power Exchange Corporation

7

EXHIBIT 1

# CALIFORNIA ISO
# IMPORTANT NOTICE
# PG&E AND PX BANKRUPTCY PROCEEDINGS
# CLAIMS BAR DATE AND PROOFS OF CLAIM

Pacific Gas & Electric Company ("PG&E") and the California Power Exchange ("PX") have filed petitions for relief in the United States Bankruptcy Court that are the subject of ongoing proceedings. Each of these parties is substantially in default of obligations -- pre-petition and/or post-petition -- incurred on its behalf in one of more of the ISO markets. The amounts owing have resulted in a substantial reduction in monies paid out by the ISO to market participants. Accordingly, Market Participants likely have claims or other legal rights they may wish to assert in either or both of the bankruptcy proceedings.

A claims bar date of **September 5, 2001** has been set in the PG&E bankruptcy case, by which date all pre-petition claims against PG&E must be filed with the Bankruptcy Court.

The ISO has issued prior market notices pertaining to the bankruptcy claims bar dates and proofs of claims. As the claims bar date for the PG&E bankruptcy proceeding approaches, the ISO provides this market notice to again bring to the attention of Market Participants the key points made in prior notices, as follows:

1. Although the California ISO settles transactions on behalf of its Market Participants, the ISO is neither authorized nor in a position unilaterally to assert claims on behalf of Market Participants in any bankruptcy proceeding, i.e. assert claims of "ISO Debtors" against "ISO Creditors" (ISO Tariff Section 11.20.1). Further, while the ISO may be asked by an "ISO Debtor" to assert such claims in the PX or PG&E bankruptcy cases, the ISO is not obliged to do so and will decline any such request.

2. Market Participants who have or may have pre-petition claims against PG&E must themselves file proofs of such claims with the bankruptcy court by the claims bar date. The proof of claim to be filed by the ISO will not include any amounts for energy or ancillary services, and will include only items such as Grid Management Charges, Transmission Access Charges, and FERC Fees. The ISO expressly disavows any liability for any Market Participant's claims, whether or not the Market Participant files any such proofs of claim in the PX or PG&E bankruptcy proceedings.

3. The ISO has provided, and will continue to provide, information to Market Participants concerning the amounts owed to them by PG&E; however, all statements provided are subject to change. The major market reruns that have been discussed in prior market notices will be completed before August 30th. But, a number of other transactions are currently known to

be the subject of disputes and market reruns. There are also proceedings pending at FERC, Federal Courts, and State Courts, the outcomes of which may affect amounts owed by PG&E to each Market Participant or by the Market Participant to PG&E. In addition, we anticipate that further disputes and proceedings may arise and market reruns may be performed that may affect the calculation of such amounts. The ISO will continue to work diligently to resolve these matters as quickly as possible. Nonetheless, it is clear that significant issues may remain unresolved and/or unidentified by the claims bar date.

4. Some amendment to the statements and to any proofs of claim submitted by Market Participants based thereon likely will be necessary, and all rights to make such modifications should be preserved.

5. As a result of current and future disputes and market reruns, PG&E and the PX may owe amounts to Market Participants that do not now have a known claim against PG&E and the PX.

6. Market Participants should consult their own legal counsel as to their respective rights and proofs of claims in the bankruptcy cases of the PX and PG&E.

| | |
|---|---|
| 1 | STATE OF CALIFORNIA, COUNTY OF LOS ANGELES |
| 2 | I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1999 Avenue of the Stars, Suite 1700, Los Angeles, California 90067. |
| 4 | On June 3, 2002, I served the foregoing documents described as follows on the interested party in this action: |
| | 1. MEMORANDUM OF POINTS AND AUTHORITIES OF OFFICIAL COMMITTEE OF PARTICIPANT CREDITORS OF THE CALIFORNIA POWER EXCHANGE CORPORATION IN SUPPORT OF DEBTOR'S MOTION FOR TEMPORARY ALLOWANCE OF CLAIMS OF CERTAIN ELECTRICITY GENERATORS AND DISALLOWANCE OF CLAIMS OF CALIFORNIA POWER EXCHANGE FOR PLAN VOTING PURPOSES; |
| | 2. REQUEST BY OFFICIAL COMMITTEE OF PARTICIPANT CREDITORS OF THE CALIFORNIA POWER EXCHANGE CORPORATION FOR CLARIFICATION OF OMNIBUS OBJECTION TO DUPLICATE PX AND GENERATOR CLAIMS. |

by placing a true copy thereof enclosed in a sealed envelope addressed as follows: **SEE ATTACHED SERVICE LIST**

[ X ]  **BY FACSIMILE** The above-referenced documents (without exhibits and attachments thereto) were transmitted via facsimile transmission to the addressee(s) as indicated above on the date thereof. The transmission was reported as completed and without error.

[ ]  **BY FEDERAL EXPRESS** I am readily familiar with Kaye Scholer LLP's business practices of collecting and processing items for pickup and next business day delivery by Federal Express. Under said practices, items to be delivered the next business day are either picked up by Federal Express or deposited in a box or other facility regularly maintained by Federal Express in the ordinary course of business on that same day with the cost thereof billed to Kaye Scholer LLP's account. I placed such sealed envelope for delivery by Federal Express to the offices of the addressee(s) as above on the date hereof following ordinary business practices.

[ ]  **MAIL** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereof fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **BY PERSONAL SERVICE**
— by personally delivering such envelope to the addressee.
— by causing such envelope to be delivered by messenger to the office of the addressee.

1    [ ]    **STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2    [ X ]    **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 3, 2002, at Sacramento, California.

_____Vickie J. Huntley_____     /s/ Vickie J. Huntley

KAYE SCHOLER LLP

## SERVICE LIST

In re Pacific Gas & Electric Co.
USBC, NDCA Case No. SF 01-30923-DM

| | |
|---|---|
| Counsel for Pacific Gas & Electric Company<br>James L. Lopes, Esq.<br>Gary M. Kaplan, Esq.<br>Howard, Rice, Nemerovski, Canady,<br>  Falk & Rabkin<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111-4065<br>Tel:   415/434-1600<br>Fax:   415/217-5910 | Counsel/California Power Exchange Corporation<br>Joseph A. Eisenberg, Esq.<br>Jeffer Mangels Butler Marmaro LLP<br>2121 Avenue of the Stars, 10th Floor<br>Los Angeles, CA 90067-5010<br>Tel:   310/203-8080<br>Fax:   310/203-0567 |

Counsel for PG&E Corporation
Michael P. Kessler, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel:   212/310-8000
Fax:   212-310-8007

Office of the U.S. Trustee
Attn: Stephen L. Johnson, Esq.
250 Montgomery Street, Suite 1000
San Francisco, CA 94104-3401
Tel:   415/705-3333
Fax:   415/705-3379

Counsel for Official Committee of Unsecured
Creditors
Paul S. Aronzon, Esq.
Robert Jay Moore, Esq.
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street
Los Angeles, CA 90017
Tel:   213/892-4000
Fax:   213/629-5063

Counsel/Powerex Corporation
Howard J. Weg, Esq.
Peitzman, Glassman & Weg LLP
1801 Avenue of the Stars, Suite 1225
Los Angeles, CA 90067
Tel:   310/552-3100
Fax:   310/553-3101

KAYE SCHOLER LLP