JAMES L. LOPES (No. 63678)
GARY M. KAPLAN (No. 155530)
KIMBERLY A. BLISS (No. 207857)
HOWARD, RICE, NEMEROVSKI, CANADY,
 FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4065
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

FILED

JUN 2 8 2002

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

PACIFIC GAS AND ELECTRIC
COMPANY, a California corporation,

　　　　　Debtor.

Federal I.D. No. 94-0742640

Case No. 01-30923 DM

Chapter 11 Case

Date:　August 5, 2002
Time:　9:30 a.m.
Place:　235 Pine Street, 22nd Floor
　　　　San Francisco, California
Judge:　Hon. Dennis Montali

DEBTOR'S NOTICE OF OMNIBUS OBJECTION AND
OMNIBUS OBJECTION TO DIRECT ACCESS CREDIT CLAIMS

**PLEASE TAKE NOTICE THAT THIS OBJECTION MAY
AFFECT YOUR RIGHTS IF YOUR NAME IS LISTED
ON EXHIBIT A ATTACHED HERETO**

OMNIBUS OBJECTION TO DIRECT ACCESS CREDIT CLAIMS

## NOTICE OF OBJECTION

**PLEASE TAKE NOTICE** that on August 5, 2002, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dennis Montali, located at 235 Pine Street, 22nd Floor, San Francisco, California, Pacific Gas and Electric Company, the debtor and debtor in possession in the above-captioned Chapter 11 case ("PG&E" or the "Debtor"), will and hereby does move the Court to enter an Order sustaining its Omnibus Objection to Direct Access Credit Claims (the "Objection"). The Objection concerns the claims (the "Claims") of the creditors (the "Claimants") listed in Exhibit A attached hereto.[1] The Objection is made on the grounds that the Claims should be disallowed to the extent that they exceed the amount finally determined to be owed by PG&E (if any) with respect to certain "direct access credits" ("DA Credits") based on proceedings at the Federal Energy Regulatory Commission ("FERC") and the California Public Utilities Commission ("CPUC"), all as set forth in greater detail below.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Bankruptcy Local Rule 9014-1(c)(1) of the United States Bankruptcy Court for the Northern District of California, and the Court's "Order (1) Authorizing Debtor To File Certain Preliminary Omnibus Objections To Claims Without Prejudice To Right To File Subsequent Objections Thereto And (2) Waiving Compliance With Federal Rules Of Civil Procedure 26(a) And (f) In Certain Claims Objection Proceedings" entered on January 8, 2002 (Docket No. 4114), any opposition to the Objection, and any request that the Court apply Federal Rule of Bankruptcy Procedure 7026(a) and (f) (as described in the attached Notice of Court Orders Authorizing Preliminary Omnibus Objections and Settlement Procedures) must be filed and served on

---

[1] PG&E is not attaching copies of the Claims as an exhibit because they are too voluminous. However, PG&E will make copies of such documents available to anyone being served with this Objection. Any person served with this Objection may obtain copies of any of the Claims upon written request by mail to Howard, Rice, Nemerovski, Canady, Falk & Rabkin Attn: Nathaniel H. Hunt, Three Embarcadero Center, 7th Floor; San Francisco, California 94111-4065, or by email request to nhunt@hrice.com. Additionally, copies of the Claims will be available at the hearing on the Objection if the Court or any other person wishes to review them.

appropriate parties (including counsel for the Debtor) at least 14 days before the scheduled hearing date. If any Claimant makes such a request in its opposition, the Court will determine at the first hearing on the Objection whether Rule 7026(a) and (f) will apply to the Objection proceeding. If a Claimant does not timely oppose the Objection, the Court may enter an order granting the relief requested by default.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Bankruptcy Local Rule 3007-1 of the United States Bankruptcy Court for the Northern District of California, where a factual dispute is involved, the initial hearing on an objection to a claim is deemed a status conference at which the Court will not receive evidence. Where the objection involves only a matter of law, the matter may be argued at the initial hearing. The Debtor submits that the Objection involves only a matter of law and can be determined at the initial hearing.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the attached Notice of Court Orders Authorizing Preliminary Omnibus Objections and Settlement Procedures, to the extent that the Court does not disallow any of the Claims in its entirety based on this Objection, the Debtor reserves the right to object further to such Claim on other grounds; in such event, the Claimant will receive notice and an opportunity to oppose or respond to such additional objections.

