GARY M. COHEN, SBN 117215
AROCLES AGUILAR, SBN 94753
MICHAEL M. EDSON, SBN 177858
THE CALIFORNIA PUBLIC UTILITIES COMMISSION
505 Van Ness Avenue
San Francisco, California 94102
Telephone: (415) 703-2015
Facsimile: (415) 703-2262

ALAN W. KORNBERG
WALTER RIEMAN, SBN 139365
ROBERTA A. KAPLAN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Attorneys for the California Public Utilities Commission

**FILED**
JUL 2 9 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>a California corporation,<br><br>Debtor.<br><br>Federal I.D. No. 94-0742640 | Case No. 01-30923 DM<br><br>Chapter 11 Case<br><br>**MEMORANDUM OF LAW OF THE CALIFORNIA PUBLIC UTILITIES COMMISSION RESPECTING THE STRUCTURE OF THE CONFIRMATION HEARINGS** |

# TABLE OF CONTENTS

I. THE COMMISSION RESPECTFULLY SUBMITS THAT THE COURT SHOULD ADDRESS WHETHER THE TWO COMPETING PROPOSED PLANS ARE CONFIRMABLE BEFORE ADDRESSING ANY ISSUE OF PREFERENCE UNDER SECTION 1129(c) OF THE BANKRUPTCY CODE .............. 1

  A. In Making a Preference Determination Under Section 1129(c), a Bankruptcy Court Must Assess the Evidence and Decide for Itself Which Plan Is Preferable ........................................................................................................ 3

  B. In Making Any Preference Determination, the Court Would Need to Consider Evidence Submitted at the Confirmation Hearings Concerning the Competing Plans ............................................................................................. 5

  C. Under Section 1129(c), the Court Should Consider Whether Competing Plans Can Be Confirmed Before Considering Any Preference Issues ................... 7

II. THE COMMISSION RESPECTFULLY SUBMITS THAT THE COURT SHOULD CONSIDER WHETHER THE COMMISSION'S PROPOSED PLAN IS CONFIRMABLE PRIOR TO ANY CONSIDERATION OF WHETHER PG&E'S PROPOSED PLAN IS CONFIRMABLE ....................................................... 9

# TABLE OF AUTHORITIES

Pages

### Cases

*Baker & Drake, Inc. v. Public Service Commission of Nevada*
  (*In re Baker & Drake, Inc.*), 35 F.3d 1348 (9th Cir. 1994) ...................................... *passim*

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) ........................................................... 10

*In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000) ...................... 5, 7, 10

*In re Holley Garden Apartments, Ltd.*, 238 B.R. 488 (Bankr. M.D. Fla. 1999) ............. 3, 4, 5, 7, 9

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ........................................................................ 10

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1983) ................................................................... 5

*In re River Village Assocs.*, 181 B.R. 795 (E.D. Pa. 1995) ........................................................ 3

*In re Rolling Green County Club*, 26 B.R. 729 (Bank. D. Minn. 1982) ...................................... 3

*In re Treasure Bay Corp.*, 212 B.R. 520 (Bankr. D. Miss. 1997) .......................................... 9, 12

*In re Turner Engineering, Inc.*, 109 B.R. 956 (D. Mont. 1989) .................................................. 3

*Valley View Shopping Center, L.P.*, 260 B.R. 10 (Bankr. D. Kan. 2001) ................................ 9, 12

### Constitutional Provisions and Statutes

Cal. Const. Art. 12 ..................................................................................................................... 1

Cal. Pub. Util. Code § 377 ......................................................................................................... 2

Cal. Pub. Util. Code § 451 ......................................................................................................... 2

Cal. Pub. Util. Code § 701.5 ...................................................................................................... 1

Cal. Pub. Util. Code § 816-30 .................................................................................................... 1

Cal. Pub. Util. Code § 845 ......................................................................................................... 1

Cal. Pub. Util. Code § 851 ......................................................................................................... 1

