JAMES L. LOPES (No. 63678)
JANET A. NEXON (No. 104747)
JULIE B. LANDAU (No. 162038)
HOWARD, RICE, NEMEROVSKI, CANADY,
 FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4065
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation,<br><br>Debtor.<br><br>Federal I.D. No. 94-0742640 | Case No. 01-30923 DM<br><br>Chapter 11 Case<br><br>Date: October 21, 2002<br>Time: 1:30 p.m.<br>Place: 235 Pine Street, 22nd Floor<br>        San Francisco, California<br>Judge: Hon. Dennis Montali |

NOTICE OF MOTION AND MOTION FOR AUTHORITY TO PAY
FEES OF DESIGNATED UNDERWRITER'S COUNSEL;
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF

[SUPPORTING DECLARATION OF MICHAEL J. DONNELLY
FILED SEPARATELY]

FILED
OCT 0 1 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 21, 2002 at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Dennis Montali, located at 235 Pine Street, 22nd Floor, San Francisco, California, Pacific Gas and Electric Company, the debtor and debtor in possession in the above-captioned Chapter 11 case ("PG&E"), will and hereby does move the Court for authority to pay the fees of designated underwriters' counsel (the "Motion").

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael J. Donnelly, filed concurrently herewith, the record of this case and any evidence presented at or prior to the hearing on this Motion.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 9014-1(c)(2) of the Bankruptcy Local Rules for the Northern District of California, any written opposition to the Motion and the relief requested herein must be filed with the Bankruptcy Court and served upon appropriate parties (including counsel for PG&E, the Office of the United States Trustee and the Official Committee of Unsecured Creditors) at least five (5) days prior to the scheduled hearing date. If there is no timely objection to the requested relief, the Court may enter an order granting such relief without further hearing.

MOTION FOR AUTHORITY TO PAY FEES OF DESIGNATED UNDERWRITER'S COUNSEL

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

Pacific Gas and Electric Company ("PG&E"), the debtor and debtor in possession in the above-captioned Chapter 11 case, requests authority to pay the fees of designated underwriters' counsel in connection with the implementation of PG&E's proposed Plan of Reorganization. This request is made pursuant to Bankruptcy Code Section 363(b)(1).

## I. FACTUAL BACKGROUND[1]

PG&E filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 6, 2001. A trustee has not been appointed, and PG&E continues to function as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

PG&E, together with its parent corporation, PG&E Corporation, has proposed a Plan of Reorganization (as amended from time to time, the "Plan"), which has recently been voted on by creditors, along with the competing plan of reorganization proposed by the California Public Utilities Commission. The confirmation hearing has been scheduled to commence on November 18, 2002.

The Plan provides for the creation of three new companies, ETrans LLC, GTrans LLC and Electric Generation LLC (collectively, the "New Entities"), whereby PG&E will separate according to its four historical lines of business and functions. Thus, the Reorganized Debtor (referred to herein as "PG&E") will continue to operate the retail gas and electric distribution business, ETrans LLC ("ETrans") will operate the electric transmission business, GTrans LLC ("GTrans") will operate the gas transmission business, and Electric Generation LLC ("Gen") will operate the electric generation business.

A significant component of the Plan involves the issuance of various types of debt securities by the New Entities as part of the distributions to be made to holders of Allowed Claims (as defined in the Plan) and by PG&E and the New Entities as a means of

---

[1]The evidentiary basis and support for the facts set forth in this Motion are contained in the Declaration of Michael J. Donnelly filed concurrently herewith.

financing the implementation of the Plan. PG&E will utilize the services of one or more underwriters (the "Underwriter") in connection with the financing. The Underwriter's services will include assisting in the structuring and pricing of the debt securities and marketing the New Money Notes[2] to be sold to investors, and facilitating potential initial sales of Long-Term Notes[3] by holders of Allowed Claims (as discussed in the Plan). As is customary in public offerings of securities and in order to satisfy certain statutory requirements under the federal securities laws, the Underwriter, together with its counsel, will conduct a due diligence investigation of each of the issuers of the securities. The Underwriter has not yet been selected although PG&E anticipates that Lehman Brothers may serve as an Underwriter.

