

**Signed and Filed: September 17, 2004**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 01-30923DM
PACIFIC GAS & ELECTRIC COMPANY,    )
                                   ) Chapter 11
                         Debtor.   )
_____)
```

MEMORANDUM DECISION REGARDING REQUEST FOR
RETROACTIVE INCREASE IN HOURLY RATES

I. <u>Introduction</u>

On July 12, 2004, Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), counsel for the Official Committee of Unsecured Creditors ("Committee"), filed its Ninth Interim and Final Application For Allowance And Payment Of Compensation and Reimbursement of Expenses ("Final Application"). In the Final Application, Milbank seeks: (1) allowance of fees and costs for services rendered during the four and one-half months described as the Ninth Interim Application Period; (2) final approval and allowance of fees accrued from its engagement on April 16, 2001, through April 12, 2004, the Effective Date of debtor's reorganization plan; (3) an additional $778,367.50 for time billed by its most senior partners at their normal hourly rates (the "Retroactive Increase"), rather than at the reduced rate for those

-1-

senior partners; and (4) allowance of certain fees and costs totaling $418,520.50 (the "Reconsideration Amount"), of which $230,479.08 represents charges for Milbank's "Case Clerk;" $81,000 represents additional travel time; $62,785 is for secretarial overtime; and $41,688 is for outgoing facsimile charges. Milbank thus asked the court to reconsider certain aspects of its Memorandum Decision Regarding Application For Interim Compensation Of Professionals filed herein on December 12, 2001, and award it the Reconsideration Amount.

The United States Trustee and the debtor opposed any allowance of the Retroactive Increase and the Reconsideration Amount. The matter came before the court on September 14, 2004; appearances were noted on the record. After considering the arguments of counsel, the court orally denied Milbank's request for the Reconsideration Amount and took the request for the Retroactive Increase under advisement.

As explained below, the court has decided to deny Milbank's request for the Retroactive Increase.

II. Discussion

One of Milbank's senior partners, Paul S. Aronzon, filed a declaration on May 3, 2001, setting forth his firm's qualifications, describing the services to be rendered to the Committee and stating the terms of Milbank's expected compensation. While there was no engagement letter between Milbank and the Committee, the declaration sets forth in paragraphs 39, 40 and 41, and Exhibit C thereto, the fact that Milbank would charge its ordinary and customary hourly rates, subject to periodic adjustments, except that the hourly rates of

three principal partners who would be working on the engagement would be reduced to $595 per hour from their standard rates. The court authorized Milbank's employment by the Committee on those terms.

Mr. Aronzon's declaration did not reserve to Milbank the right to seek hourly rates in excess of $595, nor did it specifically recite that the $595 rate being charged by three partners named in the declaration would not be adjusted upward periodically. Nevertheless, throughout this case hourly rates of Milbank's professionals have been adjusted upward, but not beyond the voluntary $595 per hour "cap" rate. As of the Final Application the hourly rates of six Milbank partners have been capped at $595; those partners' current rates range between $615 and $725 per hour.[1]

The court treats as irrelevant the fact that this debtor is, and always has been throughout this case, solvent. There was never any serious doubt about that from the outset of this case. The major question from the first day until very recently was how the debtor was going to discharge its obligations to its creditors. The court does not believe that the Retroactive Increase should be granted because of debtor's solvency.

---

[1] During 2001 the rates of five Milbank partners working on this case exceeded the $595 cap; during 2002 seven partners' rates exceeded it; during 2003 four partners' rates did; during 2004 the rates of six partners working on the case exceeded the $595 cap. The amounts billed by one partner in 2001, two partners in 2002 and two partners in 2004, if charged at their full rates, would only increase Milbank's billing by $212. The overwhelming majority of the extra time sought at present represents work performed by just four Milbank partners.

-3-

Further, the court acknowledges (as does the debtor) that Milbank's services have been of the highest professional caliber. The four partners whose rates are at issue have made substantial contributions to the successful resolution of this case. The court also confirms that many other professionals have billed rates in excess of $595 per hour in this case and the court has allowed those rates.[2] Finally, had Milbank originally committed to represent the Committee at its normal billing rates, those rates likely would have been allowed without serious debate.

What the issue before the court comes down to is whether Milbank should be held to Mr. Aronzon's representations or whether, three and one-half years later, when finally the means by which creditors will be paid in full have been settled and the debtor has been freed from the restrictions of court supervision in Chapter 11, it should be relieved of the cap that it voluntarily imposed upon itself.

The short answer is no. The expectations of the court, the debtor, the United States Trustee, the creditors at large, and all other parties in interest were that Milbank committed to a rate structure and did not seek to be relieved from it until after the fact. While the result may appear harsh or unfair to Milbank compared to awards made to other professionals, it in fact confirms one very important principle, namely that the court will not change the rules (and thus defeat expectations) without early and ample notice to parties in interest. Instead it will hold the

---

[2] Milbank has charged and been allowed rates higher than the $595 cap in other cases in this court and elsewhere, but in those cases it did not agree to any rate cap.

-4-

parties to those clear and unambiguous rules, whether self-imposed or court-imposed.

The court declines to blame Milbank for not specifically reserving the right to seek relief from its rate cap. The court prefers to simply look at the deal that was made, noting the lack of any inherent unfairness in holding Milbank to its bargain. The Retroactive Increase will not be approved.

## III. Disposition

Milbank should submit a form of order allowing the Final Application consistent with this Memorandum Decision and the ruling made on the record at the hearing on September 14, 2004.

**END OF MEMORANDUM**

I, the undersigned, a regularly appointed and qualified clerk in the office of the Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of California, at San Francisco, hereby certify:

That I, in the performance of my duties as such clerk, served a copy of the foregoing document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's Office, or by facsimile to the facsimile numbers listed below, at San Francisco, California, on the date shown below.

Dated: September 17, 2004

/s/_____
Dorothy A. Timo

James L. Lopes, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Ctr., 7th Fl.
San Francisco, CA 94111-4065

Paul S. Aronzon, Esq,
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa St., 30th Fl.
Los Angeles, CA 90017

Robert Jay Moore, Esq.
Milbank, Tweed, Hadley & McCloy
601 S. Figueroa St., 30th Fl.
Los Angeles, CA 90017-5735

Office of the United States Trustee
235 Pine St., Ste. 700
San Francisco,, CA 94104