

**Signed and Filed: October 19, 2004**

_Dennis Montali_

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Case No. 01-30923-DM
)
PACIFIC GAS & ELECTRIC COMPANY, ) Chapter 11
)
       Debtor. )
_____)

### MEMORANDUM DECISION REGARDING CLAIM OF
### MODESTO IRRIGATION DISTRICT (CLAIM NO. 011027)

On April 1, 2004, Pacific Gas and Electric Company ("Debtor")
filed an objection to the claim of Modesto Irrigation District
("MID"). Debtor did not request disallowance of MID's entire
claim; rather, it objected to two components of the claim: MID's
claim for negative CTCs[1] and its New Hogan Power Plant claims.

_____

[1]When the California legislature deregulated the energy
market, it created a mechanism to permit Debtor and other electric
utilities to recover costs of energy generation-related assets
that had been included in Debtor's rates but might not have been
recoverable in a competitive market. Specifically, it authorized
Debtor to recover "Competition Transition Charges" or "CTCs" from
all customers, whether or not they remained as customers of
Debtor. CTCs were calculated by deducting the cost of power from
the generation rate. When the costs of power exceeded the
generation rate, some departed customers claimed that they should
be able to recover the difference between the rate and costs as
"negative CTCs," even though there is no statutory or regulatory
authority for the recovery of negative CTCs. In an effort to
attract customers of Debtor, MID agreed to pay the CTC charges of
customers that switched to MID as a power provider. MID now
asserts that to the extent its customers would be entitled to
recover negative CTCs, it also has a claim against Debtor for such

-1-

1  MID has withdrawn its New Hogan Power Plant claims.  With respect
2  to the negative CTC element of MID's claim, Debtor contended that
3  such negative CTC claims have no legal basis and that, even if
4  they did, MID has no standing to assert them.[2]  Debtor noted that
5  the contracts between MID and its customers did not assign to MID
6  any right to claim negative CTCs, and thus MID does not have
7  standing to assert such claims.

8      MID responds that, even though its agreements with its
9  customers do not explicitly reflect any transfer of negative CTC
10  claims (if any) from the customers, it should be permitted to
11  present parol evidence that the parties intended those agreements
12  to assign such claims.  Specifically, MID states that it will
13  present declarations from customers indicating that they intended
14  to assign their rights even though the contracts merely address
15  MID's assumption of their liabilities.

16      On August 16, 2004, this court entered an order requesting
17  further briefing from Debtor and MID on the issue of whether the
18  parol evidence rule precludes MID from introducing evidence of
19  terms which were not incorporated in its contracts with its
20  customers.  MID filed its supplemental brief on September 3, 2004,
21  and Debtor filed its opposition to MID's supplemental brief on
22  September 15, 2004.  A continued status conference on Debtor's
23  objection to MID's claim is currently set for November 8, 2004.
24  For the reasons set forth below, the court believes that the parol
25  _____
26  negative CTCs.

27      [2]Because the court agrees with Debtor that MID has no
   standing to assert the negative CTC claims, it will not address
28  whether such claims are legally viable.

-2-

evidence rule precludes admission of MID's proffered evidence and that Debtor's objection to MID's claim for negative CTCs should be sustained.

## I. DISCUSSION[3]

A. <u>The Parol Evidence Rule</u>

"Under California law, a written contract presumptively supersedes all prior or contemporaneous oral agreements concerning the subject matter of the written contract." <u>Ankeny v. Meyer (In re Ankeny)</u>, 184 B.R. 64, 70 (9th Cir. BAP 1995), citing Cal. Civ. Code § 1625;[4] Cal. Civ. Proc. Code § 1856(a) ("CCP § 1856").[5] The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." <u>Casa Herrera, Inc. v. Beydoun</u>, 32 Cal.4th 336, 343, 83 P.3d 497, 502, 9 Cal.Rptr.3d 97, 102 (2004).

"Although the rule results in the exclusion of evidence, it 'is not a rule of evidence <u>but is one of substantive law</u>.'" <u>Id.</u> (emphasis in original and citations omitted). "Unlike traditional

---

[3]The discussion in this memorandum decision constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052(a).

[4]Section 1625 of the California Civil Code provides that the "execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

[5]Subsection (a) of CCP § 1856 states that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement."

Case: 01-30923   Doc# 15850   Filed: 10/19/04   Entered: 10/21/04 13:10:04   Page 3 of 12

rules of evidence," the parol evidence rule does not exclude evidence based on its probative value or other reasons ordinarily requiring exclusion. Id. at 103. Under the rule, "'the act of executing a written contract . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.'" Id. (emphasis in original and citations omitted). Under the rule, extrinsic evidence "cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself." Id. (citation omitted).

In other words, extrinsic or parol evidence "is legally irrelevant and cannot support a judgment." Id. (citation omitted). "As a matter of substantive law such evidence cannot serve to create or alter the obligations under the instrument." Id. (citations omitted) (emphasis added). Nonetheless, parol evidence is admissible to establish additional consistent terms of a contract "if the written contract is not the complete and final embodiment of that agreement." Ankeny, 184 B.R. at 70; Cal. Civ. Pro. Code § 1856(b).

