

**Signed and Filed: April 28, 2005**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) |
| | ) Bankruptcy Case |
| PACIFIC GAS & ELECTRIC COMPANY, | ) No. 01-30923DM |
| a California corporation, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |

MEMORANDUM DECISION ON
SUBSTANTIAL CONTRIBUTION MOTION

I. <u>Introduction</u>

The City of Palo Alto ("Palo Alto") filed a Motion Of The City Of Palo Alto For Order Directing Payment Of Reasonable Attorneys' Fees And Costs Pursuant To Section 503(b)(3)(D), 503(b)(3)(F) And 503(b)(4) (the "Motion"), together with a supporting Memorandum of Points and Authorities and a Declaration of Grant Kolling (the "Kolling Declaration"). The Motion was opposed by Pacific Gas & Electric Company ("PG&E"). The former Official Committee of Unsecured Creditors ("Committee") filed Comments regarding the Motion and other similar motions filed by other parties.

The Motion came on for hearing on March 8, 2005. Palo Alto was represented by G. Larry Engel, Esq., one of its attorneys; PG&E was represented by William J. Lafferty, Esq., one of its attorneys. The Committee did not appear.

-1-

For the reasons explained below, the Motion will be denied.

II. Background[1]

PG&E filed its Chapter 11 petition on April 6, 2001, and shortly thereafter the United States Trustee appointed the Committee. Palo Alto was member of the Committee; the Committee and Palo Alto each retained its own counsel.

PG&E's Chapter 11 Plan of Reorganization (the "Settlement Plan") was confirmed by an order of the court on December 22, 2003, following lengthy and contested confirmation trials on earlier plans, a lengthy settlement conference before a bankruptcy judge of this district, and a further contested trial on the Settlement Plan.

Palo Alto is proceeding under alternative provisions of the Bankruptcy Code on the Motion. Section 503(b)(3)(D) permits the court to allow "actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by ... (D) a creditor ... in making a substantial contribution in a case under Chapter ... 11 of this title." Palo Alto is undisputably a creditor of PG&E and thus believes it is entitled to proceed under this subsection. In the alternative, it seeks the same recovery under Bankruptcy Code section 503(b)(4), which authorizes the court to allow "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable paragraph

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

(3) of this subsection ....["2] During this case Palo Alto employed three law firms as its bankruptcy counsel, but its principal counsel throughout the entire case was Mr. Engel, who was a member of each of those three firms in sequence. These claims asserted in the Motion will be referred to as the "Substantial Contribution Claims."

Palo Alto also seeks recovery under Bankruptcy Code section 503(b)(3)(F), which authorizes the court to award compensation to a member of a committee appointed under section 1102 of the Bankruptcy Code, "... if such expenses are incurred in the performance of the duties of such committee." This theory of recovery by Palo Alto will be referred to as its "Committee Claim."

Palo Alto thus seeks compensation for its services as a member of the Committee and contends that it should be compensated for its opposition to PG&E's original proposed plan of reorganization as well as the subsequent plans considered by the court; it also contends that it provided a dynamic for the ultimate resolution of this complex Chapter 11 case through court supervised settlement conferences, much in the same way that Dynegy Power Marketing, Inc. ("Dynegy") has sought compensation.[3]

---

[2] Even if a creditor does not have any expenses to recover under section 503(b)(3), the creditor's professionals may still recover compensation under section 503(b)(4). Law Offices of Neil Vincent Wake v. Sedona Institute (In re Sedona Institute), 220 B.R. 74 (9th Cir. BAP 1998).

[3] At a hearing on March 8, 2005, the court heard Dynegy's substantial contribution motion and denied it on the record although as of this date no written order has been issued. To the extent that Palo Alto supports its Motion by the arguments that Dynegy advanced, namely that it should be given credit for

-3-

Palo Alto also claims that it pointed out flaws in PG&E's various plans and that it provided criticisms of the plan sponsored by the California Public Utility Commission ("CPUC") and the Committee (the "CPUC/Committee Plan"). Finally, it contends that its counsel's role at trial during an examination of the Committee's financial advisor prevented the CPUC/Committee Plan confirmation effort from failing, and it should be compensated for that as well.

