**Signed and Filed: February 17, 2015**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                                   ) Bankruptcy Case
                                        ) No. 01-30923DM
PACIFIC GAS AND ELECTRIC COMPANY,       )
a California corporation,               ) Chapter 11
                                        )
                          Debtor.       )
_____)
```

**MEMORANDUM DECISION ON PG&E'S MOTIONS FOR RELEASE OF CERTAIN
ESCROW FUNDS AND ON CALPX'S COUNTERMOTION
TO INCREASE THE ESCROW FUNDS**

**I.   INTRODUCTION**

Reorganized debtor Pacific Gas and Electric Company ("PG&E") has filed motions to release funds (the "PG&E Motions") from an escrow account created for the payment of disputed Class 6 claims (the "Class 6 Escrow") under its confirmed plan of reorganization dated July 31, 2003, as modified on November 6, 2003, and December 19, 2003 (the "Plan"). In particular, PG&E seeks the release of funds equal to the payments made or owed to certain Class 6 claimants whose disputed claims have now been resolved: TransAlta Energy Marketing (U.S.) Inc. and TransAlta Energy Marketing (California) Inc. (collectively, "TransAlta") and Avista Corporation dba Avista Utilities & Avista Energy, Inc.

(collectively, "Avista").

The California Power Exchange Corporation ("CalPX") opposed the PG&E Motions and filed a separate motion to enforce the Plan and to require PG&E to deposit additional funds into the Class 6 Escrow ("Escrow Enhancement Motion") because of recent events that caused it to question PG&E's financial stability. Following a hearing on November 14, 2014, the parties filed supplemental briefs. For the reasons stated below, the court will grant the PG&E Motions and will deny the Escrow Enhancement Motion.

**II.     RELEVANT DOCUMENTS**

PG&E and each of the Class 6 claimants entered into a "Stipulation Resolving Objections of Class 6 Objectors to Plan of Reorganization" (the "Stipulation"), which was approved by an order of this court dated November 13, 2003 (Docket No. 14076). Pursuant to paragraph 1 of the Stipulation, PG&E agreed to deposit $1.6 billion into the Class 6 Escrow and the Class 6 claimants agreed to support the motion to establish the escrow. Paragraph 1 also governed the ability of PG&E to reduce the $1.6 billion deposit generally (as opposed to its ability to deduct amounts corresponding to the allowance of specific Class 6 claimants, which was governed by paragraph 2 of the Stipulation) and provided that PG&E would not seek to reduce the $1.6 billion amount deposited into the Class 6 Escrow "unless or until there is a material change in circumstances resulting from one or more settlements or final administrative or judicial (other than Bankruptcy Court) determination that would render the $1.6 billion reserve amount unreasonably excessive." *See* Docket 16579-8, page

4 of 16.

In contrast, paragraph 2 of the Stipulation governs withdrawal of funds from the Class 6 Escrow when a disputed Class 6 claim becomes an allowed claim: "If, after the Effective Date, the Disputed ISO, PX and Generator Claims become Allowed Claims, as provided in Section 5.4(g)(i) of the PG&E Plan, the Allowed Class 6 Claims shall be paid in Cash in full and the Disputed Claims Escrow shall be reduced to reflect the difference between the Allowed Amount of such claims and $1.6 billion." *See id.* To that end, paragraph 4(c) of the Escrow and Disbursement Agreement (Class 6 Disputed Claims Escrow) ("Escrow Agreement") between and among PG&E, CalPX and the escrow and disbursement agent (Deutsche Bank Trust Company Americas) provides that the agent "shall pay <u>to PG&E</u> the amount specified" for a Class 6 claim that has been finally resolved/allowed. *See* Dkt. No. 16579-10 at page 4 (emphasis added).