## OBJECTION

In support of its Objection, PG&E respectfully represents as follows:

A. FACTUAL BACKGROUND

1. The Debtor filed a voluntary Chapter 11 bankruptcy petition on April 6, 2001.

2. Both energy services providers ("ESPs") and their direct access customers ("DA Customers") have filed Claims seeking payment of an energy credit commonly referred to as the DA Credit.[2] DA Customers are utility customers who purchase energy from an ESP

---

[2] The DA Credit was originally referred to in CPUC decisions and tariffs as the "PX credit."

but receive transmission and distribution services from PG&E. Because DA Customers buy their energy from an ESP, PG&E typically bills the Customer the normal "bundled" service rate less a credit for the amount of electric energy that PG&E did not provide to the DA Customer. DA Customers typically receive a PG&E bill for the standard bundled service rate, less a credit for the energy component. The DA Credit appears on the Customer's PG&E bills so that the Customer is not charged twice for energy. As the CPUC has explained:

> "Under the restructured electricity market in California, customers may subscribe to 'bundled service' from the utility distribution company or 'direct access' service from a competitive energy provider. Customers who purchase bundled service from the utility pay a PX charge to cover the utility's power supply costs. Customers who elect direct access service receive a credit on their bills called the PX Credit. The credit offsets the energy costs included in the bundled rate." (San Diego Gas & Electric Co., D. 99-06-058, mimeo at 20 (June 10, 1999))

3. California Public Utilities Code Section 368(b) established the basic principle that, "customers of the electrical corporation who become eligible to purchase electricity directly from suppliers other than the electrical corporation pay the same unbundled component charges, *other than energy*, that a bundled service customer pays." Calif. Pub. Util Code § 368(b) (emphasis added). In its Decision 97-08-056 (Re Pacific Gas & Electric Co., 74 Cal.P.U.C. 2d 1 (1997)), the CPUC refined this basic principle by establishing that the PX charge—the amount that the utilities paid to the California Power Exchange (the "PX") to procure energy on behalf of their bundled customers—would be the amount credited to a DA Customer to reflect the fact that the utility no longer purchases energy on its behalf. Until January 18, 2001, the DA Credit was based on the wholesale market price for energy to approximate the amount that PG&E paid to purchase energy for its bundled service customers.[3] After January 18, 2001, PG&E used a combination of embedded cost and real time market prices to calculate the DA Credit.

---

[3] The market prices included prices generated by both the California Independent System Operator Corporation ("ISO") and the PX.

4. Beginning in approximately May 2000, wholesale market prices for electricity began to skyrocket. The Debtor began to pay far more to purchase electricity from the PX and the ISO at market-based rates than it was allowed to collect from its customers. FERC proceedings regarding the California electricity market resulted in an eventual finding that "the electric market structure and market rules for wholesale sales of electric energy in California are seriously flawed and that these structures and rules, in conjunction with an imbalance of supply and demand in California, have caused, and continue to have the potential to cause, unjust and unreasonable rates for short-term energy . . . under certain conditions." San Diego Gas & Electric Co. v. Sellers of Energy, 93 F.E.R.C. (CCH) ¶ 61,121 at pp. 61,349-61,350 (Nov. 1, 2000).

5. This finding was later reaffirmed by FERC on December 15, 2000: "we reaffirm our findings that unjust and unreasonable rates were charged and could continue to be charged unless remedies are implemented." San Diego Gas & Electric Co. v. Sellers of Energy, 93 F.E.R.C. (CCH)¶ 61,294 at p. 61,999 (Dec. 15 2000).

6. Due to the higher energy prices, the DA Credits became relatively large. Beginning in approximately June 2000, the DA Credit regularly began to exceed the amount of a DA Customer's bill. Instead of the Customer owing money to PG&E for its transmission and distribution services, after the DA Credit was applied, PG&E would frequently owe money to either the DA Customer or (depending on the arrangement between the ESP and the DA Customer) to the ESP.

7. The 11 Claimants have filed 21 Claims aggregating approximately $523 million with respect to unpaid DA Credits, $404 million of which is sought by two Enron entities (all as specified on Exhibit A attached hereto).