Cal. Pub. Util. Code § 852 ......................................................................................................... 1

Cal. Pub. Util. Code § 854 ......................................................................................................... 1

11 U.S.C. § 1129(c) ........................................................................................................... *passim*

11 U.S.C. § 1123(a)(5) .................................................................................................................... 8

11 U.S.C. § 1129(a)(1) .................................................................................................................... 8

Pursuant to the Order for Further Briefing entered by the Court on July 12, 2002 (the "Order for Further Briefing"), the California Public Utilities Commission (the "Commission") submits this memorandum of law describing its view on an appropriate structure for the confirmation hearings to be conducted in this case.

I.

**THE COMMISSION RESPECTFULLY SUBMITS THAT THE COURT SHOULD ADDRESS WHETHER THE TWO COMPETING PROPOSED PLANS ARE CONFIRMABLE BEFORE ADDRESSING ANY ISSUE OF PREFERENCE UNDER SECTION 1129(C) OF THE BANKRUPTCY CODE**

At the outset, the Commission wishes to note that it strongly supports an efficient structure for the confirmation hearings. Under California law, the Commission's responsibilities include assuring the continued availability of electricity to California consumers at just and reasonable rates. That general goal would be furthered by enabling Pacific Gas and Electric Company (the "Debtor") to emerge from bankruptcy and to be restored to financial health and normal operating conditions as soon as possible.

The Commission, as an agency of the State of California, is also charged with defending the validity of the provisions of the California Constitution and California statutory law by which the People of the State of California have conferred on the Commission the duty and authority to regulate California electric utilities.[1] The People of the State of California have also determined, through statutes enacted by their legislature and approved by their Governor, that certain actions by the Debtor, including actions that the Debtor requests authorization to take under its proposed plan, cannot occur without environmental review under the California Environmental Quality Act; that the Debtor may not sell any of its electric generation facilities at this time, *see* Cal. Pub. Util. Code § 377; and that the Debtor must discharge its duty to serve by purchasing adequate supplies of electricity, to the extent the Debtor cannot supply demand through its own generation facilities, for California consumers, *see, e.g.*, Cal. Pub. Util. Code § 451. The plan proposed by the Debtor and its parent, PG&E Corporation (collectively,

---

[1] *See, e.g.*, Cal. Const. Art. 12; Cal. Pub. Util. Code §§ 701.5, 816-30, 845, 851, 852, 854.

COMMISSION'S MEMORANDUM ON STRUCTURE OF CONFIRMATION HEARINGS   No. 01-30923 DM

- 1 -

Case: 01-30923   Doc# 9277   Filed: 07/29/02   Entered: 08/02/02 09:04:00   Page 5 of 16

"PG&E"), violates all these provisions of California law, which the Commission, as an agency of the State, must defend.

The Commission therefore desires a structure for the confirmation hearings that is as prompt and efficient as is consistent with adequate discovery, preparation, and presentation to the Court of the enormously important questions to be decided. In addition, because PG&E can bring vastly greater resources to bear on this case than the Commission, the Commission is best served by a structure that maximizes the efficient use of the resources available for litigation.

Notwithstanding the Commission's strong support for efficient confirmation procedures, the Commission respectfully submits that it would not be appropriate for the Court to determine whether the Commission's proposed plan or PG&E's proposed plan is preferable under section 1129(c) of the Bankruptcy Code, 11 U.S.C. § 1129(c) ("Section 1129(c)"), before assessing whether each plan complies with the requirements for confirmation set forth in subsections (a) and (b) of section 1129. Instead, the Commission generally agrees with the prior suggestion of the Debtor's counsel advocating "hearings and rulings on the confirmability of both plans, so that the decision on the preferable plan would be deferred until each plan was found otherwise to be confirmable." (Order for Further Briefing at 2.)