A. <u>Services to be Provided by Skadden as Underwriter's Counsel</u>.

PG&E has designated Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to act as underwriter's counsel ("Underwriter's Counsel"). In this capacity, Skadden's services may include: (i) reviewing, drafting and/or negotiating the legal documentation, including the registration statements and related prospectuses to be filed with the Securities and Exchange Commission ("SEC") by PG&E and each of the New Entities for the offerings of New Money Notes to the public and the resale of Long-Term Notes by holders of Allowed Claims to the public, and (ii) conducting the due diligence investigation of the issuers of the debt securities being sold to the public. Specifically, Skadden will be responsible for reviewing and assisting in revising the registration statements and prospectuses for the offerings of New Money Notes for, among other things, compliance

---

[2] As set forth in the Plan, "New Money Notes" means, collectively, the ETrans New Money Notes, the GTrans New Money Notes, the Gen New Money Notes and the Reorganized Debtor New Money Notes. Generally, the New Money Notes consist of new debt securities to be issued by PG&E and each of the New Entities and to be sold to investors.

[3] As set forth in the Plan, "Long-Term Notes" means, collectively, the ETrans Long-Term Notes, the GTrans Long-Term Notes and the Gen Long-Term Notes. Generally, the Long Term Notes consist of long-term debt securities to be issued by each of the New Entities under the Plan and to be distributed to holders of Allowed Claims.

with federal and state laws, rules and regulations relating to registered securities offerings as well as the descriptions of the debt securities and the underwriting arrangements. In connection with the preparation of the registration statements, Skadden will assist with the due diligence investigation of each of the issuers, which will consist of a review of the issuers' material contracts, financing arrangements, materials relating to pending or threatened litigation, environmental reports and assessments and other materials, and will meet with members of the issuers' management and external auditors to discuss their business, legal and financial affairs. Skadden will also be responsible for drafting, reviewing and/or negotiating the underwriting agreements, indentures and other legal documents relating to issuance and sale of the New Money Notes and the Long-Term Notes. In connection with the offerings, Skadden will also provide the Underwriter with customary legal opinions with respect to matters relating to the offerings as well as a "negative assurance" letter providing the Underwriter with assurance that Skadden has no reason to believe that the registration statements or the prospectuses contain any untrue statement or omission of a material fact. Skadden will also be responsible for reviewing the "comfort letters" provided by the issuers' auditors, covering the audited and unaudited financial information to be included in the registration statements.

Skadden will not represent PG&E in an attorney/client relationship with respect to its services as Underwriter's Counsel, although Skadden will continue to act as special regulatory counsel to PG&E.[4]

B. Necessity for Services of Underwriter's Counsel.

As conditions precedent to the effectiveness of the Plan, (i) the registration statements for the New Money Notes and the Long-Term Notes must be declared effective by the SEC, and (ii) PG&E must have consummated the sale of its New Money Notes and

---

[4] Skadden was approved as special regulatory counsel to PG&E by Order entered on July 24, 2001 (docket no. 1589). On March 8, 2002, Skadden filed its Supplemental Declaration of John S. Moot, disclosing its role as underwriters' counsel (docket no. 5078).

the New Money Notes of each of the New Entities shall have been priced and their trade dates shall have occurred.[5] Preparing registration statements for securities offerings, particularly for new issuers, involves substantial legal work to ensure that the disclosure contained therein is accurate and complies with the securities laws, rules and regulations. Once the registration statements are filed, there may be a lengthy SEC review process for the securities offerings before the registration statements are declared effective. In order to meet the foregoing conditions precedent to the effectiveness of the Plan, the legal work by Underwriter's Counsel must be done promptly. This legal work will include the time-consuming and complex process of participating in the preparation of the registration statements and conducting the due diligence investigation, which will also require substantial coordination with the issuers and their counsel.[6]

It is customary for the issuer to pay for the underwriter's legal fees in connection with complex debt offerings such as those involved under the Plan.