B.  CCP § 1856(b) Is Inapplicable

MID argues that CCP § 1856(b) permits the introduction of parol evidence because its contracts with its customers were not fully integrated and because the purported additional terms are consistent with the written contracts. The court disagrees on both points. The contracts at issue are fully integrated; even if they were not, the additional terms (in particular, that the customers intended to assign negative CTC claims to MID) are

-4-

inconsistent with the contracts.

As the court noted in its August 16 order, the contracts between MID and its customers do not contain integration clauses. The exclusion of such a clause, however, does not necessarily mean that the contract is not "a complete and exclusive statement of the terms of the agreement" under CCP § 1856(b). See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859 (9th Cir. 1995) ("the parties' inclusion of an integration clause in the written contract is but one factor in" a determination of whether a contract is fully integrated); Software Design and Application, Ltd. v. Price Waterhouse, LLP, 49 Cal.App.4th 464, 470, 57 Cal.Rptr.2d 36, 39 (1996) ("Here, although there is no 'integration' clause in the engagement letters, they are nonetheless complete.").

Rather, in determining whether a contract is integrated (and thus a "complete and exclusive statement of the terms of the agreement"), the court should consider the factors set forth in Ankeny, 184 B.R. at 70-71. "In determining whether the contract is integrated, the court should consider: (1) whether the written agreement appears to state a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; and (4) whether a jury might be misled by the introduction of the offered parol evidence." Id.

Here the contracts at issue constitute complete agreements because they fully describe the MID-customer relationship. The contracts describe the electric service to be provided by MID, the date of commencement of services, the rate schedule, the application of CTC exemptions, rights-of-way and easements,

-5-

ownership of facilities, assignments, and even a disclaimer of certain warranties. The contracts therefore do "appear[] to state a complete agreement." Id.

In order to attract customers of Debtor who would otherwise have to pay CTCs to Debtor even after discontinuing service with Debtor, MID "agree[d] to bear responsibility for any CTC which [the customer] may owe to [Debtor], accruing during the period beginning at the commencement of service hereunder, through December 31, 1998, arising out of and directly attributable to [the customer's] receipt of electric service pursuant to this Agreement." See, e.g., the Agreement of Electrical Service dated August 28, 1998, between MID and California Freight Sales. In other words, MID offered an incentive to attract its potential customers, but did not provide in its contract with them that it would be entitled to recover any negative CTCs to which that customer could potentially have a claim. Such a provision would have been inconsistent with the purpose of the contract: it could have served as a disincentive for customers to switch from Debtor since it would have eliminated any right of the customer to recover on such a claim against Debtor. Therefore, the extrinsic evidence that MID wishes to introduce -- declarations from customers stating that they intended to assign such rights in the contracts -- is inconsistent with the contracts and the purpose of the contracts.[6]

_____

[6]Such declarations, however, would not be inconsistent with the argument that the clause operates as an indemnification agreement under which MID could defend its customers against any claims asserted by Debtor for CTCs, including the assertion of any offsets available by virtue of negative CTCs. To assert such

-6-

The second factor in <u>Ankeny</u> (whether the alleged agreement directly contradicts the writing) favors the conclusion that the contracts at issue were integrated. <u>Id.</u>  In addition, it is not reasonable to presume that MID and its customers would have made a separate contract assigning negative CTCs to MID; such an agreement, if indeed intended, would have naturally been incorporated into the contracts.  Thus, the third factor of <u>Ankeny</u> (whether the purported agreement might naturally be made as a separate agreement) supports a finding that the contracts were fully integrated. <u>Id.</u>

The fourth factor -- whether a jury might be misled by introduction of the offered parol evidence -- is irrelevant here as the court is the fact-finder.  Even if that factor weighs in favor of MID, the other factors -- taken in their totality -- support the conclusion that the contract is fully integrated.  CCP § 1856(b) is thus inapplicable here.

Even if the contracts were not fully integrated, the additional terms which MID seeks to prove via parol evidence are not consistent with the contracts, for the reasons discussed above.  CCP § 1856(b) therefore does not protect the extrinsic evidence from the parol evidence rule.

B.   <u>Sections 1856 (e) and (g) are Inapplicable</u>

MID seeks to shield its proffered extrinsic evidence from the parol evidence rule by arguing that the contracts are ambiguous or

defenses, however, MID would have to be actually defending such a claim.  It cannot assert an affirmative claim for negative CTCs otherwise, because to do so would be inconsistent with the terms of the agreements with its customers.

-7-

are subject to reformation because of mutual mistake, thereby bringing subsections (e) and (g) of CCP § 1856 into play. Subsection (e) provides that where "a mistake or imperfection of the writing is put in issue by the pleadings, this section does not exclude evidence relevant to that issue."   Subsection (g) provides that parol evidence is admissible "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."  MID's arguments are not persuasive.