After describing the foregoing efforts generally in the Motion, Palo Alto then turns to more specific categories and divides its Motion into the following:

(1) Moderating and ultimately defeating PG&E's first attempted plan of reorganization (the "PG&E Litigation Plan");

(2) Moderating the CPUC/Committee Plan so that it could become the foundation for the Settlement Plan;

(3) Improving the Settlement Agreement that was the centerpiece of the Settlement Plan; and

(4) Preventing or moderating the adverse effects of various of PG&E's excessive actions that were not in the best interest of creditors.

The court will address each of those four categories in turn, but first must underscore a point made by Palo Alto in its Motion,

---

suggesting and encouraging the court ordered settlement conference, the Motion will be denied for the same reasons stated on the record in the Dynegy hearing. Specifically, the court observed then, and repeats now, that settlement and settlement conferences are part of the fabric of bankruptcy and indeed the court itself considered ordering the parties to a settlement conference before being asked to do so by the Committee, Dynegy or anyone else. Neither Dynegy nor Palo Alto can establish a Substantial Contribution Claim under section 503(b)(3) or (4) for suggesting or supporting a court supervised settlement conference.

-4-

which point is consistent with Palo Alto's theme almost from the start of this case. That theme is one of David vs. Goliath, and Palo Alto would have the court conclude that it has reined in the giant and now must be compensated:

> Therefore, by its opposition to the PG&E Litigation Plan and by keeping the prospect of a competing alternative plan viable, as well as a 'Plan C' fallback, Palo Alto helped save everyone from even more prolonged litigation over PG&E's <u>audacious disaggregation/deregulation agenda</u>. Furthermore, Palo Alto's objections with respect to actual and threatened PG&E actions also served to <u>moderate PG&E's aggressiveness</u> and thereby reduced PG&E's liability, including with respect to the congestion and related transmission-pricing problems strategically created by PG&E.

Motion 6:7-13 (Emphasis added; footnote omitted.)

The Committee's Comments spread the credit much more widely, pointing out that each member of the Committee undertook a duty to protect the rights and interests of all unsecured creditors, and each member accepted appointment knowing it would be called upon to make "an extraordinary level of commitment in this large complex case." The Committee alluded to the substantial expense incurred by all members, including their hiring of outside attorneys to represent not only their individual interests, but to provide them with advice concerning their activities on and service as members of the Committee. The Committee added that the significant commitments made by all members were such that it would not be equitable for certain members to be awarded payment or reimbursement on account of those efforts. The Committee mentioned and the court accepts as true, that the Committee acted as a whole, and actions for the Committee should not be attributed to any individual member. The Committee operated through various members and professionals, and no one Committee member or any of

-5-

the Committee's professionals can take individual credit for the results.[4]

The Committee does acknowledge that Palo Alto assisted the Committee during the confirmation trial by cross-examining the Committee's financial expert to help clarify points that it concedes and Palo Alto contends needed to be established in the trial record.[5]

III. Discussion

A "substantial contribution" to the bankruptcy case by the creditor is the sine qua non of recovery under section 503(b). See 2 Norton Bankruptcy Law & Practice 2d § 42:28 (1997) ("The preeminent question to be asked before awarding professional compensation under § 503(b)(4) is whether the services resulted in an actual, direct and demonstrable benefit to the estate."). A creditor's request under this section should be allowed only if the creditor demonstrates by a preponderance of the evidence that the expenses were incurred in an endeavor that "provide[d] tangible benefits to the bankruptcy estate and the other unsecured creditors." In re Catalina Spa & R.V. Resort, Ltd., 97 B.R. 13,

---

[4] The court is deciding Palo Alto's Motion on its own merits, and does not deny the Motion because other Committee members (other than Dynegy) did not assert Substantial Contribution Claims or Committee Claims.