Paragraph 4(b) of the Escrow Agreement provides that in the event the funds remaining in the Class 6 Escrow "are not sufficient to make a timely payment under Paragraph 4(a) above," PG&E shall make a deposit to the escrow "in an amount equal to any shortfall in immediately available funds within two business days of notification of such shortfall by the Agent, which notification shall allow sufficient time for PG&E to make such deposit and the Agent to make the payment within the time frames set forth herein. The Agent shall have no duty to advance any funds in the event that PG&E fails to make such deposit." In contrast, paragraph 5.4(g)(iii) of the Plan provides that in the event that the amount of cash deposited into the Class 6 Escrow is insufficient "to make

-3-

the required payment upon a Disputed Claim becoming an Allowed Claim, the Reorganized Debtor will pay the holder of such Allowed Claim the Cash necessary to satisfy the shortfall." Under either scenario (payment by PG&E of any shortfall either to the Escrow Agent or to the Class 6 Claimant holding an allowed claim), the relevant governing documents do not provide for a general increase in the Class 6 Escrow amount to accommodate fears regarding PG&E's financial future. Instead, the shortfall contingencies apply only when a specific allowed claim cannot be paid from the amounts on deposit in the Class 6 Escrow.

**III. ANALYSIS**

Since the plan was confirmed, PG&E has filed and the court has granted multiple motions to release funds from the Class 6 Escrow upon the settlement or allowance of certain Class 6 claims. *See e.g.,* the Motion for Order Authorizing Release of Certain Funds from Class 6 Disputed Claims Escrow (Dynegy Settlement) filed on January 7, 2005, at Dkt. No. 15946 and the Motion For Order Authorizing Release of Certain Funds From Disputed Claims Escrows and Approving Settlement Agreement (Mirant Settlement) filed on February 4, 2005, at Dkt. No. 15968. For the most part, these motions were unopposed, although CalPX did oppose one for reasons particular to that claimant.[1]

While CalPX did not oppose other motions for the release of funds from the Class 6 Escrow over the last ten years, recent

---

[1] CalPX opposed the Mirant motion because of concerns that the court in which Mirant's bankruptcy case was pending could approve a different version of the Mirant settlement. *See* Objection filed on March 11, 2005, at Dkt. No. 15988.

-4-

events have caused it to question PG&E's overall financial condition and its ability to satisfy any future shortfall in the Class 6 Escrow. Therefore, CalPX opposed the PG&E Motions and has filed its Escrow Enhancement Motion. However, none of the governing documents (the Plan, the Stipulation, or the Escrow Agreement) requires PG&E to augment the Class 6 Escrow because of general concerns that PG&E will not be able to pay other Class 6 claims as they are allowed in the future. Rather, the documents make specific provisions for PG&E to cure specific deficiencies/shortfalls identified by the Escrow Agent as they occur. *See, e.g.,* paragraph 4(b) of the Escrow Agreement (Dkt. No. 16579-10); Plan at 5.4(g)(iii) at Dkt. No. 16581-6.

The Class 6 Escrow has a current balance of approximately $280 million, which is $227 million more than the aggregate payments to Avista and TransAlta. The Class 6 Escrow is <u>not</u> currently deficit and will not become deficit by reducing the balance by the amount of the allowed claims <u>as specifically provided for in paragraph 2 of the Stipulation.</u>

In support of Escrow Enhancement Motion, CalPX relies on paragraph 1 of the Stipulation.[2] Paragraph 2, however, is the

---

[2]Paragraph 1 provides:

> Except as otherwise expressly provided herein, on the Effective Date, and pursuant to the Disputed Claims Escrow Motion, the Reorganized Debtor shall deposit $1.6 billion into the Disputed Claim Escrow, which amount shall be held on account of the Class 6 Claims only. The Class 6 Objectors shall support the Disputed Claims Escrow Motion. Notwithstanding any language to the contrary in Section 5.4(g) of the PG&E Plan, the Plan Proponents shall not seek to reduce the $1.6 billion amount deposited into the Disputed Claims Escrow on account of the Class 6 Claims and shall not seek to estimate any or all of the Class 6 Claims, unless and

Case: 01-30923   Doc# 16619   Filed: 02/17/15   Entered: 02/17/15 15:08:02   Page 5 of 8

governing paragraph,³ as it specifically addresses PG&E's ability to deduct from the Class 6 Escrow the amounts paid to a Class 6 creditor whose claim has been finally allowed. Paragraph 1, in contrast, limits PG&E's ability to reduce the $1.6 billion escrow balance generally. The specific terms of paragraph 2 of the Stipulation trump the general ones of paragraph 1, given that PG&E is seeking the specific offset expressly permitted by paragraph 2 and not the general relief described in paragraph 1. *See* Cal. Code Civ. Pro. § 1859 ("[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it"). If this court were to interpret paragraph 1 as urged

---

> until there is a material change in circumstances resulting from one or more settlements or final administrative or judicial (other than Bankruptcy Court) determination that would render the $1.6 billion reserve amount unreasonably excessive. Any such reduction in the amount deposited in the Disputed Claims Escrow pursuant to the Stipulation shall be made only upon order of the Bankruptcy Court pursuant to a reasonably noticed motion.