8. The amount of the DA Credits are the subject of and/or will be impacted by various proceedings (including proceedings commenced by certain of the Claimants) before other tribunals, including the FERC and the CPUC, as discussed in greater detail below. Accordingly the amount of the Claims are currently unliquidated and are subject to determination of such proceedings in such other fora.

B. DISCUSSION

9. The Debtor submits that the Claims are subject to reduction because the prices on which the DA Credits are based have been declared unlawful and will be reduced by FERC. In orders dated November 1, 2000 and December 15, 2000, FERC indicated its intent to order retroactive refunds from generators based on the tremendous increase in prices paid by the utilities for energy. San Diego Gas & Electric Co. v. Sellers of Energy, 93 F.E.R.C. (CCH) ¶ 61,294 at pp. 62,010-62,011 (Dec. 15, 2000); San Diego Gas & Electric Co. v. Sellers of Energy, 93 F.E.R.C. (CCH) ¶61,121 at 61,370 (Nov. 1, 2000). On July 25, 2001, FERC issued an order establishing refunds of "unjust and unreasonable" amounts paid in California for wholesale energy purchases from October 2, 2000 to June 20, 2001. San Diego Gas & Electric Co. v. Sellers of Energy, 96 F.E.R.C. ¶ 61,120 at pp. 61,513-61,514 (July 25, 2001) (the "July 25 Order"). The July 25 Order established the scope of and methodology for the calculation of refunds related to transactions in the electric spot markets operated by the ISO and the PX. The July 25 Order directed the ISO and the PX to create "proxy" energy prices for each type of energy or service subject to refund for each hour in each day of the refund period. These proxy prices were to be based on the generators' costs of production, taking into account, for example, fuel costs and operating and maintenance expenses. The refund orders, when implemented, should significantly reduce the utilities' adjusted cost of procuring energy after October 2, 2000.

10. The July 25 Order was clarified or modified in some respects and the refund methodology was generally reaffirmed by the FERC by its order of December 19, 2001. San Diego Gas & Electric Co. v. Sellers of Energy, 97 F.E.R.C. (CCH) ¶ 61,275 at pp. 62,218-62,219 (Dec. 19, 2001) (the "December 19 Order"). Requests for rehearing and clarification of the December 19 Order were ruled on by FERC on May 15, 2002. San Diego Gas & Electric Co. v. Sellers of Energy, 99 FERC (CCH) ¶ 61,160 (2002). The FERC's May 15, 2002 Order generally reaffirmed the refund methodology, but provided additional

clarifications and modifications.[4] Implementation of the refund methodology is the subject of a hearing process before an administrative law judge at the FERC; a trial in this matter was held in March 2002, and an additional phase of trial is scheduled for August 2002.

11.  PG&E submits that FERC's July 25 Order and subsequent orders require a reduction of the Claims because the DA Credits on which such Claims are based were calculated (in whole or in part) using energy prices that FERC has rejected and ordered reduced. These Claims should accordingly be reduced to the extent that the DA Credits are based on disallowed market prices (for the applicable period), as ultimately determined by FERC. Reduction of the DA Credits to reflect the adjusted wholesale energy prices is consistent with the CPUC's directive that the DA Credits reflect the amount that the utilities pay to procure energy. See, e.g., Re Southern California Edison, D. 01-01-019, mimeo at pp. 14-16 (Jan. 4, 2001); Re Pacific Gas & Electric Co., D. 97-08-056, 74 Cal.P.U.C. 2d 1, 14-15 (1997). Since FERC will decide the wholesale energy prices for much of the period covered by the Claims, the Claims cannot be fully liquidated until the relevant FERC proceedings (and any resulting appeals) are concluded.