The Commission would add the observation that, as is further explained in Section II of this memorandum, if the Commission's plan satisfies the requirements for confirmation, PG&E's proposed plan necessarily does not. That is so, in summary, because PG&E's proposed plan relies on a theory of implied preemption that cannot succeed unless, among other things, the displacement of otherwise applicable California law is essential to the reorganization of the Debtor. If, however, the Commission's proposed plan satisfies the requirements for confirmation, then the displacement of California law is necessarily *not* essential to a reorganization of the Debtor. Implied preemption of California law would therefore not be available, and PG&E's proposed plan could not be confirmed.

For that reason, the Commission suggests that the Court first consider whether the Commission's plan satisfies the requirements for confirmation. If it does, the Court should confirm the Commission's plan, and should reject PG&E's proposed plan on the ground that

PG&E cannot make the showing required for implied preemption of California law. If the Court determines that the Commission's plan does not satisfy the requirements for confirmation, the Court should proceed to consider whether PG&E's proposed plan does so. Under this structure, the Court would never need to reach any issue of preference under Section 1129(c).

A. **In Making a Preference Determination Under Section 1129(c), a Bankruptcy Court Must Assess the Evidence and Decide for Itself Which Plan Is Preferable**

In making a preference determination under Section 1129(c), a bankruptcy court "shall *consider* the preferences of creditors and equity security holders." 11 U.S.C. § 1129(c) (emphasis added). The court, however, is not bound by those preferences. Instead, the preferences of creditors and equity security holders are merely one factor that the court should consider in determining for itself which plan, on the whole, should be confirmed.[2]

Furthermore, the case law establishes that the weight to be accorded the preferences of creditors and equity security holders will vary depending upon the individual circumstances of a particular case. In this case, there may well be a basis for giving no weight, or substantially reduced weight, to some or all of any preference votes that may be received favoring PG&E's proposed plan.

For example, the Debtor's parent, PG&E Corporation, will presumably vote in a manner reflecting its preference for PG&E's proposed plan, of which PG&E Corporation is a co-proponent. Precedent supports disregarding the vote, or giving substantially lessened weight to the vote, of an entity that is, or is affiliated with, a plan proponent.[3]

---

[2] *See, e.g., In re River Village Assocs.*, 181 B.R. 795, 806 (E.D. Pa. 1995) ("Under the language of § 1129(c), a bankruptcy court is only obligated to consider the preferences of the creditors and equity interests, not obey them.") (citation omitted); *In re Turner Eng'g, Inc.*, 109 B.R. 956, 961 (D. Mont. 1989) (A bankruptcy court is "of course free to make its own determination [under Section 1129(c)] having taken into account such preferences.") (quoting *In re Rolling Green Country Club*); *In re Rolling Green County Club*, 26 B.R. 729, 735 (Bank. D. Minn. 1982) ("[T]he court is of course free to make its own determination [under Section 1129(c)] having taken into account such preference [of creditors].").

[3] *See In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 496 (Bankr. M.D. Fla. 1999) ("Although a majority of the creditors preferred the Condor Plan [proposed by the primary creditor], the Court is not bound by their preferences. The creditors who preferred the Condor Plan were related to Condor [the plan proponent]. The unrelated creditors preferred the [debtor's] plan and the Court deems this significant.").

Second, precedent also supports disregarding votes, or giving substantially lessened weight to votes, that were cast by creditors under the influence of misleading solicitation materials.[4] In the Commission's view, PG&E has engaged in a massive and carefully orchestrated campaign to subvert the Court-supervised disclosure process in this case. PG&E has done so by sending creditors, without advance notice to or review by the Court or the Commission, misleading and materially incomplete solicitation materials containing statements that the Court would never have permitted PG&E to include in its disclosure statement.

Third, this case involves an unprecedented attempt by PG&E to nullify California regulatory and environmental legislation and administrative regulations. In substance, PG&E has sought to persuade creditors that additional value for the bankruptcy estate can be obtained if this Court preempts California law, and thus frees the Debtor from the alleged burdens of complying with the preempted California law. As a preliminary matter, the Commission does not agree with the factual premises of PG&E's argument. In other words, the Commission does not agree that disaggregation of the Debtor would create greater efficiencies in the operations of successor entities to the Debtor or would generate greater value for the Debtor's creditors, who will be paid in full under both proposed plans.