## II.
## PAYMENT OF FEES INCURRED BY UNDERWRITER'S COUNSEL IS APPROPRIATE PURSUANT TO BANKRUPTCY CODE SECTION 363(B)(1)

A. Sound Business Purposes Support PG&E's
   Payment of Fees Incurred by Underwriter's Counsel.

The Court has considerable discretion in approving a request pursuant to Section 363(b)(1) of the Bankruptcy Code ("[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate"). See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (affirming the bankruptcy court's decision to approve expenditure for employee incentive programs, noting that bankruptcy court has

---

[5] See Article VI. T. of the Disclosure Statement for the Plan describing the conditions precedent to the effectiveness of the Plan.

[6] To date, Skadden has performed limited services as Underwriter's Counsel and has incurred approximately $390,000 in fees and expenses, which have not been paid.

considerable discretion in approving a Section 363(b) motion).

In determining whether to authorize a transaction under Section 363(b)(1), courts require a debtor to show that a sound business purpose justifies such actions, applying the business judgment test. See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir. 1986); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also 3 Lawrence P. King, Collier on Bankruptcy ¶363.02[1][g] (15th ed. rev. 1998).

Once the debtor has articulated a rational business justification, a presumption attaches that the decision was made "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the [debtor]." See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing Smith v. Van Gorkom, 488 A.2d 858 (Del. 1985)).

Sound business justifications support PG&E's request to pay the legal fees of Underwriter's Counsel. It is necessary that the time-consuming and complex legal work to be performed by Underwriter's Counsel be done promptly in order for PG&E to ensure that it can timely meet the conditions precedent to the effectiveness of the Plan. Because the issuer's payment of such fees is a common business practice for complex debt offerings, PG&E believes that it is necessary to pay these costs in furtherance of implementation of the Plan. PG&E is solvent and has sufficient cash to pay these expenses without causing any detriment to its creditors.[7]

B. Proposed Procedures for Review and Approval of Fees Incurred by Skadden as Underwriter's Counsel.

PG&E requests authority to bring current and to pay, on a monthly basis hereafter, the fees and expenses of Skadden as Underwriter's Counsel, in accordance with

---

[7] As reflected in PG&E's July 2002 Monthly Operating Report, PG&E held more than $3.9 billion in cash reserves as of July 31, 2002.

MOTION FOR AUTHORITY TO PAY FEES OF DESIGNATED UNDERWRITER'S COUNSEL -6-

the following procedures:

1. Following entry of an order approving this Motion, Skadden shall promptly transmit, by facsimile and first class mail, copies of any invoices for services provided through September 30, 2002, to PG&E and its counsel, to counsel for the Official Committee of Unsecured Creditors (the "Committee") and to the United States Trustee.

2. Beginning with the monthly billing cycle for October 2002, Skadden shall transmit, by facsimile and first class mail, copies of its monthly invoices to PG&E and its counsel, to counsel for the Committee and to the United States Trustee, no later than the 20th day of the following month.

3. If any of the parties receiving copies of Skadden invoices pursuant to paragraphs 1 and 2 above (an "Objecting Party") believe that all or any portion of the amounts reflected in any invoice are unreasonable, such Objecting Party shall provide written notice, by facsimile and first class mail, of such objection to Skadden, within 10 days of the receipt of the invoice in question (with a copy to PG&E and its counsel).

4. Promptly following the expiration of the 10-day period set forth in paragraph 3 above, PG&E may, without further order or authorization, pay any undisputed portion of such invoice(s). As to any disputed portion, PG&E may pay such disputed portion promptly following resolution of any objection with an Objecting Party, or, if any such objection cannot be consensually resolved, promptly following an order of the Court approving such disputed portion.

5. The payment of any fees and expenses of Skadden as Underwriter's Counsel will be expressly subject to disallowance by the Court.

## CONCLUSION

For all of the foregoing reasons, PG&E respectfully requests that the Court approve the request set forth above to pay the fees of Underwriter's Counsel, and grant such other and further relief as may be just and appropriate.

DATED: October 1, 2002

Respectfully,

HOWARD, RICE, NEMEROVSKI, CANADY,
 FALK & RABKIN
A Professional Corporation

By: *Janet Nexon*
JANET A. NEXON

Attorneys for Debtor and Debtor in Possession
PACIFIC GAS AND ELECTRIC COMPANY

WD 100102/1-1419905/120/1023177/v4