As the court stated in its August 16 order, the contracts between MID and its customers are not ambiguous.  MID contends that the court has erred in concluding that the contracts are unambiguous without first considering the proffered extrinsic evidence purportedly demonstrating that its customers "understood that MID would also be entitled to recover any negative CTC[s]." MID's Supplemental Memorandum at 2:1-2.  In particular, the evidence which MID seeks to introduce

> ... consists of testimony of representatives of both MID and its customers attesting to the fact that the parties to the [contracts] intended to, and did. convey to MID whatever rights, obligations, claims and duties existed between customers and [Debtor] with respect to CTC[s], whether negative or positive.  That is, the testimony will support MID's contention that in those customer agreements, both MID and the customers intended to require MID to protect customers from CTC claims by [Debtor], and that in the process, the parties intended that MID would have the benefit of all defenses and offsets that might exist as against those claims, and even affirmative recoveries of negative CTC claims against [Debtor], if appropriate, as a logical outgrowth of MID's prosecution of defenses and offsets.

Id. at 2:16-24 (emphasis added).

MID notes in its supplemental memorandum that this court should engage in a two-step process in determining whether

-8-

ambiguities exist:  the court should "provisionally receive[] (without actually admitting) all credible evidence concerning the parties' intentions to determine [whether an ambiguity exists]." Winet v. Price, 4 Cal.App.4th 1159, 1165, 6 Cal.Rptr.2d 554, 557 (1992).   Therefore, for the purposes of this memorandum decision, the court will assume that the proffered evidence will indeed indicate that the parties intended for MID to receive the customers' rights (if any) to recover negative CTCs from Debtor. The court will further assume that such evidence is credible. Even taking into account this proffered evidence, however, the court concludes that the contracts are not ambiguous.

MID has not pointed to any actual language in the contract which is ambiguous or susceptible to the interpretation that the negative CTCs were assigned to MID; rather, it is attempting to add terms to a contract containing unambiguous language and terms. Because the language of the contract is not "reasonably susceptible" to the interpretation urged by MID, the extrinsic evidence is inadmissible.   Id.

In any event, even if the contract were ambiguous, evidence consisting of testimony of what the parties subjectively intended and understood (as opposed to contemporaneous extrinsic evidence reflecting such intent) is not competent evidence.   "[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language."   Id. at 1166 n.3 and 558 n.3.   "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce."   Id. at 1166 and 558 (emphasis added).   The proffered unstated intent of the customers simply is irrelevant.   Therefore,

-9-

1 CCP § 1856(g) is inapplicable and does not protect MID from the
2 application of the parol evidence rule.
3      MID also contends that, pursuant to CCP § 1856(e),
4 introduction of parol evidence is necessary to reform the contract
5 to correct a mutual mistake between it and its customers.
6 According to MID, the omission of a clause in which the customers
7 conveyed their negative CTC rights to MID "was nothing more than a
8 mutual error that can now be remedied by review of the parol
9 evidence and reformation of the agreement."  MID's Supplemental
10 Memorandum at 7:24-26.  The court will not utilize the parol
11 evidence rule to reform a contract when the affected contracting
12 parties (including the customers) are not parties to this
13 contested matter.  More importantly, this contested matter is not
14 an action to reform the contract; the purported mutual mistake has
15 not been placed at issue in a complaint or other pleading in an
16 action (for reformation or otherwise) between the contracting
17 parties.  As such, CCP § 1856(e) is inapplicable.
18 **II.  CONCLUSION**
19      For the reasons set forth in this memorandum decision and
20 this court's August 16 order, the court will apply the parol
21 evidence rule and not consider the extrinsic evidence which MID
22 seeks to admit.  The court will therefore grant Debtor's request
23 to disallow the negative CTC components of MID's claims because
24 MID lacks standing to pursue such claims.  MID is asserting claims
25 which belong (if at all) to its customers, and the contracts
26 between MID and its customers do not assign such claims to MID.
27      Counsel for Debtor should submit an order disallowing that
28 aspect of MID's claim for the reasons stated in both this

-10-

1   memorandum decision and the August 16 order for further briefing.

2   Counsel should comply with B.L.R. 9021-1 and 9022-1 when

3   submitting the order.  In addition, counsel for Debtor and MID

4   should also advise the court's courtroom deputy whether the

5   hearing scheduled for November 8, 2004, should remain on calendar.

6                    **END OF MEMORANDUM DECISION**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | William J. Lafferty, Esq. |
| | Howard, Rice, Nemerovski, Canady, Falkk & Rabkin |
| 3 | Three Embarcadero Ctr., 7th Fl. |
| | San Francisco, CA 94111-4065 |
| 4 | |
| | Merle C. Meyers, Esq. |
| 5 | Goldberg, Stinnett, Meyers & Davis |
| | 44 Montgomery St., Ste. 2900 |
| 6 | San Francisco, CA 94104 |
| 7 | Scott T. Steffen, Esq. |
| | Modesto Irrigation District |
| 8 | 1231 11th St. |
| | Modesto, CA 95354 |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

-12-