[5] Because the court has decided to deny the Motion for the reasons discussed in this Memorandum Decision, it will not discuss PG&E's objection that the Motion provides no adequate breakdown of the specific time records accompanying the Motion to assess section 503(b)(4)'s requirement that the compensation be reasonable "... based on the time, the nature, the extent, and the value of such services." The court notes, in passing, that PG&E's point is well taken, and were the court inclined to grant the Motion generally, this problem with the supporting documentation might have presented further difficulties for Palo Alto.

17 (Bankr. S.D. Cal. 1989).

The measure of any "substantial contribution" is the extent of the benefit to the estate. <u>Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)</u>, 377 F.3d 1092, 1096 (9th Cir. 2004) (quoting <u>In re Christian Life Ctr.</u>, 821 F.2d 1370, 1373 (9th Cir. 1987)). That benefit does not necessary have to lead to confirmation of a plan; it could also be a substantial contribution if a party uncovered facts that would lead to denial of confirmation. <u>Id.</u> at 1097 (citation omitted).[6] As the following will demonstrate, the problem for Palo Alto on the present record is that the court cannot call Palo Alto's contribution "substantial."

(1) <u>Moderating/Defeating the PG&E Litigation Plan</u>

Palo Alto argues that it raised certain discrete challenges (gas and electric transmission matters, nonassignable franchises issues, etc.), and that had the PG&E Litigation Plan gone forward, PG&E would have been stopped it in its tracks by Palo Alto's formidable defenses. But the PG&E Litigation Plan did not go forward, and the court never was called upon to grant or deny confirmation of that plan. Thus, the court finds it very speculative to conclude that a substantial contribution was made

---

[6] It remains unclear whether a creditor's motivation is dispositive or even relevant in deciding whether to allow a substantial contribution claim. The concurrence in <u>Cellular 101</u> discussed the issue but the majority held that it did not need to resolve the issue because the extent to which the estate was benefitted clearly outweighed the benefit to the party making the contribution. <u>Cellular 101</u>, 377 F.3d 1097-98 (majority) and 1098-99 (concurrence). This court has never questioned Palo Alto's motives and assumes, for purposes of this discussion, that the actions described in its Motion reflect a motivation that would not be insufficient for purposes of Section 503(b).

-7-

in defeating a plan that was never defeated and upon which the court made no ultimate definitive ruling. For these reasons Palo Alto's attempts to recover a Substantial Contribution Claim for the first category described above must fail.

(2) <u>Moderating CPUC/Committee Plan</u>

Palo Alto claims to have moderated the CPUC/Committee Plan. That statement is easy to make in the abstract; the Motion itself is extremely vague and affords the court no basis on which to grant the requested relief. Palo Alto says that this court can call upon its own recollections and observations and reach the conclusion Palo Alto desires. Without commenting on the court's own memory and powers of recall, the record must establish those facts, for without a record a decision would be virtually immune from appellate review. Palo Alto has not carried its burden on this theory of recovery.

(3) <u>Improving the Settlement Agreement/Settlement Plan</u>

Palo Alto argues that it improved the Settlement Plan by focusing on ambiguities in the proposed Settlement Agreement. It further contends that improvements in the final Settlement Agreement would not have been possible without its efforts.

As with the prior category, the assertions are vague. In footnote 18 of the Motion Palo Alto says that some changes it urged were adopted. No details are provided.

More importantly, the court does not have the perception (nor does the record establish) that Palo Alto's efforts in this regard decisively contributed to the result. The court is aware that Palo Alto and the other Municipal Objectors took the lead on the issues addressed in part VI.A.4. of the court's original and

-8-

amended Memorandum Decision Approving Settlement Agreement and Overruling Objections to Confirmation of Reorganization Plan. In re Pacific Gas & Elec. Co., 304 B.R. 395, 413-16 (Bankr. N.D. Cal. 2004) (portion entitled "Specific Provisions of the Settlement Agreement"). The court overruled those objections. Id.

Palo Alto's objections to the Settlement Agreement may have implicitly suggested a narrow interpretation of the Settlement Agreement. That arguably may have helped to assure that the Settlement Plan would be confirmable, by reinforcing the court's own conclusion that the Settlement Agreement did not violate California law or the Bankruptcy Code. The trouble for Palo Alto is that the court had already reached those conclusions. See id. at 404-412. Palo Alto has not shown that the outcome for creditors and the estate would have been any different if it had never objected.