³Paragraph 2 provides:

> If, prior to the Effective Date, the Disputed ISO, PX and Generator Claims have become Allowed Claims, as provided in Section 5.4(g)(i) of the PG&E Plan, no deposit in the Disputed Claims Escrow on account of Class 6 Claims is required because the Allowed Class 6 Claims will be paid in Cash in full on the Effective Date in accordance with the Plan. If, after the Effective Date, the Disputed ISO, PX and Generator Claims become Allowed Claims, as provided in Section 5.4(g)(i) of the PG&E Plan, *the Allowed Class 6 Claims shall be paid in Cash in full and the Disputed Claims Escrow shall be reduced to reflect the difference between the Allowed Amount of such claims and $1.6 billion.* (Emphasis added.)

Case: 01-30923   Doc# 16619   Filed: 02/17/15   Entered: 02/17/15 15:08:02   Page 6 of 8

by CalPX (i.e., that PG&E cannot offset amounts paid on account of allowed Class 6 claims unless the amount in the Class 6 Escrow is "unreasonably excessive"), the more specific terms of paragraph 2 would be rendered meaningless. A contract may not be interpreted in a manner which would render one of its terms meaningless. *Kavruck v. Blue Cross of California,* 108 Cal. App. 4th 773, 134 Cal.Rptr.2d 152 (2003).

Even if the court were inclined to disregard the language of paragraph 2, which it cannot do, and invoke equity to apply paragraph 1 in a manner not contemplated within its own terms, it would also have to take into account certain ISO credits (estimated by PG&E to be approximately $219 million and by CalPX to be $109.3 million) owed to PG&E that must, by order of FERC, be netted against PG&E's liability to the Class 6 claims. CalPX and its expert contend that PG&E's liability to the remaining Class 6 claimants will exceed the balance in the Class 6 Escrow by approximately $11 million, but have not explained the basis of that calculation and have not included any ISO credit balances in its calculation. Again, even assuming that CalPX's calculation is accurate, the court would still grant the PG&E Motions and deny the Escrow Enhancement Motion, as (1) the Class 6 claimants agreed that PG&E would pay to the Class 6 Escrow or the holder of an allowed Class 6 claim the amount of any specific shortfall;[4] and (2) CalPX's calculation of an $11 million shortfall does not take into account the FERC-mandated ISO credits. The court need not

---

[4] *See* Plan at article 5.4(g)(iii); Escrow Agreement at section 4(b).

-7-

Case: 01-30923   Doc# 16619   Filed: 02/17/15   Entered: 02/17/15 15:08:02   Page 7 of 8

address or resolve the disputed shortfall calculations, as it finds that paragraph 2 of the Stipulation controls in any event. PG&E is entitled to withdraw funds from the Class 6 Escrow equal to payments made on the finally allowed claims of TransAlta and Avista.

**IV. CONCLUSION**

CalPX asks this court to disregard paragraph 2 of the Stipulation based on speculation that the $280 million will not be sufficient to pay claims. For the reasons discussed above, paragraph 2 of the Stipulation governs PG&E's motions to deduct from the Class 6 Escrow the amounts paid to TransAlta and Avista on account of their allowed claims. Counsel for PG&E should upload separate orders granting each of the PG&E Motions and denying the Escrow Enhancement Motion for the reasons stated in this memorandum decision. In doing so, counsel should comply with B.L.R. 9021-1(c).

**\*\*END OF MEMORANDUM DECISION\*\***