12.  The amount of the DA Credits for the period beginning December 28, 2000 is also subject to a proceeding pending at the CPUC in which it is considering the amount of the DA Credits after the PX-price ceased to adequately reflect the market price of energy. On May 31, 2002, PG&E filed its proposal in the CPUC's Post-Power Exchange Direct Access Credit Proceeding, within the framework of the 1998 Revenue Adjustment Proceeding (A. 98-07-003 of Pacific Gas & Electric Company For Verification, Consolidation and Approval of Costs and Revenues in the Transition Revenue Account, filed Jan. 8, 1999) (the "1998 RAP") and related proceedings, requesting that the scope of the proceeding include the

---

[4] Numerous parties (including the Debtor) have filed petitions for review of the December 19 Order and preceding FERC orders, and those appeals are pending in the Court of Appeals for the Ninth Circuit. In addition, various parties (including the Debtor) have filed requests for rehearing of portions of the May 15, 2002 Order. Some parties have also filed petitions for review of the May 15, 2002 Order in the D.C. and Ninth Circuits, and additional petitions for review of that Order may yet be filed prior to a July 15, 2002 deadline.

methodology for calculating the DA Credit from December 28, 2000 forward.[5] In addition, PG&E reserved the right to recalculate the DA Credit and adjust bills back to October 2, 2000, or earlier, to reflect "just and reasonable" rates as determined by FERC. Hearings in this matter are scheduled for July 2002.[6] Because the 1998 RAP is anticipated to impact the Debtor's obligations with respect to the DA Credits, the Claims cannot be fully liquidated until those proceedings conclude.

13. Furthermore, the DA Credits on which certain of the Claims are based are the subject of complaint cases filed at the CPUC by four of the ESP Claimants (Enron Energy Services, Enron Energy Marketing, Arizona Public Service and the Association of Bay Area Governments). These complaints seek to resolve the amounts of the DA Credits for which PG&E is liable pursuant to applicable tariffs, ESP agreements, and various CPUC orders. PG&E's answers to those complaints raise various defenses, including that the prices on which the DA Credits were calculated were not "just and reasonable."[7] Because the amount of the DA Credits owed to these Claimants, if any, will be determined by the CPUC, the Claims cannot be fully liquidated until these complaint cases are decided.[8] The final resolution of these cases could also impact the amount of all DA Credits owed by PG&E.

14. To the extent that the Claims are not disallowed in their entirety, the Debtor reserves its right to object to the Claims on other grounds at a later date pursuant to the Order

---

[5] PG&E also proposed retroactive ratemaking adjustments should the methodology yield a different result.

[6] The CPUC apparently agrees with PG&E that the DA Credits should be recalculated using the FERC mitigated prices. In its Disclosure Statement for the California Public Utilities Commission's Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code For Pacific Gas And Electric Company (Dated May 17, 2002), the CPUC states that "the [DA] [C]redits were based on wholesale electricity prices the FERC has determined to be unjust and unreasonable." Id. at , § VI.B.16., p. 54.

[7] In proceedings before the CPUC, PG&E has also contended that its mandated "rate freeze" has been over since at least August 2000 and perhaps as early as May 2000. If it is determined that the rate freeze ended prior to June 2000, then the Debtor may not be liable at all for the DA Credits, because such Credits are only available during the rate freeze period, and the DA Credits did not begin to exceed customers' bills until approximately June 2000.

[8] These cases are currently stayed as a result of PG&E's bankruptcy filing, although there is a pending motion by the two Enron entities for relief from the automatic stay to prosecute a similar action.

OMNIBUS OBJECTION TO DIRECT ACCESS CREDIT CLAIMS
-7-

(1) Authorizing Debtor to File Certain Preliminary Omnibus Objections to Claims Without Prejudice to Right to File Subsequent Objections Thereto and (2) Waiving Compliance with Federal Rules of Civil Procedure 26(a) and (f) in Certain Claims Objection Proceedings, entered herein on January 8, 2002 (Docket No. 4114).

C. RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests the Court enter an order as follows:

1. Sustaining this Objection to each of the Claims;

2. Disallowing the Claims to the extent that they exceed the amount finally determined to be owed by PG&E (if any) with respect to the applicable DA Credits in fora of competent jurisdiction, including final adjudication of proceedings at the FERC and CPUC;

3. Alternatively, to the extent that the Court deems it appropriate to adjudicate the amount of the DA Credits on which the Claims are based, disallowing the Claims to the extent determined by the Court; and

4. Granting such other and further relief as the Court deems just and appropriate.

DATED: June 27, 2002.