Far more importantly, however, the Bankruptcy Code does not authorize nullification of California regulatory and environmental law in this manner, whether or not nullification of that California law would create additional value for the bankruptcy estate. And even if (contrary to the Commission's strongly held view) PG&E's effort to nullify California law does not make PG&E's proposed plan flatly unconfirmable, at the very least this feature of PG&E's proposed plan should count strongly against that proposed plan in any preference determination. In other words, any creditor votes that express a preference for PG&E's disaggregation plan would be entitled to less weight than they would ordinarily receive in a conventional bankruptcy case. That is so because under cases such as *Baker & Drake, Inc. v.*

---

[4] *See In re Holley Garden*, 238 B.R. at 496 (Bankruptcy court approved plan disfavored by a majority of creditor votes, in part because the proponent of the plan that won the voting sent a solicitation letter to creditors without obtaining prior approval from the court.).

*Public Service Commission of Nevada (In re Baker & Drake, Inc.)*, 35 F.3d 1348 (9th Cir. 1994), the Court must strive to preserve the enforceability of California law, while (according to PG&E) creditors have a contrary financial interest in freeing the Debtor from the costs of complying with applicable California law.

Fourth, PG&E's proposed plan requires an extremely complicated disaggregation of the Debtor, which will create business, financial, regulatory, and litigation risks, and consequently PG&E's proposal is a partial liquidation plan. The Commission's plan is a straightforward and far more traditional plan of reorganization that would keep the Debtor fully intact. The Commission's plan is therefore preferable under precedents favoring reorganization over liquidation.[5] To the extent that any preference votes by creditors are in tension with the policy of the Bankruptcy Code favoring reorganization over partial liquidation, those creditor votes should receive diminished weight.

B.  **In Making Any Preference Determination, the Court Would Need to Consider Evidence Submitted at the Confirmation Hearings Concerning the Competing Plans**

In making a preference determination, a bankruptcy court should assess for itself a broad range of evidence relating to the competing proposed plans. In more traditionally structured bankruptcy cases, where the debtor has not sought to preempt state law, courts have characterized the following factors as relevant to the preference analysis:

> (1) the type of plan; (2) the treatment of creditors and equity security holders; (3) the feasibility of the plan; and (4) the preferences of creditors and equity security holders.

*In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999); *see also In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 245 (Bankr. D.N.J. 2000) (applying *Holley Garden Apartments* test).

---

[5] *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1983). PG&E's proposed plan calls for a complex disaggregation of the Debtor that would cause massive dislocations and uncertainties for the various stakeholder constituencies that rely on the Debtor, such as ratepayers, contracting parties, and the communities in which the Debtor operates. As these features of PG&E's proposed plan show, that proposed plan has characteristics that are typically associated with partial or complete liquidation plans, and that have caused courts to disfavor such plans as compared to plans of reorganization.

COMMISSION'S MEMORANDUM ON STRUCTURE OF CONFIRMATION HEARINGS     No. 01-30923 DM

- 5 -

Case: 01-30923    Doc# 9277    Filed: 07/29/02    Entered: 08/02/02 09:04:00    Page 9 of 16

The considerations examined by bankruptcy courts under Section 1129(c) are highly case-specific, but in general they tend to focus on the voting and on considerations relevant to the bankruptcy court's adjustment of debtor/creditor relations. That fact underscores and supports the Commission's view that a bankruptcy court can in no circumstances authorize implied preemption of state law that is "non-economic" in character — in other words, state law that is concerned with any subject matter other than debtor/creditor relations. The inquiry under Section 1129(c) is usually "economic" precisely because the whole focus of the bankruptcy case and the bankruptcy court's power is "economic."