The court assumes without deciding that Palo Alto's suggested changes to or interpretations of the Settlement Agreement might contribute to its and the Municipal Objectors' future relationships as customers, competitors, and local regulators of PG&E. That is different from benefitting creditors or the estate.

Palo Alto has not established that its alleged improvements to the Settlement Agreement and Settlement Plan resulted in a cognizable and substantial benefit to creditors or the estate. Therefore, the court is unable to make a finding favorable to Palo Alto in this category.

(4) <u>Other Substantial Contribution Claims and Committee Claim</u>

As noted above, the fourth category for which Palo Alto asserts a Substantial Contribution claim is described generally as

-9-

"preventing or moderating adverse effects" of PG&E's activities. The only real specifics here pertain to what Palo Alto's counsel calls the salvaging of a witness's testimony who, on direct examination by the CPUC and the Committee, failed to demonstrate how the CPUC/Committee Plan could be confirmed. That argument overlooks the facts that the court invited the CPUC and the Committee to move to reopen their case, and thus present the same testimony, and that the court never was called upon to rule on the confirmability of the CPUC/Committee Plan at all. This prevents the court from finding that Palo Alto established a Substantial Contribution Claim by the examination of a witness.[7]

From the foregoing the court concludes that Palo Alto is unable to recover Substantial Contribution Claims under section 503(b)(3) or (4). Thus it turns to Palo Alto's alternative under section 503(b)(3)(F).

The Kolling Declaration describes beyond dispute the uniqueness of this case and the particular skills and special knowledge Palo Alto and its professionals brought to the case in a variety of disciplines and legal specialties. The Kolling Declaration also explains how the Committee welcomed Palo Alto's efforts to educate it, and that it collaborated with the Committee, which might otherwise have needed more help from its

---

[7] The court is not unmindful of the Committee's acknowledgment of Palo Alto's efforts in this regard. However, the court will not insult Palo Alto by attempting to quantify in minutes or fractions of an hour (and thus in no more than hundreds of dollars, on account of a request of nearly two million dollars) the time its counsel spent in the courtroom examining that witness, and then limiting the award to that amount. Even if the time records were crystal clear on an allocation, the result would be of no meaningful economic consequence to Palo Alto.

-10-

professionals. Despite the Kolling Declaration's statements, the Committee's Comments are more persuasive. The record does not reflect any particulars for which the Committee or its professionals called upon Palo Alto to perform services on behalf of the Committee as required by the statute ("... incurred in the performance of the duties of such committee"). Absent a clear indication that Palo Alto stepped up and shouldered a responsibility otherwise belonging to the Committee, the court is unable to grant the Motion and allow the Committee Claim.

IV. Conclusion

Despite the tenacious advocacy of Palo Alto's counsel throughout this case, and the commendable efforts on his part to protect his client's interest, the complexity of this case makes it all the more difficult to single out any particular party whose contribution can be said to be "substantial" within the meaning of section 503(b) and the case law that has interpreted it. The court has little doubt that counsel's contribution to his client's interest was substantial; it cannot say that Palo Alto stands out as having made a substantial contribution to the case or produced substantial benefits to the estate.

Because the record does not support evidence that Palo Alto acted in lieu of the Committee, Palo Alto's alternative theory for the Motion must also be rejected.

For the foregoing reasons that Motion will be denied. PG&E's counsel should submit a form of order denying the Motion for the reasons stated in this Memorandum Decision, and should comply with B.L.R. 9021-1.

**END OF MEMORANDUM DECISION**

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | William J. Lafferty, Esq.<br>Howard, Rice, Nemerovski, Canady, Falk & Rabkin |
| 3 | Three Embarcadero Ctr., 7th Fl.<br>San Francisco, CA 94111-4065 |
| 4 | |
| 5 | G. Larry Engel, Esq.<br>White & Case<br>3 Embarcadero Ctr., te. 2210 |
| 6 | San Francisco, CA 94111 |

-12-