Respectfully,

HOWARD, RICE, NEMEROVSKI, CANADY, FALK & RABKIN
A Professional Corporation

By: /s/ GARY M. KAPLAN

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

WD 062602/1-1419961/1005350/v3

## Notice of Court Orders Authorizing Preliminary Omnibus Objections and Settlement Procedures

**PLEASE TAKE NOTICE THAT**, on January 8, 2002, the Bankruptcy Court in the Chapter 11 bankruptcy case of Pacific Gas and Electric Company ("PG&E") entered an order (the "Order") authorizing PG&E to file certain preliminary omnibus objections to claims filed against PG&E, as described below.

1. PG&E file group or "omnibus" objections to claims where PG&E believes that the claims included in such objections are not allowable for various reasons, including (without limitation) that they are partially or totally duplicative of other claims filed against PG&E, that the claims have been paid or otherwise satisfied, or that the claims were filed after the deadline for submitting proofs of claim or are otherwise time-barred. Omnibus objections will be set for hearing no earlier than 30 days after service of the omnibus objection on the claimants subject to the objection. The date set for the hearing on the omnibus objection will be set forth in the notice of the omnibus objection.

2. Claimants who wish to oppose or respond to an omnibus objection must file a written response to the omnibus objection fourteen (14) days prior to the hearing on the omnibus objection, stating the basis for their opposition or response. Such written opposition or response must be served upon counsel for PG&E, the Official Unsecured Creditors' Committee and the United States Trustee. If a claimant fails to file and serve a written opposition or response, the Court may grant the relief sought in the omnibus objection with respect to such claimant's claim.

3. Pursuant to the Court's Order, Rule 7026(a) and (f) of the Federal Rules of Bankruptcy Procedure shall not apply in connection with the determination of omnibus objections; <u>provided however</u>, that any claimant may request, in its response to an omnibus objection, that the Court make Rule 7026(a) and (f) applicable to the objection proceeding with respect to its claim. The Court will determine at the first hearing on such omnibus objection whether such rule will apply to the objection to such claimant's claim.

4. If any claim is not fully resolved through the determination of the omnibus objection proceeding, PG&E may file and serve additional objections to such claim on any grounds not included in the omnibus objection, and claimants will be provided notice and an opportunity to oppose or respond such additional objections.

5. You may obtain a copy of the Bankruptcy Court's Order through the "Pacific Gas & Electric Company Chapter 11 Case" link accessible through the Bankruptcy Court's website (www.canb.uscourts.gov) (the Order is posted as Docket No. 4114), or by

OMNIBUS OBJECTION TO DIRECT ACCESS CREDIT CLAIMS
-9-

Case: 01-30923  Doc# 8339  Filed: 06/28/02  Entered: 07/02/02 11:08:00  Page 10 of 11

written request by mail to Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Attn: Nathaniel H. Hunt, Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4065, or by e-mail request to nhunt@hrice.com.

6. **PLEASE TAKE FURTHER NOTICE THAT** the Court also has entered an order on January 8, 2002, authorizing PG&E to settle certain pre-petition claims filed against PG&E (the "Settlement Order"). The Settlement Order does NOT permit PG&E to pay any pre-petition claims.

7. In particular, the Settlement Order authorizes PG&E to settle any claim where the proposed allowed amount of the claim is $10,000 or less, without further Court order. The Settlement Order further authorizes PG&E to settle, without further Court order, any claim where the proposed allowed amount exceeds $100,000 but is no more than $5 million, and is the lesser of (a) 110% of the amount of such claim as scheduled in PG&E's Amended and Restated Schedules filed herein on July 2, 2001 (the "Schedules"), and (b) $500,000 more than the amount of such claim as set forth on the Schedules.

8. Additional settlement authority is provided in the Order following Creditor Committee and/or Bankruptcy Court review. You may obtain a copy of the Bankruptcy Court's Order through the "Pacific Gas & Electric Company Chapter 11 Case" link accessible through the Bankruptcy Court's website (www.canb.uscourts.gov) (the Order is posted as Docket No. 4113), or by written request by mail to Howard, Rice, Nemerovski, Canady, Falk & Rabkin (Attn: Nathaniel H. Hunt), Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4065, or by e-mail request to nhunt@hrice.com.

WD 062602/1-1419961/1005350/v3