If, however, this Court were to hold otherwise, and were to conclude that it has some authority to preempt California regulatory and environmental law, the Court should consider the nature and scope of the displacement of California law sought by PG&E as a crucial factor either precluding (as the Commission believes), or at least strongly disfavoring, any judicial determination under Section 1129(c) preferring PG&E's proposed plan. Indeed, even if this Court were to conclude that the California law PG&E seeks to preempt is somehow economic in character, the Court would <u>still</u> need to count implied preemption of that law as a factor either precluding or strongly disfavoring any judicial determination preferring PG&E's proposed plan.[6]

The Court, in making any preference determination, would thus need to consider the argument and evidence that will be submitted at the confirmation hearings respecting the nature and scope of the implied preemption PG&E seeks. The confirmation hearings should therefore precede, rather than follow, any preference determination.

In any event, the Commission respectfully submits that the Court would also find itself unable to assess more traditional economic factors relevant to a determination under Section 1129(c) before the Court has heard the evidence submitted in support of, and in

---

[6] In the Commission's view, the California regulatory and environmental statutes and administrative regulations that PG&E seeks to preempt are manifestly "non-economic" in character. Those statutes and regulations are plainly and on their face an exercise of California's power to protect the public health and safety. That is sufficient to establish their character as non-economic for purposes of *Baker & Drake*.

opposition to, confirmation of each plan. For example, the second factor enumerated in *Holley Garden* directs the Court to consider "the treatment of creditors and equity security holders" under each plan. Creditors, of course, will litigate their objections to each proposed plan at the confirmation hearings. Thus, only after those hearings will the Court have received evidence detailing how each of the proposed plans would actually affect creditor interests.

Similarly, the third factor directs the Court to consider "the feasibility of the plan." Judicial assessment of feasibility would clearly depend upon the evidence submitted at the confirmation hearings.

It may not even be possible for the Court to consider the fourth factor, "the preferences of creditors and equity security holders," without evidentiary submissions at the confirmation hearings. That is so because, for reasons already stated, the weight to be accorded the preferences of creditors and equity security holders varies. That weight would depend on facts that may not be fully addressed until the confirmation hearing, such as facts bearing on potential conflicts of interest on the part of certain creditors, the existence and nature of any inducements offered in lock-up or "plan support" agreements or otherwise to influence the votes of creditors,[7] the nature and scope of the preemption sought by PG&E, the nature of any arguably misleading solicitations by any plan proponent or its agents, and other circumstances.

For all these reasons, the Commission respectfully recommends that the Court address the confirmability of each proposed plan before addressing any issue of preference.

C. **Under Section 1129(c), the Court Should Consider Whether Competing Plans Can Be Confirmed Before Considering Any Preference Issues**

Under Section 1129(c), "[i]f the requirements of subsections (a) and (b) of this section are met with respect to more than one plan," the bankruptcy court must decide which of

---

[7] *See In re Greate Bay Hotel & Casino, Inc.*, 238 B.R. at 246 ("[The creditor] subjected itself, by binding agreement, to support the Park Place plan, even before the competing High River plan was proposed. [The creditor's] vote to accept the plan reflects compliance by [the creditor] with its agreement with Park Place, and does not necessarily reflect on which plan provides better treatment for the creditors." The bankruptcy court therefore held the vote of a creditor class dominated by this creditor "not controlling" and confirmed a competing plan.).

the competing plans to confirm. Subsections (a) and (b), of course, set forth the requirements for confirmation, as those requirements are applied in determining, after the confirmation hearings, whether the bankruptcy court could confirm a proposed plan. The Commission respectfully suggests that the phrase "[i]f the requirements of subsections (a) and (b) of this subsection are met" in Section 1129(c) should not be interpreted to refer to whether a proposed plan is or is not confirmable on its face as a matter of law, in the sense that the court may make such a determination prior to approval of a disclosure statement.

For example, if PG&E's theory of implied preemption fails, then PG&E's proposed plan would fail the requirement of section 1129(a)(1) that the plan comply with applicable provisions of the Bankruptcy Code. That is so because PG&E's proposed plan would then not provide adequate means for its implementation, as required by section 1123(a)(5).

Thus, the preemption question under section 1129(a)(1), for purposes of confirmation, will be whether PG&E's theory of implied preemption is in fact correct under the law and facts of this case, as developed at the confirmation hearings. The question will not be whether PG&E's proposed plan was or was not "facially" confirmable for purposes of its disclosure statement.

Section 1129(c) provides, as stated above, that a bankruptcy court shall address the preference issue "i[f] the requirements of subsections (a) and (b) of this section are met with respect to more than one plan." In the Commission's view, the requirements of subsection (a) and (b) of section 1129 cannot logically mean one thing as applied at the confirmation hearings, and something quite different when those requirements are incorporated by reference into the inquiry under Section 1129(c). As applied to the confirmation process, subsections (a) and (b) set forth the requirements for actual confirmation of a plan, and not the requirements for a preliminary finding, prior to approval of a proposed disclosure statement, as to whether a proposed plan is confirmable on its face as a matter of law. As applied to the inquiry under Section 1129(c), subsections (a) and (b) of section 1129 should be interpreted to refer to actual, rather than "facial," confirmability.

*In re Treasure Bay Corp.*, 212 B.R. 520, 547 (Bankr. D. Miss. 1997), and *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 40 (Bankr. D. Kan. 2001), are consistent with this view. As this Court noted, in each of those cases "the court found one plan not confirmable but nevertheless concluded that even if the unconfirmable plan were confirmable, the other plan would be confirmed." (Order for Further Briefing at 2) (citations omitted). In each of those cases, however, the bankruptcy court held confirmation hearings before rendering its determinations as to confirmability and preference. In those cases, consequently, the bankruptcy court's determination as to preference may be seen as an alternative holding. That alternative holding, among other purposes, might have enabled an appellate court to affirm the result reached by the bankruptcy court based on the bankruptcy court's preference determination, even if the appellate court disagreed with the bankruptcy court's finding that one of the competing plans was unconfirmable.

In this case, however, the issue to be decided is whether the Court should address the preference issue before the confirmation hearings have even occurred. Such a procedure, which is quite different from that followed in *Treasure Bay* and *Valley View*, would require the Court to decide the preference issue before hearing evidence that would bear crucially on the correct resolution of that issue.

## II.

**THE COMMISSION RESPECTFULLY SUBMITS THAT THE COURT SHOULD CONSIDER WHETHER THE COMMISSION'S PROPOSED PLAN IS CONFIRMABLE PRIOR TO ANY CONSIDERATION OF WHETHER PG&E'S PROPOSED PLAN IS CONFIRMABLE**

For a very straightforward reason, the Commission respectfully recommends that the Court address the confirmability of the Commission's proposed plan first. If the Commission's plan is confirmable, then PG&E's plan necessarily is not confirmable, because PG&E would then be unable to show that implied preemption of California law is essential to a successful reorganization of the Debtor. No preference determination would be needed. And, of course, if the Commission's plan is <u>not</u> confirmable, then no issue of preference will be

presented. For these reasons, the Commission believes that if the Court addresses confirmation issues before preference issues, the Court will never reach any issue of preference.

These conclusions flow directly from PG&E's effort, under a theory of implied preemption, to obtain judicial approval for restructuring transactions that violate California law. In *Baker & Drake*, the Ninth Circuit read the case law of the United States Supreme Court to indicate that:

> federal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned with economic regulation rather than with protecting the public health and safety.

35 F.3d at 1353. The *Baker & Drake* court further wrote that:

> Congress's purpose in enacting the Bankruptcy Code was not to mandate that every company be reorganized at all costs, but rather to establish a preference for reorganizations, *where they are legally feasible and economically practical.*

*Id.* at 1354 (emphasis added).

In the Commission's view, the principles of *Baker & Drake* do not permit the implied preemption of state law that is non-economic in character. The policy of the Bankruptcy Code, the *Baker & Drake* court wrote, is to establish a preference for reorganizations that are "legally feasible and economically practical." *Id.* A plan is not "legally feasible" if it violates state law that is non-economic in character. There is no basis for giving greater weight to any policy under the Bankruptcy Code favoring successful reorganizations than to the Bankruptcy Code's policy requiring a debtor to comply with non-economic state law. Indeed, the latter policy, unlike the former, has deep roots in federalism and in strong presumptions against the displacement of state law in areas of traditional state concern — presumptions that, because of their fundamental nature, are broadly applicable to the interpretation of all federal statutes. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Or, to put the point otherwise, there is no policy under the Bankruptcy Code favoring, or even permitting, a plan of reorganization that purports to authorize transactions in violation of non-economic state law.

As this Court has held, in keeping with the principles of *Baker & Drake*, PG&E's theory of implied preemption requires it to show that the California laws PG&E seeks to preempt are economic in character, and "that those particular laws stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress and the Bankruptcy Code." (Memorandum Decision Regarding Preemption and Sovereign Immunity entered by this Court on February 7, 2002 (the "Preemption and Sovereign Immunity Decision") at 41.)

If implied preemption of California law is not necessary to confirm a plan of reorganization for PG&E, then the relevant California laws do not even arguably "stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress and the Bankruptcy Code." (*Id.*) The alleged "purpose" and "objective" of the Bankruptcy Code on which PG&E has consistently sought to rely is the successful reorganization of the Debtor. (The Commission does not agree with PG&E's characterization of the purposes of the Code: as noted above, there is <u>no</u> Congressional policy supporting or even allowing reorganizations in violation of non-economic state law.) But in any event, implied preemption of California law is necessarily <u>not</u> essential to confirmation of a plan of reorganization for PG&E if the Commission's plan, which does not provide for any preemption, satisfies the requirements for confirmation set forth in subsections (a) and (b) of section 1129.

In the Commission's view, it would therefore be appropriate for the Court first to consider whether the Commission's plan is confirmable. If the Court finds that the Commission's plan does satisfy the requirements for confirmation, the Court should enter an order confirming the Commission's plan. The Court should also find that PG&E's proposed plan cannot be confirmed because PG&E cannot make the showing necessary under its theory of implied preemption. If the Court were to find that the Commission's plan does not satisfy the requirements for confirmation, the Court would proceed to consider whether PG&E's plan can be confirmed.

That procedure would further judicial economy, because that procedure should obviate any need for the Court to make any preference determination. Furthermore, the evidence relating to confirmation of the Commission's proposed plan will be much simpler than the

COMMISSION'S MEMORANDUM ON STRUCTURE OF CONFIRMATION HEARINGS    No. 01-30923 DM

-11-

evidence concerning PG&E's proposed plan. The evidence concerning PG&E's proposed plan will involve preemption, an alleged waiver of sovereign immunity, and other problems raised by the complex disaggregation transactions PG&E has proposed. The Commission's proposed procedure therefore focuses first on the simpler confirmation issues raised by its own proposed plan. If those issues are resolved in the Commission's favor, the Court should never need to address the much more complicated issues presented by PG&E's proposed plan.

Dated: July 29, 2002

Respectfully submitted,

GARY M. COHEN, SBN 117215
AROCLES AGUILAR, SBN 94753
MICHAEL M. EDSON, SBN 177858
CALIFORNIA PUBLIC UTILITIES COMMISSION
505 Van Ness Avenue
San Francisco, California 94102
Telephone: (415) 703-2015
Facsimile: (415) 703-2262

By: _____
GARY M. COHEN

ALAN W. KORNBERG
WALTER RIEMAN, SBN 139365
ROBERTA A. KAPLAN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Attorneys for the California Public Utilities Commission